IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

HECTOR ACEVEDO,

                    Petitioner,                    Civil Action No.
                                                   9:16-CV-0594 (LEK/DEP)

          v.

SUPERINTENDENT,[1]

                    Respondent.

_____

APPEARANCES:                              OF COUNSEL:

FOR PETITIONER:

HECTOR ACEVEDO, *Pro se*
11-A-3865
Green Haven Correctional Facility
P.O. Box 4000
Stormville, NY 12582

FOR RESPONDENT:

HON. ERIC T. SCHNEIDERMAN         DENNIS A. RAMBAUD, ESQ.
New York State Attorney General   Assistant Attorney General
120 Broadway
New York, NY 10271

DAVID E. PEEBLES
CHIEF U.S. MAGISTRATE JUDGE

---

[1]     In light of the fact that petitioner originally named "The State of New York Department of Correction and Community Services" as the respondent, *see* Dkt. No. 1 at 1 (errors in original), I directed that agency be terminated as a respondent and that the superintendent of the correctional facility in which petitioner was then incarcerated be substituted in its place. *See* Dkt. No. 2

REPORT AND RECOMMENDATION

*Pro se* petitioner Hector Acevedo, a New York State prison inmate, has commenced this proceeding pursuant to 28 U.S.C. § 2254, seeking federal habeas intervention. Petitioner, who was convicted in 2011 following a jury trial of third-degree criminal possession of a controlled substance, second-degree assault, and resisting arrest, argues that trial court erred when it (1) denied his motion to suppress evidence; (2) denied his motion to dismiss the indictment setting aside those charges; (3) provided "improper charges to the jury" thereby depriving him of a fair trial; (4) denied his motion for a trial order of dismissal; and (5) denied his motion to set aside the verdict. *See generally* Dkt. No. 1.

Having carefully reviewed the record that is now before the court, for the reasons that are set forth below, I recommend that the petition be denied and dismissed in all respects.

I.    BACKGROUND

Petitioner's judgment of conviction stems from events that transpired beginning at or about 10:12 p.m. on November 19, 2009, at which time he was traveling as a passenger in a westbound vehicle on Interstate Route 90 in the City of Albany, New York. Dkt. No. 9-1 at 341-42, 426-27. At the time, New York State Troopers Jeffrey Devine and Eric Terraferma were

2

conducting a routine patrol covering Interstate Routes 90 and 787. *Id.*

Trooper Devine observed a vehicle in his rearview mirror traveling with an

inoperable driver-side headlight. *Id.* at 342, 428. Based upon this traffic

infraction, the troopers initiated a stop of that vehicle on the off-ramp of

Interstate Route 90 westbound at Exit 6. *Id.* at 343, 429-30. Petitioner,

who owned the vehicle, was seated in the front passenger seat of the

vehicle at the time. *Id.* at 27, 344.

Trooper Devine approached the driver's side of the vehicle,

whereupon he observed dark, tinted windows and detected an odor of

marijuana emanating from the vehicle. *Id.* at 343-44, 430-32. In light of the

detection of an odor of marijuana, and after discussing the matter with his

partner, Trooper Devine decided to conduct a search of the vehicle. Dkt.

No. 9-1 at 347, 431. When Trooper Devine leaned into the passenger side

of the vehicle to advise that he was going to conduct a search, he

observed a plastic bag in the rear center console containing a "green[,]

leafy vegetation," which he believed was marijuana. *Id.* at 353, 356, 381,

417, 436. In addition, he observed a black bag protruding from between

the passenger's seat and the center console. *Id.* at 353, 381. When

Trooper Devine opened the black bag, he observed what was later

confirmed to be heroin, packaged in 299 glassine envelopes fastened together with rubber bands.[2] *Id.* at 353-54, 358-59, 547, 550.

After Trooper Devine secured the drugs, he instructed petitioner to place his hands on the top of his head and stated that he was under arrest for drug possession. Dkt. No. 9-1 at 362-363, 437. Although petitioner initially complied with those instructions, when Trooper Devine reached for his handcuffs, petitioner removed his hands from his head, shoved the trooper, and fled on foot. *Id.* at 363, 366, 437. Trooper Terraferma attempted to stop petitioner, but Trooper Devine advised him to return to the stopped vehicle, and that he would give chase to the petitioner. *Id.* at 437, 446. Trooper Terraferma ran back to petitioner's vehicle and secured the keys. *Id.* at 437-38. At the same time, Trooper Devine chased petitioner and eventually tackled him over a guardrail, at which point the two tumbled down an embankment. *Id.* at 366-70.

A two to three-minute struggle ensued, with petitioner striking Trooper Devine several times with a closed fist in the back of his head, body, and face. Dkt. No. 9-1 at 367-368. Trooper Devine briefly deployed

---

[2]     Dwane J. Grant, a state police investigator familiar with narcotics, testified to his opinion that a user of heroin generally consumes twenty envelopes of heroin or less in a typical day. Dkt. No. 9-1 at 485-87. Based upon the number of envelopes recovered from the black bag, the investigator opined that they were packaged for sale. *Id.* at 475.

pepper spray, but petitioner knocked the spray out of his hand. *Id.* at 368.

Although Trooper Devine managed to place one handcuff on plaintiff's left

wrist, plaintiff continued to struggle, causing the other handcuff to strike

Trooper Devine in the face and head. *Id.* at 368, 374-75.

Trooper Devine drew his service firearm and ordered petitioner to lay

on his stomach and place his hands behind his back. Dkt. No. 9-1 at 368-

69. Petitioner then lunged, and fled across six lanes of traffic on Interstate

Route 90. *Id.* at 369-71.

At approximately 10:30 p.m., Trooper Charles Donovan was

dispatched to assist Trooper Devine. Dkt. No. 9-1 at 374, 463-66.

Although petitioner continued to resist arrest, Troopers Donovan and

Devine were ultimately able to secure his right wrist and take him into

custody. *Id.* at 374-75, 464-65

Following the incident, Trooper Devine was transported by

ambulance to the Albany Memorial Hospital, where he was treated for

injuries to his left knee and lower back as well as for abrasions on his

head and face. Dkt. No. 9-1 at 375-76; *see also* Dkt. No. 9 at 1030.

Trooper Devine testified that as a result of petitioner's attack, he

experienced persistent pain, and was unable to work for at least two

weeks following the incident. Dkt. No. 9-1 at 376-77, 413. Ultimately, the

trooper was referred for physical therapy and chiropractic care, and was prescribed Hydrocodone for his pain. Dkt. No. 9-1 at 376, 418-19; *see also* Dkt. No. 9 at 1037.

As a result of the events described above, petitioner was arrested on November 19, 2009, and charged with criminal possession of a controlled substance in the third degree, assault in the second degree, resisting arrest, and unlawful possession of marijuana. Dkt. No 9 at 113-16.

II.   PROCEDURAL HISTORY

A.   State Court Proceedings

Following his arrest, petitioner was charged by felony and misdemeanor accusatory instruments filed in Albany City Court with criminal possession of a controlled substance in the third degree, assault in the second degree, resisting arrest, and unlawful possession of marijuana. Dkt. No. 9 at 91, 368-374. He was later indicted by an Albany County grand jury on November 25, 2009, and charged with the same four offenses. *Id.* at 113-116. During the grand jury proceedings, Trooper Devine testified as follows:

> [A]t that point I went back around to the driver's side of the vehicle where [the driver] was sitting. I was about to tell [the driver] that I was going to search his vehicle because of the odor of marihuana . . . . [and a]s I was talking to him[,] I noticed on the rear center console there was a clear Ziplock bag

> containing marihuana residue.  And I also observed
> a black plastic bag sticking out between the center
> console and passenger seat.

Dkt. No. 9 at 344; *see also id.* at 785-86, 804.

Following return of the indictment, at petitioner's request, a combined *Mapp/Dunaway*[3] suppression hearing was conducted by Albany County Court Judge Thomas A. Breslin over a period of three days on February 17, 2010, August 5, 2010, and August 12, 2010, in order to determine whether Acevedo's rights were violated in connection with the stop of the vehicle and the subsequent search and seizure that led to his arrest and prosecution. Dkt. No. 9 at 215-366; Dkt. No. 9-1 at 52-149. By decision and order dated September 13, 2010, Judge Breslin concluded that (1) law enforcement officers had probable cause to stop the vehicle in which petitioner was traveling, having personally witnessed a traffic infraction; (2) the officers' detection of the odor of marijuana emanating from the vehicle provided probable cause to search the vehicle; and (3) inconsistencies in the officers' accounts of the encounter were sufficiently insignificant as to not undermine their credibility. Dkt. No. 9 at 426-431. Petitioner's motion to suppress was therefore denied. *Id.*

---

[3]    See *Mapp v. Ohio*, 367 U.S. 643 (1961); *see also Dunaway v. New York*, 442 U.S. 200 (1979).

On September 24, 2010, following the issuance of Judge Breslin's decision and order regarding the suppression issue, petitioner renewed an earlier motion to dismiss the indictment, arguing that it was procured based on testimony that was allegedly perjured. Dkt. No. 9 at 966-975. Specifically, petitioner's trial counsel argued that Trooper Devine provided testimony at the suppression hearing that was inconsistent the testimony he previously provided during the grand jury proceedings. *Id.* at 967-968; *compare id.* at 344 ("went back around to the driver's side") *with id.* at 757 ("went inside of the passenger side of the vehicle").  Judge Breslin denied petitioner's motion on October 7, 2010, concluding that there was legally sufficient evidence to support the indictment and that the issues raised by petitioner did "not rise to the level of misconduct or perjury[,]" and as a result, the grand jury proceedings were not defective and the integrity of the proceedings was not impaired. *Id.* at 977-978. Judge Breslin further observed that petitioner's trial counsel could "explore these discrepancies [in Trooper Devine's testimony] for impeachment purposes at trial." *Id.* at 978.

On January 3, 2011, a jury trial was convened in Albany County Court, with Judge Breslin presiding, to address the charges set forth in the indictment against petitioner. *See* Dkt. No. 9-1 at 151-693. Following the

close of the prosecution's case, petitioner's trial counsel moved for a trial order of dismissal on each count of the indictment. *See* Dkt. No. 9 at 541-549. With respect to unlawful possession of marijuana, petitioner's trial counsel argued that the prosecution had failed to present evidence "that that any item that was in [petitioner]'s possession was, in fact, marijuana." *Id.* at 542. Judge Breslin agreed, and dismissed the marijuana possession charge, concluding that the evidence at trial was legally insufficient to convict petitioner of that charge. *Id.* at 542. The balance of petitioner's motion was denied. *Id.* at 549-50.

The remaining charges were submitted to the jury, which convicted petitioner of all three remaining counts on January 5, 2011. Dkt. No. 9-1 at 687-690. On January 11, 2011, petitioner moved to set aside the verdict pursuant to N.Y. Criminal Procedure Law § 330.30(1); that motion was denied. Dkt. No. 9 at 979-997; *see also id.* at 981-998; *see also* Dkt. No. 9-1 at 696. On March 4, 2011, petitioner was sentenced as a second felony offender to an aggregate prison term of fourteen years, followed by five years of postrelease supervision. Dkt. No. 9-1 at 699, 705-06.

Petitioner appealed his conviction to the New York State Supreme Court, Appellate Division Third Judicial Department. Dkt. No. 9 at 3-81. In that appeal, he argued that (1) the court erred in failing to suppress the

evidence recovered from the search of the vehicle in which petitioner was travelling; (2) the trial court erred in failing to dismiss the indictment; (3) he was denied his right to a fair trial based on improper jury instructions administered by the court; (4) the trial court should have granted his motion for a trial order of dismissal, based upon lack of evidence; (5) the trial court erred in denying his motion to set aside the verdict; and (6) the sentence imposed by the trial court was unduly excessive. Dkt. No. 9 at 3-81.

Acevedo's conviction was affirmed in all respects by decision issued by the Third Department on June 12, 2014. *See People v. Acevedo*, 118 A.D.3d 1103 (3d Dep't 2014); *see* Dkt. No. 9 at 1046-52. In that decision, the appeals court first concluded that a rational jury could find that each of the elements of the crimes charged was proven beyond a reasonable doubt, and thus the trial court did not err in denying the remainder of petitioner's motion for a trial order of dismissal at the close the prosecution's case. *Acevedo*, 118 A.D.3d at 1104. With respect to the proprietary of the grand jury indictment, the court concluded that the discrepancy in testimony from Trooper Devine between the suppression hearing and earlier grand jury presentment did not rise to a level sufficient to require dismissal of the indictment, noting further that in any event

petitioner's claims of facial deficiency concerning the indictment were rendered academic by his conviction. *Id.* at 1105-06. The court also concluded that Judge Breslin properly denied petitioner's motion to suppress evidence, and found no error in the trial court's refusal to submit to the jury a lesser included criminal possession of a controlled substance in the seventh degree instruction, concluding that "no reasonable view of the evidence supports the conclusion that defendant committed the lesser, but not the greater offense." *Id.* at 1106-07 (citations omitted). The Third Department further held that (1) the trial court's jury instructions were proper, and that Judge Breslin acted within his discretion in "tailoring a meaningful and appropriate response" to a jury request for further guidance, (2) the motion to set aside the verdict was properly denied, and (3) there was no basis to find prosecutorial misconduct based upon the denial of petitioner's request to delay presentment of the matter to the grand jury. *Id.* at 1107-08. Finally, the court rejected petitioner's claim that the sentence imposed by the trial court was excessive. *Id.* at 1108. The New York State Court of Appeals denied petitioner's request for leave to appeal on August 10, 2015. *See People v. Acevedo*, 26 N.Y.3d 925 (2015); *see also* Dkt. No. 9 at 1053-54.

Following his unsuccessful appeal, petitioner moved to vacate his judgment of conviction, pursuant to New York Criminal Procedure Law § 440.10. Several of the arguments now raised in this proceeding were advanced in support of that motion.[4] That motion was denied by decision and order issued by County Court Judge Breslin on July 1, 2015. Dkt. No. 9 at 1055-1060; *see also* Dkt. No. 1-1. From the record currently before the court, it does not appear that petitioner requested leave to appeal that determination.  Dkt. No. 8-1 at 13.

B.   Proceedings in this Court

Petitioner commenced the present proceeding on May 23, 2016. Dkt. No. 1. On August 22, 2016, respondent, represented by the Office of the New York State Attorney General, filed a response to the petition, together with a memorandum of law and the relevant state court records. Dkt. Nos. 8, 9. Petitioner has since submitted a memorandum in support of his petition. Dkt. No. 10. The petition in this matter, which is now ripe for determination, has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York  Local Rule 72.3(c). *See* Fed. R. Civ. P. 72(b).

---

[4]     Although Judge Breslin's decision and order deciding the motion was included among the state court records filed by respondent's counsel, petitioner's underlying section 440.10 motion was not. *See* Dkt. No. 8-1 at 13 n.3.

III.   DISCUSSION

A.   Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant habeas corpus relief with respect to a claim adjudicated on the merits in a state court only if, based upon the record that was before the state court, the adjudication of the claim (1) was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Virginia v. LeBlanc*, 137 S. Ct. 1726, 1727 (2017) (per curiam) (citing 28 U.S.C. § 2254(d)(1)); *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (same); *Premo v. Moore*, 562 U.S. 115, 120-21 (2011); *Thibodeau v. Portuondo*, 486 F.3d 61, 65 (2d Cir. 2007) (Sotomayor, J.). The AEDPA "'imposes a highly deferential standard for evaluating state-court rulings' and 'demands that state-court decisions be given the benefit of the doubt.'" *Felkner v. Jackson*, 562 U.S. 594, 598 (2011) (per curiam) (quoting *Renico v. Lett*, 559 U.S. 766, 773 (2010)); *accord, Cullen*, 563 U.S. at 181. When applying the AEDPA standard, federal habeas courts must presume that the state court's factual findings are correct "unless applicants rebut

this presumption with 'clear and convincing evidence.'" *Schriro v. Landrigan*, 550 U.S. 465, 473-74 (2007) (quoting § 2254(e)(1)); *see also Boyette v. Lefevre*, 246 F.3d 76, 88 (2d Cir. 2001). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold." *Schriro*, 550 U.S. at 473 (citing *Williams v. Taylor*, 529 U.S. 362, 410 (2000)); *see also LeBlanc*, 137 S. Ct. at 1728-29.

As required by section 2254, on federal habeas review, a court may only consider claims that have been adjudicated on the merits by the state courts. 28 U.S.C. § 2254(d); *Cullen*, 563 U.S. at 181; *Washington v. Schriver*, 255 F.3d 45, 52-55 (2d Cir. 2001). The Second Circuit has held that, when a state court adjudicates a claim on the merits, "a federal habeas court must defer in the manner prescribed by 28 U.S.C. § 2254(d)(1) to the state court's decision on the federal claim – even if the state court does not explicitly refer to either the federal claim or to relevant federal case law." *Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir. 2001).

B.   Ground One: Failure to Suppress Evidence

In the first ground raised by his petition, Acevedo contends that his constitutional rights were violated by virtue of the trial court's refusal to

suppress the evidence offered against him at trial. Dkt. No. 1 at 2, 5, 16. In its decision, the Third Department agreed with the trial court that Troopers Devine and Terraferma properly stopped the vehicle in which petitioner was travelling, based upon their observation of an inoperable headlight, and that the detection of an order of marijuana emanating from the vehicle provided probable cause to search the vehicle. *Acevedo*, 118 A.D.3d at 1106. Respondent maintains that petitioner's challenge to this determination is not cognizable under 28 U.S.C. § 2254. Dkt. No. 8-1 at 14-16.

It is well-established that when a state has provided a criminal defendant with the opportunity to fully and fairly litigate a Fourth Amendment claim, habeas review of such a constitutional claim by a federal court is narrowly circumscribed. *See Stone v. Powell*, 428 U.S. 465, 481-82, 96 S. Ct. 3037, 3046 (1976); *Hernandez v. Filion*, No. 05 Civ. 4046, 2005 WL 3164063, at *5-6 (S.D.N.Y. Nov. 29, 2005); *see also Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir. 1992); *Campbell v. Greene,* 440 F. Supp. 2d 125, 138 (N.D.N.Y. 2006).[5]  A federal court may only review a claim based upon the Fourth Amendment "(a) if the state has

---

[5]    Copies of all unreported decisions cited in this document have been appended for the convenience of the *pro se* plaintiff.

provided no corrective procedures at all to redress the alleged fourth amendment violations; or (b) if the state has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an unconscionable breakdown in the underlying process." *Capellan,* 975 F.2d at 70 (citing *Gates v. Henderson,* 568 F.2d 830, 840 (2d Cir. 1977)) (other citation omitted); *Campbell*, 440 F. Supp. 2d at 138 (citing *Capellan,* 975 F.2d at 70).

By statute, New York provides a procedure for adjudication of claimed Fourth Amendment violations. *See* N.Y. Crim. Proc. Law § 710.10 *et seq.* "[F]ederal courts have approved New York's procedure for litigating the Fourth Amendment claims . . . as being facially adequate." *Cappellan*, 975 F.2d at 70 n.1 (citations omitted); *see also Jackson v. Lacy*, 74 F. Supp. 2d 173, 176 (N.D.N.Y. 1999) (McAvoy, C.J.) (adopting Report-Recommendation of Magistrate Judge Ralph W. Smith, Jr.). "[O]nce it is established that a petitioner has had an opportunity to litigate his or her Fourth Amendment claim (whether or not he or she took advantage of the state's procedure), the court's denial of the claim is a conclusive determination that the claim will never present a valid basis for federal habeas relief." *Graham v. Costello,* 299 F.3d 129, 134 (2d Cir. 2002). It should be noted, moreover, that "mere disagreement with the outcome of

a state court ruling is not the equivalent of an unconscionable breakdown in the state's corrective process." *Capellan*, 975 F.2d at 72.

In this instance, the record reveals that petitioner was afforded, and took full advantage of, the opportunity to litigate his Fourth Amendment claim prior to trial. At the conclusion of the suppression hearing Judge Breslin issued a decision and order, setting forth his findings of fact and legal conclusions with respect to the relevant issues. Dkt. No. 9 at 426-31. That decision was examined and upheld on direct appeal by the Third Department, and the Court of Appeals subsequently denied petitioner's application for leave to appeal to that court. Accordingly, because the state has provided corrective procedures to address petitioner's alleged Fourth Amendment violation, and petitioner was not precluded from availing himself of that mechanism, ground one of Acevedo's petition in this matter is not cognizable on request for habeas review.

C.    Ground Two: Defective Indictment

As a second ground for habeas relief, petitioner challenges the trial court's failure to dismiss the indictment against him on the basis of his claim that the integrity of the grand jury proceeding was compromised. Dkt. No. 1 at 2, 7, 16. Other than to allege that "false and/or misleading testimony [was] provided to the grand jury," Acevedo does not elaborate

on the basis for claiming that his constitutional rights were violated in connection with the grand jury proceeding, nor does the memorandum in support of his petition provide the missing rationale. *See generally* Dkt. No. 10. It appears, however, that he is once again pressing the claim, raised earlier by his direct appeal, that the indictment against him was secured through the use of allegedly perjured testimony. Dkt. No. 9 at 38-46. In the portion of its decision rejecting that argument, the Third Department acknowledged that Trooper Devine appears to have given inconsistent statements concerning which side of the vehicle he was standing next to when he observed contraband inside the vehicle, but noted that regardless of which version was truthful, the officer nonetheless had probable cause to search the vehicle, and thus the inconsistency did not undermine the validity of the indictment returned against the petitioner. *Acevedo*, 118 A.D.3d at 1105-06. Respondent maintains that petitioner's challenge is not cognizable under 28 U.S.C. § 2254 and, in any event, lacks merit. Dkt. No. 8-1 at 16-19.

The second ground of the petition lacks merit for two independent reasons. First, as respondent argues, "[c]laims concerning state grand jury proceedings do not entitle a petitioner to federal habeas relief." *Robinson v. LaClair*, No. 09-CV-3501, 2011 WL 115490, at *8 (S.D.N.Y. Jan. 13,

2011) (citing *Lopez v. Riley*, 865 F.2d 30, 32 (2d Cir. 1989)). "Indictment by a grand jury in a New York State [sic] is a right dependent on the New York State Constitution and other state laws, not on federal law and federal habeas relief may not be granted for violations of state law." *Id.* (citations omitted).

Moreover, even if the defective grand jury proceedings claim was cognizable on federal habeas review, it is foreclosed as a result of petitioner's jury conviction. It is well-established that any claim of a defect in an indictment is cured by a jury's verdict of guilt beyond a reasonable doubt, based upon the premise that the conviction establishes probable cause to indict and also proof of guilt beyond a reasonable doubt. *See United States v. Machanik*, 475 US 66, 69 (1986) ("the petit jury's subsequent guilty verdict means not only that there was probable cause to believe that the defendants were guilty as charged, but also that they are in fact guilty as charged beyond reasonable doubt."); *see also Gibson v. Artus*, No. 9:04-CV-820, 2008 WL 9434482, at *13 (N.D.N.Y. Mar. 21, 2008); *Cooper v. Fischer*, No. 9:04-CV-0633, 2008 WL 1766740, at *5 (N.D.N.Y. Apr. 14, 2008); *Robinson*, 2011 WL 115490 at *8.

It is true that notwithstanding these principles, a cognizable habeas claim of prosecutorial misconduct can lie when it is alleged that a

prosecutor has knowingly presented perjured testimony before a grand jury. To establish such a claim, however, a petitioner must establish that the testimony was "actually, and intentionally, false" and, additionally, that the prosecutor knew or should have known of the perjury and there is a reasonable likelihood that the false testimony could have affected the judgment of the grand jury. *Gibson*, 2008 WL 9434482, at *14. Petitioner has made none of these required showings. Although there appears to have been inconsistency in a relatively minor respect concerning on which side of the car Trooper Devine was standing when he observed contraband, there has been no showing that the version testified to before the grand jury was inaccurate, and that it was knowingly false. Nor has petitioner offered any evidence showing that the prosecution knew of the allegedly perjured testimony. Finally, it is clear from the Third Department decision that the court viewed the discrepancy in Trooper Devine's suppression hearing and grand jury testimony as minor, and concluded that it would not likely have affected the grand jury's decision of whether to indict.

In sum, I recommend that ground two of Acevedo's petition be denied as failing to raise a federally cognizable claim.

D.    <u>Ground Three: Fair Trial</u>

In the third ground of his petition, Acevedo argues that he was denied a fair trial. Dkt. No. 1 at 2, 8, 16. The focus of this ground is upon two issues related to the court's jury instructions. First, Acevedo contends that the trial court erred in refusing to instruct the jury regarding the lesser included offense of criminal possession of a controlled substance in the seventh degree, as an alternative to the first count of the indictment, which charged him with third degree criminal possession of a controlled substance. He also maintains that error was committed when the trial court rejected his request for an expanded jury instruction concerning the intent element of the third degree criminal possession charge. Respondent opposes this ground, arguing that it is both non-cognizable and lacking in merit. Dkt. No. 8-1 at 19-29.

This ground of Acevedo's petition implicates the constitutional guaranty of a fair trial. Under the due process clause of the Fourteenth Amendment, a criminal defendant is entitled to a fair trial. *Cone v. Bell*, 556 U.S. 449, 451 (2009). Claimed errors by state courts are not ordinarily subject to habeas review unless they deprive a defendant of a fundamentally fair trial. *Estelle v. McGuire*, 502 U.S. 62, 72-75 (1991).

1. Lesser Included Offense

In a non-capital case, a claim that a state trial court has failed to instruct the jury concerning lesser included offenses is not federally cognizable on petition for habeas review. *Beck v. Alabama*, 447 U.S. 625, 638, N.14 (1980); *see also Jones v. Hoffman*, 86 F.3d 46, 48 (2d Cir. 1996) (per curiam); *Burkett v. Artus*, 9:14-CV-0110, 2016 WL 6659492, at *14 (N.D.N.Y. Nov. 10, 2016). Accordingly, because no clearly established Supreme Court precedent requires a trial court to provide a lesser included jury charge, petitioner in this case cannot establish that the Third Department's rejection of this claim was either contrary to or an unreasonable application of Supreme Court precedent. *Gibson v. Artus*, No. 9:04–CV–820, 2008 WL 9434482, at *10 (N.D.N.Y. Mar. 21, 2008).

Even if the lesser included offense claim was properly raised in this habeas proceeding, it lacks palpable merit. The term "lesser included offense" is defined by statute as follows:

> When it is impossible to commit a particular crime without concomitantly committing, by the same conduct, another offense of lesser greater degree, the latter is, with respect to the former, a "lesser included offense."

N.Y. Crim. Proc. Law § 1.20(37). In New York, a trial court may "submit in the alternative any lesser included offense if there is a reasonable view of the evidence which would support a finding that the defendant committed

such lesser offense but did not commit the greater." N.Y. Crim. Proc. Law § 300.50(1).

The New York Court of Appeals has articulated a two-pronged test for determining whether, under New York law, a defendant is entitled to a jury instruction of a lesser included offense, requiring the defendant to make the following two showings:

> First, it must be shown that the additional offense that he desires to have charged is a 'lesser included offense', *i.e.*, that it is an offense of lesser grade or degree and that in all circumstances, not only in those presented in the particular case, it is impossible to commit the greater crime, without concomitantly, by the same conduct, committing the lesser offense. That established, the defendant must then show that there is a reasonable view of the evidence in the particular case that would support a finding that he committed the lesser offense but not the greater.

*People v. Glover*, 57 N.Y.2d 61, 63 (1982); *see also People v. VanNorstrand*, 85 N.Y. 2d 131, 135 (1995).

As the Third Department concluded, defendant cannot meet the second of these two elements. *Acevedo*, 118 A.D.3d at 1107. The sole distinguishing feature between the two crimes at issue is the element of petitioner's intent to sell the possessed narcotics. *Compare* N.Y. Penal

Law § 220.16(1) *with* N.Y. Penal Law § 220.03.[6] Here, the evidence received during the jury trial overwhelmingly demonstrated petitioner's intent to sell the drugs recovered from the vehicle in which he was a passenger. According to law enforcement officers who testified at petitioner's trial, the quantity of the heroin possessed by the petitioner represented fifteen times the amount that would be appropriate for personal use. Dkt. No. 9-1 at 486-87. Additional evidence tending to negate personal use also included the manner in which the drugs were packaged and bundled. *Id.* at 475, 477, 481-82.

In short, as the Third Department concluded, there was no reasonable view of the evidence that would support a finding that defendant did not possess the drugs in question with the intent to sell.

---

[6]    In part, the relevant sections provide as follows:

> A person is guilty of criminal possession of a controlled substance in the third degree when he knowingly and unlawfully possesses:
> 1. a narcotic drug with intent to sell it; or . . .

N.Y. Penal Law § 220.16(1).

> A person is guilty of criminal possession of a controlled substance in the seventh degree when he or she knowingly and unlawfully possesses a controlled substance; . . .

N.Y. Penal Law § 220.03.

*Acevedo*, 118 A.D.3d at 1107. The lesser included offense argument

therefore fails on the merits.[7]

### 2. Failure to Provide Further Instruction Regarding Intent to Sell

During its charge at the close of petitioner's trial, the court provided

the jury with an instruction concerning criminal possession of a controlled

substance in the third degree, derived from generally accepted New York

pattern jury instructions; those instructions included a definition of intent.

Dkt. No. 9-1 at 652-56. In its decision, the Third Department concluded

that the charge accurately stated the governing law, and that the trial court

did not err in declining to adopt expanded language offered by the

defendant.[8] *Acevedo*, 118 A.D.3d at 1107. Petitioner now claims that the

trial court's refusal to adopt his supplemental instruction regarding the

element of intent deprived him of a fair trial. Dkt. No. 1 at 8, 16.

---

[7]    On direct appeal, petitioner also argued that the trial court should have instructed the jury regarding obstruction of governmental administration as a lesser included offense to the second degree assault charge. That claim was also rejected by the Third Department, *see Acevedo*, 118 A.D.3d at 1107, and petitioner does not press the claim in this proceeding. *See generally* Dkt. No. 1.

[8]    During its deliberations the jury sent the court a note requesting "just the elements" of the drug possession charge. *Acevedo*, 118 A.D.3d at 1107. In responding, the court declined petitioner's request to provide the entire charge, and instead read only the elements of the offense to the jury. *Id.* Addressing the issue, the Third Department found "that County Court acted within its discretion in tailoring a meaningful and appropriate response to the jury's specific inquiry." *Id.* at 1107-08 [citations omitted].

This component of the petition also implicates Acevedo's right to a fair trial. Ordinarily, "a challenge to a state jury charge is not cognizable in federal habeas corpus review unless the instruction is erroneous and has 'so infected the entire trial that the resulting conviction violates the process.'" *Russell v. Rock*, No. 08-CV-1894, 2009 WL 1024714, at *7 (E.D.N.Y. Apr. 15, 2009); (citing and quoting *Rozario v. Burge*, 542 F. Supp.2d 328, 337 (S.D.N.Y. 2008) *and Balzic v. Henderson*, 900 F.2d 534, 541 (2d Cir. 1990)); *see also Gibbs v. Donnelly*, 402 F. App'x. 566, 568 (2d Cir. 2010). In this instance, however, petitioner does not contend that the court's instruction with respect to the intent to sell element of the third degree criminal possession charge was erroneous. Since he has failed to allege that the trial court's instructions were erroneous, this portion of his petition does not support a finding that he was denied a fair trial as guaranteed by the United States Constitution.[9]

Accordingly, I recommend that the third ground of the petition be denied.

E.    Ground Four: Sufficiency of Evidence

---

[9]    To the extent the trial court was asked in its discretion to supplement its instruction, any claim based upon its refusal to do so is not cognizable on petition for habeas review. *See e.g.*, *Charlemagne v. Goord*, No. 05 Civ. 9890, 2008 WL 2971768, at *18 (S.D.N.Y. Jun. 30, 2008) ("Lastly, the Trial Judge's refusal to use the language from the CJI to supplement the jury charge does not warrant habeas relief.").

In ground four of his petition, Acevedo alleges that the evidence presented at trial was insufficient to convict him, and that the trial court therefore erred in not dismissing the charges before submitting them to the jury. Dkt. No. 1 at 2, 10, 16. Specifically, he argues that the trial court should have dismissed the third degree drug possession charge, hypothesizing that the basis for dismissal of the marijuana charge was the trial court's belief that the prosecution had not proven that he possessed any of the drugs found in the vehicle, including the heroin. He additionally claims that there was no evidence to support the physical injury component of the assault charge, and that since the lawfulness of his arrest was not established, the resisting arrest charge should also have been dismissed.[10] In its decision, the Third Department addressed the issues now raised, concluding that the evidence adduced was legally sufficient to establish petitioner's conviction of the crimes of third degree possession of a controlled substance, assault in the second degree, and resisting arrest. *Acevedo*, 118 A.D.3d at 1104-05. Respondent opposes this ground, arguing that it lacks merit. Dkt. No. 8-1 at 29-33.

This ground of the petition essentially challenges the sufficiency of evidence offered against petitioner at trial. A convicted defendant seeking

---

[10]    Petitioner does not address this ground in his memorandum. *See* Dkt. No. 10.

federal habeas review for sufficiency of evidence to support his conviction bears a heavy burden, given the considerable deference owed to a jury's verdict at both the state and federal levels. *Coleman v. Johnson*, 566 U.S. 650, 651 (2012) (per curiam); *Fama v. Comm'r of Corr. Services*, 235 F.3d 804, 811 (2d Cir. 2000); *United States v. Brewer*, 36 F.3d 266, 268 (2d Cir. 1994). A petitioner invoking this ground is entitled to relief only if it is found "that upon the record evidence adduced at trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 324 (1979); *see also Coleman*, 566 U.S. at 651; *Cavazos v. Smith*, 565 U.S. 1, 7 (2011) (per curiam). When making its analysis concerning sufficiency of the evidence, a court is required to "consider the evidence in the light most favorable to the prosecution and make all inferences in its favor." *Fama*, 235 F.3d at 811. In response to a habeas petition, a federal court may overturn a state appellate court's finding of evidence sufficiency only if, when judged against this standard, the decision was objectively unreasonable, even though if considering the matter *de novo* the federal court may have reached a different result. *Coleman*, 566 U.S. at 651

        1.   <u>Drug Possession</u>

Pivotal to the petitioner's challenge to his drug possession charge is his claim that the jury could not have found that he knowingly possessed the narcotics recovered from the inside of the vehicle in which he was a passenger. This claim is flawed, however, because it overlooks the presumption under New York law that the presence of a controlled substance in a vehicle demonstrates knowing possession of the drug by each person found in the vehicle at the time, absent a finding that the controlled substance was concealed upon the person of one of the occupants. *See* N.Y. Crim. Proc. Law § 220.25(1). The trial court correctly instructed the jury concerning this presumption. *See* Dkt. No. 9-1 at 654-55. The presumption, even standing alone, provided an adequate basis for the jury to find that petitioner knowingly possessed the drugs in issue. *See People v. Washington*, 50 A.D.3d 1539, 1539-40 (4th Dep't 2008); *People v. Woolridge*, 192 A.D.2d 686, 686 (2d Dep't 1993). In this case, the presumption was buttressed by evidence of the petitioner's flight upon observing the recovery of the drugs by Trooper Devine. That evidence provided additional support for the conclusion that petitioner possessed the drugs in issue. *See People v. Johnson*, 48 N.Y.2d 925, 926(1979).

Petitioner appears to find comfort in the fact that the trial court dismissed the marijuana possession charge prior to submission of the

case to the jury. Dkt. No. 9-1 at 561-62. From that dismissal, he draws the conclusion that the trial court found lacking any evidence of his possession of the drugs in the vehicle. Dkt. No. 1 at 10. From a review of the court's ruling, however, it is clear that the dismissal of that charge was not based upon lack of proof regarding the element of knowing possession; rather the dismissal stemmed from the fact, as petitioner's trial counsel argued at trial, that the prosecution presented no evidence that the green, leafy substance observed by Trooper Devine in the console of the car was, in fact, marijuana. *See* Dkt. No. 9-1 at 561-62.

Based upon the foregoing, and considering the evidence in a light most favorable to the prosecution, I conclude that the state court's finding that petitioner's conviction for criminal possession of a controlled substance in the third degree was legally sufficient was not objectively unreasonable.

### 2.    Assault

The second prong of petitioner's sufficiency of the evidence ground relates to his conviction for second degree assault, and centers upon the physical injury element of that charge.[11] Petitioner argues that the

---

[11]    The criminal statute prohibiting assault in the second degree provides, in relevant party, as follows:

evidence at trial did not support that element of the offense. Dkt. No. 1 at 10.

Petitioner's claim that there was no evidence presented to establish that Trooper Devine suffered a physical injury borders on the frivolous. The term "physical injury" is defined as an "impairment of physical condition or substantial pain." N.Y. Penal Law § 10.00(9). Although "substantial pain" is more than slight or trivial, it need not be severe or intense to be considered substantial. *People v. Chiddick*, 78 N.Y.3d 445, 447 (2007). "Whether the 'substantial pain' necessary to establish an assault charge has been proved is generally a question for the trier of fact." *People v. Rojas*, 61 N.Y.2d 726, 727 (1984).

The evidence at trial overwhelmingly established that Trooper Devine suffered substantial pain and physical injury as a result of his lengthy altercation with petitioner. Dkt. No. 9-1 at 376, 412. Trooper Devine testified that after tackling petitioner over a guardrail, the pair fell down a large embankment where he was struck repeatedly by petitioner

---

A person is guilty of assault in the second degree when:

3. With intent to prevent . . . a police officer . . . from performing a lawful duty. . . he or she causes physical injury to such . . . police officer . . . .

N.Y. Penal Law § 120.05(3).

with a closed fist to his head, body, and face. Dkt. No. 9-1 at 365-70. In

addition, Trooper Devine was repeatedly struck by the loose end of

petitioner's handcuffs. Dkt. No. 9-1 at 368. Once petitioner was finally

restrained, Trooper Devine was taken to the hospital where he was treated

for injuries to his left knee and lower back as well as for abrasions on his

head and face. Dkt. No. 9-1 at 375; *see also* Dkt. No. 9 at 1030-32.

In addition, Trooper Devine testified that he experienced substantial

pain in his knee, back, and head, which ultimately caused him to take

Hydrocodone to address his pain. Dkt. No. 9-1 at 376, 418-19; *see also*

Dkt. No. 9 at 1037. Trooper Devine missed at least two weeks of work,

and continued to experience pain even after returning to his job. *Id.* at 377.

Significantly, Trooper Devine's testimony with respect to the injuries that

he suffered was corroborated by contemporaneous medical records,

which were received into evidence at trial. *See id.* 1028-1044; *see also*

Dkt. No. 9-1 at 375. The evidence presented at trial, as summarized

above, was more than adequate to establish the physical injury

component of the assault charge. *See* N.Y. Penal Law § 10.00(9).

3.    Resisting Arrest

Petitioner's argument concerning the lawfulness of his arrest is also

unavailing as a basis to attack his resisting arrest conviction. As the

Appellate Division noted, Troopers Devine and Terraferma lawfully stopped the vehicle in which petitioner was a passenger, based upon their observation of an inoperable headlight. *Acevedo*, 118 A.D.3d at 1106. Probable cause to search the vehicle followed in light of their detection of an odor of marijuana emanating from inside the vehicle. *Id.* The discovery of a plastic bag containing 299 envelopes of what appeared to be heroin wedged between the vehicle's center console and the front passenger seat, where petitioner had been sitting, provided the necessary probable cause to place petitioner and the other vehicles occupants under arrest for criminal possession of a controlled substance. *See* N.Y. Crim. Proc. Law § 220.25(1). Accordingly, petitioner's claim that his arrest was not authorized, and accordingly, the resisting arrest charge should have been dismissed by the trial court, lacks merit.

In sum, based upon the foregoing, I recommend denial of ground four of the petition.

F.   Ground Five: Prosecutorial Misconduct

In the fifth and final ground of his petition, petitioner argues that the trial court improperly denied his motion to set aside the verdict based upon prosecutorial misconduct. Dkt. No. 1 at 16. That argument is bottomed on the claim that the prosecution unreasonably refused to delay presentment

of the case against him to the grand jury at petitioner's request, the exclusion of potentially exculpatory evidence from the grand jury, and the alleged proffering of the testimony of Trooper Devine "pertaining to the allege [sic] assault with the full facts of what actually happened." *Id.* Respondent opposes this ground, arguing that the claim is not cognizable and lacks merit in any event. Dkt. No. 8-1 at 33-32.

Petitioner's prosecutorial misconduct claim is not cognizable, in that it overlooks settled law precluding habeas relief based upon alleged errors in state grand jury proceedings. *See* p. 18, *ante*; *see also Lopez*, 865 F.2d at 32. This includes claims of prosecutorial misconduct occurring before the grand jury. *See Coward v. Bradt*, No. 9:11-CV-1362, 2013 WL 6195751, at *15 (N.Y.N.D. Nov. 27, 2013) (citing *Alston v. Rix*, No. 01-CV-9862, 2003 WL 42144, at *7 (S.D.N.Y. Jan. 3, 2003)).  Here, the petit jury's subsequent guilty verdict, which represents a finding that petitioner was guilty as charged beyond a reasonable doubt, indicates that any error in the grand jury proceeding was harmless beyond a reasonable doubt. *See McKelvey v. Bradt*, 13cv3527, 2016 WL 3681457, at *11-12 (S.D.N.Y. Jul 6, 2016); *see United States v. Mechanik*, 475 U.S. 66, 70 (1986) ("Measured by the petit jury's verdict, then, any error in the grand jury proceeding connected with the charging decision was harmless beyond a

reasonable doubt."); *Campbell v. Poole*, 555 F.Supp.2d 345, 367-368 (W.D.N.Y. 2008).

I note, moreover, that the portion of this claim relating to the prosecution's refusal to delay presentment of the case against him to the grand jury lacks palpable merit on its the face. There is no requirement, based upon constitutional, statutory, or other authority, that a prosecutor delay presentment of a case to a grand jury in order to permit an investigation into the matter by the accused. *See People v. Huston*, 88 N.Y.2d 400, 406 (1996) ("Because Grand Jury proceedings are conducted by the prosecutor alone, this function confers upon the prosecutor broad powers and duties, as well as wide discretion in presenting the People's case.") (citing *People v. Di Falco*, 44 NY2d 482, 487 (1978)); *see also People v. McCaffery*, 7 8 A.D.2d 1003 (4th Dep't 1980) ("During the preindictment period the matter is wholly under the control of the People, and there is nothing defendant can do to prevent or delay presentment of the case to the grand jury."). As such, the Third Department's rejection of the prosecutorial misconduct claim was not contrary to or an unreasonable application of clearly established Supreme Court law. *Acevedo*, 118 A.D.3d at 1108. I therefore recommend denial of petitioner's fifth ground for relief.

### G.    Certificate of Appealability

To appeal a final order denying a request by a state prisoner for habeas relief, a petitioner must obtain from the court a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(A); *see also* Fed. R. App. P. 22(b)(1) ("[T]he applicant cannot take an appeal unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)."). In the absence of a COA, a federal court of appeals lacks jurisdiction to entertain an appeal from the denial of a habeas petition. *Hoffler v. Bezio*, 726 F.3d 144, 152 (2d Cir. 2013) (citing *Miller–El v. Cockrell*, 537 U.S. 322, 336 (2003)). A court may issue a COA only "if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *Hoffler*, 726 F.3d at 154. A petitioner may demonstrate a "substantial showing" if "the issues are debatable among jurists of reason; . . . a court could resolve the issues in a different manner; or . . . the questions are adequate to deserve encouragement to proceed further." *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983) (quotation marks omitted). In this instance, I conclude that the petitioner has not made a substantial showing of the denial of a constitutional right, and therefore recommend against the issuance of a COA.

## IV.    SUMMARY AND RECOMMENDATION

Having reviewed the five grounds asserted in the petition, considered in light of the deferential AEDPA standard that applies, I conclude that there is no basis to grant the relief requested in this matter. Accordingly, it is hereby respectfully

RECOMMENDED that the petition in this matter (Dkt. No. 1) be DENIED and DISMISSED; and it is further hereby respectfully

RECOMMENDED, based upon my finding that petitioner has not made a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c), that a certificate of appealability not issue with respect to any of the claims set forth in his petition.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report.[12]  FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE

---

[12]    If you are proceeding *pro se* and are served with this report and recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the report and recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P.  6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

David E. Peebles
U.S. Magistrate Judge

Dated:     February 16, 2018
           Syracuse, NY

2003 WL 42144
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Darrell ALSTON, Petitioner,

v.

Thomas RICKS, Superintendent, Upstate
Correctional Facility, Respondent.

No. 01 Civ. 9862(GWG).
|
Jan. 7, 2003.

**Synopsis**

Defendant convicted on a plea of guilty to forgery, grand larceny, criminal possession of stolen property, petite larceny, and criminal impersonation petitioned for a writ of habeas corpus. The District Court, Gorenstein, United States Magistrate Judge, held that: (1) alleged *Rosario* violation was not cognizable on federal habeas review, and (2) guilty plea extinguished petitioner's ability to raise a claim of misconduct before the grand jury.

Petition denied.

West Headnotes (3)

[1]    **Habeas Corpus**
       👉 Discovery and Disclosure

       Alleged *Rosario* violation under New York law was not cognizable on federal habeas review. 28 U.S.C.A. § 2254(d).

       8 Cases that cite this headnote

[2]    **Constitutional Law**
       👉 Witnesses
       **Criminal Law**
       👉 Time and Manner of Required Disclosure

       Defendant's Due Process right to the production of evidence regarding the credibility of prosecution witnesses was not violated where notes of the police officer

witness in question were produced to the defense at a time when the defendant was still able to use them to challenge the results of the suppression hearing through the mechanism of a reopened hearing. U.S.C.A. Const. Amend. 14.

       Cases that cite this headnote

[3]    **Habeas Corpus**
       👉 Jury;Grand Jury

       Guilty plea extinguished habeas petitioner's ability to raise a claim of misconduct before the grand jury.

       27 Cases that cite this headnote

**Attorneys and Law Firms**

Darrell Alston, Upstate Correctional Facility, Malone, New York, for Petitioner, pro se.

Beth Janet Thomas, Assistant Attorney General, Attorney General of the State of New York, New York, New York, for Respondent.

**Opinion**

*OPINION AND ORDER*

GORENSTEIN, Magistrate J.

  **\*1** Darrell Alston brings this petition for writ of habeas corpus *pro se* pursuant to 28 U.S.C. § 2254. The parties have consented to the disposition of this matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

On November 7, 1996, Alston was convicted upon his plea of guilty in Supreme Court, New York County to Forgery in the Second Degree, Grand Larceny in the Fourth Degree, Criminal Possession of Stolen Property in the Fourth Degree, Petit Larceny, and Criminal Impersonation in the Second Degree. He was sentenced to concurrent terms of imprisonment aggregating from two to four years. Alston is currently incarcerated in the Upstate Correctional Facility in Malone, New York

pursuant to this conviction as well as an additional judgment of conviction.

## I. BACKGROUND

### A. The Circumstances of Alston's Arrest

_____ The uncontested evidence adduced at a pre-trial suppression hearing showed that on March 21, 1996, William Ernstein and his friend went to the Sixth Precinct, at 233 West 10th Street, to report that Ernstein's wallet and credit cards had been stolen. Minutes of Hearing, dated September 30, 1996 (hereinafter "H"), at 7–8. As reported by Police Officer Timothy Duffy, who was the sole witness at the hearing, Ernstein said he had been at the Hangar Bar on Christopher Street and spoke with a black man, 5#7# tall with gold front teeth and wearing a white jersey with the word "Adidas" on the front. (H: 9, 29). After speaking with the man, Ernstein discovered his wallet was missing. (H: 28). He called to cancel his credit cards and was informed by one of his credit card companies that his card had just been used to purchase a jacket at a leather store nearby. (H: 8–9). Officer Duffy heard Ernstein's account at the precinct and told Ernstein to complete a complaint report while Duffy and his partner, Police Officer Campanello, would search the nearby area in hope of finding the thief. (H: 9).

At approximately 8:50 p.m. the officers left the precinct and proceeded to Christopher and West Fourth Streets to the store where the purchase had been made. (H: 9, 31). As they approached the store, at about 8:55 to 9:00 p.m., the officers spotted a black male, approximately five-seven, with gold front teeth and wearing a white jersey with the word "Adidas" across it. H. 9–10, 32. This individual was Alston, who was carrying a brown paper bag from the Original Leather Store and a green leather jacket in his hand. (H: 10–11, 32). The officers approached Alston and asked him for identification. (H: 11). Alston produced a social security card belonging to "Darryl Roberts." *Id.* The officers asked if he knew the social security number on the card, to which Alston replied that he did not. *Id.* Officer Duffy then asked for additional identification and Alston produced a driver's license—again in the name of Darryl Roberts. *Id.* The photograph on the license did not resemble Alston. *Id.*

**\*2** Officer Duffy then phoned the station house and asked for Ernstein to be brought to the scene. (H: 35). Once he arrived, Ernstein identified Alston as the person

who had taken his wallet. (H: 37). Alston was then placed under arrest. (H: 13). After the arrest, Officer Duffy retrieved the bag, which contained a brown suede jacket, and later, at the police station, recovered from Alston $302 cash and airline tickets in the name of John Calloway. (H: 13–14). Officer Campanello subsequently went to the leather store and obtained a copy of the credit card receipt from Alston's purchase of the leather jacket using Ernstein's credit card. (H: 15)

### B. Grand Jury and Pre-trial Proceedings

Officer Duffy's testimony before the grand jury matched his testimony at the suppression hearing, *see* section I.A above, with one exception. At the suppression hearing, Officer Duffy stated that he recovered the driver's license prior to Alston's arrest. (H.13–14). During his grand jury testimony, however, Officer Duffy had stated that the driver's license was not recovered until after Alston was placed under arrest. [1] Alston App. Br. at 16–17; H. 37–38.

Alston gave the following account of his actions in his own testimony before the grand jury: he had met a man named "Will" at a bar downtown. Will gave Alston his credit card to buy a jacket. *See* Alston App. Br. at 4. Alston then left the bar to buy a brown suede jacket and returned to the bar to give Will his credit card back. *See id.* at 4–5. After Alston returned to the bar, Will tried to have sex with Alston in the bathroom but Alston refused and left. *See id.* at 5. Alston then went to 34th Street to return a jacket he had purchased earlier. *See id.* When he returned downtown, he was stopped and arrested by the police. *See id.*

On cross examination, the prosecutors questioned Alston about his use of different names, prior crimes, including theft of and use of credit cards, and an alleged propensity to prey on gay men. *See id.* at 5–12. The prosecutors allegedly never gave a limiting instruction to the grand jurors on the proper use of the information elicited on cross examination. *See id.* at 13.

Alston was subsequently indicted by the grand jury for Forgery in the Second Degree (for the use of Ernstein's credit card), two counts of Grand Larceny in the Fourth Degree (for the theft of Ernstein's credit card), two additional counts of Grand Larceny in the Fourth Degree (for the theft of identification from Darryl Roberts), one count of Criminal Possession of Stolen Property in the

Fourth Degree (for possession of Ernstein's credit card), one count of Petit Larceny (based on the purchase of the leather jacket), one count of Criminal Possession of Stolen Property in the Fifth Degree (for possessing the property of Darryl Roberts), and one count of Criminal Impersonation in the Fourth Degree (based on Alston's claim that he was Darryl Roberts). *See* Respondent's Memorandum of Law in Opposition to Petition for a Writ of Habeas Corpus, dated May 8, 2002 ("Resp.Mem."), at 3–4.

**\*3** Alston moved to dismiss the indictment. Alston claimed he was denied his statutory right to testify in front of the grand jury because of the allegedly improper cross examination and lack of a limiting instruction to the grand jury. *See* Alston App. Br. at 13. In addition, he claimed he was not given notice that the grand jury would be considering charges involving the Darryl Roberts identifications. *See* Decision and Order of Justice Charles H. Solomon, dated June 10, 1996, (reproduced in Thomas Aff. Ex. A) ("Decision and Order"), at 1. The trial court denied Alston's motion. *See id.* at 5. The court found that the prosecutors were under no obligation to inform Alston of the charges involving Darryl Roberts, *see id.* at 2–3, and that the cross-examination, while "inappropriate" in part, did not so "impair the integrity of the grand jury proceedings" as to warrant dismissal. *See id.* at 4.

Alston later moved to suppress the physical evidence recovered from him. At the suppression hearing on September 30, 1996, Officer Duffy testified to the events surrounding Alston's arrest as described in Section I.A. above. Officer Duffy testified that the driver's license was produced by Alston during the initial questioning and not after the arrest. (H: 13–14). Although he conceded that he had testified otherwise in the grand jury, he stated that his grand jury testimony was "incorrect." (H: 11, 37–38). At the conclusion of the hearing the trial court denied Alston's motion to suppress in a decision read into the record. (H: 70–76). The court denied the motion to suppress finding "in all respects ... there was probable cause for [the] arrest in this case." (H.74). Probable cause to arrest was found based on Ernstein's complaint and description of Alston, Ernstein's discovery of the use of his credit card to buy leather goods, and the fact that Alston "matched substantially the description ... and ... was carrying a bag which said clearly ... 'Leather Store.' ' (H.74–76). In other words, the court found probable cause to arrest prior to any questioning of Alston.

On October 21, 1996, the prosecution for the first time produced to the defense the memo book entries made by Officer Duffy at the time of Alston's arrest. *See* Alston App. Br. at 20; Resp. Mem. at 4. The memo book contained notations that Officer Duffy had requested identification from Alston but made no mention of the driver's license. *See* Alston App. Br. at 21. On October 22, 1996, Alston's defense counsel requested a re-opening of the suppression hearing based on the newly produced memo book entries. *See* Minutes of Hearing, dated October 22, 1996 (hereinafter "SH") (reproduced in Thomas Aff. Ex. B). The request was granted and the hearing was reopened—this time before the new trial judge who had been assigned to the case. Officer Duffy testified regarding the notebook entry and the failure to mention the driver's license. (SH: 10–16). After the testimony, the trial judge denied the defense request to hold a new suppression hearing in front of the prior trial judge. (SH: 23). The new judge concluded that the prior judge had "found the whole issue of the social security card and the driver's license was not germane because probable cause was established prior to that." (SH: 24). The court also found that "under the circumstances the development of the testimony would not in any way affect [the prior judge's] determination as to the credibility of the witness." (SH: 21). The court ordered the case to proceed to trial. (SH: 23).

**\*4** The next day, October 23, 1996, Alston entered a plea of guilty to Forgery in the Second Degree, two counts of Grand Larceny in the Fourth Degree, Criminal Possession of Stolen Property in the Fourth Degree, Petit Larceny, and Criminal Impersonation in the Second Degree. On November 7, 1996, Alston was sentenced to concurrent terms aggregating from two to four years.

### C. *Alston's State Court Appeals*

Represented by counsel, Alston appealed to the Appellate Division, First Department, in December 1999. *See* Alston App. Br. at 41. Alston raised two points on appeal: (1) that the prosecution's cross-examination regarding Alston's prior arrests and the alleged failure to instruct the grand jury on the evidentiary use of such prior arrests impaired the grand jury process; and (2) that the belated disclosure of Officer Duffy's notes required a *de novo* suppression hearing. *See* Alston App. Br. at 26, 33.

2003 WL 42144

In a decision dated October 3, 2000, the Appellate Division, First Department affirmed Alston's conviction. See *People v. Alston,* 276 A.D.2d 251, 713 N.Y.S.2d 731 (1st Dep't 2000). The court held that "there was no impairment of the integrity of the Grand Jury proceedings. Defendant's credibility was properly impeached by questions about his prior convictions and prior bad acts ... The Grand Jury was instructed on the limited purpose for which this testimony was received." *Id.* (internal citations omitted). As to Alston's claim for a *de novo* suppression hearing, the First Department held that "the trial court properly exercised its discretion in reopening the suppression hearing 'only to the extent necessary to cross-examine the People's witness as to the contents of the [memo book entry]' ... and properly determined that no further relief was necessary." *Id.* (quoting *People v. Feerick,* 93 N.Y.2d 433, 452, 692 N.Y.S.2d 638, 714 N.E.2d 851 (1999)).

By letters dated October 12, 2000, and October 30, 2000, Alston sought leave to appeal to the New York Court of Appeals, raising the same issues that he raised to the First Department. The Court of Appeals denied Alston leave to appeal on November 10, 2000. *People v. Alston,* 95 N.Y.2d 932, 721 N.Y.S.2d 608, 744 N.E.2d 144 (2000).

On October 11, 2001, Alston, proceeding *pro se,* filed the instant petition. The petition raises the same arguments that Alston raised in his state appeal. As a first ground, Alston claims to be entitled to habeas relief because, "[t]he Judge refused to hold a DeNova Mapp/Dunaway Hearing where the people turned over Rosario Material after the hearings conclusion [sic]." See Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus by a Person in State Custody, filed November 7, 2001 ("Petition"), ¶ 12(A). As the second ground, Alston claims to be entitled to relief because "[t]he prosecutor Impaired the integrity of the Grand Jury process, by eliciting detailed information about prior arrest conviction [sic]." See Petition, ¶ 12(B).

## II. *APPLICABLE LEGAL STANDARDS*

**\*5** Habeas corpus relief is available under 28 U.S.C. § 2254(a) only if the petitioner is in custody in violation of the Constitution or laws or treaties of the United States. Thus, a petitioner for habeas corpus must demonstrate that his or her conviction resulted from a state court misapplying federal law. See *Estelle v. McGuire,* 502 U.S. 62, 68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). Errors of state law are not subject to habeas review in a federal

court. *Id.* at 67–68 ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions").

In addition, the petitioner must have exhausted the remedies available in the state courts or there must be either an absence of available state corrective process or circumstances rendering such process ineffective to protect the petitioner's rights. 28 U.S.C. § 2254(b). To satisfy the exhaustion requirement, a petitioner must present each claim in the habeas petition to each level of the state courts to which the right of appeal lies. See, e.g., *O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999); *Duncan v. Henry,* 513 U.S. 364, 365–66, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam); *Picard v. Connor,* 404 U.S. 270, 275–76, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971); *Daye v. Attorney General of State of New York,* 696 F.2d 186, 191 (2d Cir.1982) (en banc), *cert. denied,* 464 U.S. 1048, 104 S.Ct. 723, 79 L.Ed.2d 184 (1984). The petitioner must also inform the state courts of the factual and legal basis of the federal claim. See, e.g., *Duncan,* 513 U.S. at 365–66; *Ramirez v. Attorney General of State of New York,* 280 F.3d 87, 94 (2d Cir.2001) (citing *Picard,* 404 U.S. at 276–77; *Daye,* 696 F.2d at 191–92). Federal claims are fairly presented by even a "minimal reference" to the provision of federal law upon which a petitioner relies. See, e.g., *Davis v. Strack,* 270 F.3d 111, 122 (2d Cir.2001); *see also Reid v. Senkowski,* 961 F.2d 374, 376 (2d Cir.1992) (per curiam) (reference to the Fourteenth Amendment in a caption heading of an appellate brief sufficient for exhaustion purposes).

Where there has been a ruling on the merits, habeas relief may not be granted unless the state court decision was (1) "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," or (2) was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1). A state court decision is contrary to clearly established federal law "if the state court applies a rule that contradicts the governing law set forth" in Supreme Court precedent or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives" at a different result. *Williams v. Taylor,* 529 U.S. 362, 405–06, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A state court decision involves an "unreasonable application" of Supreme Court precedent if it unreasonably applies a

governing legal rule to the particular facts of a case. *Id.* at 413. The federal court must decide "whether the state court's application of clearly established federal law was objectively unreasonable," not whether the application was simply incorrect. *Id.* at 409–10.

## III. *ANALYSIS OF GROUND ONE OF THE PETITION*

### A. *Exhaustion*

**\*6** Alston presented his claim for a *de novo* suppression hearing to both the Appellate Division and the Court of Appeals, referencing in each instance the Fourteenth Amendment of the United States Constitution. These references satisfy the requirement that the state court be given notice of the federal nature of the defendant's claims. *See Reid,* 961 F.2d at 376. Therefore, Alston properly exhausted his state court remedies for ground one of the petition.

### B. *The Merits of Ground One*

**[1]** Alston contends that the trial court was required to hold a *de novo* suppression hearing regarding the belatedly produced notes of Officer Duffy. *See* Petition, ¶ 12(A). Officer Duffy's notes were required to be produced by the prosecution pursuant to *People v. Rosario,* 9 N.Y.2d 286, 213 N.Y.S.2d 448, 173 N.E.2d 881 (1961), *cert. denied,* 368 U.S. 866, 82 S.Ct. 117, 7 L.Ed.2d 64 (1961). *Rosario* held that "a right sense of justice entitles the defense to examine a witness' prior statement." *Id.* at 289, 213 N.Y.S.2d 448, 173 N.E.2d 881. In *People v. Malinsky,* 15 N.Y.2d 86, 262 N.Y.S.2d 65, 209 N.E.2d 694 (1965), the Court of Appeals extended *Rosario* to require production of a police officer's notes prior to testimony at a suppression hearing. *See id.* at 90, 262 N.Y.S.2d 65, 209 N.E.2d 694. Under New York law, a trial court faced with belated disclosure of *Rosario* material is required to reopen a suppression hearing only "to the extent necessary to explore the contents of the *Rosario* documents." *People v. Feerick,* 93 N.Y.2d 433, 451, 692 N.Y.S.2d 638, 714 N.E.2d 851 (1999).

Alston's first ground for habeas relief must fail because the obligation to disclose *Rosario* material arises solely under state law. *See, e.g., Benito v. Fisher,* 2001 WL 506180, at \*2 (S.D.N.Y. May 14, 2001); *Whittman v. Sabourin,* 2001 WL 687369, at \*3 (S.D.N.Y. June 18, 2001) ("A Rosario claim ... is purely a state right, which 'embodies policy considerations grounded in state common law,

not constitutional principles.' ") (quoting *Sutherland v. Walker,* 1999 WL 1140870, at \*9 (S.D.N.Y. Dec.10 1999)); *Moe v. Walker,* 1999 WL 58691, at \*4 (S.D.N.Y. Feb.5, 1999) ("federal courts have consistently held that *Rosario* claims are not subject to federal habeas corpus review because they arise exclusively under state law.") (citations omitted) (emphasis in original). Federal courts uniformly hold that *Rosario* violations are not cognizable in habeas review. *See, e.g., Gonzalez v. Portundo,* 2001 WL 856600, at \*5 (S.D.N.Y. July 30, 2001); *Whittman,* 2001 WL 856600, at \*5; *Benito,* 2001 WL 506180, at \*2; *Moe,* 1999 WL 58691, at \*4; *Green v. Artuz,* 990 F.Supp. 267, 274 (S.D.N.Y.1998). [2]

**[2]** To the extent Alston may be alleging a violation of the prosecutor's obligation to provide exculpatory material, that claim—assuming it was even exhausted and the memo book in fact constituted exculpatory material—would have to be denied as well. While *Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), established that defendants have a due process right to the production of evidence regarding the credibility of prosecution witnesses, *see id.* 154–55, the material need only be disclosed in time for effective use in the proceeding at issue. *See, e.g., Leka v. Portuondo,* 257 F.3d 89, 100 (2d Cir.2001) (sufficiency of timing of *Brady* disclosure is judged based on "the defense's opportunity to use the evidence when disclosure is made"). In this case, Officer Duffy's notes were produced to the defense at a time when the defendant was still able to use them to challenge the results of the suppression hearing through the mechanism of the re-opened hearing. At the re-opened hearing, the trial judge made a determination that the memo book entries would not affect the outcome of the prior suppression hearing and that they did not impugn the credibility of the witness.

**\*7** Thus, Alston's claims regarding the delayed production of the memo book entries do not provide a basis for habeas relief.

## IV. *ANALYSIS OF GROUND TWO OF THE PETITION*

### A. *Exhaustion*

Alston's second claim for relief relates to his complaint regarding his cross examination before the grand jury. *See* Petition, ¶ 12(B). Alston preserved this issue at the trial level and on appeal in the state courts. Alston cited to the

2003 WL 42144

Fifth and Fourteenth Amendments of the United States Constitution in his appellate brief and in his letter seeking leave to appeal. Thus, Alston has exhausted his available remedies in the state courts.

### B. *The Merits of Ground Two*

**[3]** In his petition, Alston claims to be entitled to habeas relief on this ground because

> The prosecutor impaired the integrity of the grand jury process by eliciting detailed information about appellant's prior arrests and convictions and encouraging the grand jury to indict petitioner based on his propensity to commit credit card crimes and also by failing to instruct the grand jury on the limited impeachment purpose of such evidence.

Petition, ¶ 12(B) (capitalization omitted). As noted, the state trial court determined that some of the questioning during the grand jury presentation was "inappropriate." *See* Decision and Order at 4.

The short answer to Alston's claim is that a guilty plea extinguishes the ability of a habeas petitioner to raise a claim regarding misconduct before a grand jury. In *Lopez v. Riley,* 865 F.2d 30 (2d Cir.1989), the Second Circuit held that the "presentation of prejudicial evidence" before a grand jury will not permit habeas relief because such errors are rendered harmless once a defendant has been convicted by a petit jury. *Id.* at 32 (citing *United States v. Mechanik,* 475 U.S. 66, 106 S.Ct. 938, 89 L.Ed.2d 50 (1986)); *accord Barnes v. Giambruno,* 2002 WL 850020, at *7 (S.D.N.Y. May 2, 2002); *Mackenzie v. Portuondo,* 208 F.Supp.2d 302, 313 (E.D.N.Y.2002); *Mirrer v. Smyley,* 703 F.Supp. 10, 11–12 (S.D.N.Y.), *aff'd,* 876 F.2d 890 (2d Cir.), *cert. denied,* 493 U.S. 850, 110 S.Ct. 148, 107 L.Ed.2d 106 (1989). As was noted in *Mechanik,*

> [T]he petit jury's subsequent guilty verdict means not only that there was probable cause to believe

that the defendants were guilty as charged, but also that they are in fact guilty as charged beyond a reasonable doubt. Measured by the petit jury's verdict, then, any error in the grand jury proceeding connected with the charging decision was harmless beyond a reasonable doubt.

475 U.S. at 70 (footnote omitted). The same reasoning applies equally to a conviction achieved by a plea of guilty. *See, e.g., United States v. Tiedemann,* 1997 WL 587255, at *6 (E.D.Pa. Sept.12, 1997) ("the defendant cannot challenge the grand jury proceedings in a habeas action, after a plea of guilty") (citations omitted); *Lloyd v. Walker,* 771 F.Supp. 570, 576–77 (E.D.N.Y.1991) ("Having admitted to the factual basis of the charges against him upon entering a plea of guilty, any error in the proceeding which led to his indictment is ... rendered harmless, and is not a cognizable claim in a federal habeas proceeding.") (internal citation omitted); *see also Ballard v. Costello,* 2001 WL 1388297, at *2 (E.D.N.Y. Nov.2, 2001) ("[petitioner's] guilty pleas cured any possible deficiencies in the grand jury proceeding") (citations omitted) (denying habeas claim based on ineffective assistance of counsel). Thus, Alston's claim regarding errors in the grand jury presentation is not a basis for federal habeas relief.

### *Conclusion*

**\*8** For the foregoing reasons, Alston's petition is denied. The Clerk is requested to enter a judgment. The Court denies a certificate of appealability pursuant to 28 U.S.C. § 2253(c) because Alston has not made a substantial showing of the denial of a constitutional right. The Court also certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from the judgment would not be taken in good faith.

### All Citations

Not Reported in F.Supp.2d, 2003 WL 42144

Footnotes

2003 WL 42144

1    The minutes of the grand jury presentation have not been supplied to the Court. The relevant portions, however, are quoted and summarized in Alston's brief to the Appellate Division on his direct appeal. *See* Brief for Defendant–Appellant ("Alston App. Br."), dated December 1999, at 5–12 (reproduced in Affidavit in Opposition to Petition for a Writ of Habeas Corpus, dated May 8, 2002 ("Thomas Aff."), Ex. C).

2    In support of this point, the respondent's brief correctly states that, "[a] claim arising under *Rosario* is 'one of state law that is not subject to review under a petition for a federal writ of habeas corpus charging infringement of federal constitutional rights." ' Resp. Br. at 13. The brief cites *Flores v. Demskie,* 215 F.3d 293, 305 (2d Cir.), *cert. denied,* 531 U.S. 1029, 121 S.Ct. 606, 148 L.Ed.2d 517 (2000), however, as the source of the quotation. But the brief fails to disclose that the quotation is from a dissenting opinion (which is itself quoting the district court case of *U.S. ex rel. Butler v. Schubin,* 376 F.Supp. 1241, 1247 (S.D.N.Y.1974), *aff'd,* 508 F.2d 837 (2d Cir.1975)). The respondent's brief thus improperly suggests that this quotation represented a holding of the majority of the Second Circuit panel in *Flores.*

---

**End of Document**                              © 2018 Thomson Reuters. No claim to original U.S. Government Works.

2016 WL 6659492
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Daiman H. Burkett, Petitioner,
v.
Dale Artus, Respondent.

9:14-CV-0110 (BKS)
|
Signed 11/10/2016

**Attorneys and Law Firms**

Daiman H. Burkett, 09-A-6328, Attica Correctional Facility, Box 149, Attica, New York 14011, Petitioner, pro se.

HON. ERIC T. SCHNEIDERMAN, New York State Attorney General, 120 Broadway, OF COUNSEL: MICHELLE ELAINE MAEROV, ESQ., Ass't Attorney General, New York, New York 10271, Attorneys for Respondents.

**Opinion**

**DECISION and ORDER**

Brenda K. Sannes, United States District Judge

**I. INTRODUCTION**

*1 Petitioner Daiman H. Burkett ("petitioner") seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging a 2010 judgment of conviction in the Rensselaer County Court, convicting him, upon a jury verdict, of murder in the second degree (N.Y. Penal Law ("Penal Law") § 125.25(1)) and criminal possession of a weapon in the third degree (Penal Law § 265.02(1)). Dkt. No. 1, Petition ("Pet."). Respondent filed a response to the petition and pertinent records from the state court proceedings. Dkt. No. 7-1, Respondent's Memorandum of Law in Opposition to the Petition for a Writ of Habeas Corpus ("R. Mem."); Dkt. Nos. 8-9, State Court Records. Petitioner filed a reply. Dkt. No. 13, Reply.

**II. BACKGROUND** [1]

The Appellate Division, Third Department, summarized the pertinent facts as follows:

> At approximately 5:45 a.m. on February 26, 2009, paramedics and then police responded to a 911 call from the home of Des-Hawn Parker in the City of Troy, Rensselaer County. Upon arrival, they encountered defendant, Parker's former boyfriend, covered in blood, wearing only trousers and pacing outside; defendant brandished a knife and aggressively advanced at them. Officers subdued defendant and entered the home, where paramedics found Parker's frightened but unharmed children on the first floor; they followed a trail of blood to a basement bedroom, where they discovered Parker's lifeless but still warm body on her bloodied bed. Parker had no knife wounds or defensive wounds but had sustained fatal blunt force trauma to her neck and, despite resuscitation efforts, was pronounced dead. An autopsy determined that the cause of death was asphyxiation due to manual strangulation, and that death had occurred at 3:00 a.m. to 4:00 a.m. The mostly superficial slicing wounds to defendant's chest, arms and ankles were not life threatening and were determined to have been self-inflicted, as the defense conceded at trial, and he had no defensive wounds. DNA tests determined that defendant was the source of the blood in the house and on the victim's neck. Following a jury trial, defendant was convicted of intentional murder in the second degree and criminal possession of a weapon in the third degree.

People v. Burkett, 101 A.D.3d 1468, 1468-69 (3d Dep't 2012). The specific facts are known to the parties and

will be referenced only to the extent necessary to resolve petitioner's claims.

After trial, petitioner filed a motion to vacate the judgment of conviction pursuant to Criminal Procedure Law ("CPL") § 440.10. In his motion, petitioner contended that: (1) he was deprived of the assistance of counsel at his local court arraignment; and (2) trial counsel was ineffective in failing to retain an expert to testify on petitioner's behalf. Dkt. No. 8-1 at SR 2-8, Affidavit in Support, sworn to April 5, 2012; *id.* at SR 10-27, Memorandum of Law and Exhibits.[2] Notably, in his affidavit, petitioner asserted that he became "emotionally traumatized by the discovery of his girlfriend's body" and, as a result, "attempted suicide" before police officers arrived at the scene. Dkt. No. 8-1 at SR 2-3 ¶ 4.

**\*2** In a written decision and order, the Rensselaer County Court denied petitioner's motion. *Id.* at SR 45-48, Decision and Order, dated July 26, 2012. The court concluded that, in light of the direct examination of Dr. Michael Sikirica, the medical examiner, and counsel's cross examination, counsel's decision not to call an expert was a tactical decision that "did not deprive [petitioner] of effective representation at trial." *Id.* at SR 47. The court further concluded that petitioner had not established that " but for trial counsel's alleged errors the result of the trial would have been different." *Id.* Moreover, the court rejected petitioner's claim that he was denied his right to counsel at arraignment. *Id.* at SR 47-48. The court found that the arraigning court advised petitioner of his right to an attorney and asked him if he had an attorney, and petitioner, "[f]ar from invoking his right to counsel," provided nonresponsive answers to the court's questions. *Id.* at SR 48. An assistant public defender had also been assigned "during [petitioner's] arraignment." *Id.* Petitioner did not seek leave to appeal the denial of his § 440.10 motion.

Petitioner also pursued a direct appeal and, in a counseled brief to the Appellate Division, Third Department, contended that: (1) the trial court erred in a dmitting evidence regarding prior bad acts pursuant to People v. Molineux, 168 N.Y. 264 (1901) without properly balancing the probative value of that evidence for a permissible purpose against the prejudicial effect to petitioner; (2) the court erred in not charging second degree manslaughter as a lesser included offense of the second degree murder charge; (3) the verdicts were against

the weight of the evidence; (4) the sentence imposed was harsh and excessive; and (5) restitution was improperly imposed. Dkt. No. 8-1 at SR 76-98, Appellate Brief to the Appellate Division, Third Department.

The Appellate Division affirmed the judgment of conviction. *Burkett*, 101 A.D.3d at 1469-73. In concluding that the verdicts were supported by the weight of the evidence, the Appellate Division explained that "the manner of death firmly established that [petitioner's] conscious objective was to kill Parker." *Id.* at 1470. The court recounted that "[t]he medical examiner testified that the victim would have lost consciousness in about [fifteen] seconds if sufficient pressure were applied to her neck to completely cut off her blood supply, and that death would have occurred only after an additional two to three minutes of continuous applied pressure." *Id.* This "violent, protracted conduct by" petitioner, even after Parker lost consciousness, "strongly supported the jury's conclusion that his conscious objective was to kill and not merely subdue or injure her." *Id.* (footnote omitted). Moreover, the Appellate Division observed that petitioner "did not raise the affirmative defense of extreme emotional disturbance," codified in Penal Law § 125.25(1)(a). *Id.* at 1470 n.2. Nonetheless, the Appellate Division explained that petitioner's "self-inflicted superficial wounds" and behavior upon the arrival of law enforcement "were more suggestive of an attempt to feign despair and fabricate an exculpatory crime scenario and did not undermine a finding regarding defendant's ability to form intent." *Id.*

With regard to his *Molineux* contention, the Appellate Division found that the County Court held "a detailed ... pretrial hearing" and "properly admitted limited testimony regarding [petitioner's] prior abusive, threatening and controlling behavior against Parker and a former girlfriend," which was probative of petitioner's identity as the perpetrator, his intent and motive, and also "provided necessary background information regarding the nature of their relationship[.]" *Burkett*, 101 A.D.3d at 1470. The prosecution had proffered proposed testimony from seven different witnesses regarding "more than [twelve] instances of [petitioner's] controlling and threatening conduct against Parker and other former girlfriends." *Id.* at 1471. The County Court addressed each specific instance and "preclud[ed] much of the proffer, including all or parts of the testimony of two of [petitioner's] ex-girlfriends, limiting or excluding the testimony of three of the victim's close girlfriends,"

and permitting evidence of only one of two proffered "domestic violence reports" that Parker filed in 2008 against him. *Id.* The Appellate Division noted that, other evidence, including voicemail messages left by Parker and threatening statements later made by petitioner to police officers, were precluded entirely due to their prejudicial nature. *Id.* In sum, the Appellate Division concluded that the court had appropriately weighed the relevant factual circumstances, case law, and the probative value of the evidence—which established petitioner's "identity, intent, and motive in murdering Parker"—against its probative value. *Id.* at 1471-72. Additionally, the trial court provided "an appropriate limiting instruction" in its jury charge. *Id.* at 1471 (footnote omitted).

 **\*3** With regard to the denial of petitioner's request that the court charge second degree manslaughter as a lesser included offense of second degree murder, the Appellate Division found that contention "foreclosed" because petitioner was actually convicted of second degree murder and the jury "never reached the next lesser included offense of manslaughter in the first degree," which was charged to the jury. *Burkett*, 101 A.D.3d at 1472-73 (citing *People v. Boettcher*, 69 N.Y.2d 174, 180 (1987)) (further citations omitted). Finally, the Appellate Division concluded that the sentence imposed was not an abuse of discretion and that the restitution ordered was appropriate. *Id.* at 1473.

Petitioner sought leave to the appeal to the New York Court of Appeals, contending in a counseled application that the court erred in: (1) permitting prior bad acts evidence pursuant to *Molineux*; (2) refusing petitioner's request to instruct the jury with regard to second degree manslaughter as a lesser included offense; and (3) ordering that restitution include reimbursement for the victim's funeral expenses. Dkt. No. 8-5 at SR 1032-34, Letter Application to the New York Court of Appeals, dated February 1, 2013. The Court of Appeals denied petitioner's application on March 28, 2013. *Burkett*, 20 N.Y.3d 1096 (2013).

In papers dated November 13, 2013, petitioner filed an application for a writ of error coram nobis. Dkt. No. 8-5 at SR 1039-72, Petition for Writ of Error Coram Nobis. Petitioner asserted that appellate counsel rendered ineffective assistance because he failed to argue on direct appeal that: (1) petitioner was deprived of his right to testify before the grand jury; (2) he was denied his right to

counsel at his pre-indictment arraignment; (3) trial counsel was ineffective because he did not present an extreme emotional disturbance defense and advised petitioner not to testify at trial; and (4) petitioner's confrontation rights were violated by the admission of prior statements made by the victim. *Id.* at SR 1047-72. The Appellate Division denied petitioner's application, and the Court of Appeals thereafter denied leave to appeal. *Id.* at SR 1101, Decision and Order on Motion of the Appellate Division, Third Department, entered December 27, 2013; *People v. Burkett*, 23 N.Y.3d 1018 (2014).

## III. THE PETITION

Petitioner raises the following grounds for habeas relief: (1) he was denied the right to counsel at his initial arraignment; (2) his right to testify before the grand jury pursuant to CPL § 190.50 was violated; (3) trial counsel was ineffective because he: (a) failed to investigate, advise petitioner concerning, and pursue at trial, an extreme emotional disturbance defense, and (b) advised petitioner not to testify at trial; (4) he was denied a fair trial by the trial court's *Molineux* ruling, inasmuch as the prejudicial effect of the "prior bad acts and uncharged crimes" evidence outweighed its probative value; (5) his confrontation rights were violated by the admission of testimony concerning prior statements made by the victim; (6) the trial court erred in not charging second degree manslaughter as a lesser included offense to second degree murder; and (7) the restitution portion of his sentence was illegally imposed. Pet. at 4-7. [3]

## IV. DISCUSSION

### A. Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant habeas corpus relief with respect to a claim adjudicated on the merits in state court only if, based upon the record before the state court, the state court's decision: (1) was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. §§ 2254(d)(1), (2); *Cullen v. Pinholster*, 563 U.S. 170, 181, 185-86 (2011); *Premo v. Moore*, 562 U.S. 115, 120-121 (2011); *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). This standard is "highly deferential" and "demands that

2016 WL 6659492

state-court decisions be given the benefit of the doubt." *Felkner v. Jackson*, 562 U.S. 594, 598 (2011) (per curiam) (quoting *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal quotation marks omitted)).

**\*4** The Supreme Court has repeatedly explained that "a federal habeas court may overturn a state court's application of federal law only if it is so erroneous that 'there is no possibility fairminded jurists could disagree that the state court's decision conflicts with th[e Supreme] Court's precedents.' " *Nevada v. Jackson*, ___ U.S. ____, 133 S. Ct. 1990, 1992 (2013) (per curiam) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)); *see Metrish v. Lancaster*, ___ U.S. ____, 133 S. Ct. 1781, 1787 (2013) (explaining that success in a habeas case premised on § 2254(d)(1) requires the petitioner to "show that the challenged state-court ruling rested on 'an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.' ") (quoting *Richter*, 562 U.S. at 103).

Additionally, AEDPA foreclosed " 'using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts.' " *Parker v. Matthews*, ___ U.S. ____, 132 S. Ct. 2148, 2149 (2012) (per curiam) (quoting *Renico*, 559 U.S. at 779). A state court's findings are not unreasonable under § 2254(d)(2) sim ply because a federal habeas court reviewing the claim in the first instance would have reached a different conclusion. *Wood v. Allen*, 558 U.S. 290, 301 (2010). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable–a substantially higher threshold." *Schriro*, 550 U.S. at 473. Federal habeas courts must presume that the state courts' factual findings are correct unless a petitioner rebuts that presumption with " 'clear and convincing evidence.' " *Id.* at 473-74 (quoting § 2254(e)(1)).

**B. Ground One: Right to Counsel at Initial Arraignment**
Petitioner contends that his right to counsel was violated because he did not have an attorney at his local court arraignment. Pet. at 4. Petitioner's claim is unexhausted and procedurally defaulted.

An application for a writ of habeas corpus may not be granted until a prisoner has exhausted all remedies available in state court unless "there is an absence of available State corrective process" or "circumstances exist

that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254 (b)(1)(A), (B)(i), (ii). A petitioner must exhaust his or her claim both procedurally and substantively. Procedural exhaustion requires that a petitioner raise all claims in state court prior to raising them in the habeas corpus petition. Substantive exhaustion requires that a petitioner "fairly present" each claim for habeas relief in "each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (per curiam)); *Carvajal v. Artus*, 633 F.3d 95, 104 (2d Cir. 2011); *Cotto v. Herbert*, 331 F.3d 217, 237 (2d Cir. 2001) (petitioner must present "the essential factual and legal premises of his federal constitutional claim to the highest state court capable of reviewing it."). "While 'a state prisoner is not required to cite chapter and verse of the Constitution in order to satisfy this requirement,' he must tender his claim 'in terms that are likely to alert the state courts to the claim's federal nature.' " *Jackson v. Conway*, 763 F.3d 115, 133 (2d Cir. 2014) (quoting *Carvajal*, 633 F.3d at 104).

A petitioner satisfies the fair presentation requirement by: "(a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation." *Carvajal*, 633 F.3d at 104 (quoting *Daye v. Attorney Gen. of N.Y.*, 696 F.2d 186, 194 (2d Cir. 1982) (en banc)); *see Baldwin*, 541 U.S. at 33 ("Reese, however, has not demonstrated that Oregon law uses the words 'ineffective assistance' in the manner he suggests, that is, as referring only to a federal-law claim.").

**\*5** "[W]hen a 'petitioner fail[s] to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred,' the federal habeas court should consider the claim to be procedurally defaulted." *Clark v. Perez*, 510 F.3d 382, 390 (2d Cir. 2008) (citation omitted). Unexhausted claims may be deemed exhausted if "it is clear that the unexhausted claim is procedurally barred by state law," rendering presentation of the claim in state court "futile."

*Aparicio v. Artuz*, 269 F.3d 78, 90 (2d Cir. 2001) (citing *Reyes v. Keane*, 118 F.3d 136, 139 (2d Cir. 1997)).

Here, petitioner presented his right to counsel claim in his CPL § 440.10 motion. Dkt. No. 8-1 at SR 2-8, 14-17. After his motion was denied, however, petitioner did not seek leave to appeal pursuant to CPL § 460.15. *See* Pet. at 3. "Since he never sought leave to appeal from [the motion] denial[ ], he plainly failed to exhaust his state-court remedies." *Pollard v. Gonyea*, No. 1:11-CV-5712, 2012 W L 2389663, at *12 (S.D.N.Y. Mar. 14, 2012), *adopted* 2012 WL 2389755 (S.D.N.Y. June 25, 2012); *accord. Ture v. Racette*, No. 9:12-CV-1864 (JKS), 2014 WL 2895439, at *4 (N.D.N.Y. June 26, 2014) ("Although Ture raised the remaining claims in his pro se CPL § 440.10 motion, Ture did not seek leave to appeal the denial of that motion. Thus, these claims are unexhausted."); *Lee v. Greene*, No. 9:05-CV-1337, 2011 WL 500673 (GTS/DEP), at *4 n.4 (N.D.N.Y. Feb. 10, 2011). [4] Petitioner's claim is also procedurally defaulted, inasmuch he had thirty days within which to seek leave to appeal. That time period has long since expired, as has the one-year period within which he could have sought an extension of time within which to file a leave application. *See* CPL §§ 460.10(4)(a), 460.30; *Garner v. Superintendent*, No. 9:10-CV-1406 (GTS), 2012 WL 3929944, at *6 (N.D.N.Y. Sept. 10, 2012); *Santos v. Rock*, No. 1:10-CV-2896, 2011 W L 3449595, at *6-7 (S.D.N.Y. Aug. 5, 2011). [5]

*6 A "procedural default can only be cured by a showing of cause for the default plus prejudice, or a showing of actual innocence." *Aparicio*, 269 F.3d at 91 (citing *Coleman*, 501 U.S. at 748-749); *see House v. Bell*, 547 U.S. 518, 536-39 (2006); *Schlup v. Delo*, 513 U.S. 298, 326-27 (1995); *Sweet v. Bennett*, 353 F.3d 135, 141 (2d Cir. 2003); *Rodriguez v. Mitchell*, 252 F.3d 191, 204 (2d Cir. 2001). T o establish cause, petitioner must demonstrate that some objective external factor impeded his ability to comply with the procedural rule at issue. *Maples v. Thomas*, ___ U.S. ____, 132 S. Ct. 912, 922 (2012); *Coleman*, 501 U.S. at 753. If a petitioner fails to establish cause, a court need not decide w hether he suffered actual prejudice, because federal habeas relief is generally unavailable as to procedurally defaulted claims unless both cause and prejudice are dem onstrated. *Murray v. Carrier*, 477 U.S. 478, 496 (1988); *Stepney v. Lopes*, 760 F.2d 40, 45 (2d Cir. 1985).

Petitioner contends that he did not seek leave to appeal from the denial of his § 440.10 motion because his motion was denied pursuant to CPL § 440.10(2)(b). Pet. at 3 ¶ 11(d). That statute requires denial of a motion to vacate where the judgment is, at that time, "appealable or pending on appeal, and sufficient facts appear on the record with respect to the ground or issue raised upon the motion to permit adequate review thereof upon such an appeal." Although the prosecution argued that petitioner's claims could be denied on the basis of CLP § 440.10(2)(b), the court plainly denied petitioner's motion on the merits, given that it discussed the facts at issue in relation to the legal standards applicable to petitioner's claims and found that he was not entitled to relief. Dkt. No. 8-1 at SR 46-48. Petitioner could have sought leave to appeal from the motion court's denial of his claims on the merits, but he failed to do so. He provides no basis for finding cause, and the Court can discern none. *See Schlup*, 513 U.S. at 314. Although he raises several technical arguments regarding the conviction, he has not proffered any new evidence that would make a reasonable jury doubt his factual guilt. *See Poindexter v. Nash*, 333 F.3d 372, 380 (2d Cir. 2003) (noting that the concept of actual innocence is distinct from the concept of legal innocence, and a petitioner whose "argument is a technical one" does not raise "a claim of 'actual innocence' as that term is used ... in habeas jurisprudence generally"). The procedural default thus bars federal habeas review of these claims. [6]

### C. Ground Two: Right to Testify Before the Grand Jury

*7 Petitioner contends that he was deprived of his right to testify at the grand jury presentation of his case and that he received no notice of the presentation. Pet. at 4. This claim is not cognizable on federal habeas review and, in any event, any error related to the grand jury proceedings was cured upon petitioner's conviction by a petit jury.

Claims of alleged deficiencies in state grand jury proceedings are not cognizable on federal habeas corpus review. *Lopez v. Riley*, 865 F.2d 30, 32-33 (2d Cir. 1989); *accord Davis v. Mantello*, 42 Fed.Appx. 488, 490-91 (2d Cir. 2002) (summary order) ("Claims of deficiencies in the state grand jury proceedings are not cognizable in a habeas corpus proceeding in federal court."). Such errors underlying state convictions do not warrant federal habeas relief because the Fifth Amendment right to a grand jury indictment "has not been incorporated

against the states through the Fourteenth Amendment." *LanFranco v. Murray*, 313 F.3d 112, 118 (2d Cir. 2002) (citations om itted); *see Fields v. Soloff*, 920 F.2d 1114, 1118 (2d Cir. 1990) (citing *Hurtado v. California*, 110 U.S. 516 (1884)). Moreover, "it is well established that defendants have no constitutional right to appear before a grand jury." *United States v. Ruiz*, 894 F.2d 501, 505 (2d Cir. 1990). T hese principles bar petitioner's claim that his was deprived of his right to appear before the grand jury, which, in New York State, is a purely statutory right. *Bailey v. Sheahan*, No. 6:13-CV-6438, 2014 W L 2895448, at *2 (W.D.N.Y. June 26, 2014) (citing *Velez v. People of State of N.Y.*, 941 F. Supp. 300, 315 (E.D.N.Y. 1996)); *Blond v. Graham*, No. 9:12-CV-1849 (JKS), 2014 W L 2558932, at *9 (N.D.N.Y. June 6, 2014); *see CPL* § 190.50.

Additionally, even if petitioner's right to appear before the grand jury was violated, any error was rendered harmless when he was convicted following a jury trial. *Lopez*, 865 F.2d at 32 (" '[T]he petit jury's subsequent guilty verdict means not only that there was probable cause to believe that the defendants were guilty as charged, but also that they are in fact guilty as charged beyond a reasonable doubt. Measured by the petit jury's verdict, then, any error in the grand jury proceeding ... was harmless beyond a reasonable doubt.' ") (quoting *United States v. Mechanik*, 475 U.S. 66, 70 (1986)); *Perez v. Lempke*, No. 1:10-CV-0303, 2011 WL 2746785, at *3 (W.D.N.Y. July 13, 2011) ("Because Petitioner was convicted after a jury trial at which the prosecution proved his guilt beyond a reasonable doubt, any error with regard to his right to testify at the grand jury proceeding was rendered harmless."). Here, petitioner was found guilty on all charges submitted to the trial jury and thus any error regarding his right to testify at the grand jury presentation was harmless. Dkt. No. 9-7 at 110, Trial Transcript. Petitioner's claim is therefore denied and dismissed.

### D. Ground Three: Ineffective Assistance of Counsel

Petitioner next asserts that trial counsel was ineffective because he failed to pursue an extreme emotional disturbance ("EED") defense in relation to petitioner's second degree murder charge, and advised petitioner not to testify at trial. Pet. at 5. Petitioner appears to be reiterating the same grounds raised in his motion for a writ of error coram nobis. *See* Dkt. No. 8-5 at SR 1057-66. In that application, petitioner cited his " serious attempts on his own life" after Parker's death, his mental condition when he was brought into

custody, a "psychiatric evaluation" which "supported his mental instability," and the circumstances surrounding the victim's death. *Id.* at SR 1057-63; *see* Reply at 2-14.[7] Petitioner noted that he "did not intend to kill Ms. Parker," but that "the act was truly an accidental one which caused her death due to two people engaged in an unstable, physically romantic relationship." *Id.* at SR 1064. Petitioner also argued in his coram nobis motion that trial counsel was ineffective in "not investigating and pursuing" an EED defense and instead presenting a defense based upon the identity of the culprit. *Id.* at SR 1060-61.

**\*8** In his reply in further support of the present habeas petition, petitioner asserts that "behavioral and medical experts should have been hired for their testimonies in defense, and to rebut ... the prosecution's prejudicial expert witness testimony of Dr. Sikirica." Reply at 9. Moreover, petitioner contends that counsel also "could have called ... numerous friends and family members ... who were very willing to testify in defense of his character[.]" *Id.* at 10. Petitioner told counsel that he "choked" Parker to death while "having rough sex," and that he could have testified to the cause of death at trial. *Id.* at 12-13, 15.

As an exhibit to his reply, petitioner has also attached the af fidavit that he filed with the Appellate Division in support of his petition for a writ of error coram nobis, sworn to on August 12, 2013. Dkt. No. 13 at 31-33, Af fidavit; *accord*, Dkt. No. 8-5 at SR 1076-78.[8] In his affidavit, petitioner asserts that he "wanted to testify in his case" but was "not informed of that opportunity to explain the circumstance surrounding ... Park's death, and what truly occurred on February 26, 2009." Dkt. No. 13 at 31 ¶ 1. In that regard, petitioner asserts that Parker invited him to her house to talk and, when he arrived at Parker's house around 2:30 a.m. on the date at issue, they had an argument. *Id.* at ¶ 3. Soon after, petitioner apologized, and the two began a "rough sexual encounter" as they had many times in the past. *Id.* at ¶¶ 4-5. On some occasions, petitioner was "taunted with foul remarks" by Parker, but those occasions "rarely ... involve[d] choking since, according to [Parker, petitioner] squeezed like a bitch." *Id.* at ¶ 5. However, on the occasion at issue, petitioner "h[e]ld [Parker] by the neck with [his] right hand[ ] while engaging in intercourse," without "realizing ... the amount of strength [he] applied to [his] grasp while [his] hand was around her throat."

*Id.* Petitioner realized that he choked Parker "too tightly" when she "stopped responding to [his] passionate dialogue and ceased in saying more of her own." *Id.* at ¶ 6. Blood began running from Parker's nose, and petitioner "panicked" and "stopped all sexual activity," sat Parker upright, and began "calling her name for a response." *Id.* When Parker remained unresponsive, petitioner "started crying hysterically." *Id.* at 33 ¶ 7. Petitioner called 911, but was "traumatized by what [he] was experiencing [.]" *Id.* at ¶ 7. Before medical personnel arrived, petitioner "attempted suicide with a nearby kitchen knife." *Id.* at ¶ 8.

Petitioner has not properly exhausted his ineffective assistance of trial counsel claim in state court. Petitioner raised these bases of ineffective assistance of trial counsel in his motion for a writ of error coram nobis, but did not raise an ineffective assistance claim on direct appeal. "[T]he only constitutional claim [petitioner] was permitted to raise in seeking a writ of error coram nobis was ineffective assistance of *appellate* counsel, a claim that is distinct from his claims of ineffective assistance of *trial* counsel." *Gilliam*, 653 F. Supp. 2d at 328 (emphasis in original) (noting that petitioner's "claim of ineffective assistance of trial counsel, and its sub-parts, raised as 'stand-alone' claim s in his *coram nobis* application, remain unexhausted"); *accord, Rush*, 500 Fed.Appx. at 15; *Turner*, 262 F.3d at 123. Moreover, petitioner raised other arguments sounding in ineffective assistance in his § 440.10 motion, but not those advanced in his habeas petition.

**\*9** Section 2254 "prohibits federal courts from *granting* relief to an applicant who has not exhausted the remedies available in the courts of the State," but allows "federal courts to deny the petition, regardless of whether the applicant exhausted his state court remedies." *Abuzaid v. Mattox*, 726 F.3d 311, 321 (2d Cir. 2013) (emphasis in original, internal quotation marks omitted) (citing 28 U.S.C. § 2254(b)(1)(A), (b)(2)). Unexhausted claims may be denied on the merits if the claims are "plainly meritless" (*Rhines v. Weber*, 544 U.S. 269, 277 (2005)) or "patently frivolous." *McFadden v. Senkowski*, 421 F. Supp. 2d 619, 621 (W.D.N.Y. 2006); *see* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."). Because petitioner's unexhausted claims fail under either standard, the Court will dispose of them.

A petitioner seeking to establish constitutionally ineffective assistance of counsel must overcome "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance ... [and] that, under the circum stances, the challenged action 'might be considered sound trial strategy.' " *Strickland v. Washington*, 466 U.S. 668, 689 (1984) (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). Even if a petitioner can establish that counsel was deficient, he still must show that he was prejudiced, i.e., "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694; *accord Premo*, 562 U.S. at 121 (noting that petitioner "must show both deficient performance by counsel and prejudice.") (citation and internal quotation marks omitted). The standard "must be applied with scrupulous care" in habeas proceedings, because such a claim "can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial [or in pretrial] proceeding s[.]" *Premo*, 562 U.S. at 122.

"When counsel focuses on some issues to the exclusion of others, there is a strong presumption that he did so for tactical reasons rather than through sheer neglect." *Yarborough v. Gentry*, 540 U.S. 1, 8 (2003) (citing *Strickland*, 466 U.S. at 690). "Counsel is not obliged to advance every nonfrivolous argument that could be made." *Aparicio*, 269 F.3d at 95 (citations omitted). Moreover, the decision "whether to call specific witnesses-even ones that might offer exculpatory evidence-is ordinarily not viewed as a lapse in professional representation." *United States v. Best*, 219 F.3d 192, 201 (2d Cir. 2000) (internal quotation marks omitted) (citing *United States v. Smith*, 198 F.3d 377, 386 (2d Cir. 1999) ("The decision whether to call any witnesses on behalf of a defendant, and if so which witnesses to call, is a tactical decision of the sort engaged in by defense counsel in almost every trial.")). Courts "must consider the totality of the evidence before the judge or jury" in adjudicating an ineffective assistance claim. *Strickland*, 466 U.S. at 695.

Under New York law, "[t]he affirmative defense of extreme emotional disturbance serves to reduce the degree of criminal culpability for acts that would otherwise constitute murder. A defendant who proves by a preponderance of the evidence that the homicide was committed while 'under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse' will be guilty of first-degree

manslaughter rather than second-degree murder[.]" *People v. Diaz*, 15 N.Y.3d 40, 44-45 (2010) (quoting Penal Law § 125.25(1)(a)). The defense "requires evidence 'of a subjective element, that defendant acted under an extreme emotional disturbance, and an objective element, that there was a reasonable explanation or excuse for the emotional disturbance.' " *Diaz*, 15 N.Y.3d at 45 (quoting *People v. Smith*, 1 N.Y.3d 610, 612 (2004)); *accord, Lopez v. Ercole*, No. 09-CV-1398, 2014 WL 285079, at *1 n.1 (S.D.N.Y. Jan. 27, 2014) ("Since this is an affirmative defense, defendant bears the burden of convincing the jury by a preponderance of evidence that (1) the defendant actually acted under the influence of EED; and (2) the explanation or excuse for this EED was reasonable.") (citing *People v. Roche*, 98 N.Y.2d 70, 75 (2002)). The objective element "requires proof that defendant's emotional disturbance was supported by a reasonable explanation or excuse," which is " 'determined by viewing the subjective mental condition of the defendant and the external circumstances as the defendant perceived them to be at the time, however inaccurate that perception may have been, and assessing from that standpoint whether the explanation or excuse for [the] emotional disturbance was reasonable[.]' " *Roche*, 98 N.Y.2d at 76 (quoting *People v. Harris*, 95 N.Y.2d 316, 319 (2000)). "A defendant cannot establish an extreme emotional disturbance defense without evidence that he or she suffered from a mental infirmity not rising to the level of insanity at the time of the homicide[.]" *Id.* at 75.

**\*10** In this case, the record does not support the conclusion that trial counsel rendered ineffective assistance by not pursuing an EED defense, or that such a defense was remotely likely to succeed at trial. Even accepting the contentions in petitioner's affidavit as true, these contentions suggest only that (1) petitioner and Parker engaged in a "civil" conversation about their romantic history, got into an argument, and petitioner apologized, (2) petitioner deliberately "h[e]ld her by the neck" while they engaged in sexual intercourse, as he purportedly had done on past occasions at Parker's dem and, and (3) petitioner became emotionally disturbed and began "crying hysterically" *after* he realized that Parker lost consciousness while he was choking her. Dkt. No. 13 at 31-32 ¶¶ 1-3, 5, 7. To the extent that petitioner may be understood to assert that he was provoked by Parker's disparaging remarks about his strength in choking her (an assertion not clearly advanced in his affidavit), the Court notes that, even if accepted as true, "[a]cting out

of anger or embarrassment is 'not equivalent to the loss of self control generally associated with" the defense of extreme emotional disturbance.' " *Linnen v. Poole*, 766 F. Supp. 2d 427, 463-64 (W.D.N.Y. 2011) (quoting *People v. Walker*, 64 N.Y.2d 741, 743 (1984), and collecting cases). In short, petitioner's version of events does not suggest that he behaved in a manner consistent with an extreme emotional disturbance in the time leading up to Parker's death, or that such a disturbance would have been supported by a reasonable explanation or excuse in light of the surrounding circumstances. *Roche*, 98 N.Y.2d at 75-76.[9] Trial counsel did not render ineffective assistance by failing to pursue a defense that lacked merit when considered in light of petitioner's own account of Parker's death.

To the extent that petitioner argues in his reply that trial counsel was ineffective because he dissuaded petitioner from testifying and because he failed to call witnesses willing to testify "in defense of his character assassination," Reply at 10, these arguments also warrant no relief. Petitioner has failed to provide any facts in support of his claim that counsel refused to permit him to testify,[10] nor does he state how he was prejudiced by that decision.[11] Petitioner also has not identified which witnesses should have been called to testify as to his character, much less how any of these unidentified witnesses would have been helpful to his case. "It is well established that conclusory allegations, such as these, are insufficient to meet the rigorous standard under *Strickland v. Washington*." *Smalls v. McGinnis*, No. 04-CV-0301, 2004 W L 1774578, at *23 (S.D.N.Y. Aug. 10, 2004); *see Encarnacion v. McGinnis*, No. 01-CV-0586, 2008 W L 795000, at *13 (N.D.N.Y. Mar. 24, 2008) (Sharpe, J. adopting Report-Recommendation of Bianchini, M.J.) (rejecting ineffective assistance of counsel claim based upon counsel's failure to investigate unspecified "exculpatory leads" and failed to properly investigate or interview potential defense witnesses because "[p]etitioner does not identify many of the potential witnesses nor state with particularity how the testimony or evidence in question would have been exculpatory"); *Powers v. Lord*, 462 F. Supp. 2d 371, 381-82 (W.D.N.Y. Nov. 2, 2006) (rejecting claim that counsel was ineffective for not investigating and calling witnesses at trial because petitioner did not identify the witnesses or how they would have revealed information helpful to his case); *United States v. Vargas*, 871 F. Supp.

623, 624 (S.D.N.Y. 1994) (rejecting ineffective assistance claim based on failure to investigate and failure to call character witnesses where there was "no evidence that avenues suggested by the client which might have altered the outcome were ignored" and petitioner "fail[ed] to identify what persuasive character witnesses would have been involved, or to show that counsel was unwise in not opening up such witnesses to cross-examination"). These claims of ineffective assistance are too vague and conclusory to state a proper ground for habeas relief and are therefore dismissed.

**\*11** Moreover, petitioner argues (again, in his reply) that counsel should have retained "behavioral and medical experts" to testify on his behalf and to rebut Dr. Sikirica's testimony concerning the "range" of time of pressure to the neck that could have resulted in the victim's death. Reply at 9-10. "The decision whether or not to call an expert witness generally falls within the wide sphere of strategic choices for which counsel will not be second-guessed on habeas review." *Savinon v. Mazucca*, 04-CV-1589, 2005 WL 2548032, at \*33 (S.D.N.Y. Oct. 12, 2005), *adopted*, 2006 WL 2669331 (S.D.N.Y. Sept. 18, 2006) (quoting *Stapleton v. Greiner*, No. 98-CV-1971, 2000 W L 1207259, at \*16 (E.D.N.Y. July 10, 2000)); *accord*, *Best*, 219 F.3d at 201 (noting that "counsel's decision as to whether to call specific witnesses-even ones that might offer exculpatory evidence-is ordinarily not viewed as a lapse in professional representation") (citation and internal quotation marks omitted); *United States v. Kirsh*, 54 F.3d 1062, 1072 (2d Cir. 1995), *cert. denied*, 516 U.S. 927 (1995). Petitioner's vague, conclusory assertion provides the Court with no basis upon which to conclude that there was a witness who could have offered relevant and probative evidence in support of his version of the events at issue or to counter the medical examiner's testimony regarding the length of time that a continuously applied pressure to the neck may result in death. Under these circumstances, the decision of trial counsel not to call his own expert "cannot be considered objectively unreasonable" because petitioner "has only presented his vague hope that another expert might have reached a different result than the government expert." *Savinon*, 2005 WL 2548032, at \*33 (quoting *Leaks v. United States*, 841 F. Supp. 536, 545 (S.D.N.Y. 1994) (footnote omitted), *aff'd*, 47 F.3d 1157 (2d Cir. 1995), *cert. denied*, 516 U.S. 926 (1995)). Moreover, petitioner cannot establish prejudice because he has not show n that a defense expert would have contradicted the prosecution's evidence. *See James*

*v. United States*, No. 00-CV-8818, 2002 WL 1023146, at \*16 (S.D.N.Y. May 20, 2002) (rejecting petitioner's claim that trial counsel was ineffective in failing to obtain expert testimony where petitioner "provide[d] no reason to believe that an ... expert hired by the defense would have offered any exculpatory testimony or indeed any testimony that differed from the Government expert"); *Murden v. Artuz*, 253 F.Supp.2d 376, 389 (E.D.N.Y. Sept. 7, 2001), *aff'd*, 60 Fed.Appx. 344 (2d Cir. 2003) (concluding that the petitioner failed to show prejudice based on attorney's decision not to hire an expert where the petitioner did not "come forward with affidavits or other admissible evidence showing that there is an expert witness who would have testified" concerning issues that would have raised a reasonable doubt as to petitioner's guilt).

Accordingly, petitioner has provided no basis for concluding that he received ineffective assistance of counsel during the course of the prosecution, and this ground for habeas relief is therefore denied and dismissed.

### E. Ground Four: The Trial Court's *Molineux* Ruling

Petitioner contends that the trial court's *Molineux* ruling resulted in an unfair trial because the probative value of the prior bad acts evidence that the prosecution was allowed to present was outweighed by the prejudicial effect of its admission. Pet. at 5; Reply at 22-25. More particularly, in his reply, petitioner argues that the trial court should not have permitted Tarita Owens, petitioner's ex-girlfriend, to testify regarding an incident in 2001 during which he "strangled [Owens] to a state of unconsciousness[.]" Reply at 23.

At trial, Owens testified that, one evening in March 2001 when she returned to her apartment after work, she discovered petitioner (with whom she was no longer romantically involved) hiding in a hall closet. Dkt. No. 9-6 at 73, 75-77, T rial Transcript. All the lights in the apartment were off. *Id.* at 77. Owens demanded that petitioner leave and attempted to call the police, but observed that the "wire to the phone" had been cut and the line was dead. *Id.* at 78. Soon thereafter, petitioner "turn[ed] on the gas to the stove," took out a lighter and "threaten[ed] to blow [himself and Owens] up[.]" *Id.* at 80. A physical altercation ensued in view of Owens' daughter, and, eventually, petitioner pinned Owens on her bed and grabbed her by the neck. *Id.* at 82. According to Owens, during the struggle, petitioner stated, "If I can't have you,

Case 9:16-cv-00594-LEK-DEP Document 12 Filed 02/16/18 Page 55 of 167
Burkett v. Artus, Not Reported in F.Supp.3d (2016)
2016 WL 6659492

no one else can have you." *Id.* "At some point," Owens briefly "passed out" as a result of petitioner choking her. *Id.* at 83.

"Evidentiary questions are generally matters of state law and raise no federal constitutional issue for habeas review." *Sudler v. Griffin*, No. 9:12-CV-0367 (NAM/ ATB), 2013 WL 4519768, at *3 (N.D.N.Y. Aug. 26, 2013); *accord, Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the Untied States."). "A decision to admit evidence of a defendant's uncharged crimes or other bad acts under [*Molineux*] constitutes an evidentiary ruling based on state law." *Sudler*, 2013 WL 4519768, at *3 (citing *Sierra v. Burge*, No. 06-CV-14432, 2007 W L 4218926, at *5 (S.D.N.Y. Nov. 30, 2007)); *accord, Buchanan v. Chappius*, No. 9:15-CV-0407 (LEK), 2016 WL 1049006, at *4 (N.D.N.Y. Mar. 11, 2016). [12] "Federal courts may issue a writ of habeas corpus based upon a state evidentiary error only if the petitioner demonstrates that the alleged error violated an identifiable constitutional right, and that the error was so extremely unfair that its admission violates fundamental conceptions of justice." *Buchanan*, 2016 WL 1049006, at *4 (quoting *Sudler*, 2013 WL 4519768, at *3) (further citations and internal quotation marks omitted); *accord, Dunnigan v. Keane*, 137 F.3d 117, 125 (2d Cir. 1998) (quoting *Dowling v. United States*, 493 U.S. 342, 352 (1990), *cert. denied*, 525 U.S. 840 (1998)). "For the erroneous admission of other unfairly prejudicial evidence to amount to a denial of due process, the item must have been sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it." *Dunnigan*, 137 F.3d at 125 (citations and internal quotation marks omitted); *accord, Collins v. Scully*, 755 F.2d 16, 19 (2d Cir. 1985).

**\*12** Under New York law, evidence of uncharged crimes, prior convictions, or bad acts is admissible to prove a specific crime if it tends to establish motive, intent, absence of mistake or accident, a common scheme or plan between the commission of two or more crimes, or the identity of the person charged with the commission of the crime. *Molineux*, 168 N.Y. at 293; *accord, People v. Ventimiglia*, 52 N.Y.2d 350, 359 (1981). Moreover, New York courts have found evidence of prior acts of domestic violence perpetrated by a defendant relevant not only to the issues of identity and intent, but also "to provide background information concerning the context and history of [the] defendant's relationship with the victim[.]" *People v. Wertman*, 114 A.D.3d 1279, 1280 (4th Dep't 2014), *lv. denied*, 23 N.Y.3d 969 (2014), *habeas denied sub nom. Wertman v. Annucci*, No. 9:15-CV-0941 (JKS), 2016 W L 2903250, at *7 (N.D.N.Y. May 18, 2016) (citations and internal quotation marks omitted); *accord, e.g., Wise v. Superintendent of Attica Corr. Facility*, No. 08-CV-6312, 2010 W L 3943733, at *7 (W.D.N.Y. Oct. 7, 2010); *People v. Meseck*, 52 A.D.3d 948, 950 (3d Dep't 2008), *lv. denied*, 11 N.Y.3d 739 (2008); *People v. Doyle*, 48 A.D.3d 961, 964 (3d Dep't 2008), *lv. denied*, 10 N.Y.3d 862 (2008).

On direct appeal, the Appellate Division concluded that, after its "detailed *Molineux* pretrial hearing," the County Court properly admitted "limited testimony" concerning petitioner's "prior abusive, threatening and controlling behavior against Parker and" Owens because the testimony was relevant to petitioner's identity as the perpetrator, intent, and motive, and also "provided necessary background information regarding the nature of their relationship, which Parker had tried to terminate and the context in which [petitioner's] conduct occurred[.]" *Burkett*, 101 A.D.3d at 1470. As the Appellate Division noted, under New York law, prior bad acts in the context of domestic violence situations "are more likely to be considered relevant and probative evidence because the aggression and bad acts are focused on one particular person, demonstrating the defendant's intent, motive, identity and absence of mistake or accident[.]" *Id.* (quoting *People v. Westerling*, 48 A.D.3d 965, 966 (3d Dep't 2008)). Additionally, the Appellate Division observed that the prosecution had "requested testimony from seven witnesses regarding more than 12 instances of [petitioner's] controlling and threatening conduct toward Parker and other former girlfriends." *Burkett*, 101 A.D.3d at 1471. [13] The County Court, the Appellate Division concluded, had properly considered each instance and "preclud[ed] much of the proffer, including all or parts of the testimony of two of [petitioner's] ex-girlfriends and limiting or excluding the testimony of three of the victim's close girlfriends, and allowed evidence of only one of two domestic violence reports that Parker had filed in 2008[.]" *Id.*

**\*13** In sum, for the same reasons set forth by the Appellate Division, the trial court properly permitted

Case 9:16-cv-00594-LEK-DEP    Document 12    Filed 02/16/18    Page 56 of 167

the prosecution to present evidence of certain prior bad acts that were relevant to material issues at trial, while excluding other instances that lacked sufficient probative value to justify the prejudicial effect of admitting them. Petitioner provides no basis to conclude that the state courts' rulings on this issue—with respect to the prior bad acts evidence in general or to Owens' testimony in particular—violated New York evidentiary rules, much less that they were fundamentally unfair and thus contrary to, or an unreasonable application of, clearly established Supreme Court precedent. [14] As a result, petitioner is not entitled to habeas relief on this ground, and it is therefore denied and dismissed.

#### F. Ground Five: Right to Confront Witnesses

In Ground Five of his petition, petitioner contends that his right to confront the victim under the Sixth Amendment was violated by the introduction of the victim's statements through the trial testimony of her friends and family. Pet. at 6; Reply at 26-27. Petitioner's claim is unexhausted and procedurally defaulted.

Petitioner argued in his motion for a writ of error coram nobis that his right to confrontation was violated, but he did not assert this claim on direct appeal. Dkt. No. 8-5 at SR 1066-69. Presentation of his claim in the context of his coram nobis motion (the purpose of which is to advance a claim of ineffective assistance of appellate counsel) was not sufficient to fairly present to an appropriate state court petitione r's underlying confrontation claim. *Gilliam*, 653 F. Supp. 2d at 328. Moreover, the basis of petitioner's claim is apparent on the record and could have been raised on direct appeal. Petitioner can no long er file a direct appeal or leave application to exhaust his claim because a defendant is "entitled to one (and only one) appeal to the Appellate Division" and "New York does not otherwise permit collateral attacks on a conviction when the defendant unjustifiably failed to raise the issue on direct appeal." *Aparicio*, 269 F.3d at 91 (citing CPL § 440.10 (2)(c)); *see Clark*, 510 F.3d at 393 (noting that, "even if no state court had applied section 440.10(2)(c) to Clark's claim, the district court itself should have done so in the first instance pursuant to the exhaustion requirement for federal habeas").

Petitioner has not demonstrated cause for his failure to raise the issue or resulting prejudice, nor has he alleged that he is actually innocent. [15] *Aparicio*, 269 F.3d at 91.

As a result, petitioner's claim is barred, and it is therefore denied and dismissed. [16]

#### G. Ground Six: Failure to Charge Lesser Included Offense

**\*14** Petitioner next contends that the trial court erred in refusing to charge the jury with respect to "reckless manslaughter" as a lesser included offense of murder in the second degree. [17] Pet. at 6. Petitioner's claim is not cognizable on habeas review.

Both the United States Supreme Court and the Second Circuit have explicitly refrained from deciding whether the United States Constitution requires that juries instructed with respect to lesser included offenses in non-capital cases. *Beck v. Alabama*, 447 U.S. 625, 637-38 & n.14 (1980); *Jones v. Hoffman*, 86 F.3d 46, 48 (2d Cir. 1996) (per curiam). As the Second Circuit has noted, reaching this issue "would involve the announcement of a new rule" in violation of *Teague v. Lane*, 489 U.S. 288, 299-300, 316 (1989). *Jones*, 86 F.3d at 47. Accordingly, petitioner's claim is not cognizable on habeas review. *Id.* at 47-48; *accord, Bonilla v. Lee*, 35 F. Supp. 3d 551, 569 (S.D.N.Y. 2014) ("*Jones* and *Teague* preclude consideration of the petitioner's claim that he was entitled to the lesser charge of manslaughter in the first degree."); *Hendrie v. Greene*, No. 9:06-CV-0370 (TJM/RFT), 2010 WL 786467, at *9 (N.D.N.Y. Mar. 3, 2010) ("[P]ending the pronouncement of a new constitutional rule, a claim based on an alleged error to charge a lesser included offense is not cognizable in a habeas proceeding because absent such a rule, there is no basis to find an unreasonable application and/or violation of clearly established federal law."); *Mills v. Girdich*, 614 F. Supp. 2d 365, 382 (W.D.N.Y. 2009).

For the sake of completeness, the Court notes that, as the Appellate Div ision concluded on petitioner's direct appeal, petitioner also w as not entitled to an instruction with respect to second degree manslaughter under New York State law. *Burkett*, 101 A.D.3d at 1472 (concluding that petitioner's claim was "foreclosed" because he "was in fact convicted of second degree murder as charged in the indictment and the jury never reached the next lesser included offense of manslaughter in the first degree which was included in the court's charge"). At petitioner's request, the trial court instructed the jury with respect to manslaughter in the first degree in violation of Penal Law § 125.20(1) ("[w]ith intent to cause serious

physical injury to another person," causing the death of that person) as a lesser included offense to murder in the second degree. Dkt. No. 9-6 at 187-204, Charge Conference Transcript; Dkt. No. 9-7 at 72-75, Jury Charge Transcript. Petitioner was convicted of murder in the second degree, and the jury thus had no occasion to consider manslaughter in the first degree as a lesser included offense. "[W]here a court charges the next lesser included offense [manslaughter first] of the crime alleged in the indictment [murder second], but refuses to charge lesser degrees than that, ... defendant's conviction of the crime alleged in the indictment forecloses a challenge to the court's refusal to charge the remote lesser included offenses [manslaughter second][.]" *Burkett*, 101 A.D.3d at 1473 (quoting *Boettcher*, 69 N.Y.2d at 180).

**\*15** For these reasons, petitioner is not entitled to habeas relief on this ground, and it is therefore denied and dismissed.

### H. Ground Seven: Illegally Imposed Restitution

Finally, petitioner contends that the sentencing court's order that petitioner pay the victim's funeral expenses was "illegally imposed." Pet. at 7. Plaintiff cites no federal constitutional principle or Supreme Court precedent in support of his contention.

Following trial, the sentencing court ordered that, as part of his sentence, petitioner pay restitution in the amount of $13,000, representing the victim's funeral expenses, which had been paid in part by the New York Office of Victim Services and by the father of the victim's surviving children. Dkt. No. 9-8 at SR 9-12, Sentencing Transcript. On direct appeal, petitioner contended that the restitution order was improper because "reimbursement for funeral expenses does not constitute payment to a victim within the meaning of" Penal Law § 60.27(4)(b) and New York Executive Law § 621. Dkt. No. 8-1 at SR 97.

Petitioner's contention that restitution was illegally imposed is not cognizable on habeas review. *Hodges v. Bezio*, No. 9:11-CV-0439 (LEK/DEP), 2014 W L 2779267, at *9 (N.D.N.Y. June 19, 2014) (concluding that petitioner's argument that "the amount of restitution awarded by the state court violate[d] Penal Law § 60.27"

had "no basis ... in constitutional or federal law" and was thus not cognizable on habeas review); *accord, Rojas v. Heath*, No. 11-CV-4322, 2012 W L 5878679, at *8 n.19 (S.D.N.Y. Oct. 18, 2012), *adopted*, 2012 WL 5878752, at *1 (S.D.N.Y. Nov. 16, 2012) (noting, in the context of a restitution claim, that habeas relief "is unavailable for claims that have no effect upon a petitioner's custody"); *see also United States v. Boyd*, 407 Fed.Appx. 559, 560 (2d Cir. 2011) (summary order) (explaining, in the context of 28 U.S.C. § 2255, that "[r]estitution orders cannot be challenged through a habeas petition because a 'monetary fine is not a sufficient restraint on liberty to meet the in custody requirement,' even if raised in conjunction with a challenge to a sentence of imprisonment") (quoting *Kaminski v. United States*, 339 F.3d 84, 87-88 (2d Cir. 2003)) (further internal quotation marks omitted).

Accordingly, this ground provides no basis for the relief petitioner seeks, and it is therefore denied and dismissed.

### V. CONCLUSION
**WHEREFORE**, it is hereby

**ORDERED** that the petition, Dkt. No. 1, is **DENIED AND DISMISSED** in its entirety; and it is further

**ORDERED** that no Certificate of Appealability ("COA") shall issue because petitioner failed to make a "substantial showing of the denial of a constitutional right" as 28 U.S.C. § 2253(c)(2) requires;[18] and it is further

**\*16 ORDERED** that the Clerk send petitioner copies of the unpublished decisions cited in this Decision and Order in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam); and it is further

**ORDERED** that the Clerk serve a copy of this Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED**.

**All Citations**

Not Reported in F.Supp.3d, 2016 WL 6659492

Footnotes

1   The following background information is derived from the state court records and the parties' submissions.

2   More specifically, with regard to his ineffective assistance of trial counsel argument, petitioner contended that an expert retained on his behalf would have testified that (1) the time of death set forth in the medical examiner's autopsy report was inconsistent with the fact that the victim was given an IV and "endotrachal tube" when she was placed in an ambulance, at which point she would have been in "the first stages of rigor mortis"; (2) the medical examiner was negligent in failing to establish a specific time of death by completing a "temperature probe of [the victim's] liver"; and (3) the medical examiner was negligent in failing to obtain "sufficient DNA" from the victim's fingernails, which could have "exonerated" him. Dkt. No. 8, Attach. 1, at SR 5-6.

3   Citation to the petition refers to the pagination provided by CM/ECF, the Court's electronic filing system.

4   Petitioner asserts in his reply that he exhausted this issue by raising it in his motion for a writ of error coram nobis. Reply at 2. "The only constitutional claim [a petitioner is] permitted to raise in seeking a writ of error coram nobis [is] ineffective assistance of appellate counsel, a claim that is distinct from" the underlying claim that he was deprived of his right to counsel at the initial arraignment. *Rush v. Lempke*, 500 Fed.Appx. 12, 15 (2d Cir. 2012) (summary order) (quoting *Turner v. Artuz*, 262 F.3d 118, 123 (2d Cir. 2001)); *accord. Jones v. Senkowski*, 42 Fed.Appx. 485, 487 (2d Cir. 2002); *Gilliam v. Artus*, 653 F. Supp. 2d 315, 326 (W.D.N.Y. 2009) ("Although Gilliam asserted the claim in his coram nobis application, in New York, such an application is not the proper means for asserting claims of error at the trial-court level."). Moreover, petitioner does not assert ineffective assistance of appellate counsel as a basis for relief in this proceeding.

5   There is authority for the proposition that courts may not properly "deem" § 440.10 motions exhausted if the petitioner failed to seek leave to appeal from the denial of the motion. *See Pesina v. Johnson*, 913 F.2d 53, 54 (2d Cir. 1990) ("We have no authority to declare as a matter of state law that an appeal from the denial of his original Section 440.10 motion is unavailable or that he cannot raise [his] claim in a new Section 440.10 action."). Nevertheless, the Court is persuaded that the Supreme Court's subsequent decision in *Coleman v. Thompson*, 501 U.S. 722 (1991), "makes clear that federal courts are to determine whether an avenue of appeal regarding a habeas claim is available to a petitioner under state law, and therefore whether a petitioner's request for review of that claim by a state court would be futile." *Garner*, 2012 WL 3929944, at *6 (concluding that, in light of *Coleman*, petitioner's claim was deemed exhausted but procedurally defaulted for failure to seek leave to appeal the denial of his motion to vacate); *see also e.g. Strain v. Perez*, No. 9:11-CV-0345 (TJM), 2012 WL 1900550, at *4 & n.7 (N.D.N.Y. May 24, 2012); *Santos*, 2011 WL 3449595, at *7-8.

6   In any event, petitioner's claim is without merit. The right to counsel is guaranteed at "critical stages" of criminal proceedings, such as "the type of arraignment ... where certain rights might be sacrificed or lost[.]" *United States v. Wade*, 388 U.S. 218, 225, 227 (1967); *accord. Claudio v. Scully*, 982 F.2d 798, 802 (2d Cir. 1992). "Courts in this Circuit have held that habeas relief is not warranted where a criminal defendant was denied his right to counsel at an initial arraignment, but the defendant was not deprived of his rights or otherwise prejudiced." *Singleton v. Lee*, No. 6:10-CV-6094, 2013 WL 3187106, at *4 (W.D.N.Y. Jun. 20, 2013) (citing *Holland v. Allard*, No. 2:04-CV-3521, 2005 WL 2786909, at *7 (E.D.N.Y. Oct. 26, 2005)) (further citations omitted). Moreover, the state court record reflects that, at his initial arraignment in Troy City Court on February 28, 2009, the court advised petitioner of his right to an attorney. Dkt. No. 8-1 at SR 38-40, Transcript of Arraignment. Petitioner provided nonresponsive answers to the court's questions about his understanding of the charges, his rights, and his employment, and so the local court, unauthorized to set bail on the charge, assigned counsel, entered a not guilty plea on petitioner's behalf, and scheduled the next court appearance. *Id.* at SR 39-40. The record does not support the conclusion that petitioner sacrificed any rights as a result of the steps taken at his initial arraignment redressable by way of federal habeas relief. For these reasons, the state court's denial of petitioner's claim, as presented in his § 440.10 motion, was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent, nor was it an unreasonable determination of the facts in light of the evidence presented.

7   In this regard, petitioner appears to refer to a "patient progress sheet" generated while he was admitted at Albany Medical Center for self-inflicted lacerations after he was taken into custody at the crime scene. Dkt. No. 8-5 at SR 1086-87, Patient Progress Sheet, dated 2/27/2009. The document—which bears the stamp of Robin Tassinari, M.D.—is difficult to decipher, but appears to reflect that petitioner was "groggy" and had been given morphine. *Id.* at SR 1086. Dr. Tassinari noted that he or she "cannot ascertain any psych hx" and would have to attempt to contact petitioner's family. *Id.* In a later note, Dr. Tassinari stated that petitioner had experienced "no change" and that, if "medically cleared," he would be arrested for "menacing." *Id.* at 1086-87. Dr. Tassinari further noted that, if petitioner were held in custody, it would be recommended that petitioner be placed on "watch for suicide and be followed by county psychiatric staff." *Id.* at SR 1087. It is not clear from the record whether Dr. Tassinari was at any point able to communicate with petitioner regarding his psychiatric history before petitioner was taken into custody, whether Dr. Tassinari or any other professional actually

conducted a psychiatric evaluation of petitioner, or whether petitioner was considered a suicide risk while in custody pending trial.

8    Citation to the exhibits to petitioner's reply refer to the pagination provided by CM/ECF, the Court's electronic filing system.

9    The Court notes that the evidence adduced at trial is also at odds with the account in petitioner's affidavit and does not suggest that counsel was ineffective for failing to pursue an EED defense. Specifically, petitioner's physical abuse of Parker was neither an anomaly occasioned by an emotional disturbance on the night of Parker's death nor limited to times when the two engaged in consensual sexual intercourse. R.M., Parker's son, testified that, one night in September 2008, Parker called out R.M.'s name, and, when he ran to Parker's bedroom, he observed petitioner choking her. Dkt. No. 9-6 at 135-36, Trial Transcript. Thereafter, petitioner ran upstairs and left Parker's house. *Id.* at 136. Moreover, R.M. testified that, on the morning of Parker's death and before law enforcement confronted petitioner, R.M. observed Petitioner washing his hands and a knife in the bathroom. *Id.* at 132, Trial Transcript. R.M. instructed his younger sister, who had awoken, to "lay back down," and, at that point, petitioner looked into R.M.'s room and "ran out the front door." *Id.* at 133. Based upon the evidence adduced at trial, the Court finds that the Appellate Division's observation that petitioner's "self-inflicted superficial wounds and behavior when police arrived were more suggestive of an attempt to feign despair and fabricate an exculpatory crime scenario" was an apt one. *Burkett*, 101 A.D.3d at 1470 n.2.

10   In a letter to trial counsel dated June 10, 2013, petitioner noted that, during the course of trial, trial counsel "informed" petitioner that he "should not testify." Dkt. No. 13 at 47, Letter to Trial Counsel.

11   To the contrary, the record supports the conclusion that, if trial counsel did dissuade petitioner from testifying, that decision was one of trial strategy and which was entirely reasonable. Petitioner argues in a conclusory manner that he could have "provided the jury with an explanation of his behavior" on the night of Parker's death, "contradicted the state's theory about both the motive and circumstances surrounding the killing," and explained why he choked Parker with one hand while "intentional murderers ... commonly have used two hands"). Reply at 15. However, petitioner provides no factual support indicating that his failure to testify was prejudicial to his case and, as noted above, his affidavit—even if credited—does not provide a basis for concluding that he was suffering from an extreme emotional disturbance (much less a reasonable one) at the time of Parker's death. It is also unclear how petitioner could have offered admissible testimony distinguishing Parker's death on the basis that "intentional murderers" typically strangle their victims with two hands, instead of one hand, or that the jury would have found such testimony persuasive in light of the prosecution's evidence of petitioner's guilt. Petitioner's assertion in his affidavit that he stopped choking Parker and attempted to elicit a response from her as soon as she stopped talking is at odds with the conclusions of the medical examiner, who testified at trial that Parker would have lost consciousness in approximately fifteen seconds but would have died only after an additional two to three minutes of continued pressure. *Burkett*, 101 A.D.3d at 1470. Moreover, petitioner would have been subject to cross-examination not only about his version of the events at issue (i.e., that he accidentally killed Parker during "rough" sexual intercourse), but also his previous threatening, verbally abusive, and violent behavior toward Parker as well as a prior girlfriend. Moreover, the Court notes that petitioner has not rebutted the presumptive correctness of the state courts' factual findings with "clear and convincing evidence." *Schriro*, 550 U.S. at 473-74 (quoting § 2254(e)(1)). Thus, while petitioner may have been able to offer testimony in contradiction to that provided by other witnesses, his vague and conclusory assertions in support of his habeas petition provide no support for the proposition that his testimony would have been persuasive or that he was prejudiced by trial counsel's advice not to testify.

12   Moreover, the Supreme Court has not expressly addressed whether a state law permitting the use of "prior crimes" evidence to show criminal propensity would violate the Due Process Clause, and such a ruling therefore could not be said to contravene or unreasonably apply clearly established Supreme Court precedent. *Estelle*, 502 U.S. at 75 n.5 ("[W]e express no opinion on whether a state law would violate the Due Process Clause if it permitted the use of 'prior crimes' evidence to show propensity to commit a charged crime.").

13   In this case, the prosecution sought to present evidence of numerous instances of petitioner's alleged prior bad acts, including, among other things, the following: (1) the testimony of Theresa Vessels, petitioner's ex-girlfriend, with respect to incident in 1996 in which petitioner broke her nose and "spit in her face" out of an anger when another man placed a phone call to Vessels; (2) the testimony of Owens, petitioner's ex-girlfriend, with respect to (a) petitioner's violent behavior in 1999, (b) the 2001 incident during which petitioner choked Owens to the point of unconsciousness, for which he was convicted of menacing in the third degree; (3) the testimony of Latonia Berkley-Taylor, Parker's best friend, with respect to (a) her observations of petitioner's abusive behavior toward Parker between 2002 and 2004, and (b) Parker's statements to Berkley-Taylor in February 2009 that she was intending to end her relationship with petitioner; (4) the testimony of R.M., with respect to (a) the incident in September 2008 in which he observed petitioner choking Parker, (b) an incident shortly before Parker's death in which petitioner "tr[ied] to pull the sunroof off the car" and "bang[ed] on the

car window," and (c) the fact that petitioner moved because she did not want petitioner to know where she was living; (5) the testimony of Lorraine King, Parker's friend, with respect to petitioner's angry and jealous behavior toward Parker in 2008; (6) the testimony of Birt Adams, Parker's friend, with respect to, *inter alia*, threatening statements and behavior on the part of petitioner on New Year's Eve of 2008; (6) the testimony of Cheryl Hall-Clark, Parker's friend, with respect to (a) petitioner's angry, confrontational, and jealous behavior toward Parker around 2002 at Parker's workplace, (b) Parker's statements that petitioner "forced himself upon ... Parker sexually," and accused Parker of cheating on him, (c) Hall-Clark's awareness that Parker was attempting to end her relationship with petitioner due to his behavior, (d) the fact that Parker left her cellular phone open and connected when petitioner came to her residence, so that Hall-Clark could hear what was occurring as a safety measure; (7) prior domestic incident reports from February 2008 and June 2008; and (8) voicemail messages left by Parker on petitioner's cellular phone. Dkt. No. 8-5 at SR 937-948, Prosecution's Motion in Limine. As the Appellate Division explained, much of the prosecution's proffer was excluded, including Vessels' proposed testimony in its entirety. *See* Dkt. No. 9-6 at 215, Trial Transcript.

14    In his reply, petitioner argues that several of the details to which Owens testified concerning the occasion in 2001 on which petitioner choked her and threatened her were not included in her police statement generated in 2001. Reply at 23. Petitioner argues that Owens' testimony was therefore "perjured" and the subject of "rehearsal." *Id.* Petitioner's contentions in this regard are entirely conclusory and speculative, and afford him no basis for habeas relief. The Court notes only that trial counsel throughly cross-examined Owens with respect to the fact that certain details of her testimony were not memorialized in her earlier police statement. Dkt. No. 9-6 at 96-103, Trial Transcript.

15    Moreover, as discussed above, petitioner does not assert in his petition that appellate counsel rendered ineffective assistance for failing to advance his Confrontation Clause claims on direct appeal.

16    In any event, for the reasons set forth in the Government's memorandum of law, the Court concludes that Petitioner's claim is lacking in merit. Dkt. No. 7-1 at 44-45. As the Government correctly observes, the record does not support the conclusion that the victim's statements to her friends and family regarding petitioner (as testified to by those individuals, who were subject to cross-examination) were testimonial in nature. "It is the testimonial character of the statement that separates it from other hearsay that, while subject to traditional limitations upon hearsay evidence, is not subject to the Confrontation Clause." *Davis v. Washington*, 547 U.S. 813, 821 (2006). Here, there is no indication that the declarant (i.e., the victim) had any reasonable expectation that her statements, made to friends and family outside the context of any proceeding, investigation, or formal complaint, would be used in future judicial proceedings. *See United States v. Saget*, 377 F.3d 223, 228-230 (2d Cir. 2004); *see generally Giles v. California*, 554 U.S. 353, 376 (2008) (noting that "only *testimonial* statements are excluded by the Confrontation Clause[, and s]tatements to friends and neighbors about abuse and intimidation ... would be excluded, if at all, by hearsay rules"). The Court notes that, as the Appellate Division concluded, the testimony at issue was admissible for nonhearsay purposes. *Burkett*, 101 A.D.3d at 1472 n.4 ("While some of the background information consisted of hearsay statements of the victim or was based thereon, no hearsay objections were raised during trial but, in any event, the testimony was admissible on the issue of the victim's state of mind related to and fear of defendant and to explain her behavior toward him.") (citation omitted). Petitioner is not entitled to habeas relief on this basis.

17    "A person is guilty of manslaughter in the second degree when ... [h]e recklessly causes the death of another person." Penal Law § 125.15(1).

18    *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *see Richardson v. Greene*, 497 F.3d 212, 217 (2d Cir. 2007) (holding that if the court denies a habeas petition on procedural grounds, "the certificate of appealability must show that jurists of reason would find debatable two issues: (1) that the district court was correct in its procedural ruling, *and* (2) that the applicant has established a valid constitutional violation" (emphasis in original)).

---

End of Document                                    © 2018 Thomson Reuters. No claim to original U.S. Government Works.

2008 WL 2971768
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Fred CHARLEMAGNE, Petitioner,
v.
Glen S. GOORD, Commissioner and Brian
Fisher, Superintendent, Respondents.

No. 05 Civ. 9890(DAB)(HBP).
|
June 30, 2008.

**Opinion**

*REPORT AND RECOMMENDATION*

PITMAN, United States Magistrate Judge.

**\*1** TO THE HONORABLE DEBORAH A. BATTS,
United States District Judge,

I. *Introduction*

Petitioner Fred Charlemagne seeks, by his *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, an Order vacating the sentence and judgment of conviction imposed on June 15, 2001 after a jury trial, by the Supreme Court of the State of New York, New York County (Sudolnik, J.), for one count of burglary in the second degree and one count of possession of burglar's tools, in violation of New York Penal Law Sections 140.25(2) and 140.35, respectively. As a result of that conviction, petitioner was adjudicated as a persistent violent felony offender and sentenced to concurrent terms of imprisonment of seventeen years to life on the burglary charge and one year on the possession-of-burglar's-tools charge. Petitioner is currently incarcerated pursuant to that judgment.

For the reasons set forth below, I respectfully recommend that the petition be denied in its entirety.

II. *Facts*

A. *Facts Underlying Petitioner's Conviction*

At approximately 1:20 p.m. on Friday, November 3, 2000, Jeannie Liou and her boyfriend, David Chen, returned to Liou's studio apartment on the fifth floor of a six-story walk-up building on East 82nd Street in Manhattan (Tr. [1] 241-45, 247, 280, 283, 296-97, 332). Liou could not insert her key into the door lock because a piece in the cylinder area had been removed (Tr. 248-51, 283, 299, 303, 333). When Liou left the apartment the previous day, the lock had been in working condition (Tr. 291). After knocking on the door, Liou and Chen heard someone lock the door from inside the apartment (Tr. 248, 299-300). They then heard footsteps and a window "slam" (Tr. 259). One of the windows in Liou's apartment opened onto a fire escape leading to the sidewalk (Tr. 260-61).

While Liou called the police on her cell phone from the hallway, Chen ran downstairs and called 911 from his cell phone (Tr. 248-49, 254, 261, 284-85, 299-300, 325, 334). As Chen ran to the front of the apartment building, he saw petitioner and Jared Padilla running down the fire escape (Tr. 300, 308-09). His attention was caught by a silver cell phone one of the men was using because it was a phone Chen recognized from a prior job he had with a telephone company (Tr. 308-09, 317-18). When petitioner and Padilla reached the sidewalk, Chen was only three or four feet away and had an "excellent" view of their profiles (Tr. 307-08, 341). Chen saw that petitioner was Hispanic, had a moustache, and wore blue jeans, a black jacket, and a hat (Tr. 308, 311, 313-17, 335-36).

As petitioner and Padilla quickly walked away from the building, Chen followed them from a distance of about twenty paces and contemporaneously described what he was observing to a 911 operator (Tr. 300, 308, 320, 323, 338-39). Chen saw the men get into a taxicab at York Avenue and 81st Street and told the 911 operator that its medallion number was 3014 (Tr. 300-02, 320-21, 323). The cab remained at the intersection for about fifteen or twenty seconds before it turned onto 81st Street and Chen lost sight of it (Tr. 301, 323). About one to three minutes had elapsed from the time Chen saw petitioner on the fire escape until the time he lost sight of the cab (Tr. 324, 339, 343-44). Chen's attention was focused on petitioner this entire time (Tr. 324-25).

**\*2** While the foregoing events were occurring, Detective Thomas Mays was on plainclothes patrol in a taxicab with Sergeant Rippe and Police Officer Oldack (Tr. 351-52, 354-55, 379). The officers received a radio transmission

that a burglary had occurred and that two perpetrators had fled the scene in a cab bearing medallion number 3014 (Tr. 356). The officers went to First Avenue and 94th Street to look for the cab identified in the radio transmission (Tr. 357). Shortly thereafter, Detective Mays saw a cab with a medallion of 3D14 with two occupants in the back seat (Tr. 358). Mays believed this to be the cab identified in the radio call and believed and that the person who gave the description had mistaken the capital letter "D" for the number zero (Tr. 357-58, 361). [2]

Since they were in a taxicab, the officers asked for assistance from a marked unit, which directed the cab to stop (Tr. 358-59). With the cab pulled over, Detective Mays, Officer Oldack, and the other two officers from the marked car removed petitioner and Padilla from the taxi and handcuffed them (Tr. 355, 362-64).

A police car driven by Police Offer John Hubbert then brought Liou and Chen to the location of the stopped cab for a show-up identification (Tr. 302, 329, 342, 362). From about twenty to thirty feet away and while still in the backseat of the car, Chen identified petitioner and Padilla as the men he had scene running down the fire escape (Tr. 344-47). Chen was "[v]ery confident" about his identification of the men because of their clothes and because one of them had the same cell phone that had previously caught Chen's attention (Tr. 310, 330-31). When Chen made this identification, two or three uniformed and about three plainclothes officers were standing near petitioner and Padilla (Tr. 344-46). Chen also noticed that the two men were not wearing hats; in response to a request from Chen, an officer put a hat on petitioner (Tr. 329-30, 347). Chen then confirmed his identification of petitioner (Tr. 330).

After petitioner and Padilla were placed under arrest, Detective Mays recovered a pouch containing various tools from the floor of the cab on the side where petitioner had been seated (Tr. 364-65, 374-78). The pouch held a pair of locking pliers, which had been filed down to create a hook at the end, a file, needle-nosed pliers, two screwdrivers, and a large wood toothpick (Tr. 377, 388, 393). In addition, two cards of hard cardboard or plastic, known as "shims," were recovered from petitioner's back pocket, and three shims were recovered from a chain around petitioner's neck (Tr. 392-94). The pouch did not belong to the cab driver, and he did not know if it was in the cab prior to petitioner and Padilla's getting in (Tr. 364,

465, 467). Petitioner and Padilla denied that the pouch belonged to them (Tr. 365).

Later that day, Liou entered her apartment and discovered that numerous items had been moved (Tr. 251-52, 285). Initially, Liou thought that her laptop computer, minidisk player, camera, radio, and jewelry box with its contents were missing, but she later found these items on her futon sofa inside a duffle bag that had been stored in her kitchen (Tr. 252-53, 255-67, 285-87, 290-91). Liou did not know petitioner or Padilla and had not authorized either man to enter her apartment (Tr. 280-82).

### B. *The Suppression Hearing*
**\*3** On April 12, 2001, petitioner moved to suppress, *inter alia,* Chen's show-up identification of him on the ground that the show-up procedure was unduly suggestive. The Honorable James Yates, Justice of the Supreme Court of the State of New York, denied petitioner's motion, holding that the procedure used was "not unnecessarily suggestive" based on its temporal and geographic proximity to the crime and its necessity (H. [3] 55).

### C. *Petitioner's Trial*
On May 16, 2001, petitioner proceeded to trial before the Honorable Joan Sudolnik, Justice of the Supreme Court of the State of New York, and a jury. The prosecution established the facts set forth above; the defense presented no evidence. The jury subsequently returned verdicts of guilty on the charges of burglary in the second degree and possession of burglar's tools (Tr. 567-70).

Thereafter, petitioner was adjudicated a persistent violent felony offender and sentenced to concurrent terms of imprisonment of seventeen years to life on the burglary charge and one year on the possession of burglar's tools charge (S. [4] 5-13, 24-25).

### D. *Post-Conviction Proceedings*
Petitioner appealed his conviction to the Appellate Division, First Department, of the New York State Supreme Court. Petitioner's initial appellate brief, prepared by counsel, argued that the prosecutor violated petitioner's right to a fair trial by improperly commenting during summation that, "We are here because [petitioner] does have the right to a trial" (Brief for Defendant-

Appellant, dated June 2003 ("Pet.App.Div.Br.") at 15, annexed as Exhibit A to Declaration of Ashlyn Dannelly, Esq., dated April 18, 2006 ("Dannelly Decl.")). In his *pro se* supplemental brief, petitioner raised five additional claims, namely: (1) the admission of Chen's identification of petitioner was improper because it was the product of an unduly suggestive show-up procedure and not independently reliable, (2) the Trial Judge's jury instructions were deficient because she (a) failed to provide instructions to prospective and sworn-in jurors the first eight times they left the courtroom, (b) delivered an incomplete preliminary charge to the jury, and (c) gave an incomplete jury charge on the issue of evaluating inconsistent testimony, (3) petitioner's sentence was excessive and constitutes cruel and unusual punishment, (4) the prosecutor engaged in misconduct by (a) making improper remarks throughout trial, (b) vouching for Chen's credibility during summation, and (c) "per-sonalizing" his closing statement, and (5) trial counsel was ineffective for failing to (a) request that instructions be read to prospective and sworn-in jurors the first eight times they exited the courtroom, (b) object to the prosecutor's personalizing his closing statement, (c) object to the prosecutor's vouching for Chen's credibility, and (d) challenge for cause a potential juror who was a sheriff's deputy (Appellant's *Pro Se* Supplemental Brief, dated Feb. 17, 2004 ("Pet. *Pro Se* Br.") at 13, 22, 26, 28, 30, 31, annexed as Exhibit C to Dannelly Decl.).

**\*4** On May 18, 2004, the Appellate Division unanimously affirmed petitioner's conviction. *People v. Charlemagne,* 7 A.D.3d 396, 776 N.Y.S.2d 470 (1st Dep't 2004). It held that the prosecutorial misconduct claim based on the prosecutor's comment about petitioner's right to a trial was "unpreserved" for appellate review and it declined to review it in the interest of justice. The Appellate Division held in the alternative that "although the prosecutor's remarks could be viewed as improperly denigrating defendant's exercise of his right to proceed to trial ..., we find any error to be harmless in light of the court's curative actions and its final instructions to the jury, along with the overwhelming evidence of [petitioner's] guilt." *People v. Charlemagne, supra,* 7 A.D.3d at 396-97, 776 N.Y.S.2d at 471. Lastly, the Appellate Division "considered and rejected" petitioner's remaining claims. *People v. Charlemagne, supra,* 7 A.D.3d at 397, 776 N.Y.S.2d at 471.

Thereafter, petitioner requested leave to appeal to the New York Court of Appeals, which was denied on August 3, 2004. *People v. Charlemagne,* 3 N.Y.3d 672, 817 N.E.2d 828, 784 N.Y.S.2d 10 (2004).

### E. Petitioner's Claims

In his habeas corpus petition, petitioner asserts five claims: (1) Justice Yates improperly admitted Chen's identification testimony because it was the product of an unduly suggestive show-up procedure and not independently reliable, (2) the Trial Judge's jury instructions were deficient because she (a) failed to provide instructions to prospective and sworn-in jurors the first eight times they left the courtroom, (b) delivered an incomplete preliminary charge to the jury, and (c) gave an incomplete jury charge on the issue of evaluating inconsistent testimony, (3) his sentence was excessive and constitutes cruel and unusual punishment, (4) the prosecutor engaged in misconduct by (a) commenting on petitioner's right to a trial during summation, (b) making improper remarks throughout trial, (c) vouching for Chen's credibility during summation, and (d) "personalizing" his closing statement, and (5) trial counsel was ineffective for failing to (a) request that instructions be read to prospective and sworn-in jurors the first eight times they exited the court-room, (b) object to the prosecutor's personalizing his closing statement, (c) object to the prosecutor's improper vouching for Chen's credibility, and (d) challenge for cause a prospective juror who was a sheriff's deputy (Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody, dated Oct. 26, 2005 ("Habeas Pet.") ¶ 13 and annexed Exhibits). [5]

### III. *Analysis*

I shall first analyze the claim that respondent argues is procedurally barred from habeas review and then address the merits of the remaining claims.

### A. Procedural Bar

Respondent argues that the prosecutorial misconduct claim based on the prosecutor's comment regarding petitioner's right to a trial is procedurally barred from federal habeas review (Respondent's Memorandum of Law in Opposition to Petitioner's Application for a Writ of Habeas Corpus, dated Apr. 18, 2006 ("Resp.Mem.") at 27-32).

**\*5** A habeas petitioner's constitutional claim can be procedurally barred if it is not asserted in state court proceedings in accordance with state procedural requirements and the state courts rely on that violation of state procedural require ments to reject the claim. As the Court of Appeals for the Second Circuit has explained:

The independent and adequate state qround doctrine first arose in the context of direct appeals to the Supreme Court from final judqments of the state courts. Under that doctrine the Supreme Court "will not review a question of federal law decided by a state court if the decision of that court rests on a state law qround that is independent of the federal question and adequate to support the judqment." *Coleman v. Thompson,* 501 U.S. 722, 729, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). Moreover, "[t]his rule applies whether the state law qround is substantive or procedural." *Id.*

\* \* \*

The doctrine also applies in the context of federal courts reviewinq applications for a writ of habeas corpus% y(4)27 [I]nvoking principles of comity and federalism ... federal habeas courts faced with an independent and adequate state qround of decision defer in the same manner as does the Supreme Court on direct review. *Garcia v. Lewis,* 188 F.3d 71, 76-77 (2d Cir.1999). *See also Murden v. Artuz,* 497 F.3d 178, 191-92 (2d Cir.2007); *Cotto v. Herbert,* 331 F.3d 217, 239-41 (2d Cir.2003); *Rhaqi v. Artuz,* 309 F.3d 103, 106 (2d Cir.2002) ("[I]t is settled law that an independent and adequate state law qround for a state court conviction cannot be disturbed on habeas."), *citing Coleman v. Thompson,* 501 U.S. 722, 729-31 (1991); *Brown v. State of New York,* 04-CV-1087 (NG)(WP), 2006 WL 3085704 at \*2 (E.D.N.Y. Oct. 30, 2006) ("When a habeas corpus petitioner defaults a federal claim in state court ... by failing to preserve the claim for state appellate review ..., the independent and adequate state ground doctrine bars federal habeas corpus review."). Dismissal of a claim on the ground that consideration of the merits is precluded by an adequate and independent state procedural ground is appropriate where the last reasoned state court decision expressly relies on a state procedural bar:

In *Harris* [*v. Reed* ], 489 U.S. 255, 109 S.Ct. 1038, 103 L .Ed.2d 308 (1989)], the Court held that "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar." *Harris,* 489 U.S. at 263, 109 S.Ct. 1038 (internal quotation marks omitted). We apply the *Long*/*Harris* presumption to the last "reasoned state judgment" .... *See Ylst v. Nunnemaker,* 501 U.S. 797, 803, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991).

*Jones v. Stinson,* 229 F.3d 112, 118 (2d Cir.2000). *See also Galarza v. Keane,* 252 F.3d 630, 637 (2d Cir.2001) ("We have repeatedly stated that in order for federal habeas review to be procedurally barred, a state court must actually have relied on a procedural bar as an independent basis for its disposition of the case, and the state court's reliance on state law must be unambiguous and clear from the face of the opinion.").

**\*6** As long as the state court relies on a procedural bar as an independent basis for its decision, a claim will be procedurally barred on federal habeas review even where a state court addresses the merits of the claim in the alternative. As the Court of Appeals for the Second Circuit has noted:

This court has held that "federal habeas review is foreclosed when a state court has expressly relied on a procedural default as an independent and adequate state ground, even where the state court has also ruled in the alternative on the merits of the federal claim ." *Velasquez v. Leonardo,* 898 F.2d 7, 9 (2d Cir.1990); *Harris,* 489 U.S. at 264 n. 10, 109 S.Ct. at 1044 n. 10 ("[A] state court need not fear reaching the merits of a federal claim in an alternative holding."); *Wedra v. Lefevre,* 988 F.2d 334, 338-39 (2d Cir.1993).

*Glenn v. Bartlett,* 98 F.3d 721, 724 (2d Cir.1996). *See also Fama v. Comm'r of Corr. Servs.,* 235 F.3d 804, 810 (2d Cir.2000); *Robles v. Superintendent of Elmira Facility,* 07 Civ. 596(LBS), 2007 WL 2600857 at \*3 n. 3 (S.D.N.Y. Aug. 30, 2007); *Ashley v. Burge,* 05 Civ. 4497(JGK), 2006 WL 3327589 at \*5 n. 5 (S.D.N.Y. Nov. 3, 2006).

Finally, even where the last reasoned decision of the state court expressly rejects a federal constitutional claim on a state procedural ground, federal habeas corpus review

will not be precluded if (1) the state procedural ground is not independent and adequate, *see Jimenez v. Walker,* 458 F.3d 130, 138 (2d Cir.2006); *Monroe v. Kuhlman,* 433 F.3d 236, 241-42 (2d Cir.2006); *Cotto v. Herbert, supra,* 331 F.3d at 238-39, (2) there is cause for and prejudice from petitioner's failure to assert his claims in accordance with state procedural law, or (3) a failure to consider the claim would result in a fundamental miscarriage of justice. *Schlup v. Delo,* 513 U.S. 298, 324-27 (1995); *Coleman v. Thompson, supra,* 501 U.S. at 748-50; *Harris v. Reed,* 489 U.S. 255, 262 (1989); *Green v. Travis,* 414 F.3d 288, 294 (2d Cir.2005).

Here, the Appellate Division rejected petitioner's claim that the prosecution improperly commented on petitioner's right to a trial on an independent and adequate state law ground by stating:

> Since defendant did not request any further relief after his objections were sustained, his challenge to the prosecutor's summation remark concerning defendant's right to a trial is unpreserved (*People v. Medina,* 53 N.Y.2d 951, 424 N.E.2d 276, 441 N.Y.S.2d 442 (1981)), and we decline to review it in the interest of justice.

*People v. Charlemagne, supra,* 7 A.D.3d at 396, 776 N.Y.S.2d at 471. This holding was clearly based on New York's contemporaneous objection rule. *See* N.Y. C.P.L. § 470.05(2).[6] To preserve for appellate review a challenge to a prosecutor's comments during summation, this rule requires a defendant to timely object to such comments and, when those objections are sustained, seek a curative instruction or move for a mistrial. *People v. Medina,* 53 N.Y.2d 951, 953, 424 N.E.2d 276, 277, 441 N.Y.S.2d 442, 443 (1981); *see also Simpson v. Portuondo,* 01 Civ. 1379(BSJ)(AJP), 2001 WL 830946 at *11 (S.D.N.Y. July 12, 2001) ("Under New York law, in order to preserve his claims for appellate review, [petitioner] was required to raise his challenges to the prosecutor's alleged errors in summation by way of specific objections before the trial court, and, if his objections were sustained, seek further relief.").

**\*7** The record here reveals that defense counsel did not properly preserve this aspect of petitioner's prosecutorial misconduct claim because he did not request a curative

instruction or move for a mistrial after the Trial Judge sustained his objections to the prosecutor's comment:

> [PEOPLE]: So why are we here? Why do we have a judge, two lawyers, a stenographer? We are here because [petitioner] does have the right to a trial where he will see the evidence that's being use to-

> [DEFENSE]: Objection.

> THE COURT: Sustained. Don't comment.

> [PEOPLE]: The [petitioner] has the right to this procedure, ladies and gentlemen.

> [DEFENSE]: Objection.

> THE COURT: Sustained. Don't comment. Continue with your summation.

> [PEOPLE]: Very well.

(Tr. 525-26). The prosecutor then promptly finished his summation and defense counsel sought no further relief (Tr. 527).

Because the New York Court of Appeals denied petitioner leave to appeal without comment, *People v. Charlemagne, supra,* 3 N.Y.3d at 672, 817 N.E.2d at 828, 784 N.Y.S.2d at 10, the Appellate Division was the "last state court rendering a judgment" on this claim. *Harris v. Reed, supra,* 489 U.S. at 262; *see Ylst v. Nunnemaker,* 501 U.S. 797, 803 (1991) ("Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim [are presumed to] rest upon the same ground."). Thus, the Appellate Division's rejection of this claim gives rise to a procedural bar precluding federal habeas review if the court's reliance on New York's contemporaneous objection rule is "independent" of the merits of the federal claim and this state rule is an "adequate" basis for the court's decision. *Harris v. Reed, supra,* 489 U.S. at 260-61.

It is clear from the face of the Appellate Division's decision that its ruling rested on an "independent" state procedural ground. In rejecting petitioner's claim, the court stated that the claim was "unpreserved[.]" *People v. Charlemagne, supra,* 7 A.D.3d at 396, 776 N.Y.S.2d at 471. This language in no way implicated the merits of petitioner's claim of prosecutorial misconduct.

In addition, New York's contemporaneous objection rule is "adequate" to support the Appellate Division's decision. A state procedural rule is adequate if it is " 'firmly established and regularly followed' by the state in question." *Garcia v. Lewis, supra,* 188 F.3d at 77, *quoting Ford v. Georgia,* 498 U.S. 411, 423-24 (1991). New York courts routinely apply the contemporaneous objection rule in denying review of claims alleging prosecutorial misconduct during summation where defense counsel fails to request a curative instruction or move for a mistrial after objections to the prosecutor's remarks are sustained. *E. g., People v. Norman,* 40 A.D.3d 1130, 1131, 837 N.Y.S.2d 277, 279 (2d Dep't 2007) ("The defendant's contention that the prosecutor engaged in misconduct during summation is unpreserved for appellate review since he ... failed to seek curative instructions or move for a mistrial when his objections were sustained (*see* CPL 470.05(2)) [.]"); *People v. O'Henry,* 13 A.D.3d 470, 470, 785 N.Y.S.2d 715, 716 (2d Dep't 2004) ("The defendant's challenge to certain comments made by the prosecutor during summation is also unpreserved for appellate review, since the defense counsel failed to request curative instructions or move for a mistrial when the trial court sustained the defense counsel's objection (*see* CPL 47 0.05(2))[.]"); *People v. Powell,* 4 A.D.3d 489, 490, 771 N.Y.S.2d 678, 678 (2d Dep't 2004) ("The defendant's challenges to the prosecutor's summation are unpreserved for appellate review because he ... failed to seek further ameliorative action after certain objections were sustained[.]"). Thus, this aspect of petitioner's prosecutorial misconduct claim is procedurally barred from federal habeas review. *See Reardon v. Richardson,* 956 F.2d 391, 391-92 (2d Cir.1992) (*per curiam* ); *Eugene v. Payant,* 06-CV-6024 (SJF), 2007 WL 2116375 at *3 (E.D.N.Y. July 13, 2007).

**\*8** Petitioner can overcome this procedural bar if he can show "cause for" and "prejudice" from his state procedural default or that a failure to consider his federal claim will result in a "fundamental miscarriage of justice." *Coleman v. Thompson, supra,* 501 U.S. at 750. Cause for a state procedural default is established when a petitioner shows that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule[.]" *Murray v. Carrier,* 477 U.S. 478, 488 (1986). For example, "counsel's ineffectiveness in failing properly to preserve [a] claim for review in state court" may constitute cause for a procedural default. *Edwards v. Carpenter,* 529 U.S. 446, 451 (2000).

Here, petitioner does not make any showing of cause for his procedural default. Although petitioner advances a claim of ineffective assistance of trial counsel, this claim cannot constitute cause because it is not based on trial counsel's failure to preserve his claim of prosecutorial misconduct. *See Edwards v. Carpenter, supra,* 529 U.S. at 451-52; *Mileto v. Philips,* 03-CV-0353 (NPM), 2007 WL 1746249 at *7 (N.D.N.Y. June 13, 2007) (petitioner did not establish cause for procedural default of judicial bias claim where petitioner's federal ineffective-assistance claim was not based on trial counsel's failure to preserve the judicial bias claim). Because petitioner cannot show cause, I need not address whether he can show prejudice. *Levine v. Comm'r of Corr. Servs.,* 44 F.3d 121, 127 (2d Cir.1995); *Stepney v. Lopes,* 760 F.2d 40, 45 (2d Cir.1985) ("Since a petitioner who has procedurally defaulted in state court must show both cause and prejudice in order to obtain federal habeas review, we need not, in light of our conclusion that there was no showing of cause, reach the question of whether or not [petitioner] showed prejudice.").

Finally, petitioner does not and cannot show that a fundamental miscarriage of justice will result if his claim is not considered. "To establish a 'miscarriage of justice,' a petitioner must demonstrate that he is 'actually innocent.' " *Cruz v. Filion,* 456 F.Supp.2d 474, 481 (S.D.N.Y.2006), *quoting Aparicio v. Artuz,* 269 F.3d 78, 90 (2d Cir.2001). To sustain this burden, petitioner must offer "new reliable evidence ... that was not presented at trial." *Schlup v. Delo, supra,* 513 U.S. at 324. Petitioner has not offered any new evidence showing his actual innocence.

Accordingly, petitioner's claim of prosecutorial misconduct based on the prosecutor's comment during summation about petitioner's right to a trial should be dismissed as procedurally barred.

### B. *Merits*

I now turn to the merits of petitioner's non-barred claims

#### 1. *Standard of Review*

A habeas petitioner must meet a stringent standard before a federal court can issue the writ. Specifically, habeas relief may be granted only when the state court's decision:

**\*9** (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The Supreme Court has explained the alternative standards set of in the former paragraph as follows:

First, we have explained that a decision by a state court is "contrary to" our clearly established law if it "applies a rule that contradicts the governing law set forth in our cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent." *Williams v. Taylor,* 529 U.S. 362, 405-406, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). *See also Early v. Packer,* 537 U.S. 3, 7-8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002) (*per curiam* ) ....

Second, [petitioner] can satisfy § 2254(d) if he can demonstrate that the [State] Court's decision involved an "unreasonable application" of clearly established law. As we have explained:

> "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly. See *Bell v. Cone,* 535 U.S. 685, 698-699, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002); *Williams, supra,* at 411, 120 S.Ct. 1495. Rather, it is the habeas applicant's burden to show that the state court applied [that case] to the facts of his case in an objectively unreasonable manner."

*Woodford v. Visciotti,* 537 U.S. 19, 24-25, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002) (*per curiam* ).

*Price v. Vincent,* 538 U.S. 634, 640-41 (2003); *accord Brown v. Payton,* 544 U.S. 133, 139-40 (2005); *see also Lockyer v. Andrade,* 538 U.S. 63, 70-72 (2003); *Hawkins v. Costello,* 460 F .3d 238, 242-43 (2d Cir.2006); *Brown v. Artuz,* 283 F.3d 492, 500-01 (2d Cir.2002).

In addition to the definition of "unreasonable application" set forth above, a state court may unreasonably apply Supreme Court precedent "if the state court unreasonably extends a legal rule established by the Supreme Court or if it unreasonably fails to extend a legal rule to a context in which the rule reasonably should apply." *Serrano v. Fischer,* 412 F.3d 292, 296-97 (2d Cir.2005). "Unreasonableness is determined by an 'objective' standard." *Gersten v. Senkowski,* 426 F.3d 588, 607 (2d Cir.2005), *quoting Williams v. Taylor,* 529 U.S. 362, 409 (2000). In order for a state court's application of Supreme Court precedent to be unreasonable, "[s]ome increment of incorrectness beyond error" is required. *Henry v. Poole,* 409 F.3d 48, 68 (2d Cir.2005) (internal quotation marks omitted); *accord Brown v. Artuz, supra,* 283 F.3d at 500-01; *Aparicio v. Artuz, supra,* 269 F.3d at 94. However, "the increment need not be great; otherwise, habeas relief would be limited to state court decisions 'so far off the mark as to suggest judicial incompetence.' " *Francis S. v. Stone,* 221 F.3d 100, 111 (2d Cir.2000), *quoting Matteo v. Superintendent, SCI Albion,* 171 F.3d 877, 889 (3d Cir.1999) (*en banc* ); *accord Gersten v. Senkowski, supra,* 426 F.3d at 607.

**\*10** The nature of the rule in issue also impacts the assessment of the reasonableness of the state court's action.

> [W]hile very specific rules may not permit much leeway in their interpretation, the same is not true of more general rules, the meaning of which "must emerge in application over the course of time." [*Yarborough v. Alvarado,* 541 U.S. 652, 664 (2004) ]. "The more general the rule, the more leeway courts have in reaching outcomes in case by case determinations." *Id.*

*Serrano v. Fischer, supra,* 412 F.3d at 297; *see also Hawkins v. Costello, supra,* 460 F.3d at 243.

Both the "contrary to" and "unreasonable application" clauses "restrict[ ] the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams v. Taylor, supra,* 529 U.S. at 412. "That federal law, as defined by

2008 WL 2971768

the Supreme Court, may either be a generalized standard enunciated in the [Supreme] Court's case law or a bright-line rule designed to effectuate such a standard in a particular context." *Kennaugh v. Miller,* 289 F.3d 36, 42 (2d Cir.2002). "A petitioner can not win habeas relief solely by demonstrating that the state court unreasonably applied Second Circuit precedent." *Yung v. Walker,* 341 F.3d 104, 110 (2d Cir.2003); *accord DelValle v. Armstrong,* 306 F.3d 1197, 1200 (2d Cir.2002).

To be entitled to the deferential standard of review under subsection 2254(d), the state courts must have resolved the petitioner's claims "on the merits." *Cotto v. Herbert, supra,* 331 F.3d at 230; *see also Ryan v. Miller,* 303 F.3d 231, 245 (2d Cir.2002) ("[I]n order for this deferential standard of § 2254 to apply, we must first determine that the state court considered [petitioner's claim] on its merits."); *Sellan v. Kuhlman,* 261 F .3d 303, 309-10 (2d Cir.2001).

The Second Circuit has instructed habeas courts to "classify" a state court decision as either: (1) "fairly appearing to rest primarily on federal law or to be interwoven with federal law"; or (2) "fairly appearing to rest primarily on state procedural law." *Jimenez v. Walker, supra,* 458 F.3d at 145. "If the state court's decision falls into the first category, and does not 'contain a clear statement of reliance on a state procedural bar,' the decision must be treated as having been made on the merits." *Mateo v. Fishkill Corr. Facility,* CV-04-3420 (DGT), 2007 WL 2362205 at *5 (E.D.N.Y. Aug. 14, 2007), *quoting Jimenez v. Walker, supra,* 458 F.3d at 138. To make this classification, habeas courts in this circuit examine "(1) the face of the state-court opinion, (2) whether the state court was aware of a procedural bar, and (3) the practice of state courts in similar circumstances." *Jimenez v. Walker, supra,* 458 F.3d at 145 n. 16.

Here, upon examining these three factors, I conclude that the Appellate Division adjudicated the merits of petitioner's remaining non-barred claims by stating it had "considered and rejected the claims contained in defendant's *pro se* supplemental brief." *People v. Charlemagne, supra,* 7 A.D.3d at 397, 776 N.Y.S.2d at 471. It is clear from this language that the Appellate Division rejected these claims "on the merits." *Francolino v. Kuhlman,* 365 F.3d 137, 141 (2d Cir.2004) (Appellate Division adjudicated merits by stating that it had "considered and rejected [petitioner's] remaining claims"); *see also Wade v. Herbert,* 391 F.3d 135, 140-42 (2d

Cir.2004) (Appellate Division adjudicated merits where it held that "[t]he [petitioner's] remaining contentions are without merit"). Lastly, the fact that the Appellate Division did not explicitly refer to specific provisions of the federal Constitution or relevant federal case law is of no moment. *See Sellan v. Kuhlman, supra,* 261 F.3d at 312 (noting that a state court decision may be deemed on the merits "even if the state court does not explicitly refer to ... relevant federal case law"); *Cheng Kanq Shi v. Connolly,* 06 CV 2093(NG) (RLM), 2007 WL 4380276 at *6 (E.D.N.Y. Dec. 13, 2007) ("AEDPA's deferential standard of review applies even if the state court did not explicitly refer to either the federal claim or to relevant federal case law.") (internal quotation marks omitted).

**\*11** Because petitioner's remaining claims where adjudicated on the merits, I must afford the Appellate Division's decision on these claims the deferential standard of review set forth in 28 U.S.C. § 2254(d).

### 2. *Show-Up Identification*

Petitioner first claims that his due process right to a fair trial was violated by the admission of Chen's identification of him because this identification arose from an unduly suggestive show-up procedure and was not independently reliable (Habeas Pet. ¶ 13; Petitioner's Memorandum of Law in Support of Habeas Petition, dated July 14, 2006 ("Pet.Mem.") at 6-7, 10-16).

#### a. *Suggestiveness of Show-Up Procedure*

The principles applicable to a claim of unduly suggestive identification procedures were comprehensively set forth in *Raheem v. Kelly,* 257 F.3d 122, 133 (2d Cir.2001):

Due process requires that criminal trials "proceed consistently with 'that fundamental fairness' which is 'essential to the very concept of justice.'" *Dunnigan v. Keane,* 137 F.3d 117, 125 (2d Cir.) (quoting *Lisenba v. California,* 314 U.S. 219, 236, 62 S.Ct. 280, 86 L.Ed. 166 (1941)), *cert. denied,* 525 U.S. 840, 119 S.Ct. 101, 142 L.Ed.2d 81 (1998). When the prosecution offers testimony from an eyewitness to identify the defendant as a perpetrator of the offense, fundamental fairness requires that that identification testimony be reliable. *See, e.g., Manson v. Brathwaite,* 432 U.S. 98, 112-14, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); *id.* at 114, 97 S.Ct. 2243 ("reliability is the linchpin in determining the admissibility of identification testimony"); *see also*

*Watkins v. Sowders,* 449 U.S. 341, 347, 101 S.Ct. 654, 66 L.Ed.2d 549 (1981) ("It is the reliability of identification evidence that primarily determines its admissibility ....").

When the defendant objects to identification testimony to be given by a witness who has identified him prior to trial, a sequential inquiry is required in order to determine whether either the prior identification or an in-court identification of the defendant at trial is admissible. The court must first determine whether the pretrial identification procedures unduly and unnecessarily suggested that the defendant was the perpetrator.... If the procedures were not suggestive, the identification evidence presents no due process obstacle to admissibility, *see, e.g., Jarrett v. Headley,* 802 F.2d 34, 42 (2d Cir.1986) .... If the court finds, however, that the procedures were suggestive, it must then determine whether the identification was nonetheless independently reliable.... In sum, the identification evidence will be admissible if (a) the procedures were not suggestive or (b) the identification has independent reliability. *See, e.g., Manson v. Brathwaite,* 432 U .S. at 114, 97 S.Ct. 2243; *Neil v. Biggers,* 409 U.S. 188, 199, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); *United States v. Salameh,* 152 F.3d 88, 126 (2d Cir.1998), *cert. denied,* 525 U.S. 1112, 119 S.Ct. 885, 142 L.Ed.2d 785 (1999).

**\*12** *See also Kennaugh v. Miller, supra,* 289 F.3d at 43-44; *United States v. Wong,* 40 F.3d 1347, 1359 (2d Cir.1994); *Williams v. Ercole,* 06 Civ. 0044(RPP), 2007 WL 1052446 at *3 (S.D.N.Y. Apr. 6, 2007); *Valtin v. Hollins,* 248 F.Supp.2d 311, 317-18 (S.D.N.Y.2003); *Smith v. Smith,* 02 Civ. 7308(WHP)(JCF), 2003 WL 22290984 at *7-*8 (S.D.N.Y. Sept. 29, 2003).

Although show-up identifications of the type utilized here are disfavored, they are not *per se* unduly suggestive. *Stovall v. Denno,* 388 U.S. 293, 302 (1967), *overruled on other grounds, Griffith v. Kentucky,* 479 U.S. 314 (1987). The fruits of such an identification will be excluded "only if [the identification] was *both* produced through an unnecessarily suggestive procedure *and* [was] unreliable." *United States v. Bautista,* 23 F.3d 726, 729 (2d Cir.1994); *see United States v. Ciak,* 102 F.3d 38, 42 (2d Cir.1996). "[W]hether [an] identification procedure was unnecessarily suggestive depends on (1) [the] suggestiveness of the procedure and (2)[the] necessity of [the] procedure." *United States v. Bautista, supra,* 23 F.3d at 730, *citing United States v. Stevens,* 935 F.2d 1380,

1389 (3rd Cir.1991). "If the pretrial procedures were not suggestive, any remaining questions as to reliability ... go to the weight of the identification and not to its admissibility, and the identification therefore is generally admissible without any further reliability inquiry." *United States v. Thai,* 29 F.3d 785, 808 (2d Cir.1994); *see United States v. Matthews,* 20 F.3d 538, 547 (2d Cir.1994).

In this case, the show-up procedure was neither suggestive nor unnecessary. Petitioner first argues that the procedure was tainted because he was in handcuffs and surrounded by police vehicles and two or three uniformed and three plainclothes police officers when Chen identified him (Pet. Mem. at 14, 16-17; Pet.App. Div. Br. at 14). This argument is unavailing as numerous courts have held that show-ups held under similar circumstances were not unduly suggestive. *E.g., United States v. Bautista, supra,* 23 F.3d at 730 (defendant in handcuffs, at night, in police custody and illuminated by flashlights); *Jones v. West,* 473 F.Supp.2d 390, 418 (W.D.N.Y.2007) (defendant in handcuffs accompanied by at least one police officer); *Goston v. Rivera,* 462 F.Supp.2d 383, 389 (W.D.N.Y.2006) (defendant in handcuffs sitting in police car); *Tobias v. Portuondo,* 367 F.Supp.2d 384, 391-92 (W.D.N.Y.2004) (defendant in handcuffs sitting in police car); *Mendoza v. McGinnis,* 03 Civ. 2598(DC), 2004 WL 736894 at *6 (S.D.N.Y. Apr. 5, 2004) (defendant in handcuffs and "scuffling" with police); *Michael v. Portuando,* 99-CV-3195 (JG), 2002 WL 1732813 at *8 (E.D.N.Y. July 23, 2002) (defendant is handcuffs in police custody); *United States v. Ortiz,* 99 Cr. 532(DC), 2000 WL 37998 at *1 (S.D.N.Y. Jan. 18, 2000) (defendant in handcuffs, next to police car and accompanied by uniformed police officers).

**\*13** Petitioner next contends that the show-up was tainted because he was shown alongside Padilla (Pet.App. Div. Br. at 14, 16-17). Courts have also squarely rejected such contentions, holding that a show-up is not rendered unduly suggestive by showing several suspects to a witness simultaneously. *E.g., United States v. Butler,* 970 F.2d 1017, 1021 (2d Cir.1992); *United States ex rel. Cummings v. Zelker,* 455 F.2d 714, 715-16 (2d Cir.1972); *Williams v. Ercole, supra,* 2007 WL 1052446 at *4; *McBride v. Senkowski,* 98 Civ. 8663(MBM), 2002 WL 523275 at *5 (S.D.N.Y. Apr. 8, 2002); *United States v. Ortiz, supra,* 2000 WL 37998 at *1; *People v. Brown,* 288 A.D.2d 152, 152-53, 733 N.Y.S.2d 182, 183-84 (1st Dep't 2001); *People v. Bumbray,* 259 A.D.2d 364, 364, 688 N.Y.S.2d 9, 9 (1st Dep't 1999).

Relying on *Brisco v. Phillips,* 376 F.Supp.2d 306 (E.D.N.Y.2005), petitioner further argues that the police improperly aggravated the suggestiveness of the show-up by putting petitioner's hat on him, which, according to petitioner, elicited Chen's identification (Pet. Mem. at 1, 9-14). In *Brisco,* during a show-up procedure, police instructed a burglary suspect to hold a pair of maroon shorts near his waist as if he were wearing them. The shorts matched a description of the perpetrator's clothing that the victim had given to police. Although not handcuffed, the suspect was surrounded by police officers and two marked police vehicles while he stood in the victim's driveway. From inside her house, the victim identified the suspect as the perpetrator primarily on the basis of the maroon shorts. The court held that the show-up was impermissibly suggestive under these circumstances. *Brisco v. Phillips, supra,* 376 F.Supp.2d at 314.

While the words or actions of the police may render a show-up procedure "so unnecessarily suggestive and conducive to irreparable mistaken identification that [the defendant is] denied due process of law[,]" *Stovall v. Denno, supra,* 388 U.S. at 302, petitioner's argument and his reliance on *Brisco* are unpersuasive. "[P]olice suggestiveness does not require the suppression of an identification if the witness was not thereby influenced, as, for example, when the witness's identification was already positive." *Jarrett v. Headley,* 802 F.2d 34, 41-42 (2d Cir.1986). Unlike in *Brisco* where the maroon shorts played a significant role in the witness's identification of the suspect, here, the hat played no role in Chen's initial identification of petitioner. Chen arrived at the show-up location in the back of a police car [7] and, before exiting the car, which was about thirty feet from petitioner, and before police put petitioner's hat on him, Chen immediately identified petitioner as one of the men he saw descending the fire escape (Tr. 329, 346-47). Thus, the police's conduct did not influence Chen at all. *See Cannon v. Graham,* 06 Civ. 1175(AKH), 2006 WL 3486803 at *5 (S.D.N.Y. Oct. 31 2006) (no suggestive police conduct during show-up where "[complainant] instantly identified petitioner while petitioner was seated at a desk, twenty feet away, with no initial police prompting or suggestion").

**\*14** Although the court in *Brisco* found that "the act of compelling the [suspect] to hold up maroon shorts in front of him as he stood there in the company of three uniformed police officers could only have been designed

to insure a positive identification[,]" *Brisco v. Phillips, supra,* 376 F.Supp.2d at 315, the record here does not contain any evidence that the officers put petitioner's hat on him in an attempt to elicit a positive identification from Chen. The police put the hat on petitioner only after Chen identified petitioner and after Chen exited the car and asked where the hat was (Tr. 330, 347). At that moment, police retrieved the hat, which had previously fallen off, and placed it on petitioner; Chen then reiterated his initial positive identification of petitioner (Tr. 330).

Petitioner next argues that there "was no justification for a show-up rather than a line-up" (Pet.App. Div. Br. at 15). This argument fails because the circumstances here made it necessary to use a show-up procedure. Chen called 911 almost immediately after he realized that the perpetrators of the burglary were still inside the apartment (Tr. 299-300). The police were then promptly notified that a burglary had occurred and the perpetrators had fled (Tr. 356). When police apprehended petitioner and Padilla, prompt identification of them was necessary to ensure that the officers had found the correct individuals before the trail had grown cold. Since the alternative of a formal line up would have required transporting petitioner and Padilla to the precinct and securing the presence of an appropriate number of "fillers" who had characteristics similar to these individuals, it would necessarily have taken hours to arrange. If petitioner and Padilla were not the individuals involved in the burglary, this time lag would have all but ensured the successful escape of the guilty parties. Given all these factors, it was essential for law enforcement to take the most expeditious steps possible to ensure that the persons in custody were, in fact, the persons sought. As noted in *James v. Senkowski,* 97 Civ. 3327(DLC), 1998 WL 217903 at *7 (S.D.N.Y. Apr. 29, 1998):

> "[P]rompt confrontation [is] desirable because it serve[s] to insure 'the immediate release of an innocent suspect and at the same time [to] enable the police to resume the search for the fleeing culprit while the trail is still fresh.' " *United States ex rel. Cummings v. Zelker,* 455 F.2d 714, 716 (2d Cir.), *cert. denied,* 406 U.S. 913, 92 S.Ct. 1800, 32 L.Ed.2d 128 (1972). Accordingly, "it is now settled law that prompt on-the-

scene confrontation is 'consistent with good police work' and does not offend the principles established in *United States v. Wade." United States ex rel. Cummings v. Zelker,* 455 F.2d at 716 (citing, *inter alia, United States v. Sanchez,* 422 F.2d 1198, 1200 (2d Cir.1970)).

See also *United States v. Bautista, supra,* 23 F.3d at 730; *United States v. Nelson, supra,* 931 F.Supp. at 199-200; *Williams v. Ercole, supra,* 2007 WL 1052446 at *4; *Valtin v. Hollins, supra,* 248 F.Supp.2d at 318 (rejecting petitioner's argument that police should have conducted line-up instead of a show-up because "the show-up constituted a desirable, prompt, on-the-scene confrontation that served to insure that [petitioner] was the same person described by [complainant] who allegedly had just robbed [complainant].").

**\*15** Lastly, the fact that the show-up occurred within thirty minutes of the burglary and only eighteen blocks from the scene of the crime (Tr. 329) further suggests that the procedure was not unduly suggestive and was, instead, the product of effective police work. *See Francischelli v. Potter,* 03-CV-6091 (ENV), 2007 WL 776760 at *6 (E.D.N.Y. Mar. 12, 2007) ("The show-up identification's advantages are most pronounced when it takes place in close temporal and geographic proximity to the crime."); *Mendoza v. McGinnis, supra,* 2004 WL 736894 at *6 ("Indeed, show-up identifications that occur in temporal and geographic proximity to the crime have generally been found constitutionally permissible and not unduly suggestive."), *citing, inter alia, United States v. Butler, supra,* 970 F.2d at 1021.

### b. *Reliability of Show-Up Identification*

Even if the show-up had been unduly suggestive, I conclude that Chen's identification of petitioner would, nevertheless, be admissible because it was independently reliable. The factors relevant to assessing the reliability of identification testimony include "[1] the opportunity of the witness to view the criminal at the time of the crime, [2] the witness' degree of attention, [3] the accuracy of the witness' prior description of the criminal, [4] the level of certainty demonstrated by the witness at the confrontation, [5] and the length of time between the crime and the confrontation." *Neil v. Biggers,* 409 U.S. 188, 199-200 (1972).

First, Chen had a substantial opportunity to view petitioner after the burglary. Although Chen did not see petitioner in Liou's apartment during the crime, he heard someone lock the apartment door from the inside and heard what sounded like a window opening or closing (Tr. 299-300, 334). Chen immediately ran outside the apartment and saw petitioner and Padilla descending the fire escape of the building (Tr. 300-01). Chen testified that there was nothing obstructing his view of these men and that he had an "excellent" profile view of petitioner as he climbed down the ladder (Tr. 306, 308). Chen further testified that he was only three to four feet away from petitioner as he stepped off the ladder and onto the sidewalk (Tr. 307). As petitioner and Padilla quickly walked away, Chen followed them and remained twenty paces behind for about two to three minutes (Tr. 320, 324, 337). Chen also testified that he was wearing his contacts on this day and that he has 20/20 vision when wearing them (Tr. 303-04).

Second, Chen's degree of attention was high. As Chen followed petitioner and Padilla down the street, he focused solely on these two men as he described what he saw to a 911 operator (Tr. 320, 324-25). Chen's attention was heightened because he noticed that petitioner was talking on a silver cellular phone with which Chen was familiar and he was surprised that petitioner had such a high-end phone (Tr. 317-18, 336-37, 402-05).

Third, Chen also provided an accurate description of petitioner prior to the show-up, describing petitioner as Hispanic and wearing a hat, blue jeans, and a black jacket (Tr. 308, 313-14, 316-17, 335).

**\*16** Fourth, Chen testified that at the time of the show-up he was "[v]ery confident" that petitioner was the man he saw climbing down the fire escape (Tr. 330). Chen's high level of confidence is corroborated by the testimony of Officers May and Huber, who stated that Chen had no problem identifying petitioner at the show-up (H.31, 38-39).

Lastly, the short interval of time between the burglary and the show-up-approximately thirty minutes (Tr. at 329)-is further evidence that the identification was reliable. *See United States ex rel. Cummings v. Zelker, supra,* 455 F.2d at 717 (one hour); *James v. Marshall,* CV-05-1992 (BMC)

(MDG), 2007 WL 3232513 at *13 (E.D.N.Y. Oct. 31, 2007) (forty-five minutes).

In sum, the show-up procedure used to identify petitioner was not unduly suggestive and Chen's identification of petitioner at the show-up was independently reliable. Thus, the Appellate Division's holding that the hearing court properly admitted Chen's identification evidence was not contrary to or an unreasonable application of clearly established Supreme Court precedent.

### 3. Jury Instructions

Petitioner next attacks the Trial Judge's jury instructions in three respects. First, petitioner claims that the Trial Judge deprived him of his due process rights by failing to provide adequate jury instructions at various points during his trial. Specifically, petitioner asserts that the Trial Judge did not "give ANY INSTRUCTION [sic] to prospective jurors and sworn-in jurors the first eight times they left the Courtroom" (Pet. *Pro Se* Br. at 26) (caps in original). Second, petitioner claims that the Trial Judge failed to give complete preliminary instructions pursuant to New York Criminal Procedure Law Section 270.40 (Pet. *Pro Se* Br. at 26-27). Third, petitioner claims that the Trial Judge violated his due process right to a fair trial by refusing to supplement his incomplete jury charge on evaluating inconsistent testimony with language from New York's Criminal Jury Instructions ("CJI") (Pet. *Pro Se* Br. at 22-26). Respondent contends that these claims do not warrant habeas relief (Resp. Mem. at 19-23).

To warrant habeas relief based on an erroneous state jury instruction, "it must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment." *Cupp v. Naughten,* 414 U.S. 141, 146 (1973); *accord Davis v. Strack,* 270 F.3d 111, 123 (2d Cir.2001); *Smalls v. Batista,* 191 F.3d 272, 277 (2d Cir.1999). In addition,

> [t]he burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal. The question in such a collateral proceeding is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process" ....

**\*17** *Henderson v. Kibbe,* 431 U.S. 145, 154 (1977); *accord Estelle v. McGuire,* 502 U.S. 62, 72 (1991); *DelValle v. Armstrong, supra,* 306 F.3d at 1201; *Roy v. Coxon,* 907 F.2d 385, 391 (2d Cir.1990). Moreover, petitioner bears an "especially heavy" burden in demonstrating constitutional error based on an omission because an "an omission, or an incomplete [jury] instruction, is less likely to be prejudicial than a misstatement of law." *Henderson v. Kibbe,* 431 U.S. 145, 155 (1977); *accord Blazic v.. Henderson,* 900 F.2d 534, 542 (2d Cir.1990). Thus, to succeed on this claim, petitioner must show that the Trial Judge's omission of certain jury instructions or the incomplete nature of his preliminary instructions (1) violated New York law and (2) resulted in a deprivation of his right to due process. *See Davis v. Strack, supra,* 270 F.3d at 123; *Manson v. Haponik,* 05-CV-3412 (BMC), 2007 WL 2077895 at *4 (E.D.N.Y. July 18, 2007).

Here, petitioner does not show how the Trial Judge's failure to give instructions to prospective jurors and sworn jurors the first eight times they left the courtroom violated any provision of New York law, much less how it deprived him of his due process rights. Petitioner does not allege what instructions the Trial Judge should have provided. Additionally, the points at which petitioner claims the Trial Judge should have provided instructions (Tr. 87, 108, 132, 143, 179, 212, 220) all took place before opening statements and before any evidence was presented. Thus, petitioner fails to show how he was prejudiced in any manner, and my reading of the transcript suggests none.

Similarly, petitioner's claim that the Trial Judge failed to provide complete preliminary jury instructions pursuant to New York Criminal Procedure Section 270.40 [8] is without merit. The Trial Judge did not fully comply with Section 270.40 because he failed to admonish the jury that it was prohibited from taking payment in exchange for information about the trial (Tr. 221-225). However, an error of state law in a jury instruction does not, *ipso facto,* provide a basis for federal habeas relief. *Estelle v. McGuire, supra,* 502 U.S. at 71. The issue is whether the omission of this one instruction "so infected the entire trial that the resulting conviction violate[d] due process." *Cupp v. Naughten, supra,* 414 U.S. at 147.

As part of the preliminary charge, the Trial Judge instructed the jurors not to converse among themselves or with anyone else upon any subject connected with

the trial and to report to the court any incidents of any person attempting improperly to influence any jury member (Tr. 224-25). Given these instructions, it follows by implication that the jurors were aware of their obligation not to exchange information concerning the trial for payment. I may assume that the jury followed the Trial Judge's instructions. *Chalmers v. Mitchell,* 73 F.3d 1262, 1267 (2d Cir.1996) ("We assume that a jury applies the instructions it is given."). Moreover, there is no evidence that the jury engaged in such conduct. Thus, the Trial Judge's failure to comply perfectly with Section 270.40 did not prejudice petitioner and did not violate his constitutional due process rights. *See Ortiz v. Lefevre,* 89 Civ. 6553(MJL), 1990 WL 100889 at *1-*2 (S.D.N.Y. July 9, 1990) (habeas relief not warranted notwithstanding trial judge's failure to deliver four mandatory admonitions to the jury required by N.Y.Crim. Proc. L. § 270.40 because there was no evidence that jury was improperly influenced or that petitioner was prejudiced by trial judge's omissions).

**\*18** Lastly, the Trial Judge's refusal to use the language from the CJI to supplement the jury charge does not warrant habeas relief.

During summation, defense counsel argued that Chen provided inconsistent testimony about the color and overall appearance of petitioner's jacket (Tr. 489-92). In his charge to the jury, the Trial Judge instructed the jury that "in performing a function for determining what the facts are and where the truth lies, it is necessary for you to evaluate the testimony of each witness in order to determine the credibility of each witness and the weight that should be given to their testimony" (Tr. 536). The Trial Judge then charged the jury that they had "a right to apply all the tests and all the considerations and all the common sense which you would ordinarily apply in your everyday lives in judging the credibility of statements made to you and whether or not the person making those statements is telling you the truth" (Tr. 536-37). Most importantly, the Trial Judge also instructed:

> You may consider whether a witness's testimony is consistent or inconsistent with that witness's previous testimony or statements, if any, were given ... [and] whether a witness's testimony is supported or contradicted by other evidence....

> You are not bound to take the testimony of any witnesses as being absolutely true or absolutely false.

> You may accept some of a witness's testimony as true and find some [of] it to be false or all of it to be [the] truth....

> Whenever any inconsistencies appear in the testimony of a witness, it is your duty to reconcile them if you are honestly able to do so.

> You are not to reject arbitrarily the testimony of any witness. You should consider the testimony of every witness carefully and determine whether you will accept or reject it in whole or in part.

(Tr. 537-39). After the Trial Judge charged the jury, defense counsel took exception to the instructions (Tr. 564). Defense counsel requested the Trial Judge to use the language in the CJI instructing the jury that it could disregard those portions of a witness's inconsistent testimony that it deemed false, exaggerated, or mistaken and accept those portions that it deemed true (Tr. 564-65; *see also* Pet. *Pro Se* Br. at 23). In denying this request, the Trial Judge stated that, "[T]he charges as a whole properly instruct[ed] the jury as to how to evaluate testimony" (Tr. 565).

In support of his argument that the charge was erroneous, petitioner cites *People v. Holmes,* 215 A.D.2d 163, 626 N.Y.S.2d 154 (1st Dep't 1995). In *Holmes,* the trial judge's charge concerning inconsistencies in the testimony consisted of only the following statement: "It is your responsibility, indeed your duty, ladies and gentlemen, to reconcile any inconsistencies in the evidence[.]" *People v. Holmes, supra,* 215 A.D.2d at 164-65, 626 N.Y.S.2d at 155 (internal quotation marks omitted). The Appellate Division held that this charge was erroneous, stating:

> **\*19** Thus, [the jury was] virtually given a command that inconsistencies in the testimony should be disregarded. The court charged the jury: "It is your responsibility, indeed your duty, ladies and gentlemen, to reconcile any inconsistencies in the evidence", and simply went on to the next subject. *The court completely omitted the standard qualifying phrase given with this instruction, "if you are honestly able to do so".* It also omitted the rest of the usual language about finding conflicting testimony that cannot be reconciled, and therefore disregarding the portion the jury deems false, exaggerated, or mistaken and accepting the portion deemed true.

*People v. Holmes, supra,* 215 A.D.2d at 164-65, 626 N.Y.S.2d at 155 (emphasis added). Petitioner contends that the instructions here were deficient because the Trial Judge also refused to include this "usual language" into the charge (Pet. *Pro Se* Br. at 24).

Petitioner's reliance on *Holmes* is unavailing. As the excerpt quoted above demonstrates, the Trial Judge charged the jury that "[w]henever any inconsistencies appear in the testimony of a witness, it is your duty to reconcile them *if you are honestly able to do so"* (Tr. at 539) (emphasis added). Thus, the Trial Judge here simply did not commit the error that was the basis for the decision in *Holmes.* The Trial Judge here went on to instruct the jury that it could find that a witness's testimony was truthful or false in whole or in part and that it could accept or reject such testimony in whole or in part. Contrary to petitioner's argument, it appears that the Trial Judge here was aware of the decision in *Holmes* and deliberately crafted the charge to avoid the deficiencies cited in *Holmes.* Thus, petitioner has failed to demonstrate that the charge was failed to comply with the requirements of state law.

Petitioner also fails to meet his burden of establishing that the challenged jury charge violated his due process rights. *See DelValle v. Armstrong, supra,* 306 F.3d at 1200-01; *Cheng Rang Shi v. Connolly, supra,* 2007 WL 4380276 at *11 (when challenging jury instructions on habeas review, "the petitioner bears the burden of establishing a constitutional violation"). Without citing any authority, petitioner merely argues that his due process rights were violated because the Trial Judge refused to use the language in the CJI that defense counsel urged upon the trial court (Pet. *Pro Se* Br. at 25). This argument is wholly lacking in merit because the Trial Judge's charge was already complete on the issue of evaluating inconsistent testimony. Thus, the Trial Judge's refusal to include the language from the CJI did not so infect the trial as to result in a violation of petitioner's due process rights. *See Cheng Rang Shi v. Connolly, supra,* 2007 WL 4380276 at *11 (habeas relief not warranted where state court refused to supplement a definition in its charge that was already accurate and complete under New York law); *Henry v. Ricks,* 01-CV-1361 (GLS)(DEP), 2007 WL 2406928 at *7 (N.D.N.Y. Aug. 21, 2007) (rejecting challenge to jury instruction on habeas review where "[p]etitioner ... cited no authority tending to suggest that this evenly balanced charge, which comports with New York law regarding

such matters effectively deprived him of any constitutional or federal statutory right") (citation omitted).

**\*20** In sum, the Appellate Division's rejection of petitioner's claims relating to the Trial Judge's jury instructions was not contrary to or an unreasonable application of clearly established Supreme Court precedent.

### 4. Excessive Sentence

Petitioner claims that the sentence he received is both excessive and constitutes cruel and unusual punishment (Pet. *Pro Se* Br. at 31-33). Respondent argues that the excessive sentence claim is not cognizable on federal habeas review and that the cruel and unusual punishment claim is without merit (Resp. Mem. at 35-37).

A sentence violates the Eighth Amendment when the sentence is "grossly disproportionate" to the crime committed or when the sentence imposed "shocks the collective conscience of society." *Kennedy v. Louisiana,* No. 07-343, 2008 WL 2511282 at *9 (S.Ct. June 25, 2008); *Atkins v. Virginia,* 536 U.S. 304, 311 n. 7 (2002); *United States v. Gonzalez,* 922 F.2d 1044, 1053 (2d Cir.1991); *see also Lockyer v. Andrade, supra,* 538 U.S. at 73; *Harmelin v. Michigan,* 501 U.S. 957, 1001 (1991); *United States v. Snype,* 441 F.3d 119, 152 (2d Cir.2006); *United States v. Romano,* 825 F.2d 725, 731 (2d Cir.1987); *Pressley v. Bennett,* 235 F.Supp.2d 349, 368-69 (S.D.N.Y.2003); *Calderon v. Keane,* 97 Civ. 2116(RCC) (JCF), 2002 WL 1205745 at *14 (S.D.N.Y. Feb. 21, 2002) (Report & Recommendation), *adopted,* 2003 WL 22097504 (S.D.N.Y. Sept. 9, 2003); *Sutton v. Herbert,* 39 F.Supp.2d 335, 337 (S.D.N.Y.1999); *see generally Ewing v. California,* 538 U.S. 11 (2003).

If petitioner is challenging the sentence imposed as an abuse of the Trial Judge's discretion, he has failed to state a cognizable constitutional claim. A sentence within the range established by state law, as the sentence here clearly was,[9] is ordinarily not subject to an Eighth Amendment challenge. *See White v. Keane,* 969 F.2d 1381, 1383 (2d Cir.1992) (per curiam); *Diaz v. Herbert,* 317 F.Supp.2d 462, 479-80 (S.D.N.Y.2004); *Brown v. Goord,* 02 Civ. 2122(NRB), 2002 WL 31093611 at *5 (S.D.N.Y. Sept. 13, 2002); *Espinal v. Barkley,* 95 Civ. 1214(HB), 1996 WL 673833 at *1 (S.D.N.Y. Nov. 20, 1996); *Rodriguez v. O'Keefe,* 96 Civ.2094(LLS), 1996 WL 428164 at *7

(S.D.N.Y. July 31, 1996), *aff'd mem.,* 122 F.3d 1057 (2d Cir.1997).

If petitioner is claiming that his sentence is so disproportionately long that it constitutes an Eighth Amendment violation, his claim fails. As stated by the Supreme Court, a habeas court will find that a state-law sentence is "grossly disproportionate" and violates the Eighth Amendment only "in the 'exceedingly rare' and 'extreme' case." *Lockyer v. Andrade, supra,* 538 U.S. at 73, *quoting Harmelin v. Michigan, supra,* 501 U.S. at 1001; *accord Ewing v. California, supra,* 538 U.S. at 21; *United States v. Snype, supra,* 441 F.3d at 152; *Whitlatch v. Senkowski,* 344 F.Supp.2d 898, 905-07 (W.D.N.Y.2004); *Vasguez v. Walker,* 01 Civ. 8032(AKH), 2004 WL 594646 at *5 (S.D.N.Y. Mar. 25, 2004); *Ayala v. People,* 03 Civ. 2762(AKH), 2004 WL 527035 at *5 (S.D.N.Y. Mar. 16, 2004); *Williams v. Philips,* 02 Civ. 5811(DC), 2003 WL 21961127 at *8 (S.D.N.Y. Aug. 18, 2003).

**\*21** Petitioner's sentence here is entirely ordinary. Other courts have reviewed sentences of the range imposed upon petitioner for comparable offenses and have uniformly upheld such sentences as not violating the Eighth Amendment. *E.g., Folk v. Philips,* 05-CV-557 (NGG), 2007 WL 4264577 at *7 (S.D.N.Y. Nov. 30, 2007) (sentence of twenty-five to life for persistent violent felony offender convicted of robbery in the first degree did not violate Eighth Amendment); *Velez v. Duncan,* 00 Civ. 6163(BSJ)(RLE), 2005 WL 1221836 at *5-*6 (S.D.N.Y. May 13, 2005) (sentence of sixteen years to life for persistent violent felony offender convicted of burglary in the second degree did not violate Eighth Amendment) (Report & Recommendation); *McKenzie v. Poole,* 03-CV-4253 (JG), 2004 WL 2671630 at *10 (E.D.N.Y. Nov. 23, 2004) (concurrent sentences of twenty-five years to life for persistent violent felony offender convicted of assault in the first degree and criminal possession of a weapon in the second degree did not violate Eighth Amendment); *Parks v. Perlman,* 03 CV 805(JG), 2004 WL 848177 at *4 (E.D.N.Y. Apr. 19 2004) (sentence of four years to life for persistent violent felony offender convicted of Class E felony did not violate Eighth Amendment); *Marsh v. Duncan,* 01 CV 1314(JG), 2004 WL 86412 at *9 (E.D.N.Y. Jan. 7, 2004) (sentence of twenty years to life for persistent violent felony offender convicted of burglary in the second degree not excessive under Eighth Amendment); *see generally Ewing v. California, supra,* 538 U.S. 11 (sentence of 25 years to life imposed on recidivist for stealing three

golf clubs not cruel and unusual); *Lockyer v. Andrade, supra,* 538 U.S. 77 (sentence of 25 years to life for stealing $150 worth of videotapes not cruel and unusual). [10] In light of these decisions, petitioner's sentence cannot be characterized as "grossly disproportionate" to the crimes for which he was convicted.

Accordingly, the Appellate Division's rejection of petitioner's challenges to his sentence was not contrary to or an unreasonable application of clearly established Supreme Court precedent.

### 5. *Prosecutorial Misconduct*

Petitioner next claims that he was denied his right to a fair trial when the prosecutor (a) personalized his closing statement and (b) improperly vouched for Chen's credibility (Pet. *Pro Se* Br. at 30-31). [11] Respondent argues that these comments were not improper and, in any event, not so egregious as to warrant habeas relief (Resp. Mem. at 33-35).

A prosecutor's comments or argument during summation will justify habeas relief only when they "so infect[ ] the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright,* 477 U.S. 168, 181 (1986); *accord Greer v. Miller,* 483 U.S. 756, 765 (1987) ("To constitute a due process violation, the prosecutorial misconduct must be 'of sufficient significance to result in the denial of the defendant's right to a fair trial.' "), *quoting United States v. Bagley,* 473 U.S. 667, 676 (1985) *quoting Donnelly v. DeChristoforo,* 416 U.S. 637, 643 (1974); *Bossett v. Walker,* 41 F.3d 825, 829 (2d Cir.1994) ("The appropriate standard of review for a claim of prosecutorial misconduct on a writ of habeas corpus 'is the narrow one of due process, and not the broad exercise of supervisory power.' "), *quoting Floyd v. Meachum,* 907 F.2d 347, 353 (2d Cir.1990), *quoting Darden v. Wainwright, supra,* 477 U.S. at 181.

**\*22** In order to justify federal habeas relief, a petitioner "must demonstrate that he suffered actual prejudice because the prosecutor's comments during summation had a substantial and injurious effect or influence in determining the jury's verdict. Habeas relief is not appropriate when there is merely a 'reasonable possibility' that trial error contributed to the verdict." *Bentley v. Scully,* 41 F.3d 818, 824 (2d Cir.1994), *quoting Brecht v. Abrahamson,* 507 U.S. 619, 637 (1993); *Escobar v.*

Charlemagne v. Goord, Not Reported in F.Supp.2d (2008)

2008 WL 2971768

*Senkowski,* 02 Civ. 8066(LAK)(THK), 2005 WL 1307939 at *16 (S.D.N.Y. May 26, 2005) (same), *quoting Tankleff v. Senkowski,* 135 F.3d 235, 252 (2d Cir.1998).

Courts in this Circuit have considered the following non-exhaustive factors in assessing whether prosecutorial misconduct during summation resulted in actual prejudice to a criminal defendant: "(1) the severity of the prosecutor's conduct; (2) what steps, if any, the trial court may have taken to remedy any prejudice; and (3) whether the conviction was certain absent the prejudicial conduct." *Bentley v. Scully, supra,* 41 F.3d at 824, *citing Gonzalez v. Sullivan,* 934 F.2d 419, 424 (2d Cir.1991); *see also United States v. Millar,* 79 F.3d 338, 343 (2d Cir.1996); *Floyd v. Meachum, supra,* 907 F.2d at 355; *United States v. Modica,* 663 F.2d 1173, 1181 (2d Cir.1981). With these standards in mind, I turn to the two specifications of petitioner's prosecutorial misconduct claim.

Petitioner first argues that the prosecutor improperly injected his personal opinion into his closing statement by repeatedly using phrases such as "I submit," "I suggest," and "I am asking" (Pet. *Pro Se* Br. at 30). Petitioner specifically points to one passage near the close of the prosecutor's summation:

> You have played an essential role in the fact finding of this case, ladies and gentlemen and *I submit* you have given the defendant your time and all of the investment of effort that you can give. Now it's time *I suggest* for justice to get what it deserves, and it deserves that when evidence is presented in this way and it shows that the defendant has actually broken the laws of this state, that the words of the indictment be far more than just words on a page and it deserves that that b e reflected in your verdict and *I am asking* that you uphold the indictment, that you give a reasonable interpretation of this evidence by coming back here and through the voice of your foreperson returning a verdict of guilty on both counts of this indict ment.

(Tr. 526-27) (emphasis added).

"It is strictly 'improper for a prosecutor to interject personal beliefs into a summation[.]' " *United States v. Eltayib,* 88 F.3d 157, 172 (2d Cir.1996), *quoting United States v. Nersesian,* 824 F.2d 1294, 1328 (2d Cir.1987); *see also United States v. Young,* 470 U.S. 1, 8 (1985); *Reid v. Giambruno,* 03-CV-0250 (VEB), 2007 WL 3232497 at *23 (W.D.N.Y. Oct. 31, 2007) ("[I]t is improper for a prosecutor to ... express his personal opinion concerning the merits of particular evidence[.]"). Moreover, the Second Circuit Court of Appeals has stated "that prosecutors should avoid 'frequent[ ] use [of] rhetorical statements punctuated with excessive use of the personal pronoun 'I,' " *United States v. Rivera,* 22 F.3d 430, 437 (2d Cir.1994), *quoting United States v. Nersesian, supra,* 824 F.2d at 1328, because "it tends to make an issue of [the prosecutor's] own credibility, or to imply the existence of extraneous proof." *United States v. Eltayib, supra,* 88 F.3d at 172 (internal quotation marks omitted).

**\*23** After a careful review of the entire summation, *United States v.. Young, supra,* 470 U.S. at 12, I conclude that the prosecutor's use of phrases such as "I submit" and "I suggest" during summation was not improper. At least where the pronoun "I" is not used excessively, the Court of Appeals has squarely held that a prosecutor's use in summation of the phrases "I submit" or "I suggest" is not improper. *United States v. Eltayib, supra,* 88 F.3d at 173; *United States v. Jaswal,* 47 F.3d 539, 544 (2d Cir.1995); *United States v. Modica, supra,* 663 F.2d at 1181; *see Collier v. United States,* 92 F.Supp.2d 99, 107 (N.D.N.Y.2000) ("Viewing the prosecutor's closing a whole, the Court finds that the occasional use of rhetorical phrases such as 'I submit' and 'I suggest' is simply fair argument ... that does not rise to the level of prosecutorial misconduct" because "the [prosecutor] was properly arguing the evidence and was not referring to his personal beliefs or to any additional information he might have had") (internal quotation marks omitted).

Petitioner next argues that the prosecutor improperly vouched for the credibility of Chen on two occasions:

> [Chen] didn't have time to embellish his observations. He didn't have time to invent or make up a story. He was simply saying what you say and *I would submit* to you that his testimony had those same kind of marks of credibility. He simply came here and [told] you what he is able to remember from that day, which was quite a lot

2008 WL 2971768

and he did see the profile of these people and *I submit* to you that that is enough ....

\* \* \*

Even sitting here looking at [petitioner's jacket], I bet we would all disagree as to that the description of that color is. Are we really to fault David Chen for not coming up with an exact or articulate description of the color as he is running down the street after these men? I suggest not.

That's quite striking that even in his state [of] mind, he was able to draw that distinction and *I think* you should credit [Chen's] testimony for its accuracy.

(Tr. 515, 518) (emphasis added).

Again, a prosecutor's use of the phrase "I submit that" in arguing that a witness is credible is not improper where defense counsel has attacked the credibility of that witness during summation. *United States v. Eltayib, supra,* 88 F.3d at 173; *see Morales v. Walsh,* CV-05-2251 (DGT)(LSB), 2008 WL 2047632 at \*7 (E.D.N.Y. May 12, 2008) (rejecting prosecutorial misconduct claim based on witness vouching because "it was appropriate for the prosecutor to make arguments regarding the credibility of her own witness" where "much of the defenses' summations were devoted to discrediting [the witness's] and his version of events[.]"); *Natal v. Bennett,* 98 Civ. 1872(RWS), 1998 WL 841480 at \*8 (S.D.N .Y. Dec. 3, 1998) (same).

The prosecutor's statement to the jury, "I think you should credit [Chen's] testimony for its accuracy," (Tr. at 518), is slightly more troubling. This argument was improper because it constituted the prosecutor's vouching for Chen's credibility. *United States v. Nersesian, supra,* 824 F.2d at 1328. Nevertheless, "a prosecutor's use of the pronoun 'I' does not automatically wreck the case.... [E]ven though phrases such as 'I think it is clear,' or 'Does it makes sense-I think it does,' are not 'acceptable,' they do not merit reversal unless 'the summation viewed as a whole ... reflect[s] improper vouching.' " *United States v. Eltayib, supra,* 88 F.3d at 173, *quoting United States v. Nersesian, supra,* 824 F.2d at 1328. Petitioner has cited only this one instance in which the prosecutor used the condemned phrase in his summation, and the evidence of petitioner's guilt-which included an eyewitness identification immediately after the burglary, petitioner's arrest in close proximity to a pouch containing burglar's

tools and petitioner's actual possession of other burglar's tools (the shim cards around his neck (Tr. 299-300, 364, 374-78, 388, 392-94)-was compelling. Under these circumstances, the prosecutor's single improper statement in summation does not rise to the level of a due process violation. *See United States v. Castro,* 00 Cr. 549(LMM), 2003 WL 23518114 at \*6 (S.D.N.Y. May 19, 2003); *Torres v. Costello* 97-CV-5480 (RR), 2001 WL 811924 at \*10 (E.D.N.Y. June 1, 2001) (petitioner not denied due process where prosecutor occasionally used the phrase "I think" when referring to witness's testimony because "a review of the comments, in context, reveal[ed] that the prosecutor was endeavoring to focus the jury's attention on the evidence presented and never on his own credibility ....").

**\*24** Even assuming, *arguendo,* that the prosecutor's statements were improper, when viewed in the context of the defense argument that preceded them and given the mitigating factors set forth below, these comments individually and cumulatively did not substantially prejudice petitioner and, thus, do not warrant habeas relief. *United States v. Modica, supra,* 663 F.2d at 1181 ("A prosecutor's improper summation results in a denial of due process when the improper statements cause substantial prejudice to the defendant.").

First, the prosecutor's conduct was not severe. Although he objected to certain portions of the prosecutor's summation, defense counsel did not object to the comments petitioner challenges here. Moreover, the comments appear to have been made extemporaneously and not as part of a calculated plan to entice the jury to draw inferences not supported by evidence. *United States v. Nersesian, supra,* 824 F.2d at 1329. Further, they were isolated statements in a lengthy summation, *Donnelly v. DeChristoforo, supra,* 416 U.S. at 646 ("isolated passages" of prosecutor's argument, while improper, did not merit habeas relief); *Escobar v. Senkowski, supra,* 2005 WL 1307939 at \*15 ("[A] prosecutor's improper comments during summation must be more than short and fleeting, but must instead be so numerous and, in combination, so prejudicial that a new trial is required.") (internal quotation marks omitted), and were not nearly as numerous as the comments made in *Nersesian* (65 instances) or *Modica* (60 instances), cases in which the Court of Appeals found no substantial prejudice.

Second, the Trial Judge instructed the jury that only its recollection of the evidence controlled and that it could

accept or reject counsel's arguments based on the logical connection between the arguments and the evidence in the record (Tr. 529-30, 531). A jury is "presumed to follow their instructions [,]" *Richardson v. Marsh,* 481 U.S. 200, 211 (1987), and the record discloses no reason why this presumption should not apply here. *See Wicks v. Miller,* 05 Civ. 5341(JGK), 2007 WL 1434992 at *6 (S.D.N.Y. May 15, 2007) (jury not unduly influenced by prosecutor's comments concerning the evidence during opening statement where trial court instructed jury that only its recollection of the evidence controlled).

Third, the prosecution presented strong evidence of petitioner's guilt. Immediately after Chen and Liou tried to enter Liou's apartment, Chen saw petitioner descend the fire escape of the apartment building and followed him until petitioner entered a taxicab. About thirty minutes later, Chen identified petitioner as the man from the fire escape at a show-up. From the back of the cab, the police recovered a pouch with locking pliers, a file, needle-nosed pliers, two screwdrivers, and a large wood toothpick. Several "shims" were also recovered from petitioner's person. The strength of the evidence against petitioner implies that the prosecutor's comments had no material effect.

**\*25** Accordingly, the Appellate Division's decision that the prosecutor's comments during summation did not deprive petitioner of his due process right to a fair trial is not contrary to or an unreasonable application of clearly established Supreme Court precedent.

#### 6. *Ineffective Assistance*

Lastly, petitioner claims that trial counsel was ineffective for failing to (a) request that the Trial Judge provide instructions to the prospective and sworn-in jurors the first eight times they exited the courtroom, (b) object to the prosecutor's personalizing his closing statement, (c) object to the prosecutor's improper vouching for Chen's credibility, and (d) challenge for cause a prospective juror who was a sheriff's deputy (Pet. *Pro Se* Br. at 28-30).

In order to prevail on a claim of ineffective assistance of trial counsel, a habeas petitioner must meet the now familiar two-part test set forth in *Strickland v. Washington,* 466 U.S. 668, 686-87 (1984):

> The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the

proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.

> ....

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction ... has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as "counsel" guaranteed by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction ... resulted from a breakdown in the adversary process that renders the result unreliable.

*Accord United States v. Abad,* 514 F.3d 271, 275 (2d Cir.2008); *Campusano v. United States,* 442 F.3d 770, 773 (2d Cir.2006); *Davis v. Greiner,* 428 F.3d 81, 87 (2d Cir.2005); *Greiner v. Wells,* 417 F.3d 305, 319 (2d Cir.2005), *cert. denied,* 546 U.S. 1184 (2006); *Aeid v. Bennett,* 296 F.3d 58, 62-63 (2d Cir.2002); *Hernandez v. United States,* 202 F.3d 486, 488 (2d Cir.2000); *Guerrero v. United States,* 186 F.3d 275, 281-82 (2d Cir.1999); *McKee v. United States,* 167 F.3d 103, 106-07 (2d Cir.1999); *Jackson v. Leonardo,* 162 F.3d 81, 85 (2d Cir.1998).

In determining whether counsel's performance was objectively deficient, courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland v. Washington, supra,* 466 U.S. at 689 (internal quotation marks omitted).

**\*26** The second prong of the test-actual prejudice-requires the petitioner to show that, but for trial counsel's errors, there is a "reasonable probability" that the result of the trial would have been different. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland v.. Washington, supra,* 466 U.S. at 694.

2008 WL 2971768

Because the test is conjunctive, a habeas petitioner's failure to satisfy either prong requires that the challenge to the conviction be rejected. *Strickland v. Washington, supra,* 466 U.S. at 697.

Petitioner's first three grounds are easily disposed of. As discussed *supra* pages 39-40 and 52-56, the Trial Judge's failure to give instructions to the prospective and sworn-in juror before they exited the courtroom was not error and the prosecutor did not improperly inject his personal beliefs into summation or improperly vouch for Chen's credibility. Thus, a request for such instructions and objections to these comments would have been meritless and a failure to make meritless objections does not constitute ineffective assistance. *United States v. Arena,* 180 F.3d 380, 396 (2d Cir.1999) ( "Failure to make a meritless argument does not amount to ineffective assistance."); *see also United States v. Kirsh,* 54 F.3d 1062, 1071 (2d Cir.1995) ("[T]he failure to make a meritless argument does not rise to the level of ineffective assistance"); *Duncan v. Griener,* 97 Civ. 8754(JGK), 1999 WL 20890 at *10 (S.D .N.Y. Jan. 19, 1999) (since trial counsel's objection would have been fruitless, "the failure to so object is not evidence of ineffective assistance of counsel"); *Perez v. United States,* 89 CR 800(RPP), 96 Civ. 7702(RPP), 1997 WL 661426 at *4 (S.D.N.Y. Oct. 23, 1997) ("Defense counsel's failure to object, then, cannot have resulted in actual prejudice to petitioner, as the objection would have been meritless.").

Even if the prosecutor's comments had been objectionable, petitioner's ineffective assistance claim would still fail. Trial counsel objected to the prosecutor's summation on six other occasions (Tr. 513, 522, 524, 525, 526), suggesting that his failure to object to the comments petitioner now challenges was driven by trial strategy that fell within the "wide range of professionally competent assistance." *See Strickland v. Washington, supra,* 466 U.S. at 690; *see also Nova v. Ercole,* 06 Civ. 562(NRB), 2007 WL 1280635 at *8 (S.D.N.Y. Apr. 30, 2007) (failure to object to prosecutor's vouching for witness during summation not objectively unreasonable in light of defense counsel's objections to other portions of prosecutor's summation). Moreover, petitioner fails to show that there is a "reasonable probability" that but for trial counsel's failure to object to these statements "the result of the proceedings would have been different." *Strickland v. Washington, supra,* 466 U.S. at 694. As discussed above, these statements were isolated and

fleeting portions of a long summation that certainly did not change the result of petitioner's trial in light of the strong case against him.

*27 Lastly, petitioner's claim that he was denied effective assistance by trial counsel's failure to challenge for cause a prospective juror who was a sheriff's deputy is without merit. First, trial counsel's decision not to challenge the prospective juror was not objectively unreasonable because this decision fell within the "wide range of reasonable professional assistance [.]" *Strickland v. Washington, supra,* 466 U.S. at 689. "An attorney's actions during *voir dire* are considered to be matters of trial strategy." *Hughes v. United States,* 258 F.3d 453, 457 (6th Cir.2001); *see also Nova v. Ercole, supra,* 2007 WL 1280635 at *8 ("Trial counsel's decision not to move to dismiss for cause clearly falls within the wide range of professionally competent assistance.") (internal quotations omitted). Indeed, trial counsel is "accorded particular deference when conducting *voir dire* [.]" *Hughes v. United States, supra,* 258 F.3d at 457. In this case, counsel successfully challenged for cause six other prospective jurors who expressed concerns about their ability to be impartial (Tr. 82-84, 180-82, 184, 214-15). Counsel's challenge to these prospective jurors "suggests that counsel deliberately chose not to challenge [the sheriff's deputy] as part of trial strategy that 'might be considered sound.' " *Nova v. Ercole, supra,* 2007 WL 1280635 at *8, *quoting Strickland v. Washington, supra,* 466 U.S. at 690.

Even assuming, *arguendo,* that counsel's failure to challenge the sheriff's deputy was objectively unreasonable, petitioner fails to establish that this juror was actually biased against him. *Mitchell v. Herbert,* 01-CV-681 (RJA)(VEB), 2008 WL 342975 at *21 (W.D.N.Y. Feb. 6, 2008) (a showing of actual bias is sufficient to satisfy prejudice prong of *Strickland* ). The test for determining juror bias is well-established:

> To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render

Charlemagne v. Goord, Not Reported in F.Supp.2d (2008)

2008 WL 2971768

a verdict based on the evidence presented in court.

*Irvin v. Dowd,* 366 U.S. 717, 723 (1961); *see also Hughes v. United States, supra,* 258 F.3d at 458 ("The Supreme Court has upheld the impaneling of jurors who had doubted, or even disclaimed outright, their own impartiality on *voir dire."* ). Where, as here, a petitioner asserts a claim of ineffective assistance based on trial counsel's failure to challenge a prospective juror during *voir dire,* petitioner must show that the prospective juror was actually biased against him or her. *Murphy v. Florida,* 421 U.S. 794, 800 (1975); *Hughes v. United States, supra,* 258 F.3d at 458; *Nova v. Ercole, supra,* 2007 WL 1280635 at *8 ("[T]o prove juror impartiality, petitioner must prove actual bias."). "Actual bias is 'bias in fact'-the existence of a state of mind that leads to an inference that the person will not act with entire impartiality." *United States v. Torres,* 128 F.3d 38, 43 (2d Cir.1997). Actual bias can be found where the prospective juror directly admits partiality or where such bias can be inferred from his or her answers to *voir dire* questions. *United States v. Torres, supra,* 128 F.3d at 43.

**\*28** Upon examining the *voir dire* transcript, I conclude that the sheriff's deputy was not actually biased against petitioner. He did not directly admit to being partial and his *voir dire* testimony does not compel an inference that he was actually biased. After the prospective juror stated that he was a sheriff's deputy, the Trial Judge inquired into whether he could set aside his professional experiences and judge the case on its merits. He responded, "Yes" (Tr. 37). The Trial Judge was entitled to credit this response. *See Hughes v. United States, supra,* 258 F.3d at 459-60 ("A district court may rely upon juror assurances of impartiality in deciding whether a [petitioner] has satisfied his burden of proving actual prejudice."). Morever, he assured defense counsel that he did not harbor any partiality toward the prosecution given his profession (Tr. 66-67). Lastly, throughout *voir dire,* the Trial Judge thoroughly examined each potential juror's ability to be impartial and excused many of them for cause (*e.g.,* Tr. 27-29). Thus, the fact that the Trial Judge did not excuse the sheriff's deputy supports the conclusion that he was not actually biased. *See Wainwright v. Witt,* 469 U.S. 412, 428 (1985) (trial judge's determination concerning bias is accorded broad deference because "such a finding is based upon determinations of demeanor and credibility that are peculiarly within a trial judge's province").

Accordingly, the Appellate Division's rejection of petitioner's claim of ineffective assistance of trial counsel is not contrary to or an unreasonable application of clearly established Supreme Court precedent.

IV. *Conclusion*

For the foregoing reasons, I respectfully recommend that the petition be denied in its entirety.

In addition, since petitioner has not made a substantial showing of the denial of a constitutional right, I also recommend that a certificate of appealability not be issued. 28 U.S.C. § 2253. To warrant the issuance of certificate of appealability, "petitioner must show that reasonable jurists could debate whether ... the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Middleton v. Attorneys Gen.,* 396 F.3d 207, 209 (2d Cir.2005) (*per curiam* ) (internal quotation marks omitted); *see also Love v. McCray,* 413 F.3d 192, 195 (2d Cir.2005) (*per curiam* ). For the reasons set forth above, I conclude that there would be no difference of opinion among reasonable jurists that the petition should have been reviewed in a different manner or that petitioner should be encouraged to proceed further.

V. *Objections*

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from the date of this Report and Recommendation to file written objections. *See also* Fed.R.Civ.P. 6(a) and 6(d). Such objections (and responses thereto) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Deborah A. Batts, United States District Judge, 500 Pearl Street, Room 2510, New York, New York 10007, and to the chambers of the undersigned, 500 Pearl Street, Room 750, New York, New York 10007. Any requests for an extension of time for filing objections must be directed to Judge Batts. FAILURE TO OBJECT WITHIN TEN (10) DAYS *WILL* RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. *Thomas v. Arn,* 474 U.S. 140 (1985); *IUE AFL-CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1054 (2d Cir.1993); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.1992); *Wesolek v. Canadair Ltd.,* 838 F.2d 55, 57-59 (2d Cir.1988); *McCarthy v. Manson,* 714 F.2d 234, 237-38 (2d Cir.1983).

All Citations

Not Reported in F.Supp.2d, 2008 WL 2971768

Footnotes

1  "Tr." refers to the transcript of petitioner's trial.

2  Evidence was offered at trial that no two cabs have the same medallion number and that each medallion number consists of one number followed by a capital letter and then two numbers (Tr. 409).

3  "H." refers to the transcript of petitioner's suppression hearing.

4  "S." refers to the transcript of petitioner's sentencing hearing.

5  Although the habeas petition filed with the court asserts only the prosecutorial misconduct claim raised in petitioner's initial appellate brief (*see* Docket Item 1 at ¶ 13), the copy of the habeas petition submitted by respondent indicates that petitioner "would like to raise" all the claims he asserted on direct appeal (Habeas Pet. ¶ 13, annexed as Exhibit K to Dannelly Decl.). Where, as here, a petitioner is proceeding *pro se*, he is entitled to have his petition read liberally and construed to raise the strongest claims that it suggests. *Haines v. Kerner,* 404 U.S. 519, 520 (1972); *Williams v. Kullman,* 722 F.2d 1048, 1050 (2d Cir.1983). Accordingly, I construe the habeas petition as asserting all the claims petitioner raised on direct appeal.

6  Section 470.05(2) provides in pertinent part:

   For purposes of appeal, a question of law with respect to a ruling or instruction of a criminal court during a trial or proceeding is presented when a protest thereto was registered, by the party claiming error, at the time of such ruling or instruction or at any subsequent time when the court had an opportunity of effectively changing the same.

   N.Y. C.P.L. § 470.05(2).

7  I note that the record contains no evidence that Officer Hubert, while driving Chen to the show-up, made any statements to Chen that suggested that the individuals apprehended were in fact the perpetrators (H.20-21, 41). The absences of such comments further supports the conclusion that the show-up was not unduly suggestive.

8  Section 270.40 provides:

   After the jury has been sworn and before the people's opening address, the court must instruct the jury generally concerning its basic functions, duties and conduct. Such instructions must include, among other matters, admonitions that the jurors may not converse among themselves or with anyone else upon any subject connected with the trial; that they may not read or listen to any accounts or discussions of the case reported by newspapers or other news media; that they may not visit or view the premises or place where the offense or offenses charged were allegedly committed or any other premises or place involved in the case; that prior to discharge, they may not request, accept, agree to accept, or discuss with any person receiving or accepting, any payment or benefit in consideration for supplying any information concerning the trial; and that they must promptly report to the court any incident within their knowledge involving an attempt by any person improperly to influence any member of the jury. N.Y. C.P.L. § 270.40.

9  At the time of petitioner's offenses, New York classified burglary in the second degree as a Class C felony. N.Y. Penal L. § 70.02(1)(b). Because petitioner was adjudicated a persistent violent felony offender (S.5-13), at the time of petitioner's sentencing the permissible sentencing range was an indeterminate term of, at a minimum, sixteen to twenty-five years and a maximum of life. N.Y. Penal L. § 70.08(2), (3)(b). In addition, petitioner faced a determinate term of up to one year imprisonment for his conviction of possession of burglar's tools. N.Y. Penal L. § 70.15(1).

10 In most of the cases from this Circuit cited in the text, the petitioner was sentenced after a 1995 amendment to New York Penal Law Section 70.08. That amendment doubled the length of the mandatory minimum sentences for persistent violent felony offenders. *See* 1995 N.Y. Laws 3. Thus, even with the mandatory minimum sentences doubled, sentences imposed pursuant to Section 70.08 were still not violative of the Eighth Amendment.

11 Although he also claims that the prosecutor made improper remarks throughout trial (Pet. *Pro Se* Br. at 30), petitioner does not provide any examples of such remarks and only cites to comments made during the prosecution's closing statement. Accordingly, I limit my analysis of this claim to the prosecutor's comments during summation.

---

**End of Document**                                    © 2018 Thomson Reuters. No claim to original U.S. Government Works.

2008 WL 1766740
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Jermaine COOPER, Petitioner,

v.

Brian FISCHER, Superintendent of Bedford
Hills Correctional Facility, Respondent.

No. 9:04-CV-0633 (LEK/GHL).
|
April 14, 2008.

**Attorneys and Law Firms**

Jermaine Cooper, Comstock, NY, pro se.

Hon. Andrew M. Cuomo, Office of the Attorney General, State of New York, Syracuse Regional Office, Senta B. Siuda, Esq., Assistant Attorney General, of Counsel, Syracuse, NY, for Respondent.

**Opinion**

### DECISION AND ORDER

LAWRENCE E. KAHN, District Judge.

**\*1** This matter comes before the Court following a Report-Recommendation filed on March 14, 2008, by the Honorable George H. Lowe, United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b) and L.R. 72.3(c) of the Northern District of New York. Report-Rec. (Dkt. No. 17).

Within ten days, excluding weekends and holidays, after a party has been served with a copy of a Magistrate Judge's Report-Recommendation, the party "may serve and file specific, written objections to the proposed findings and recommendations," FED. R. CIV. P. 72(b), in compliance with L.R. 72.1. No objections have been raised in the allotted time with respect to Judge Lowe's Report-Recommendation. Furthermore, after examining the record, the Court has determined that the Report-Recommendation is not subject to attack for plain error or manifest injustice.

Accordingly, it is hereby

**ORDERED,** that the Report-Recommendation (Dkt. No. 17) is **APPROVED** and **ADOPTED** in its **ENTIRETY;** and it is further

**ORDERED,** that the Petition for a writ of habeas corpus (Dkt. No. 1) is **DENIED** and **DISMISSED;** and it is further

**ORDERED,** that no certificate of appealability shall issue with respect to any of Petitioner's claims; and it is further

**ORDERED,** that the Clerk serve a copy of this Order on all parties.

**IT IS SO ORDERED.**

### REPORT-RECOMMENDATION [1]

GEORGE H. LOWE, United States Magistrate Judge.

Petitioner *pro se* Jermaine Cooper ("Petitioner") is currently an inmate in the custody of the New York State Department of Correctional Services ("DOCS") at Great Meadow Correctional Facility. On February 18, 2000, Petitioner was convicted of second degree possession of a controlled substance, two counts of third degree possession of a controlled substance, and fifth degree possession of a controlled substance after a jury trial in Broome County, New York. (State Court Records ("Records") Exs. 12-16, Trial Transcript ("T") at 1028-1030. He is presently serving an aggregate term of seventeen years to life. (Records Ex. 17 at 21:5.) Petitioner now seeks a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254 on the grounds that (1) the prosecutor engaged in misconduct by failing to call an exculpatory witness to testify before the grand jury; and (2) Petitioner was denied the effective assistance of counsel. For the reasons discussed below, the undersigned recommends that the petition be denied.

### I. Background

#### A. *State Court Proceedings*

Following a criminal investigation of (Petitioner) and pursuant to three search warrants which authorized the search of (Petitioner), his residence and his motor

vehicle, on June 10, 1999, police located and attempted to stop (Petitioner)'s vehicle. At the time, Gerald Graven was driving the vehicle while (Petitioner) rode in the passenger seat. Graven, disregarding traffic signals and stop signs, led police on a high speed chase through residential neighborhoods in the City of Binghamton and the Village of Johnson City, Broome County, forcing other vehicles-including a school bus-off the road. During the chase, two eyewitnesses observed a plastic bag containing over two ounces of cocaine thrown from the passenger-side window of defendant's vehicle. When ultimately the vehicle crashed, (Petitioner) fled on foot, but he was located by police with canine assistance in a nearby building and arrested. On the same day, the police searched (Petitioner)'s home and seized a digital scale which contained a trace amount of cocaine and seven "corner wraps" of crack cocaine.

**\*2** *People v. Cooper,* 756 N.Y.S.2d 339, 341 (N.Y.App.Div.2003).

Petitioner testified before a grand jury. He told the grand jury that Gerald Graven was prepared to testify that the drugs thrown out of the car window belonged to him and that Petitioner did not know there were drugs in the car. (Records Ex. 20 at 3.) The grand jurors asked the prosecutor if Graven would testify before them. (Records Ex. 21 at SA 146:22-SA 147:21.) The prosecutor stated "All I can tell you is that you are considering charges against that individual, okay. So, the D.A.'s office ... can't produce that person. He's a defendant. And a defendant is always free to testify before the grand jury when they request to testify before the grand jury ... We can't request of a defendant to come in and testify." (Records Ex. 21 at SA 147:1-14.)

On July 23, 1999, the grand jury indicted Petitioner for second degree criminal possession of a controlled substance, two counts of third degree criminal possession of a controlled substance, fifth degree criminal possession of a controlled substance, and second degree conspiracy [2]. (Records Ex. 1.)

On February 2, 2000, Petitioner moved to dismiss the entire indictment on the basis of prosecutorial misconduct or, in the alternative, for the prosecutor's failure to produce Graven to testify before the grand jury. (Records Ex. 9 at 25:23-26:8.) The trial court denied the motion. (Records Ex. 9 at 30:24.)

At trial, Petitioner called Graven as a witness. (T. at 792:1-861:13.) Graven testified that the drugs in the car were his. (T. at 801:17-809:20.) He further testified that he had wanted "to come to the grand jury proceedings, but by the time ... my attorney got notification, I guess it was too late, they didn't let me appear." (T. at 809:20-24.)

On February 18, 2000, the jury returned guilty verdicts on the charges of second degree possession of a controlled substance, two counts of third degree possession of a controlled substance, and fifth degree possession of a controlled substance. (T. at 1028:23-1030:6.)

On March 7, 2000, the trial court sentenced Petitioner to (1) 12 years to life on the second degree possession of controlled substances charge, to be served concurrently with a sentence of 10 to 20 years on the third degree possession of controlled substances charge regarding the cocaine thrown out of the car; and (2) five to ten years for the third degree possession of controlled substances charge regarding the seven corner wraps of cocaine discovered in Petitioner's apartment, to be served concurrently with a sentence of three to six years for the fifth degree possession of controlled substance charge. The aggregate sentence was 17 years to life. (Records Ex. 17 19:25-21:5.)

Petitioner appealed. Through counsel, he argued that there were defects in the grand jury proceeding and that the sentence was unduly harsh or severe. (Records Ex. 20.) Acting on his own behalf, Petitioner filed a supplemental brief arguing (1) the search warrants did not comply with CPLR 690.40(1) or *Aguilar/Spinelli;* (2) there was an improper variance between the evidence submitted to the grand jury and the prosecution's theory at trial; (3) the trial court erred by allowing the prosecution to amend the indictment; (4) the trial court erred by denying defense counsel's request for more time to prepare for trial; (5) ineffective assistance of counsel; (6) that there was insufficient evidence that Petitioner possessed drugs; and (7) that there was insufficient evidence of accessory liability. (Records Ex. 23.)

**\*3** On March 6, 2003, the Third Department affirmed Petitioner's conviction. Regarding the grand jury proceedings, the appellate court stated that:

> Defendant asserts that because he requested that codefendant Graven be called to testify on defendant's behalf before the grand jury and that this allegedly

exculpatory evidence was not presented, the indictment should have been dismissed. By statute, a defendant may request-orally or in writing-that the grand jury exercise its discretion to call a particular witness and, here, after hearing defendant's testimony, a grand jury member asked the prosecutor whether Graven could be produced to give testimony. At the time, however, the grand jury was considering similar charges against Graven arising out of the same incident and Graven had not given the required written notice to the District Attorney that he-as the subject of a grand jury investigation-desired to testify. The prosecutor thus addressed the grand jury's inquiries regarding Graven's availability as follows:

> "All I can tell you is that you are considering charges against that individual, okay. So, the DA's Office-when you are considering charges against somebody, the DA's Office can't produce that person. He's a defendant. And a defendant is always free to testify before the grand jury when they request to testify before the grand jury. * * * We can't request of a defendant to come in and testify. * * * All I can tell you is if the defendant had requested from the DA's Office to testify, he would be here. That's the only way I can phrase it."

Prior to trial, defendant moved to have the indictment dismissed due to the People's failure to produce Graven at the request of the grand jury. County Court denied the motion, concluding that the People had no duty to request that a codefendant give testimony.

Upon our review of the relevant facts and circumstances, we perceive no error or failure in compliance with defendant's statutory rights ... which would amount to one of those rare situations where the indictment must be dismissed because "the integrity [of the grand jury proceeding] is impaired and prejudice to the defendant may result".

Significantly, although a defendant has a qualified right to testify voluntarily before the grand jury if he or she gives the required written notice, he or she may not be compelled to testify. Here, the trial court was understandably concerned that, had the prosecutor issued a request that Graven testify before the grand jury, Graven's potentially negative response could infringe upon his privilege against self-incrimination. In contrast, defendant had no absolute right to have a particular witness testify and, given Graven's failure to affirmatively assert his right to testify, the People were justified in declining to call him. Accordingly, under the specific circumstances presented, we perceive no error in the manner in which the prosecutor handled the grand jury's request to hear Graven's testimony.

**\*4** *People v. Cooper,* 756 N.Y.S.2d 339, 341-42 (N.Y.App.Div.2003) (citations omitted).

Regarding ineffective assistance of counsel, the appellate court stated:

> On this record, we find no merit to defendant's claim that he was denied the effective assistance of counsel. Defense counsel made appropriate pretrial motions, engaged in cogent cross-examination and rendered opening and closing statements which emphasized possible inconsistencies in the People's case. Viewed in totality, the representation was meaningful.

*Id.* at 343.

Petitioner, through counsel, moved for leave to appeal to the New York Court of Appeals regarding the grand jury issue. (Records Ex. 26.) Acting on his own behalf, Petitioner applied for leave to appeal to the Court of Appeals regarding other issues. (Records Ex. 27.) On June 17, 2003, the Court of Appeals denied leave to appeal. (Records Ex. 29.)

B. *Proceedings in this Court*

Petitioner filed the present petition in this Court on June 3, 2004. (Dkt. No. 1.) Respondent filed his response on October 22, 2004. (Dkt. No. 11.) The Court granted Petitioner leave to file a traverse. (Dkt. No. 13.) Petitioner filed the traverse on January 10, 2005. (Dkt. No. 14.)

**II. Discussion**

2008 WL 1766740

### A. *Standard of Review*

When reviewing a habeas petition, a federal court is limited to deciding whether a conviction violated the Constitution, laws or treaties of the United States. 28 U.S.C. § 2241(c) (2006). Relief does not lie for errors of state law. *Estelle v. McGuire,* 502 U .S. 62, 67-68 (1991); *DiGuglielmo v. Smith,* 366 F.3d 130, 136-137 (2d Cir.2004). Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Petitioner may obtain habeas relief by showing that the state court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1) (2006); *Carey v. Musladin,* 127 S.Ct. 649, 653 (2006); *Campbell v. Burgess,* 367 F.Supp.2d 376, 380 (W.D.N.Y.2004). "By 'contrary to,' the state court decision may be either contrary to Supreme Court precedent on a question of law or the state court decision is opposite to a relevant Supreme Court case with 'materially indistinguishable' facts." *Johnson v. West,* No. 9:04-cv-751, 2007 WL 952058 at *2 (N.D.N.Y. Mar. 29, 2007), *quoting Williams v. Taylor,* 529 U.S. 362, 405-406 (2000). A state court unreasonably applies federal law when the state court correctly identifies the governing legal rule in a particular case but applies the rule to the facts in an "objectively unreasonable" manner. *Johnson v. West,* 2007 WL 952058 at *2 (*quoting Lockyer v. Andrade,* 538 U.S. 63, 75 (2003)). Although 'some increment of incorrectness beyond error is required' "in order to grant a federal habeas application, that increment "need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Francis S. v. Stone,* 221 F.3d 100, 111 (2d Cir.2000); *see also Hawkins v. Costello,* 460 F.3d 238, 243 (2d Cir.2006). The state court's determination of a factual issue is presumed to be correct, and the petitioner has the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e) (1) (2006); *DeBerry v. Portuondo,* 403 F.3d 57, 66 (2d Cir.2005), *cert. denied* 546 U.S. 884 (2005); *Boyette v. Lefevre,* 246 F.3d 76, 88 (2d Cir.2001).

### B. *Petitioner's Claims Regarding the Grand Jury Proceeding Are Not Cognizable In This Federal Habeas Corpus Proceeding*

**\*5** Petitioner argues that the "prosecutor violated Petitioner's right to a fair trial by improperly handling the Grand Jury request to hear Gerald Graven's testimony. Prosecutor's misconduct also impaired the integrity of the Grand Jury in violations (sic) of Petitioner's Due Process Rights." (Dkt. No. 1 at 5(a).) Petitioner's argument is without merit.

When a defendant has been convicted after a trial, any alleged deficiencies in the indicting grand jury's proceedings are not cognizable in a federal habeas corpus proceeding. *Lopez v. Riley,* 865 F.2d 30, 32 (2d Cir.1989.) *See also Blake v. Leonardo,* 710 F.Supp. 446, 449-50 (E.D.N.Y.1989); *Klosin v. Conway,* 501 F.Supp.2d 429, 436 (W.D.N.Y.2007); *Mariani v. Kelly,* No. 97-CV-384 FJS/GLS, 2001 WL 1860961, at *5 (N.D.N.Y. Jan. 17, 2001); *Miller v. Hunt,* No. 9:06-CV-177 DNH/VEB, 2008 WL 170411, at *5 (N.D.N.Y. Jan. 15, 2008). This rule stems from the United States Supreme Court's decision in *United States v. Mechanik,* 475 U.S. 66 (1986). In *Mechanik,* the prosecutor arguably violated Federal Rule of Criminal Procedure 6(d) by allowing two law enforcement agents to be sworn together and questioned in tandem before the grand jury. The grand jury indicted the defendants, who were later convicted after a jury trial. The defendants appealed, arguing that the error in the grand jury proceeding warranted reversal of their convictions. The United States Supreme Court held that:

> the petit jury's verdict rendered harmless any conceivable error in the charging decision that might have flowed from the violation. In such a case, the societal costs of retrial after a jury verdict of guilty are far too substantial to justify setting aside the verdict simply because of an error in the earlier grand jury proceedings.

*Mechanik,* 475 U.S. at 73.

In *Lopez,* the Second Circuit faced a similar issue in the *habeas* context. Lopez was indicted by a grand jury and later convicted by a petit jury of manslaughter. He petitioned for a writ of *habeas corpus,* alleging various errors in the grand jury proceedings, including an allegation that "the prosecutor did not sufficiently develop before, or adequately present to, the grand jury allegedly exculpatory evidence." *Lopez,* 865 F.2d at 31. Relying on *Mechanik,* the Second Circuit stated that "(i)f federal grand jury rights are not cognizable on direct appeal where rendered harmless by a petit jury, similar claims concerning a state grand jury proceeding are *a fortiori*

foreclosed in a collateral attack brought in federal court. The particular claims of impropriety before the grand jury in this case ... (were) cured in the trial before the petit jury, which convicted." *Lopez,* 865 F.2d at 32-33.

Here, Petitioner argues that there were deficiencies in the grand jury proceeding. Petitioner was found guilty by a petit jury. Therefore, his claims are not cognizable on federal *habeas* review. Accordingly, the undersigned recommends that the petition be denied on this ground.

### C. *Petitioner's Claims Regarding Ineffectiveness of Counsel Are Without Merit*

**\*6** Petitioner argues that trial counsel[3] rendered ineffective assistance due to his "failure to submit any pre trial discovery motions contesting the arrest and/ or suppression of physical evidence, failure to conduct meaningful cross examination of prosecution witnesses, failure to conduct a proper investigation i.e. interview witnesses and failure to object to prosecutorial misconduct (handling of the Grand Jury's request)." (Dkt. No. 1 at 5(b).)

The state appellate court addressed Petitioner's claim of ineffective assistance of counsel on the merits. *People v. Cooper,* 756 N.Y.S.2d 339, 343 (N.Y.App.Div.2003). Thus, the deferential AEDPA standard applies, and this Court may only grant relief if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1) (2006); *Carey v. Musladin,* 127 S.Ct. 649, 653 (2006); *Campbell v. Burgess,* 367 F.Supp.2d 376, 380 (W.D.N.Y.2004).

The Sixth Amendment to the United States Constitution provides that: "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. To establish a violation of this right to the effective assistance of counsel, a habeas petitioner must show both: (1) that counsel's representation fell below an objective standard of reasonableness, measured in the light of prevailing professional norms; and (2) resulting prejudice, that is, a reasonable probability that, but for counsel's unprofessional performance, the outcome of the proceeding would have been different. *Strickland v. Washington,* 446 U.S. 674, 688-90 (1984); *Wiggins v. Smith,* 539 U.S. 510, 521 (2003) ("the legal principles

that govern claims of ineffective assistance of counsel" were established in *Strickland.*).[4] There is a strong presumption that counsel's conduct fell within the wide range of reasonable assistance and that counsel's actions constituted sound trial strategy under the circumstances. *Cuevas v. Henderson,* 801 F.2d 586, 589-90 (2d Cir.1986).

Here, the state court's decision reasonably applied clearly established federal law. The state court correctly found that Petitioner's counsel's performance was objectively reasonable. The record shows that Petitioner's attorneys actively litigated on his behalf. Petitioner's original attorney moved to suppress physical evidence. (Records Ex. 4.) Trial counsel also moved to suppress physical evidence. (Records Ex. 8.) As discussed above, trial counsel moved to dismiss the indictment based on the alleged defects in the grand jury proceeding. (Records Ex. 9 at 24:23-26:8.) Trial counsel cross-examined the custodian of evidence (T. at 237:6-240:21), the officer who released Petitioner's car to him after it was impounded (T. at 245:24-246:16), the custodian of bail records (T. at 262:16-262:25), the eyewitnesses (T. at 276:5-288:9; 310:1-322:23, 426:8-431:20), three state police investigators (T. at 355:11-378:5, 603:1-619:17, 640:19-645:21), two of the officers involved in the events leading to Petitioner's arrest (T. at 399:10-413:14, 465:20-469:23), the crime lab drug chemist (T. at 525:5-544:21), the state police certified latent fingerprint examiner (T. at 560:5-561:10), and four acquaintances of Petitioner (T. at 679:15-692:3, 729:22-741:2, 758:22-761:8, 777:7-778:24). Trial counsel called several witnesses. (T. at 792-914:4.) His closing argument raised the weaknesses in the prosecution's case. (T. at 926:11-941:22.) This performance was objectively reasonable. Accordingly, Petitioner was not denied effective assistance of counsel.

### D. *Petitioner's Other Claims*

**\*7** Petitioner listed three other grounds in his petition: (1) "harsh and excessiveness of illegal consecutive sentence"; (2) "perjury and false testimony of prosecutor"; and (3) "prosecutor and court impermissibly changed the theory of case by amending the indictment." (Dkt. No. 1 at 3(a).) Petitioner did not provide any factual basis for those grounds. Rather, the narrative portion of his petition focuses on the grand jury issues and ineffective assistance of counsel.

The undersigned notes that the state appellate court considered and rejected each of Petitioner's arguments with respect to these further claims. *People v. Cooper,* 756 N.Y.S.2d 339, 343 (N.Y.App.Div.2003). Petitioner, by failing to provide any factual basis or legal arguments regarding these grounds, has not met his burden of showing that the state court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1) (2006). However, given the special solicitude that must be granted to *pro se* litigants, I will address each argument briefly.

As to the first argument, the United States Supreme Court has noted that "(o)utside the context of capital punishment, successful challenges to the proportionality of particular sentences have been exceedingly rare. (O)ne could argue without fear of contradiction by any decision of this Court that for crimes concededly classified and classifiable as felonies ... the length of the sentence actually imposed is purely a matter of legislative prerogative." *Rummel v. Estelle,* 445 U.S. 263, 272-274 (1989) (denying *habeas* relief to petitioner sentenced to life with the possibility of parole under Texas recidivist statute following third felony conviction for obtaining $120.75 by false pretenses). In the *habeas* context, a sentence violates the Eighth Amendment only in "exceedingly rare" and "extreme" cases, and only then if it is 'grossly disproportionate' to the crime. *Lockyer v. Andrade,* 538 U.S. 63, 72-73 (2003). This is not such a case.

Petitioner's second argument is apparently a reference to the prosecutor's statement during oral argument in the trial court that he had spoken to Graven's attorney, who indicated that Graven did not wish to testify before the grand jury. The trial judge told the prosecutor:

> You've got a problem now because I talked to (Graven's attorney) yesterday afternoon and he said his client said to him specifically yes, he wanted to testify before the (grand) jury and (that Graven's attorney) never communicated anything to you.

(Records Ex. 9 at 25:10-22.) Despite this warning, the trial court concluded that there had been no prosecutorial misconduct. (Records Ex. 9 at 25:23-26:1.) Petitioner has

not rebutted this factual finding by clear and convincing evidence. 28 U.S.C. § 2254(e)(1) (2006).

Petitioner's third argument apparently refers to the amendment of Count Five of the indictment to refer to possession of "a quantity of the narcotic drug cocaine" rather than "seven corner wraps of the narcotic drug cocaine." (Records Ex. 7.) The trial court granted the motion to amend at a January 27, 2000, pretrial hearing. (Records Ex. 9 at 2:11-17.)

**\*8** "A claim that the indictment underlying a state court conviction was impermissibly altered is generally a matter of state law and would not ordinarily be cognizable on habeas corpus review. However, states are required by the Sixth Amendment, which is applicable to them by operation of the due process clause of the Fourteenth Amendment, to provide fair notice of the charges against the accused so that he has a meaningful opportunity to defend against them." *Gaston v. Conway,* No. 06 Civ. 4365 SAS JCF, 2008 WL 501339, at \*7 (S.D.N.Y. Feb. 26, 2008). The United States Supreme Court has held that an indictment satisfies due process if it (1) contains the elements of the offense charged; (2) provides the defendant adequate notice of the charges against which he must defend; and (3) protects against double jeopardy by enabling the defendant to rely on either an acquittal or conviction as a bar to future prosecutions for the same offense. *Russell v. United States,* 369 U.S. 749, 763-64 (1962). "Courts within this Circuit have uniformly required petitioners to establish that they were prejudiced by an amendment to an indictment to prevail on a claim challenging such an amendment." *Gaston v. Conway,* No. 06 Civ. 4365 SAS JCF, 2008 WL 501339, at \*7 (S.D.N.Y. Feb. 26, 2008).

Here, Petitioner has not shown that the indictment was insufficient to satisfy due process or that he was prejudiced by the amendment to the indictment.

**WHEREFORE,** based upon the foregoing, it is hereby

**RECOMMENDED,** that the petition for a writ of habeas corpus (Dkt. No. 1) be **DENIED** and **DISMISSED.** Furthermore, the undersigned finds that Petitioner has not made a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S .C. § 2253(c)(2) ("A certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a

**Cooper v. Fischer, Not Reported in F.Supp.2d (2008)**

2008 WL 1766740

constitutional right."); *see also Lucidore v. New York State Div. of Parole,* 209 F.3d 107, 112 (2d Cir.2000). Therefore, I recommend that no certificate of appealability should issue with respect to any of Petitioner's claims.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.** 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e); *Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993) (*citing Small v. Sec'y of Health and Human Servs.,* 892 F.2d 15 (2d Cir.1989)).

**All Citations**

Not Reported in F.Supp.2d, 2008 WL 1766740

Footnotes

1   This action has been referred to the undersigned by District Court Judge Lawrence E. Kahn for a report and recommendation pursuant to 28 U.S.C. § 636(b) and Northern District of New York Local Rule 72.3(c).

2   The trial court dismissed the conspiracy charge before trial. (Records Ex. 10 at 18:4-14.)

3   Petitioner was represented by two attorneys. Thomas A. Muscatello, Esq., represented Petitioner initially. He was replaced four weeks prior to trial by Michael J. Sullivan, Esq.

4   In *Williams v. Taylor,* the Supreme Court declared that "the rule set forth in Strickland qualifies as "clearly established Federal law [.]" *Williams,* 529 U.S. 362, 391 (2000).

---

**End of Document**                                    © 2018 Thomson Reuters. No claim to original U.S. Government Works.

2013 WL 6195751
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Bobby COWARD, Petitioner,
v.
Mark BRADT, Respondent.

No. 9:11−CV−1362 (LEK/CFH).
|
Nov. 27, 2013.

**Attorneys and Law Firms**

Bobby Coward, Auburn, NY, pro se.

Hon. Eric T. Schneiderman, Attorney General for the State of New York, Paul B. Lyons, Esq., Assistant Attorney General, of Counsel, Albany, NY, for Defendants.

**Opinion**

### ORDER

LAWRENCE E. KAHN, District Judge.

**\*1** This matter comes before the Court following a Report–Recommendation filed on August 19, 2013, by the Honorable Christian F. Hummel, United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b) and Northern District of New York Local Rule 72.3(c). Dkt. No. 15 ("ReportRecommendation").

Within fourteen days after a party has been served with a copy of a magistrate judge's reportrecommendation, the party "may serve and file specific, written objections to the proposed findings and recommendations." FED.R.CIV.P. 72(b); L.R. 72.1(c). "If no objections are filed ... reviewing courts should review a report and recommendation for clear error." *Edwards v. Fischer,* 414 F.Supp.2d 342, 346–47 (S.D.N.Y.2006); *see also Cephas v. Nash,* 328 F.3d 98, 107 (2d Cir.2003) ("As a rule, a party's failure to object to any purported error or omission in a magistrate judge's report waives further judicial review of the point."); *Farid v. Bouey,* 554 F.Supp.2d 301, 306 (N.D.N.Y.2008).

No objections to the Report–Recommendation were filed in the allotted time period. After a thorough review of the Report–Recommendation and the record, the Court has determined that the Report–Recommendation is not subject to attack for clear error or manifest injustice.

Accordingly, it is hereby:

**ORDERED,** that the Report–Recommendation (Dkt. No. 15) is **APPROVED** and **ADOPTED in its entirety;** and it is further

**ORDERED,** that Petitioner Bobby Coward's Petition (Dkt. No. 1) for a writ of habeas corpus is **DENIED** and **DISMISSED;** and it is further

**ORDERED,** that no certificate of appealability shall issue in this case because Petitioner has failed to make a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S .C. § 2253(c)(2);[1] and it is further

**ORDERED,** that the Clerk of the Court serve a copy of this Order upon the parties to this action.

**IT IS SO ORDERED.**

### REPORT–RECOMMENDATION AND ORDER [1]

CHRISTIAN F. HUMMEL, United States Magistrate Judge.

Petitioner pro se Bobby Coward ("Coward") is an inmate currently in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS") at Auburn Correctional Facility ("Auburn"). On July 10, 2006, the Onondaga County Supreme Court entered a judgment of conviction against Coward after Coward pled guilty to attempted murder in the second degree on June 7, 2006. Dkt. No. 12–4 at 2; Tr. (Dkt. No. 12–15) at 232–41.[2] Coward was sentenced to a determinate term of twenty years with five years post-release supervision. Pet. (Dkt. No. 1) ¶ 1; Tr. at 242–46. Coward is presently serving that sentence.[3]

Coward now seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on the grounds that: (1) the indictment was

"jurisdictionally defective"; (2) his plea was involuntarily and unknowingly made and the trial court failed to order a psychiatric examination to determine whether he was competent to proceed, thereby depriving him of a fair trial; (3) he received ineffective assistance of counsel; and (4) the police and prosecution engaged in misconduct. Pet. ¶¶ 12(A)-(D). Respondent opposes Coward's petition. Resp't Mem. of Law (Dkt. No. 10). Coward did not file a traverse in response to respondent's opposition. For the reasons that follow, it is recommended that the petition be denied.

## I. Background

### A. Introduction

**\*2** On August 24, 2005, Coward robbed Katherine Easterly ("Easterly") at knife point in Syracuse, New York. Tr. at 195:5–200:8; Resp't Mem. of Law at 5. On September 2, 2005, Coward unlawfully entered Easterly's residence, stole money, and stabbed Clifford Grayer ("Grayer") with a pair of scissors. Tr. at 181:8–186:19; Dkt. No. 12–1 at 12; Resp't Mem. of Law at 5. While Grayer was hospitalized, he identified Coward as the perpetrator from a photo array. Tr. at 181:8–186:19.

On December 2, 2005, an Onondaga County grand jury charged Coward with attempted murder in the second degree (N.Y. Penal Law §§ 110.00, 125.25(1)), burglary in the first degree (N.Y. Penal Law § 140.30(2)), three counts of criminal possession of a weapon in the third degree (N.Y. Penal Law § 265.02(1)), two counts of robbery in the first degree (N.Y. Penal Law § 160.15(3)), and assault in the second degree (N.Y. Penal Law § 120.05(2)). Dkt. No. 12–1 at 12–13.

### B. Pre–Plea Proceedings

On December 5, 2005, Coward was arraigned before Onondaga County Court Judge Anthony F. Aloi. Tr. at 1. Coward personally requested that the indictment be dismissed on the ground that he was denied the opportunity to testify before the grand jury. Tr. at 5:8– 14. Karin Marris, Esq. ("Marris"), Coward's assigned counsel, advised the court that Coward had wished to proceed pro se and the court adjourned the case for

making a formal inquiry on Coward's legal representation. *Id.* at 6:1–9:25.

On December 13, 2005, Coward requested new counsel because Marris: (1) spoke negatively of Coward to the press; (2) prevented Coward from testifying before the grand jury; (3) failed to respond to Coward's phone messages; and (4) refused to move to dismiss the indictment. Tr. at 14–17:16. Even though Marris had "represented [her] client well," due to "a break down in communication," the county court relieved Marris from the case and assigned Coward another attorney, David Stanton, Esq. ("Stanton"). *Id.* at 17:20–20:7.

On February 21, 2006, based upon a review of the grand jury minutes, the county court denied Coward's counseled motion to dismiss the indictment. Tr. at 36:8–18. Stanton advised the court that Coward had "fired" him. *Id.* at 35:11–14. Coward explained that Stanton had refused to sign a nine-page "contract" that Coward had drafted. *Id.* at 37:6–14. Judge Aloi observed, "based upon my review of some of these contractual terms, ... I don't know too many lawyers that would sign such a document like this." *Id.* at 37:24–38:2. Judge Aloi continued at a later time, "there's some requirements in this contract that I don't know if any lawyer could-would agree to." *Id.* at 59:6– 8. Coward then submitted a pro se motion to dismiss for lack of "subject matter jurisdiction" based on the ineffectiveness of counsel and counsel's refusal to sign Coward's "contract." *Id.* at 41:7–42:22, 47:4–48:2. The county court found Coward's arguments to be legally and factually insufficient. *Id.* at 59:15–17.

**\*3** The county court relieved Stanton from representing Coward and assessed Coward's ability to proceed pro se. Tr. at 51:24–52:6. Coward was uncooperative and refused to answer the court's questions. *Id.* at 52:2– 56:11. The Court then determined that Coward desired to be represented by counsel and assigned Coward a third attorney, Clarence Johnson, Esq. ("Johnson"). *Id.* at 56:12–21.

On February 27, 2006, Coward refused to accept Johnson's representation, alleging that Johnson was unconcerned with Coward's constitutional rights and refused to sign the same contract that Coward had offered Stanton. Tr. at 66:23–67:15. The court reiterated that the law does not require assigned counsel to sign the contract and explained "there are considerable disadvantages of

proceeding without an attorney." *Id.* at 67:23–68:1, 76:2–12. Coward renewed his motion to dismiss based on subject matter jurisdiction and ineffective assistance of counsel. *Id.* at 77:18–79:9. The county court ruled that Coward's ineffective assistance claim was prematurely made. *Id.* at 79:15–82:14. The court advised that Coward would not be assigned any additional attorneys and Johnson would remain as Coward's assigned counsel. *Id.* at 110:8–112:13.

On April 5, 2006, the county court summarized Coward's letters filed with the court, which stated that Coward had fired Johnson for providing ineffective assistance and refusing to sign the contract. Tr. at 129:15–130:7, 135:20–136:7. Coward requested new counsel and renewed his motions to dismiss. *Id.* at 130:21–132:6. Johnson submitted that he had refused to sign the contract but recognized that it was Coward's decision to either enter or not enter a plea and "intend[ed] to protect any and all of [Coward's] constitutional rights." *Id.* at 135:23–136:7, 137:17–21. The court denied Coward's motion to substitute counsel, reaffirmed its ruling that the grand jury minutes supported the indictment, denied counsel's motion to sever the last two counts of the indictment, which alleged that Coward robbed Easterly on August 24, 2005, and granted a combined *Wade* and *Huntley* hearing.[4] *Id.* at 156:13–161:15, 255 N.Y.S.2d 838, 204 N.E.2d 179.

The prosecution proceeded to ask the county court whether a psychiatric exam was necessary. Tr. at 164:4–5. The county court declined, ruling that Coward was "more than competent" to proceed, to which Coward stated, "thank you." *Id.* at 164:6–7, 255 N.Y.S.2d 838, 204 N.E.2d 179. Johnson had filed a notice of intent to proffer psychiatric evidence in the event that Coward's mental capacity became relevant in subsequent proceedings. *Id.* at 164:10–18, 255 N.Y.S.2d 838, 204 N.E.2d 179.

On May 15, 2006, the county court held a combined *Wade* and *Huntley* hearing in order to determine whether Grayer's identification of Coward from a photo-array was unduly suggestive and Coward's incriminating statements made to the police should be admissible at trial. Tr. at 175–229. Coward was advised of his right to appear at the hearing but refused and his suppression motions were denied. *Id.* at 177:9–178:3, 221–229, 255 N.Y.S.2d 838, 204 N.E.2d 179.

**C. Plea–Hearing and Sentencing**

**\*4** On June 7, 2006, Coward appeared with Johnson before Judge Aloi and pled guilty to attempted murder in the second degree in full satisfaction of the indictment. Tr. at 234:8–21, 239:10–20. Coward acknowledged that he understood the plea agreement, did not receive any other promises or was forced to enter the plea agreement, waived his right to a jury trial and confront witnesses by entering the plea, and the plea was equivalent to a verdict after trial. *Id.* at 234–239, 255 N.Y.S.2d 838, 204 N.E.2d 179.

On July 10, 2006, Coward appeared with Johnson for sentencing. Tr. at 242. Upon Coward's guilty plea, the court sentenced Coward to a twenty-year determinate sentence with a five-year post-release supervision period. *Id.* at 245:15–23, 255 N.Y.S.2d 838, 204 N.E.2d 179. Coward apologized to "the people that are hurt" and did not disavow the voluntariness of his plea. *Id.* at 244:2, 255 N.Y.S.2d 838, 204 N.E.2d 179.

**D. Direct Appeal**

On July 22, 2008, Coward filed a counseled direct appeal to the Appellate Division, Fourth Department ("Appellate Division"), asserting that "the indictment failed to state a crime." Dkt. No. 12–2 at 6, 13. First, Coward argued that Count One of the indictment charging Coward with attempted murder in the second degree made "no reference to the acts or omissions or other facts constituting the crime charged[;] thus[,] rendering the count jurisdictionally defective." *Id.* at 17. Second, Coward argued that Count Two charging him with burglary in the second degree was defective because the indictment: (1) alleged that the burglary took place "on or about" September 2, 2005; (2) did not name Coward; and (3) did "not state what facts constituted or how ... [Coward] caused physical injury to Grayer." *Id.* at 17–18. Lastly, Coward claimed that Counts Three through Eight "fail[ed] to name ... [Coward] or specify what dangerous instrument" was employed, and that the date of the alleged crime was uncertain. *Id.* at 24.

On February 6, 2009, the Appellate Division unanimously affirmed the judgment of conviction. *People v. Coward,* 59 A.D.3d 988, 988, 872 N.Y.S.2d 319 (4th Dep't 2009). The

Appellate Division found, "[e]ven assuming, arguendo, that ... [Coward's] challenge is jurisdictional in nature and thus is properly before us, ... that it is 'a nonwaivable jurisdictional prerequisite to a criminal prosecution' ... we conclude that the count to which defendant pleaded guilty provided him 'with fair notice of the nature of the charge[] against him and the time and place of the conduct, so as to enable him to prepare an adequate defense.' " *Id.* (citations omitted).

On February 11, 2009, Coward filed a counseled application for leave to appeal to the New York Court of Appeals ("Court of Appeals") on the issue of "whether the indictment should be dismissed for failure to state a crime." Dkt. No. 12–5 at 2–3. On April 17, 2009, the Court of Appeals denied Coward's leave application. *People v. Coward,* 12 N.Y.3d 815, 815, 881 N.Y.S.2d 22, 908 N.E.2d 930 (2009).

### E. New York Criminal Procedure Law ("CPL") § 440.10 Motion to Vacate the Conviction

**\*5** In an uncounseled motion dated March 29, 2010, Coward moved to vacate his conviction pursuant to CPL § 440.10. [5] Dkt. No. 12–8. Coward raised a number of claims. First, Coward argued that he received ineffective assistance of trial counsel because (1) counsel prevented him from testifying before the grand jury and failed to challenge the indictment based on such conduct, (2) Johnson failed to pursue a court-ordered psychiatric examination for Coward, and (3) Marris and Johnson did not act in Coward's best interest. *Id.* at 3, 5–6. Second, Coward argued that the court deprived him of his due process rights by assigning Johnson as Coward's attorney over Coward's objections, acting with bias against Coward, denying Coward a mental competency hearing, and threatening Coward with the maximum sentence for proceeding with a trial. *Id.* at 3–4, 7–8, 13. Third, Coward argued that his guilty plea was involuntarily and not knowingly entered, thereby depriving him of a fair trial, the prosecution threatened to press unrelated charges against him if he were to go to trial, counsel was ineffective, and the court failed to properly explain the plea agreement to him. *Id.* at 4, 17–18. Fourth, Coward argued that the prosecution knowingly allowed perjured witnesses, who were police officers, to testify at the *Wade/Huntley* hearing, the prosecution and police expressed personal opinions about Coward's guilt,

and the prosecution failed to disclose evidence favorable to the defense. *Id.* at 4, 15–16.

In a Decision and Order dated July 21, 2011, Judge Aloi denied the § 440.10 motion in its entirety. Dkt. No. 12–11. The court found all of Coward's claims were procedurally barred under CPL § 440.10(2)(c) [6] because Coward could have, but did not, raise the claims on direct appeal. *Id.* at 4–5 (citing *inter alia People v. Hernandez,* 191 A.D.2d 511, 512, 594 N.Y.S.2d 791 (2d Dep't 1993), *People v. Pachay,* 185 A.D.2d 287, 287, 587 N.Y.S.2d 212) (2d Dep't 1992)). In addition, the court found all claims were without merit. *Id.* at 6–12, 587 N.Y.S.2d 212.

On August 23, 2011, Coward filed a motion for leave to appeal the § 440.10 motion, presenting claims of ineffective assistance of counsel, prosecutorial misconduct, and an involuntary plea. Dkt. No. 12–12 at 1–28. On November 1, 2011, the Appellate Division denied Coward's motion for leave to appeal. Dkt. No. 12–14.

### F. The Petition Before the Court

On November 18, 2011, Coward filed a pro se habeas corpus petition asserting the following claims: (1) the indictment was "jurisdictionally defective" because Coward was denied the right to testify before the grand jury and the indictment was vague (Pet.¶ 12(A)); (2) Coward's plea was not knowingly and voluntarily entered because Coward was threatened with the maximum sentence if he had proceeded to a trial and the trial court failed to order a psychiatric examination to determine whether Coward was competent to proceed (*Id.* ¶¶ 12(B), (D), (F)); (3) Coward received ineffective assistance of counsel because counsel failed to move to dismiss the indictment on the ground that Coward was prevented from testifying before the grand jury and counsel had a conflict of interest in representing Coward (*Id.* ¶ 12(C)); (4) the police and prosecution engaged in misconduct when the prosecution threatened to press unrelated charges against Coward and police officers committed perjury at unspecified proceeding or proceedings. *Id.* ¶ 12(E).

### II. Exhaustion [7]

**\*6** It is well-settled that before seeking habeas review, a petitioner must first exhaust all state remedies. 28 U.S.C. § 2254(b), (c); *Shabazz v. Artuz,* 336 F.3d 154, 160 (2d Cir.2003) (quoting *Aparicio v. Artuz,* 269 F.3d 78, 89 (2d Cir.2001)). Specifically, 28 U.S.C. § 2254(b)(1)(A) & (B) directs that

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that-
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B) (i) there is an absence of available State corrective process; or
>
> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

*Id.*

The exhaustion requirement is "grounded in principles of comity; in a federal system, the States should have the first opportunity to address and correct alleged violations of [a] state prisoner's federal rights." *Coleman v. Thompson,* 501 U.S. 722, 731, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). Thus, pursuant to § 2254(b)(1)(A), "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999). State remedies are "*properly exhausted*" when the petitioner has "fairly presented" to the state court, *O'Sullivan,* 526 U.S. at 848, "both the factual and legal premises of the claim he asserts in federal court." *Daye v. Attorney General of New York,* 696 F.2d 186, 191 (2d Cir.1982) (citations omitted). The petitioner may fairly present the constitutional nature of his claim by

> (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, [or] (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

*Id.* at 194. In addition, the petitioner must seek discretionary review where it is available at the highest state court and raise the same federal constitutional claims. *See O'Sullivan,* 526 U.S. at 847–48; *Brown v. Senkowski,* 152 F. App'x 15, 17 (2d Cir.2005). The petitioner bears the burden of proving exhaustion. *Colon v. Johnson,* 19 F.Supp.2d 112, 119–20 (S.D.N.Y.1998) (citations omitted).

In this case, it is uncontested that the majority of Coward's claims were exhausted. Coward partially exhausted his defective-indictment claim by presenting to the state court his defective-indictment claim based on the vagueness of the indictment in his direct appeal. While Coward brought forth the grand jury testimony issue under an ineffective assistance of counsel claim in his § 440.10 motion, he has failed to present it as a defective-indictment claim to a state court. Thus, Coward's defective-indictment claim is partially unexhausted.

**\*7** A claim that was not fairly presented to the state courts and does not satisfy the requirements of § 2254(b) (1) may still be "deemed" exhausted by the habeas court "if it is clear that the state court would hold the claim procedurally barred." *Grey v. Hoke,* 933 F.2d 117, 120 (2d Cir.1991) (collecting cases); *Aparicio,* 269 F.3d at 90 ("When a claim has never been presented to a state court, a federal court may theoretically find that there is an 'absence of available State corrective process' under § 2254(b)(1)(B)(I) if it is clear that the unexhausted claim is procedurally barred by state law and, as such, its presentation in the state forum would be futile."). Here, Coward cannot return to state court with his unexhausted claim because he had already sought direct appeal of his conviction. *Grey v. Hoke,* 933 F.2d 117, 120–21 (2d Cir.1991); *People v. Spence,* 82 N.Y.2d 671, 671, 601 N.Y.S.2d 566, 619 N.E.2d 644 (1993); NEW YORK COMP. CODES, R. AND REG. tit. 22, §§ 600.8(b), 500.10 (2012). Coward is also barred from raising that claim in a state writ of habeas corpus because he could have raised it on direct review as the defective-indictment claim is record-based. *See Sweet v. Bennett,* 353 F.3d 135, 139–41 (2d Cir.2009); N.Y. CRIM. PROC. LAW § 440.10(2) (c) (barring review if a claim could have been raised on direct appeal). As a result, Coward's unexhausted claim is deemed exhausted.

A claim that is deemed exhausted because state remedies are no longer available to the petitioner may avoid

the procedural bar if the petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman,* 501 U.S. at 750; *DiGuglielmo v. Smith,* 366 F.3d 130, 135 (2d Cir.2004) (citations omitted); *Ramirez v. Attorney General of New York,* 280 F.3d 87, 94 (2d Cir.2001); *Aparicio,* 269 F.3d at 90. "Cause" requires a showing that "some objective factor external to the defense impeded counsel's efforts to raise the claim in state court" or that the basis for a claim was not reasonably available to counsel. *Levine,* 44 F.3d at 127 (internal quotation marks and citations omitted). As for a miscarriage of justice, this necessarily involves a showing that the petitioner is actually innocent. *Sweet v. Bennett,* 353 F.3d 135, 141 (2d Cir.2003).

Here, neither cause and prejudice nor a miscarriage of justice is present in the record. There is nothing in the record indicating that an objective and external factor impeded Coward's efforts in raising his claims in state court. Ineffective assistance of counsel constitute cause and to successfully allege it the petitioner must raise it as a separate and meritorious claim. *Edwards v. Carpenter,* 529 U.S. 446, 451–52, 120 S.Ct. 1587, 146 L.Ed.2d 518 (2000). While Coward raised ineffective assistance of trial counsel as a separate claim, as discussed *infra,* he has failed to demonstrate that the claim is meritorious. Further, as discussed *infra,* Coward's ineffective assistance claim is also procedurally barred. *Reyes v. Keane,* 118 F.3d 136, 140 (2d Cir.1997) ("[A] claim of cause for procedural default is not itself excepted from the doctrine of procedural default. Thus, a petitioner may not bring an ineffective assistance claim as a cause for a default when the ineffective assistance claim itself is procedurally barred." (citation omitted)). Thus, Coward has failed to establish cause for overcoming the procedural bar. Because cause is not established, the Court does not need to reach the inquiry on prejudice. *Horton v. Ercole,* 557 F.Supp.2d 308, 323 (N.D.N.Y.2008) (citations omitted). As for the fundamental miscarriage of justice, Coward does not allege new evidence tending to establish his actual innocence. Thus, Coward's unexhausted claim is deemed exhausted and procedurally defaulted.

**\*8** Accordingly, Coward's defective-indictment claims are barred from federal habeas review.

### III. Adequate and Independent State Law Grounds

Federal habeas review of a question of federal law decided by a state court is prohibited if the state court rested its judgment "on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman,* 501 U.S. at 729 (citations omitted) (noting that federal court resolution of the federal issue would merely be advisory where the state judgment is supported by independent and adequate state grounds); see also *Harris v. Reed,* 489 U.S. 255, 261–62, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989); *Cotto v. Herbert,* 331 F.3d 217, 238 (2d Cir.2003); *Garcia v. Lewis,* 188 F.3d 71, 76 (2d Cir.1999); *Levine v. Comm'r of Corr. Servs.,* 44 F.3d 121, 126 (2d Cir.1995). "This rule applies whether the state law ground is substantive or procedural." *Coleman,* 501 U.S. at 729 (citation omitted). "Because it can be difficult to determine if the state law discussion is truly an independent basis for decision or merely a passing reference, ... such reliance on state law must be clear from the face of the opinion." *Fama v. Comm'r of Corr. Servs.,* 235 F.3d 804, 809 (2d Cir.2000) (internal quotation marks omitted) (citing *Coleman,* 501 U.S. at 732, 735). Thus, the mere existence of a state procedural default is not enough, as the Supreme Court explained,

> the state court must actually have relied on the procedural bar as an independent basis for its disposition of the case. Moreover, we will not assume that a state-court decision rests on adequate and independent state grounds when the state court decision fairly appears to rest primarily on federal law, or to be interwoven with the federal law, and when the adequacy and independence of any possible state law ground is not clear from the face of the opinion.

*Caldwell v. Mississippi,* 472 U.S. 320, 327, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985) (internal quotation marks and citations omitted).

In addition to being "independent," the state procedural bar must also be "adequate." *Cotto,* 331 F.3d at 239. Adequacy requires a state procedural ground that is "strictly or regularly followed." *Johnson v. Mississippi,* 486

U.S. 578, 587, 108 S.Ct. 1981, 100 L.Ed.2d 575 (1988) (citations omitted). A violation of such "firmly established and regularly followed" state rules would ordinarily be adequate to bar federal review. *Cotto,* 331 F.3d at 239–40 (internal quotation marks omitted). In an "exceptional case[ ] in which exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question[,]" the court considers three guideposts in determining whether a procedural bar is adequate to preclude federal review of claims raised in the petition:

> (1) whether the alleged procedural violation was actually relied on in the trial court, and whether perfect compliance with the state rule would have changed the trial court's decision; (2) whether state caselaw indicated that compliance with the rule was demanded in the specific circumstances presented; and (3) whether petitioner had "substantially complied" with the rule given "the realities of trial," and, therefore, whether demanding perfect compliance with the rule would serve a legitimate governmental interest.

**\*9** *Id.* at 240. A claim that is procedurally defaulted due to an adequate and independent state law ground may also avoid the procedural bar if the petitioner shows cause for the default and actual prejudice, or a miscarriage of justice will result if the claims are not considered. *Coleman,* 501 U.S. at 750; *DiGuglielmo,* 366 F.3d at 135.

In this case, Coward's involuntary plea, ineffective assistance of trial counsel, and police and prosecutorial misconduct claims are procedurally defaulted pursuant to an independent and adequate state law grounds. Coward claimed that his plea was not voluntarily made because he was threatened with the maximum sentence if he proceeded with trial and the trial court failed to order a psychiatric examination to determine whether he was competent to proceed. Coward further asserted that the trial court used duress to compel the guilty plea, which in turn deprived him of a fair jury trial. The supreme court expressly denied Coward's involuntariness claim on procedural grounds under CPL § 440.10(3)(a), [8] "because such claim could have been preserved for direct review on

direct appeal with due diligence by [Coward]." Dkt. No. 12–11 at 8–11. The supreme court continued, "[Coward] could have made a motion to withdraw his plea of guilty before sentencing, which occurred over a month after [Coward] ... entered the plea...." *Id.* at 10. Coward could also have filed his § 440.10 motion before filing a direct appeal. Thus, Coward's involuntary plea claim is procedurally barred. The supreme court denied Coward's police and prosecutorial misconduct claim pursuant to the same statute. The supreme court reasoned that "[i]t was fully within [Coward's] ... ability to discover and raise the issue of the prosecution allowing perjurious testimony at the Grand Jury hearing at the trial court level. Furthermore, [Coward] ... could have preserved this issue for review had he raised such issue at the trial court level." Dkt. No. 12–11 at 12. Section 440.10(3)(a) constitutes an adequate and independent state law ground. *Witt v. Racette,* No. 10–CV–9180 (JPO), 2012 WL 3205177, at \*8 (S.D.N.Y. Aug.7, 2012) (citation omitted). [9] Therefore, the Court is prevented from reviewing these claims.

As for Coward's ineffective assistance of trial counsel claim, the supreme court denied that claim pursuant to § 440.10(2)(c) because the claim was based on facts in the record and Coward could have, but did not, raise the claim on direct appeal. Dkt. No. 12–11 at 5. The supreme court found Coward had used the § 440.10 motion "as a secondary vehicle of appeal because he has not alleged any new facts, and he instead merely relies on the facts that appear in the trial court record." *Id.* at 6. CPL § 440.10(2)(c) has been recognized as a firmly established and regularly followed state procedural rule. *Clark v. Perez,* 510 F.3d 382, 390–92 (2d Cir.2008) ("It was therefore error to hold that ... [§ 440.10(2)(c) ] was not "adequate" to bar federal review of [the] ... petition."); *see also Reyes,* 118 F.3d at 139. Thus, these three claims are barred by an adequate and independent state law ground. While Coward raised ineffective assistance of trial counsel as a separate claim, the claim is procedurally barred and Coward has failed to demonstrate that the claim is meritorious, as discussed *infra.* Thus, Coward has failed to establish cause for overcoming the procedural bar. Because cause is not established, the Court does not need to reach the inquiry on prejudice. *Horton v. Ercole,* 557 F.Supp.2d 308, 323 (N.D.N.Y.2008) (citations omitted). Further, Coward makes no attempt to show a miscarriage of justice. Thus, Coward's claims are procedurally barred by adequate and independent state law grounds.

**\*10** Accordingly, Coward's involuntary plea, ineffective assistance of trial counsel, and police and prosecutorial misconduct claims are procedurally defaulted and barred from federal habeas review.

### IV. Mixed Petition

A habeas petition containing both exhausted and unexhausted claims is a "mixed" petition. *Rhines v. Weber,* 544 U.S. 269, 271, 125 S.Ct. 1528, 161 L.Ed.2d 440 (2005). "An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2). A district court confronted with a mixed petition has discretionary power to dismiss it in its entirety, or "stay the petition and hold it in abeyance while the petitioner returns to state court to exhaust his previously unexhausted claims." *Rhines,* 544 U.S. at 275. The stay-and-abeyance procedure is available only when the petitioner's failure to exhaust his claims was based on good cause. *Id.* at 277. However, even if good cause exists, granting a stay would be an abuse of discretion if the unexhausted claims are plainly meritless. *Id.* (citation omitted). Here, Coward has not provided good cause for his failure to exhaust his claims. As such, Coward has failed to meet the *Rhines* stay-and-abeyance standard of demonstrating good cause and raising a colorable claim. Moreover, as discussed infra, all of Coward's claims, both exhausted and unexhausted, are meritless. Thus, although the habeas petition includes both exhausted and unexhausted claims, this Court may review their merits.

### V. Merits

#### A. Legal Standard

Under the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214 (1996) ("AEDPA"), a federal court may grant a writ of habeas corpus only if the state court's adjudication on the merits

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *Williams v. Taylor,* 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *Hawkins v. Costello,* 460 F.3d 238, 242 (2d Cir.2006); *DeBerry v. Portuondo,* 403 F.3d 57, 66 (2d Cir.2005).

The Supreme Court has given independent meaning to the "contrary to" and "unreasonable application" clauses in § 2254(d)(1). *Williams,* 529 U.S. at 405. "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Id.* at 412–13. As for the "unreasonable application" clause, a writ may be granted if "the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409, 413. "[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Id.* at 410. In addition, the statutory phrase "clearly established Federal law ... refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions...." *Id.* at 412 (internal citations omitted).

**\*11** The petitioner bears the burden of proving, by a preponderance of the evidence, that "he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *see also Smalls v. Batista,* 191 F.3d 272, 278 (2d Cir.1999); *Jones v. Vacco,* 126 F.3d 408, 415 (2d Cir.1997). Further, when evaluating a habeas petition, "a determination of a factual issue made by a State court shall be presumed to be correct [and t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U .S.C. § 2254(e)(1); *DeBerry,* 403 F.3d at 66.

#### B. Defective–Indictment

Even if this Court were to review Coward's claims that the indictment was "jurisdictionally defective," such claims are without merit. The Appellate Division reviewed the merits of Coward's claim based on the indictment's vagueness and concluded that the indictment

gave Coward fair notice of the nature of the charge as well as the time and place of the conduct. First, it is well-settled that alleged deficiencies or errors in state grand jury proceedings are not cognizable on habeas corpus review. *Davis v. Mantello,* 42 F. App'x 488, 490 (2d Cir.2002) (citing inter alia *Lopez v. Riley,* 865 F.2d 30, 32 (2d Cir.1989) ("If federal grand jury rights are not cognizable on direct appeal where rendered harmless by a petit jury, similar claims concerning a state grand jury proceeding are a *fortiori* foreclosed in a collateral attack brought in a federal court.")). Further, "a defendant's right to testify before the grand jury is not a federal constitutional right" but "a statutorily created right"; thus, Coward's defective-indictment claim based on testifying before the grand jury is not cognizable on federal habeas review. *Lucius v. Filion,* 431 F.Supp.2d 343, 346 (W.D.N.Y.2006)

Second, assuming these claims are cognizable, Coward waived the defective-indictment claims by pleading guilty when he "solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea...." *Tollett v. Henderson,* 411 U.S. 258, 267, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973); *Canal v. Donelli,* No. 06–CV–1490 (TJM/DRH), 2008 WL 4287385, at *3 (N.D.N.Y. Sept.17, 2008) ("an unconditional guilty plea waives all claims ... relating to events prior to the guilty plea that did not affect the voluntariness of the plea" (citations omitted)); *see also Ariola v. LaClair,* No. 07–CV–57 (GLS/VEB), 2008 WL 2157131, at *12–13 (N.D.N.Y. Feb.20, 2008) ("[A] defendant's guilty plea cured any possible deficiency in the grand jury proceeding." (collecting cases)). Since Coward's claims concerning his testimony before the grand jury and the specificity of the indictment do not attack the voluntariness of his plea, such claims are barred from habeas review.

 **\*12** Furthermore, the indictment against Coward for attempted murder in the second degree was not vague. "It is well settled that 'an indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense.' " *United States v. Alfonso,* 143 F.3d 772, 776 (2d Cir.1998) (citing *Hamling v. United States,* 418 U.S. 87,

117, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974)). Nevertheless, "[a]n indictment need only provide sufficient detail to assure against double jeopardy and state the elements of the offense charged, thereby apprising the defendant of what he must be prepared to meet." *United States v. Tramunti,* 513 F.2d 1087, 1113 (2d Cir.1975) (citation omitted). The indictment only needs to track the language of the statute charged, stating the approximate time and place of the alleged crime. *Id.* (citations omitted). Here, the indictment that identified Coward as the sole defendant states,

> The grand jury of the County of Onondaga ... accuses Bobby M. Coward of the crime of attempted murder in the second degree in violation of Section 110.00/125.25(1) of the Penal Law of the State of New York committed as follows: The said Bobby M. Coward on or about the 2nd day of September, 2005 at the City of Syracuse, in this county, attempted to intentionally cause the death of Clifford Grayer.

Dkt. No. 12–1 at 12. Section 110.00 of the New York Penal Law states, "A person is guilty of an attempt to commit a crime when, with intent to commit a crime, he engages in conduct which tends to effect the commission of such crime." N.Y. CRIM. PROC. LAW § 110.00. Section 125.25(1) of the New York Penal Law states, "[a] person is guilty of murder in the second degree when with intent to cause the death of another person, he causes the death of such person or of a third person...." N.Y. CRIM. PROC. LAW § 125 .25(1).

Here, the indictment was sufficiently specific. The indictment notified Coward of the approximate time and place of the attempted murder, which was on or about September 2, 2005 [10] and in Syracuse, New York, the crime charged against him requires an "intentional" mental state, and the name of the alleged victim. *Tramunti,* 513 F.2d at 1113. Further, Coward's name appears in the indictment's caption, which provided sufficient notice to Coward that the indictment was made against him. *Harris v. Burge,* No. 01–CV–5066, 2008 WL 772568, at *6 n. 2 (S.D.N.Y. Mar.25, 2008). Thus, "[Coward] has failed to demonstrate that there was an error of state law, let alone an error of federal constitutional law."

Case 9:16-cv-00594-LEK-DEP    Document 12    Filed 02/16/18    Page 98 of 167

*Mills v. Poole,* No. 06–CV–842A, 2008 WL 2699394, at *15 (W.D.N.Y.2008). Given the non-cognizable nature of these defective-indictment claims, *Davis,* 42 F. App'x at 490, Coward's waiver of these claims by pleading guilty, *Tollett,* 411 U.S. at 267, and the indictment was sufficiently specific, the state court's determination of Coward's defectiveindictment claims was neither contrary to or an unreasonable application of Supreme Court precedent and it is not an unreasonable determination of the facts.

**\*13** Accordingly, Coward's petition on these claims should be denied.

### C. Involuntary Plea

Coward's claim based on the voluntariness of his plea is without merit. Coward argued that his plea was not knowingly and voluntarily made because he was threatened with the maximum sentence if he decided to proceed with trial and the trial court failed to order a psychiatric examination under CPL § 730 [11] to determine whether Coward was competent to proceed. The county court denied the claim on the merits, reasoning that Coward engaged in an extensive plea colloquy with the trial court which demonstrated that Coward was not coerced into pleading guilty. Dkt. No. 12–11 at 10–11.

"When evaluating the voluntariness of a guilty plea, a habeas court must examine the totality of the circumstances surrounding that plea." *Joseph v. Fischer,* No. 02–CV–4809, 2003 WL 68032, at *5 (S.D.N.Y. Jan.7, 2009) (citing *Henderson v. Morgan,* 426 U.S. 637, 644–45, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976)). The Court asks "whether the accused understand[s] the nature of the constitutional protections that he is waiving and whether his admission can stand as an intelligent admission of guilt." *Id.* (quoting *Henderson,* 426 U.S. at 645 n. 13 (internal quotation marks omitted)).

Here, the record belies Coward's claims. Coward failed to proffer any record evidence to support the claim that the county court threatened to impose the maximum sentence if he did not plead guilty. Conversely, at the plea hearing, the county court asked, "[h]as anyone forced you or threatened you to enter into this plea bargain agreement?" Dkt. No. 12–15 at 237. Coward answered, "[n]o, they didn't." *Id.* at 238. Such "[s]olemn declarations in open

court carry a strong presumption of verity." *Blackledge v. Allison,* 431 U.S. 63, 74, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977); *Adames v. United States,* 171 F.3d 728, 732 (2d Cir.1999) ("A criminal defendant's selfinculpatory statements made under oath at his plea allocution carry a strong presumption of verity ... and are generally treated as conclusive in the face fo the defendant's later attempt to contradict them." (internal quotation marks and citations omitted)). This presumption may be rebutted by "a substantial reason" to find otherwise and Coward has presented no such reason. *United States v. Juncal,* 245 F.3d 166, 171 (2d Cir.2001) ("This [plea agreement] testimony carries such a strong presumption of accuracy that a district court does not, absent a substantial reason to find otherwise, abuse its discretion in discrediting later selfserving and contradictory testimony as to whether a plea was knowingly and intelligent made." (citations omitted)).

Assuming the county court referred to Coward's maximum potential sentence during the plea allocution, thus creating a "discouraging effect on ... [Coward's] assertion of his trial rights," these circumstances are "an inevitable and permissible attribute of any legitimate system which tolerates and encourages the negotiation of pleas." *Bordenkircher v. Hayes,* 434 U.S. 357, 364, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978) (quoting *Chaffin v. Stynchcombe,* 412 U.S. 17, 31, 93 S.Ct. 1977, 36 L.Ed.2d 714 (1973)). Accordingly, the county court's decision on the merits of Coward's involuntary plea based on alleged sentencing threats was neither contrary to, or involved an unreasonable application of clearly established Supreme Court precedent, nor was it an unreasonable application of the facts.

**\*14** Coward's involuntary plea claim based on his alleged incompetence at the time of the plea allocution is also without merit. "A criminal defendant may not be tried unless he is competent, and he may not ... plead guilty unless he does so competently and intelligently." *Godinez v. Moran,* 509 U.S. 389, 396, 113 S.Ct. 2680, 125 L.Ed.2d 321 (1993) (internal quotation marks and citations omitted). In determining whether a defendant was competent to stand trial, the court asks "whether the defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and has a rational as well as factual understanding of the proceedings against him." *Id.* (internal quotation marks and citations omitted). This standard also applies to

determining a defendant's competence to plead guilty. *Id.* at 398. "[S]ome degree of mental illness cannot be equated with incompetence to stand trial." *United States v. Nichols,* 56 F.3d 403, 412 (2d Cir.1995). For example, the Supreme Court has found where a defendant who suffered from schizophrenia could be forced to be represented at trial despite the defendant was sufficiently competent to stand trial or enter plea. *Indiana v. Edwards,* 554 U.S. 164, 167–78, 128 S.Ct. 2379, 171 L.Ed.2d 345.

Here, the county court found that a § 730 competency hearing was unnecessary as "there was no factual basis for the Court to have a bona fide doubt about" Coward's competence. Dkt. No. 12–11 at 8–9. Coward "was coherent and responsive to the Court, and ... [Coward] did not request a competency hearing at any time" but rather "thanked the Court when a competency hearing was denied. *Id.* at 9. Coward has failed to proffer any evidence to rebut the county court's findings and the county court's "competency determination is a factual finding entitled to a presumption of correctness." *Musumeci v. N.Y.S. Dep't of Corr.,* No. 07–CV–6384 (MAT)(VEB), 2010 WL 2287486, at *4 (W.D.N.Y. June 1, 2010) (citations omitted). The county court's decision on Coward's involuntary plea claim is neither contrary to, nor an unreasonable application of, clearly established Supreme Court precedent. Thus, Coward's entire involuntary plea claim is without merit.

Accordingly, Coward's petition on this claim should be denied.

### D. Ineffective Assistance of Trial Counsel

Coward contends he received ineffective assistance of counsel because counsel failed to file a motion to dismiss the indictment for being prevented from testifying before the grand jury and counsel had a conflict of interest in representing Coward. However, such claims are not cognizable on federal habeas review.

The Sixth Amendment mandates that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." U.S. CONST. amend. VI. "[T]he right to counsel is the right to the effective assistance of counsel." *McMann v. Richardson,* 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970). To prevail on this claim, petitioner must satisfy

a two-prong test showing that his counsel's performance was deficient and that such deficient performance caused actual prejudice to the petitioner. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "Deficient performance" requires petitioner to show that counsel's performance "fell below an objective standard of reasonableness." *Murden v. Artuz,* 497 F.3d 178, 198 (2d Cir.2007) (quoting *Strickland,* 466 U.S. at 688). "Prejudice" requires petitioner to show that there is a reasonable probability that, but for counsel's deficient performance, the outcome would have been different. *Strickland,* 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

*\*15* Federal courts apply a "highly deferential" standard of review for a claim of ineffective assistance of counsel alleged in a habeas corpus petition. *Premo v. Moore,* —— U.S. ——, 131 S.Ct. 733, 740, 178 L.Ed.2d 649 (2011) (collecting cases). A federal habeas court must not equate unreasonableness under *Strickland* with unreasonableness under § 2254(d) for once the latter applies, "the question is not whether counsel's actions were reasonable ... [but it is] whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.* Here, Coward has failed to establish that the state courts unreasonably applied Supreme Court precedents.

First, Coward's grounds for the ineffective claim, that counsel had a conflict of interest and also failed to move to dismiss the indictment, do not relate to the voluntariness of Coward's plea and are barred by *Tollett. Canal v. Donelli,* No. 06–CV–1490, 2008 WL 4287385, at *3 (N.D.N.Y.2008) (rejecting, pursuant to *Tollett,* the claim that counsel failed to call petitioner to testify before the grand jury).

Second, trial counsel's overall performance did not fall below an objective standard of reasonableness and was not deficient. Coward does not explain how counsel had a conflict of interest such that he should be removed from the case. Further, Coward does not show how he was prejudiced by counsel's performance or how testifying before the grand jury would have altered the outcome of the case. "New York courts have consistently held that counsel's failure to ensure that the defendant testifies before the grand jury does not amount to ineffective assistance of counsel." *Davis v. Mantello,* 42 F. App'x 488, 491 n. 1 (2d Cir.2002) (citations omitted). Conversely, trial

2013 WL 6195751

counsel filed a number of motions on Coward's behalf. Dkt. No. 12–11. Further, counsel represented Coward in a *Wade/Huntley* hearing. Moreover, Coward received an advantageous plea agreement in which he pled guilty to only one crime in full satisfaction of the indictment and was sentenced only for one count of the indictment. Thus, a reasonable argument is made that trial counsel provided meaningful representation.

Accordingly, Coward's petition on this claim should be denied.

### E. Police and Prosecutorial Misconduct

Finally, Coward's police and prosecutorial misconduct claims are also without merit. Coward contends that the police and prosecution engaged in misconduct where the police officers committed perjury at the *Wade/Huntley* hearing and prosecution threatened to press unrelated charges against Coward. As discussed *supra,* to the extent Coward alleged that misconduct occurred at grand jury proceedings, such claims are not cognizable on habeas review. *Lopez v. Riley,* 865 F.2d 30, 32 (2d Cir.1989) (relying on *United States v. Mechanik,* 475 U.S. 66, 106 S.Ct. 938, 89 L.Ed.2d 50 (1986)). This includes prosecutorial misconduct. *Alston v. Ricks,* No. 01–CV–9862, 2003 WL 42144, at *7 (S.D.N.Y. Jan.3, 2003). Further, Coward does not allege that the misconduct affected the voluntariness of his guilty plea. Thus, these claims are barred under *Tollett.* Moreover, Coward does not proffer anything more than conclusory allegations to support his claim. Coward does not allege which witness had committed perjury during which proceeding or what perjurious statements were made. The supreme court found Coward's misconduct claim to be "without merit and unsupported by any evidence or affidavits." Dkt. No. 12–11 at 12.

**\*16** Accordingly, Coward's motion on this claim should be denied.

### VI. Conclusion

For the reasons stated above, it is hereby **RECOMMENDED** that Coward's petition for a writ of habeas corpus (Dkt. No. 1) be **DENIED.** It is further **RECOMMENDED** that no certificate of appealability should be issued with respect to any of Coward's claims as Coward has not made a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2). *See* 28 U.S.C. § 2253(c)(2) ("A certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right."); *see also Lucidore v. New York State Div. of Parole,* 209 F.3d 107, 112 (2d Cir.2000).

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993); *Small v. Sec'y of HHS,* 892 F.2d 15 (2d Cir.1989); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

### All Citations

Not Reported in F.Supp.2d, 2013 WL 6195751

Footnotes

1    See *Miller–El v. Cockrell,* 537 U.S. 322, 336, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003) ("[Section] 2253(c) permits the issuance of a [certificate of appealability] only where a petitioner has made a substantial showing of the denial of a constitutional right." (internal quotation marks omitted)).

1    This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

2    The page numbers following "Tr." refer to the header numbers generated by CM/ECF, not the pagination of the individual transcripts.

3    Coward commenced service of his sentence on July 19, 2006. *See* DOCCS, INMATE POPULATION INFORMATION SEARCH, http:// nysdoccslookup.doccs.ny.gov/GCA00P00/WIQ1/WINQ000 (lasted visited Aug. 14, 2013).

4    A *Wade* hearing "determine[s] if any of the identification procedures had been unduly suggestive." *Maldonado v. Burge,* 697 F.Supp.2d 516, 521 (S.D.N.Y.2010) (citing *United States v. Wade,* 388 U.S. 218, 232, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967)). A *Huntley* hearing is requested to determine the voluntariness of a defendant's confession. *Rivera v. Warden,*

*Attica Corr. Facility,* 431 F.Supp. 1201, 1204 (E.D.N.Y.1977) (citing *People v. Huntley,* 15 N.Y.2d 72, 255 N.Y.S.2d 838, 204 N.E.2d 179 (1965)).

5      This statute, in relevant part, states

At any time after the entry of a judgment, the court in which it was entered may, upon motion of the defendant, vacate such judgment upon the ground that:

(a) The court did not have jurisdiction of the action or of the person of the defendant; or

(b) The judgment was procured by duress

...

(e) During the proceedings resulting in the judgment, the defendant, by reason of mental disease or defect, was incapable of understanding or participating in such proceedings; or

...

(h) The judgment was obtained in violation of a right of the defendant under the constitution of this state or of the United States ...

N.Y. CRIM. PROC. LAW § 440.10(1).

6      The New York Criminal Procedure Law provides that

[T]he court must deny a motion to vacate a judgment when:

...

(c) Although sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred owing to the defendant's unjustifiable failure to take or perfect an appeal during the prescribed period or to his unjustifiable failure to raise such ground or issue upon an appeal actually perfected by him....

N.Y. CRIM. PROC. LAW § 440.10(2)(c).

7      Respondent concedes that Coward's petition was timely filed. Resp't Mem. of Law at 17–18. Under the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214 (1996) ("AEDPA"), the one-year time period for filing a federal habeas corpus petition starts to run when the conviction becomes "final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A); *Cook v. N.Y. State Div. of Parole,* 321 F.3d 374, 279–80 (2d Cir.2003). A judgment of conviction becomes final at the conclusion of the ninety-day period during which the defendant could seek certiorari review from the United States Supreme Court. *Epps v. Poole,* 687 F.3d 46, 49 (2d Cir.2012) (citations and footnote omitted). Here, the Court of Appeals denied Coward leave to appeal on April 17, 2009; thus, Coward's time to seek a writ of certiorari expired on July 16, 2009. Coward had until July 16, 2010 to file his petition. However, the time limitation period was tolled while he filed the § 440.10 motion was pending. *Fernandez v. Artuz,* 402 F.3d 111, 112–15 (2d Cir.2005). The limitation period ran for 256 days from when the conviction became final on July 16, 2009 through March 29, 2010, when Coward filed the § 440.10 motion. The limitation period was tolled until November 1, 2011, when the Appellate Division denied leave to appeal the § 440.10 decision. The limitation period ran for fifteen days from November 1, 2011 until November 16, 2011, the date on the federal habeas petition. Thus, the petition was timely filed because the limitation period ran for a total of 271 days.

8      New York Criminal Procedure Law provides

Notwithstanding the provisions of subdivision one, the court may deny a motion to vacate a judgment when: (a) Although facts in support of the ground or issue raised upon the motion could with due diligence by the defendant have readily been made to appear on the record in a manner providing adequate basis for review of such ground or issue upon an appeal from the judgment, the defendant unjustifiably failed to adduce such matter prior to sentence and the ground or issue in question was not subsequently determined upon appeal.

N.Y. CRIM. PROC. LAW § 440.10(3)(a).

9      All unpublished opinions cited to by the Court in this Report–Recommendation are, unless otherwise noted, attached to this Recommendation.

10     The New York Criminal Procedure Law § 200.50(6) states, "An indictment must contain ... [a] statement in each count that the offense charged therein was committed on, or *on or about,* a designated date, or during a designated period of time...." N.Y. CRIM. PROC. LAW § 200.50(6) (emphasis added).

11     Section 730.30(1) of the New York Criminal Procedure Law states

At any time after a defendant is arraigned upon an accusatory instrument other than a felony complaint and before the imposition of sentence, or at any time after a defendant is arraigned upon a felony complaint and before he is held

for the action of the grand jury, the court wherein the criminal action is pending must issue an order of examination when it is of the opinion that the defendant may be an incapacitated person.

N.Y. CRIM. PROC. LAW § 730.30(1).

---

**End of Document**                                    © 2018 Thomson Reuters. No claim to original U.S. Government Works.

2008 WL 9434482
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Dewitt GIBSON, Petitioner,
v.
Dale ARTUS, Superintendent, Respondent.

No. 9:04–CV–820 (LEK).
|
March 21, 2008.

**Attorneys and Law Firms**

Dewitt Gibson, Moravia, NY, for the Petitioner.

Hon. Andrew M. Cuomo, Jennifer L. Johnson, Esquire, Ass't Attorney General, of Counsel, New York, NY, for the Respondent.

**Opinion**

### *MEMORANDUM–DECISION AND ORDER*

LAWRENCE E. KAHN, Senior District Judge.

**I. Background**

**A. State Court Proceedings**

**\*1** According to the testimony adduced at trial, on December 16, 1999, C.O.[1] left her home around 8:00 a.m. for school. *See* Transcript of Trial of Dewitt Gibson, ("Trial Tr.") at R516.[2] C.O. was thirteen years old. *Id.* at R515. She saw Gibson, an acquaintance, and decided to walk with him. *Id.* at R517–20, R547–48. Gibson was thirty-six years old. *Id.* at R719.

C.O. accompanied Gibson to the state lottery building in the City of Schenectady, Schenectady County. Trial Tr. at R520–21, R552–53. Gibson pulled C.O. into one of the stalls in the seventh floor men's room. *Id.* at R555–57, R605–06. Although C.O. told Gibson she did not want to go into the stall, he repeatedly told her it was "alright." *Id.* at R526–27. Gibson pulled C.O.'s pants down, and then pulled his own pants down and sat on the toilet. *Id.* at R526–27, R558–60, R605–07. C.O. tried to pull her pants back up, but Gibson told her, "Nope. It's all right." *Id.* at R527. Gibson turned C.O. around so that she faced the

stall door and pulled her down on top of him. *Id.* at R 561–62. C.O. testified that Gibson then vaginally raped and anally sodomized her. *Id.* at R. 529–31, R562–65. As C.O. ran from the bathroom stall, Gibson told her not to tell anyone what had happened. *Id.* at R. 530–32.

C.O. went home and slept for approximately two hours. Trial Tr. at R 533–35. She did not shower or change her clothing. *Id.* at R573. When she woke, she told her sister what had happened, and her sister called the police. *Id.* at R 533, R572–75. C.O.'s mother confronted Gibson. *Id.* at R627–29. Gibson told her that he had sexual relations with one of her daughters, but did not specify which one. He also told her that there would be no evidence because he "pulled out before anything could have occurred." *Id.* at R628–29.

C.O. was taken to the hospital and examined by Carol Braungart, a clinical nurse specialist, who collected evidence for the sexual assault kit which was later submitted for laboratory analysis. Trial Tr. at R651–67, R814–19. Although the victim showed no signs of physical trauma during the examination, Braungart testified that a pelvic examination revealed "cervical motion tenderness," indicating vaginal penetration. She also noted rectal tenderness. *Id.* at R660–62, R668–73.

That same day, Gibson appeared at the police station and gave a handwritten account of what transpired between he and C.O. Trial Tr. at R713–53. Gibson admitted that he walked with C.O. to the lottery building where he used the seventh floor men's room, but he denied any involvement in the sexual assault. *Id.*

Julie Mayo, a forensic scientist, found sperm in the victim's vaginal and anal smears. Trial Tr. at R919–21. John Brenner, another forensic scientist, quantified the DNA extracted from cuttings obtained from the vaginal and anal swabs, and from the controlled blood samples taken from C.O. and Gibson. *Id.* at R877–95. He generated profiles for each cutting, except from the vaginal swab, which did not contain enough DNA derived from the sperm to obtain a profile. *Id.* at R891. The DNA profile from the anal swab contained a mixture of non-sperm cells contributed by C.O. and sperm cells consistent with Gibson's DNA. *Id.* at R895–96. Stephen Swinton, Supervisor of DNA Services at the State Police Forensic Investigation Center, performed a statistical analysis of the mixed DNA profile and concluded that it was "93

trillion 830 billion times more likely" to be the result of contributions from C.O. and Gibson than from C.O. and a randomly selected male. *Id.* at R944–46.

**\*2** An indictment was returned charging Petitioner with Rape in the First Degree (N.Y. PENAL LAW § 130.35, Rape in the Second Degree (N.Y. PENAL LAW § 130.30), Sodomy in the First Degree (N.Y. PENAL LAW § 130.50), Sodomy in the Second Degree (N.Y. PENAL LAW § 130.45), and Endangering the Welfare of a Child (N.Y. PENAL LAW § 260.10) (two counts).[3] Petitioner was represented at trial by Assistant Public Defender Michael T. Horan, who conducted pretrial discovery and filed various motions on Gibson's behalf, including motions to suppress identification testimony and his December 16, 1999 statement to law enforcement agents. On February 26, 2001, the People made a pre-trial offer that required Gibson to enter a guilty plea to Attempted Rape in the First Degree, a class C-violent felony offense, in exchange for a sentence of sixteen years to life in prison. *See* Transcript of Pretrial Conference ("Pretrial Conf."), 2/26/01, at R136–37. Gibson waived the *Wade*[4]/*Huntley*[5] hearings scheduled for that day in exchange for the prosecutor's promise to keep the plea offer open pending further negotiations. *Id.* at R137–39. Gibson ultimately rejected the offer.

Gibson was tried before a jury on the charges in Schenectady County Court with County Court Judge Richard C. Giardino presiding. The jury began its deliberations on April 16, 2001. Trial Tr. at R1082–116. During the course of those deliberations, Judge Giardino responded to several requests of the jury, including a request that the court re-instruct the jury members as to the elements of the charges brought against Gibson and the definition of the term "force." *Id.* at R1090–1116, 1120–31. The jury returned a unanimous verdict in which it acquitted Gibson of first degree rape and sodomy and found him guilty of the remaining charges. *Id.* at R1139–45.

On June 27, 2001, Gibson appeared before Judge Giardino for a preliminary discussion regarding the prosecutor's motion to sentence him as a persistent felony offender under New York's Penal Law § 70.10. *Id.* at R1148–88. On July 16 and 17, 2001, a formal persistent felony offender hearing was held pursuant to New York's Criminal Procedure Law ("CPL") § 400.20. The prosecutor presented testimony that, prior

to the incident from which his convictions stemmed, Gibson had sexual relations with the victim's fourteen-year-old sister. Sentencing Tr. at R1202–1211. The remainder of the prosecutor's evidence consisted of family court records showing Gibson was adjudicated a youthful offender, certificates of conviction for various felony and misdemeanor charges, documents relating to the revocation of Gibson's parole in past cases, and documents showing various disciplinary infractions during prior incarcerations. *Id.* at R1210–57. Defense counsel produced witnesses who testified that Gibson had a substance abuse problem but had taken steps to overcome it. *Id.* at R 1259–1304. Gibson also testified on his own behalf. *Id.* at R1190–1350.

**\*3** At the close of the hearing, the sentencing court found that the prosecutor proved that Gibson had been convicted of three prior felonies, consisting of a 1982 third degree burglary, a 1984 second degree assault, and a 1988 second degree burglary. Sentencing Tr. at R1345–46. Having found that the prior convictions existed, the court then made findings regarding whether Gibson's history and character warranted an enhanced sentence. The court noted that Gibson's parole had been revoked at least four times and that, based upon his convictions, he spent significant time in prison and county jails. *Id.* at R1347. It discounted evidence of family court matters in which Gibson was adjudicated a youthful offender, finding that these incidents were not relevant. *Id.* at R1219, 1346–47. It also discounted any incidents of problems occurring during prior periods of incarceration. *Id.* at 1349. The court noted that the People had proven Gibson's guilt of the charges before the court to a jury beyond a reasonable doubt. *Id.* at R1346. "[I]n mitigation," the court considered that Gibson had a substance abuse problem—a fact not in dispute—and stated that it was not "the primary factor" in determining Gibson's character and history. *Id.* at R1328, 1347–48. Although the prosecutor offered testimony of Gibson's sexual relationship with the victim's sister, the court made no findings regarding that testimony, and it was not a factor cited by the court in its reasoning for imposing an enhanced sentence. Instead, the court's primary focus was whether Gibson's history suggested that he would present a danger to the community in the future. *Id.* at R1330–32.

After weighing the evidence presented at the hearing, Judge Giardino determined that Gibson was a persistent felony offender and that his "history and character"

and the "nature and circumstances of [Gibson's] criminal conduct indicate that extended incarceration and lifetime supervision will best serve the interests of the public." *Id.* at R1349. He sentenced Gibson to a term of fifteen years to life on each of his convictions for second degree rape and sodomy and ordered that the sentences run concurrently. *Id.* at 1351–52. He also sentenced Gibson to one-year terms on each count of endangering the welfare of a child, and those sentences merged with the sentences on the felony convictions. *Id* .

Gibson filed a motion to vacate his conviction pursuant to CPL § 440.10 on August 10, 2001. Dkt. No. 15, Ex. A. In the motion, Gibson argued that the prosecutor committed misconduct when she permitted the victim to falsely testify at grand jury that Gibson threatened her. The District Attorney opposed that motion, and on December 16, 2001, Schenectady County Court Judge Guy P. Tomlinson denied it. Dkt. No. 15, Exs. B, C. On September 10, 2002, the New York Supreme Court, Appellate Division, Third Department, granted Gibson's application for leave to appeal the denial of his motion. Dkt. No. 15, Ex. E.

**\*4** Gibson also appealed his conviction to the Third Department, arguing that: (1) the verdict was against the weight of the evidence; (2) the trial court committed reversible error when it failed to charge the jury on sexual abuse in the second degree as a lesser included offense; (3) Gibson was denied the right to confront witnesses against him when the trial court prohibited him from questioning the victim about an unrelated false rape accusation; (4) the prosecutor committed misconduct when she permitted the victim to falsely testify at grand jury that Gibson threatened her when the prosecutor knew the victim told a nurse he had not done so; (5) trial counsel was ineffective; and (6) the sentence was harsh and excessive. Dkt. No. 16, Ex. G. Gibson filed a supplemental *pro se* supplemental brief in which he claimed that his sentence violated the United States Supreme Court's decision in *Apprendi v. New Jersey,* 530 U.S. 466 (2000). Dkt. No. 17, Ex. I. The District Attorney opposed that appeal, and on December 11, 2003, the Appellate Division denied Gibson's appeal. *See People v. Gibson,* 2 AD3d 969 (N.Y.App.Div., 3d Dept.2003).[6] On February 25, 2004, New York's Court of Appeals denied his application for leave to appeal to that court. *See* Dkt. No. 17, Ex. K, L; Dkt. No. 18, Ex. M; *People v. Gibson,* 1 N.Y.3d 627 (2004).

Ginson filed a state writ of error *coram nobis* in which he challenged the effectiveness of appellate counsel for failing to argue on appeal that the prosecutor knowingly relied upon perjured testimony by the victim in the grand jury and for failing to challenge his sentence under *Apprendi.* Dkt. No. 60, Ex. JJ. The writ was denied on April 13, 2006, and the New York Court of Appeals denied leave on June 28, 2006. *Id.*

On October 23, 2006, Gibson filed a second CPL § 440.10 motion in Schenectady County Court in which he claimed trial counsel was ineffective for (1) failing to inform him of the pending grand jury proceeding and failing to assist him in exercising his right to testify; (2) failing to file a speedy trial motion; (3) failing to move to dismiss the indictment because the prosecutor relied upon false testimony by the victim; (4) failing to object to defects in the indictment; (5) failing to preserve a challenge to his sentence under *Apprendi;* and (6) failing to move to dismiss the indictment because Gibson was denied a preliminary hearing. Dkt. No. 60, Ex. Z. County Court Judge Karen A. Drago denied the motion on May 15, 2007, and leave to appeal was denied on September 6, 2007. Dkt. No. 60, Exs. EE– HH.

## B. Proceedings in This Court

Petitioner filed a petition for a writ of *habeas corpus* on July 14, 2004. *See* Dkt. No. 1. By Order filed August 18, 2004, this Court granted Gibson's application to proceed *in forma pauperis* and ordered the Respondent to file his response to the Petition. Dkt. No. 5. On February 24, 2005, the Office of the Attorney General for the State of New York, acting on respondent's behalf, filed a response and memorandum of law in opposition to the petition, along with the relevant state court records. *See* Dkt. Nos. 14–22. On April 12, 2005, Gibson filed a Traverse. Dkt. No. 25. Respondent filed a supplemental memorandum of law in opposition to the petition on June 21, 2005, and Gibson responded in a Supplemental Traverse filed August 2, 2005. Dkt. Nos. 26–27.

**\*5** On October 18, 2006, Gibson filed a motion to amend his petition to include additional ineffective assistance of counsel claims. Petitioner advised the Court that he had filed a motion to vacate his conviction pursuant to CPL § 400.10 in state court to address his "claims of trial counsel's ineffective assistance," and asked the Court to stay his federal *habeas* petition pending review

by the state court of his section motion. [7] Dkt. No. 28. Respondent opposed the motions on November 7, 2006 and by Order dated February 12, 2007, this Court granted Gibson's motion to amend his petition and stayed this action pending resolution of the section 440 motion in state court. Dkt. No. 33.

On June 7, 2007, Gibson filed an Amended Petition. Dkt. No. 40. He attempted to file two additional amended petitions on September 17, 2007 and on October 5, 2007. Dkt. Nos. 44, 49. These submissions were stricken from the record by Orders dated September 24, 2007 and October 15, 2007, because Gibson did not first seek leave to file amended petitions. Dkt. Nos. 45, 51.

On October 23, 2007, Gibson wrote a letter to this Court advising that the section 440 motion was denied, and requesting that the stay be lifted. Dkt. No. 53. In an Order dated November 13, 2007, this Court granted Gibson's request, and ordered the Respondent to file his response to the Amended Petition. Dkt. No. 54. Gibson subsequently attempted to file another amended petition, but it was rejected by this Court in an Order dated December 3, 2007 because Gibson had not first sought leave to file it. Dkt. No. 55. On January 22, 2008, Respondent filed a response to the amended petition and an accompanying memorandum of law and additional relevant state court records. Dkt Nos. 59–61.

In his amended petition currently before this Court (Dkt. No. 40), Petitioner argues that: (1) the evidence was insufficient to support his convictions for second degree rape and sodomy; (2) he was denied due process of law when the trial court refused to instruct the jury on a lesser included offense; (3) his right to confront witnesses against him was denied when the trial court failed to permit him to cross-examine the victim regarding an alleged unrelated false accusation of rape; (4) the prosecutor committed misconduct when she did not correct the victim's grand jury testimony that Gibson threatened her; (5) the trial court's determination that he was a persistent felony offender violated the rule in *Apprendi v. New Jersey,* 530 U.S. 466 (2000); and (6) trial counsel was ineffective (Grounds Five and Seven). *See* Dkt. No. 40. [8]

## II. *Discussion*

### A. Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may award *habeas corpus* relief with respect to a claim adjudicated on the merits in state court only if the adjudication of the claim: (1) was contrary to, or involved an unreasonable application, of clearly established federal law, as determined by the Supreme Court of the United States; or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. [9] *Hawkins v. Costello,* 460 F.3d 238, 242 (2d Cir.2006), *cert. denied* 127 S.Ct. 1267 (2007); *DeBerry v. Portuondo,* 403 F.3d 57, 66 (2d Cir.2005) (citing 28 U.S.C. § 2254(d)), *cert. denied sub nom DeBerry v. Smith,* 546 U.S. 884 (2005). AEDPA also requires that in any such proceeding "a determination of a factual issue made by a State court shall be presumed to be correct [and][t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also DeBerry,* 403 F.3d at 66; *Boyette v. LeFevre,* 246 F.3d 76, 88 (2d Cir.2001).

**\*6** A state court decision violates the "contrary to" clause of section 2254(d)(1) when it "reaches a result opposite to the one reached by the Supreme Court on the same question of law or arrives at a result opposite to the one reached by the Supreme Court on a 'materially indistinguishable' set of facts.' " *Earley v. Murray,* 451 F.3d 71, 74 (2d Cir.2006) (citing *Williams v. Taylor,* 529 U.S. 362, 405–06 (2000)). A federal *habeas* court may only grant the writ under the "unreasonable application" clause of the section when the state court's decision "identifies the correct rule of law but applies that principle to the facts of the prisoner's case in an unreasonable way." *Earley,* 451 F.3d at 74 (citing *Williams,* 529 U.S. at 413). A federal court engaged in *habeas* review is not charged with determining whether the state court's determination was merely incorrect or erroneous, but instead whether such determination was "objectively unreasonable." *Williams,* 529 U.S. at 409; *see also Sellan v. Kuhlman,* 261 F.3d 303, 315 (2d Cir.2001). Objectively unreasonable means " 'some increment of incorrectness beyond error' " is required in order to grant a federal *habeas* application. *Earley,* 451 F.3d at 74 (quoting *Francis S. v. Stone,* 221 F.3d 100, 111 (2d Cir.2000)).

If, however, a state court does not adjudicate a petitioner's federal claim "on the merits," the state court's decision is not entitled to AEDPA deference and instead, the

federal *habeas* court must apply the pre-AEDPA standard of *de novo* review to the state court's disposition of the federal claim. *See Cotto v. Herbert,* 331 F.3d 217, 230 (2d Cir.2003) (citing *Aparicio v. Artuz,* 269 F.3d 78, 93 (2d Cir.2001)).

**B. Substance of Gibson's Claims**

**1. Ground One—Weight and Sufficiency of the Evidence**

Gibson first argues that the evidence was insufficient to support his convictions for second degree rape and sodomy. Am. Pet. at Ground One. Respondent argues that to the extent that Gibson is asserting a claim that the verdict was against the weight of the evidence, that claim is not cognizable on *habeas* review. Respondent further argues that because Gibson did not challenge the sufficiency of the evidence against him in the state courts, this claim should be deemed exhausted but procedurally barred. Dkt. No. 14 at 14–16.

**i. Weight of the Evidence**

Petitioner's claims that there were inconsistencies in the victim's testimony, that there were "questions as to [the victim's] ability to understand an oath and competency to give sworn testimony," that she was a "troubled youth" who had "lied to her mother on numerous occasions and often skipped school," and that she suffered from an "attention deficit hyperactivity disorder" challenge the credibility of the victim and, thus, the weight that her testimony should have been given by the jury. *See, e.g., Garrett v. Perlman,* 438 F.Supp.2d 467, 470 (S.D.N.Y.2006) (claim that witness testimony was incredible is not cognizable on federal *habeas* review because credibility determinations and how much weight to give testimony are within the province of the jury) (quoting *Maldonado v. Scully,* 86 F.3d 32, 35 (2d Cir.1996). "Weight of the evidence" claims derive from New York Criminal Procedure Law ("CPL") § 470.15(5), which permits an appellate court in New York to reverse or modify a conviction where it determines "that a verdict of conviction resulting in a judgment was, in whole or in part, against the weight of the evidence." N.Y. CRIM. PROC. LAW § 470.15(5); *People v. Bleakley,* 69 N.Y.2d 490 (1987). Since weight claims are grounded in the state criminal procedure statute, they are not cognizable on *habeas* review. *See* 28 U.S.C. § 2254(a) (permitting federal *habeas corpus* review only where the petitioner has alleged

that he is in state custody in violation of "the Constitution or a federal law or treaty"); *Lewis v. Jeffers,* 497 U.S. 764, 780 (1990) (*habeas corpus* review not available to remedy alleged error of state law); *Hogan v. Livingston Corr. Fac.,* No. 05–CV–6440, 2007 WL 2907322, at *8 (W.D.N.Y. Oct. 3, 2007) ("Since a 'weight of the evidence' claim is purely a matter of state law, it is not cognizable on habeas review."); *Stein v. Artus,* No. 04–CV–0439, 2007 WL 2778914, at *7 (N.D.N.Y. Sept. 19, 2007) (Lowe.J) (same); *Welch v. Burge,* No. 03–CV–01423, 2007 WL 2028048, at *7 (N.D.N.Y. July 12, 2007) (Kahn, D.J., adopting Report–Recommendation of Magistrate Judge Victor E. Bianchini). To the extent that Gibson challenges the weight of the evidence, that claim must be denied.

**ii. Sufficiency of the Evidence**

**\*7** Gibson also argues in Ground One that the "People clearly failed to sustain their burden of proof beyond a reasonable doubt" because the jury acquitted him of the charges requiring force, there was no positive DNA test linking him to the assault, there were no signs of "trauma, bleeding, anal tear, redness or drainage in the complainant and no eyewitnesses. Am. Pet, Ground 1, at 1. These claims implicate the sufficiency of the evidence.

**a. Exhaustion**

An application for a writ of *habeas corpus* may not be granted until the prisoner has exhausted all remedies available in state court unless there is an "absence of available state corrective process" or "circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b). To satisfy the exhaustion requirement, a petitioner must do so both procedurally and substantively. Procedural exhaustion requires that a petitioner raise all claims in state court prior to raising them in the *habeas corpus* petition. Substantive exhaustion requires that a petitioner "fairly present" any constitutional claims to the highest state court in the same factual and legal context in which it appears in the *habeas* petition. *Baldwin v. Reese,* 541 U.S. 27, 29 (2004); *Fama v. Comm'r. of Corr. Servcs.,* 235 F.3d 804, 808 (2d Cir.2000); *Dorsey v. Kelly,* 112 F.3d 50, 52 (2d Cir.1997) (quoting *Picard v. Connor,* 404 U.S. 270, 275 (1971)); *Daye v. Atty. Gen. of New York,* 696 F.2d 186, 191 (2d Cir.1982); *Sweeney v. Superintendent, Watertown Corr. Fac.,* No. 06–CV–0663, 2007 WL 2176987, at *5 (E.D.N.Y. Jul. 27, 2007).

The petitioner must have presented the substance of his federal claims to the highest available court of the state. *Bossett v. Walker,* 41 F.3d 825, 828 (2d Cir.1994), *cert. denied,* 514 U.S. 1054 (1995) (citation omitted). The petitioner must assert the same legal theory, premising it on essentially the same body of facts. *Barton v. Fillion,* No. 03–CV–1377, 2007 WL 3008167, at *5 (N.D.N.Y. Oct. 10, 2007) (Hurd, J., adopting Report–Recommendation of Magistrate Judge Gustave J. DiBianco). Finally, the petitioner must have utilized the proper procedural vehicle so that the state court may pass on the merits of petitioner's claims. *Dean v. Smith,* 753 F.2d 239, 241 (2d Cir.1985); *Barton,* 2007 WL 3008167, at *5.

Gibson never presented a claim that the evidence was insufficient to the state courts either on direct appeal or in his two CPL § 440.10 motions to vacate his conviction. *See* Dkt. No. 15, Ex. A; Dkt. No. 16, Ex. G; Dkt. No. 17, Ex. K, Dkt. No. 60, Exs. Z & JJ. While he argued at length that the prosecutor failed to prove forced or consensual intercourse, that there was no proof of vaginal or anal trauma, and that the DNA evidence was contaminated and showed only that there had been sexual contact but did not prove penetration on direct appeal and in his leave application to the New York Court of Appeals, he did so in the context of a complaint that the verdict was against the weight of the evidence. Dkt. No. 16, Ex. G, at 35–47; Dkt. No. 17, Ex. K, at ¶¶ 5–21. The Appellate Division addressed only the weight claim. *Gibson,* 2 A.D.3d at 970–71 (holding that the "jury gave the evidence the proper weight."). Gibson did not alert the state courts to any separate, independent challenge to the sufficiency of the evidence, or to the federal nature of such a claim. It is therefore unexhausted.

**b. Procedural Bar**

**\*8** There is no longer a state court in which Gibson can raise his sufficiency claim. He cannot now fairly present this claim in a second direct appeal, since in New York a defendant is "entitled to one (and only one) appeal to the Appellate Division." *Aparicio,* 269 F.3d at 91. Since "New York does not otherwise permit collateral attacks on a conviction when the defendant unjustifiably failed to raise the issue on direct appeal," *id.* (citing CPL § 440.10(2)(c)), petitioner cannot now properly raise a sufficiency claim, which is based on the record, by way of a section 440 motion. *Aparicio,* 269 F.3d at 91; *Bossett,* 41 F.3d at 829. New York law also allows a court to deny a motion to vacate conviction where a defendant

has made a previous motion and was in a position to raise the claim but did not. CPL 440.10(3)(c). Since no remaining avenue exists in which Gibson could raise this claim, it is deemed exhausted but procedurally defaulted. *Coleman v. Thompson,* 501 U.S. 722, 732 (1991); *St. Helen v. Senkowski,* 374 F.3d 181, 183 (2d Cir.2004), *cert. denied* 543 U.S. 1058 (2005); *Aparicio,* 269 F.3d at 90; *Spence v. Superintendent, Great Meadow Corr. Fac.,* 219 F.3d 162, 170 (2d Cir.2000).

This Court may review Gibson's procedurally barred claim only if he demonstrates cause for the default and resulting prejudice, or that the failure of the federal court to review the claims will result in a "fundamental miscarriage of justice" *i.e.,* that he is innocent. *Calderon v. Thompson,* 523 U.S. 538, 559 (1998); *Coleman,* 501 U.S. at 748–750. To establish "cause" sufficient to excuse a procedural default, a petitioner must show that some objective external factor impeded his or her ability to comply with the relevant procedural rule. *Coleman,* 501 U.S. at 753; *Restrepo v. Kelly,* 178 F.3d 634, 639 (2d Cir.1999). When a petitioner has failed to establish adequate cause for his procedural default, the court need not determine whether he suffered prejudice, since federal *habeas* relief is generally unavailable as to procedurally defaulted claims unless both cause and prejudice are demonstrated. *Stepney v. Lopes,* 760 F.2d 40, 45 (2d Cir.1985); *Long v. Lord,* No. 03–CV–0461, 2006 WL 1977435, at *6 (N.D.N.Y. Mar. 21, 2006) (McCurn, S.J.).

Petitioner has failed to establish cause for his failure to exhaust this claim, and has never argued, in either the state courts or this proceeding, that his appellate counsel rendered ineffective assistance by failing to fairly present his sufficiency claim on appeal. [10] Since Gibson has not established cause for his procedural default, the Court need not decide whether he suffered actual prejudice, because federal *habeas* relief is generally unavailable as to procedurally defaulted claims unless *both* cause and prejudice are demonstrated. *Stepney,* 760 F.2d at 45; *Staley v. Greiner,* No. 01–CV–6165, 2003 WL 470568, at *7 (S.D.N.Y. Feb. 6, 2003) (citing *Stepney* ); *Pou v. Keane,* 977 F.Supp. 577, 581 (1997). Gibson also has not presented any new evidence to show that he is actually innocent. This aspect of the petition is therefore denied on this procedural basis. *Shulp v. Delo,* 513 U.S. 298, 327 (1995); *Spence,* 219 F.3d at 170.

### c. The Merits

**\*9** Even if the sufficiency claim was not procedurally barred, no relief would issue. A petitioner who challenges a conviction on the sufficiency of the evidence bears a "very heavy burden." *United States v. Quattrone,* 441 F.3d 153, 169 (2d Cir.2006); *Ponnapula v. Spitzer,* 297 F.3d 172, 179 (2d Cir.2002). The Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal case against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crimes with which he is charged. *See Fiore v. White,* 531 U.S. 225, 228–29 (2001); *Jackson v. Virginia,* 443 U.S. 307, 315 (1979). This inquiry "does not focus on whether the trier of fact made the *correct* guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit." *Herrera v. Collins,* 506 U.S. 390, 402 (1993) (emphasis in original). A *habeas* petitioner claiming that there was insufficient evidence supporting the conviction is entitled to relief under 28 U.S.C. § 2254 only if it is found "that upon the record evidence adduced at trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson,* 443 U.S. at 324; *see also Schlup,* 513 U.S. at 323 n. 38. The reviewing court is required to consider the evidence in the light most favorable to the prosecution, and draw all inferences in its favor. *Jackson,* 443 U.S. at 319. [11] "When considering the sufficiency of the evidence of a state conviction, '[a] federal court must look to state law to determine the elements of the crime.' " *Ponnapula,* 297 F.3d at 179 (quoting *Quartararo v. Hanslmaier,* 186 F.3d 91, 97 (2d Cir.1999), *cert. denied* 528 U .S. 1170 (2000)).

Under New York law, the state had to prove that Gibson was eighteen years or older and that he engaged in "sexual intercourse" and "anal sexual conduct" with the victim, who was less than fifteen years old. N.Y. PENAL LAW §§ 130.30(1); 130.45(1). "Sexual intercourse has its ordinary meaning and occurs upon any penetration, however slight." *Id.* at § 130.00(1). "Anal sexual conduct" includes contact between the penis and anus. *Id.* at § 130.00(2)(b). [12] The evidence established that the victim's date of birth was July 18, 1986, making her thirteen years old at the time of the incident. Trial Tr. at R515, 624. The evidence further established that Gibson's date of birth was September 18, 1963, making him thirty-six years old at the time of the incident. *Id.* at R719–20. The victim testified that Gibson penetrated her vagina

and then her anus. *Id.* at R529–31, 565–68. Despite Gibson's claim to the contrary, the victim's testimony was corroborated by the emergency room nurse, who testified that she complained of anal tenderness and exhibited "cervical motion tenderness," indicating that there had been vaginal penetration. *Id.* at R651–64. When the victim's mother confronted Gibson about what took place with C.O., Gibson admitted he had sexual intercourse with her daughter, but claimed that there would be no evidence because "he pulled out before anything could have occurred ." *Id.* at R628–29. Finally, the DNA evidence established that an anal swab taken from the victim tested positive for sperm for which Gibson was determined to be the contributor. *Id.* at R893–96, 939–55. This evidence, in the light most favorable to the prosecution, was certainly enough to support Gibson's convictions. This claim is dismissed.

### 2. Ground Two: Failure to Charge a Requested Lesser Included Offense

**\*10** Gibson claims in Ground Two of his petition that the trial court erred when it declined to charge the jury on second degree sexual abuse as a lesser included offense because there was no proof of intercourse and the evidence established only that there had been sexual contact. Dkt. No. 40. Respondent argues that this claim is without merit. Dkt. No. 14 at 17–20.

At the charge conference, counsel asked the trial court to charge the jury on second degree sexual abuse as a lesser included offense of second degree rape and sodomy. Trial Tr. at R1005. The trial court denied the request. *Id.* at 569. The Appellate Division affirmed, finding that it was possible to commit second degree rape and sodomy without also committing second degree sexual abuse. *Gibson,* 2 A.D.2d at 972. This decision is entitled to AEDPA deference.

Gibson's claim that the state court failed to give a requested lesser included offense charge is not cognizable on federal *habeas* review. *Beck v. Alabama,* 447 U.S. 625, 638, n. 14 (1980) (expressly reserving the question of whether due process requires a state court to charge lesser included offenses in non-capitol cases); *Jones v. Hoffman,* 86 F.3d 46, 48 (2d Cir.1996) ("a claimed error in failing to include a lesser offense instruction in a non-capital case is not a cognizable claim in a habeas corpus proceeding."); *Minigan v. Donnelly,* No. 01–CV–026, 2007 WL 542137, at \*27(W.D.N.Y. Mar.

30, 2007) ("Neither the Supreme Court nor the Second Circuit has held that a court's failure to instruct a jury on lesser included offenses in a non-capital case is a constitutional issue that may be considered in a habeas petition."); *Bonilla v. Cunningham,* No. 04–CV–4860, 2007 WL 13415, at *6 (E.D.N.Y. Jan. 2, 2007) ("Failure to charge a lesser-included offense is not cognizable in a federal habeas corpus proceeding ... Therefore, this court finds that the trial court's failure to submit the lesser-included charges was not contrary to, nor did it involve an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States"). Since no clearly established Supreme Court precedent requires an instruction of the lesser included offense of second degree sexual abuse, Gibson cannot establish that the Appellate Division's rejection of this claim was contrary to, or an unreasonable application of, clearly established Supreme Court precedent. *See, e.g., Smith v. Barkley,* No. 99–CV–0257, 2004 WL 437470, at *6 (N.D.N.Y. Feb. 18, 2004) (Sharpe, M.J.) (explaining that since no clearly established Supreme Court precedent required a jury instruction on a lesser included offense of third degree assault, the petitioner was unable to establish that the Appellate Division's decision denying his claim on direct appeal was contrary to, or an unreasonable application of, clearly established Supreme Court precedent). Petitioner is not entitled to *habeas* relief for this claim.

**\*11** In any event, the refusal of the state court to charge the jury on second degree sexual abuse appears to have been correct under state law. Under New York law, a trial court "may submit in the alternative any lesser included offense if there is a reasonable view of the evidence which would support a finding that the defendant committed such lesser offense but did not commit the greater ...." N.Y. CRIM. PROC. LAW § 300.50(1). A defendant seeking a lesser included offense charge must demonstrate that 1) "it is impossible to commit the greater crime without concomitantly, by the same conduct, committing the lesser offense," and 2) "there is a reasonable view of the evidence in the particular case that would support a finding that he committed the lesser offense but not the greater." *People v. Glover,* 57 N.Y.2d 61, 63 (1982) (*per curiam* ).

A person is guilty of second degree sexual abuse when he subjects a person to sexual contact when that person is younger than fourteen years old. N.Y. PENAL LAW §

130.60(2). "Sexual contact" is defined as "any touching of the sexual or other intimate parts of a person not married to the actor for the purpose of gratifying sexual desire of either party." *Id.* at § 130.00(3). The crime of sexual abuse thus requires proof of sexual gratification, but second degree rape and sodomy do not. *See, e.g., People v. Ford,* 76 N.Y.2d 868, 870 (1990) (first degree sexual abuse is not a lesser included offense of first degree sodomy because, unlike sexual abuse, it is "possible to commit the crime of sodomy without the actor having as a purpose the gratification of either party's sexual desire.") (citing *People v. Wheeler,* 67 N.Y.2d 960 (1986)); *People v. McLaurin,* 27 A.D.3d 1117, 1119 (N.Y.App.Div., 4th Dept.2006) (first degree sexual abuse is not a lesser included offense of first degree sodomy), *lv. denied* 7 N.Y.3d 759 (2006); *People v. Daniels,* 222 A.D.1d 1065 (N.Y.App.Div, 4th Dept., 1995) (trial court did not err in refusing to charge first degree sexual abuse as a lesser included offense of first degree rape because "the former requires proof of sexual gratification, but the latter does not."), *lv. denied* 87 N.Y.2d 972 (1996). At least one New York court has specifically held that second degree sexual abuse is not a lesser included offense of second degree rape. *See People v. Jones,* 133 A.D.2d 972, 974 (N.Y.App.Ct., 3d Dept.1987), *lv. denied* 70 N.Y.2d 956 (1988). This claim is dismissed.

### 3. Ground Three—Right to Confront the Victim

Gibson argues in Ground Three of his petition that the trial court's refusal to permit him to cross-examine the victim regarding an allegedly false, unrelated accusation of rape made six months after the incident for which Gibson was charged, deprived him of his right to confront his accuser. Respondent argues that this claim is without merit.

A defendant's Sixth Amendment right to confront witnesses is guaranteed in both federal and state criminal proceedings. *Pointer v. Texas,* 380 U.S. 400 (1965). The right to cross-examination is not, however, absolute, and a trial court may place reasonable limits on a defense attorney's cross-examination of a prosecution witness "based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Young v. McGinnis,* 411 F.Supp.2d 278, 302 (E.D.N.Y.2006) (quoting *Delaware v. Van Arsdall,* 475 U.S. 673, 679 (1986) (citations omitted)). Cross-examination is not improperly curtailed if "the jury is in possession of facts sufficient to make a 'discriminating

2008 WL 9434482

appraisal' of the particular witness's credibility." *United States v. Roldan–Zapata,* 916 F.2d 795, 806 (2d Cir.1990) (quoting *United States v. Singh,* 628 F.2d 758, 763 (2d Cir.1980), *cert. denied* 499 U.S. 940 (1991)); *Howard v. Walker,* 406 F.3d 114, 129 (2d Cir.2005) (quoting *Davis v. Alaska,* 415 U.S. 308, 318 (1974)).

**\*12** Under New York law, a defendant seeking to cross-examine a victim about an alleged unrelated false accusation against another person is required to demonstrate "both that the accusation was " 'indeed false'," and (2) that the accusation was "such as to suggest a pattern casting substantial doubt on the validity of the charges made by the victim in this instance." *People v. Gifford,* 280 A .D.2d 967 (N.Y.App.Div., 4th Dept.2001) (quoting *People v. Mandel,* 48 N.Y.2d 952, 953 (1979), *cert. denied* 446 U.S. 949 (1980)), *lv. denied* 96 N.Y.2d 939 (2001). Gibson failed to make the requisite showing.

At trial, defense counsel asked that he be permitted to cross-examine the victim regarding an alleged false accusation of rape made by her against Charles Williams. Trial Tr. at R486–94. Counsel stated that he intended to call two witnesses, Charles Williams and Fawn Orlando, who would testify that the victim accused Williams of rape, and Williams refuted the claim. Trial Tr. at R542–44, 591–93. He expected the witnesses to testify that the victim acted in a way that "acknowledged that the allegation was false." *Id.* at R492. According to the prosecutor, however, the victim believed the accusation against Williams was true, even though she did not report it to police. *Id.* at R495–96.

The trial court was unpersuaded that Williams should be permitted to testify that he did not rape the victim, and allowed counsel time to investigate further in order to obtain additional proof that the accusation was false. *Id.* at R498. When counsel could not submit such proof, the trial court denied the request to cross-examine the victim on that point. *Id.* at R542–43, 591–93. It found that counsel had not satisfactorily shown that an actual "false rape accusation was made by this victim." Trial Tr. at R592. [13]

The Appellate Division affirmed, finding that Gibson's "proffer of proof failed to sufficiently prove the falsity of the complaint or that the allegedly false complaint was 'suggestive of a pattern that cast doubt on the validity of, or bore a significant probative relation to,

the instant charges.' " *Gibson,* 2 A.D.3d at 972 (quoting *People v. Sprague,* 200 A.D.2d 867, 868 (App.Div., 3d Dept.1994)), *lv. denied* 83 N.Y.2d 877 (1994)). The Appellate Division's decision was not contrary to, or an unreasonable application of established law. *See McNear v. Herbert,* No. 02–CV–6033, 2005 WL 3018724, at \*18 (W.D.N.Y. Oct. 26, 2005) ("Evidence of a victim's prior complaint of a sex crime does not come within the proscriptive scope of CPL 60.42; therefore, its admissibility rests within the discretion of the trial court. The preclusion of such questioning does not constitute an abuse of discretion where, as here, defendant made no showing that the prior allegation was false."); *Grant v. Demskie,* 75 F.Supp.2d 201, 221 (S.D.N.Y.1999) (where petitioner failed to offer proof that a prior accusation of sexual abuse allegedly made by the victim was "demonstrably false," trial court did not abuse its discretion when it refused to permit cross-examination on that point), *aff'd* 234 F.3d 1262 (2d Cir.2000); *People v. Breheny,* 270 A .D.2d 926, 927 (App.Div. 4th Dept.2000) (defendant failed to provide court with adequate factual basis for a proposed line of questioning regarding a false accusation of sexual misconduct where "[a]lthough defendant indicated that there were "witnesses", including his sister, who were prepared to testify that the victim made those accusations, defendant never clearly indicated what each of those witnesses would say and specifically who would testify that the accusations were false."), *lv. denied* 95 N.Y.2d 851 (2000). This ground is dismissed.

### 4. Ground Four—Prosecutor Presented False Testimony to the Grand Jury

**\*13** Petitioner asserts in Ground Four of his petition that he was denied due process of law by the prosecutor's failure to "notify the grand jury that the complainant testified falsely that Petitioner threatened her to coerce her to have sex with him." Dkt. No. 40 at Attach. p. 4. Respondent argues that this claim presents no federal question. Dkt. No. 14 at 23–24.

This Court agrees with Respondent. A prosecutor is not required to present exculpatory evidence to the grand jury. *United States v. Williams,* 504 U.S. 36, 55 (1992) (since the grand jury is not required to consider exculpatory evidence, prosecutor was not under a binding obligation to present it, and, accordingly, a federal court lacks the power to dismiss an indictment on the ground that the prosecutor did not present exculpatory evidence to the grand jury); *Jones v. Keane,* 250 F.Supp.2d 217, 232–

33 (W.D.N.Y.2002) ("requiring the prosecutor to present exculpatory evidence to the grand jury would impose an unnecessary burden on the grand jury system."). Thus, even if the victim made a prior inconsistent statement regarding whether Gibson threatened her, the prosecutor was under no obligation to advise the grand jury of that fact.

To the extent that Gibson is challenging the propriety of the grand jury proceedings, that claim also fails. The Second Circuit has explicitly held that a claim that the prosecutor failed to present exculpatory evidence to the grand jury is not cognizable on *habeas* review. *See Lopez v. Riley,* 865 F.2d 30, 32–33 (2d Cir.1989) ("[t]he particular claims of impropriety before the grand jury in this case concern the sufficiency of the evidence, a failure to develop exculpatory evidence by the prosecutor, the presentation of prejudicial evidence and error in explaining the law" were all cured by petitioner's conviction by a jury at trial and, therefore, were not cognizable on *habeas* review); *Van Stuyvesant v. Conway,* No. 03 Civ. 3856, 2007 WL 2584775, at *25 (S .D.N.Y. Sept. 7, 2007) (claim that false testimony was presented before the grand jury is not cognizable on *habeas* review) (citing *Lopez* ).

Gibson's subsequent acquittal by a jury of the charges requiring force, and his conviction of the remaining charges (T. 758–61), cured any arguable defects in the indictment process "because the trial conviction establishes probable cause to indict and also proof of guilt beyond a reasonable doubt." *Montalvo v. Annetts,* 02 Civ. 1056, 2003 WL 22962504, at * 17 (S.D.N.Y. Dec. 17, 2003). *See United States v. Mechanik,* 475 U.S. 66, 69 (1986) ("[t]he petit jury's subsequent guilty verdict means not only that there was probable cause to believe that the defendants were guilty as charged, but also that they are in fact guilty as charged beyond a reasonable doubt."); *Davis v. Mantello,* 42 Fed. Appx. 488, 490–91 (2d Cir.2002) (summary order) ("Claims of deficiencies in state grand jury proceedings are not cognizable in a habeas corpus proceeding in federal court."), *cert. denied sub nom Davis v. Filion,* 538 U.S. 986 (2003).

**\*14** To the extent that Gibson is alleging that the prosecutor knowingly allowed the victim to commit perjury during her grand jury testimony, this claim lacks merit. To establish prosecutorial misconduct premised upon the presentation of perjury, Gibson must first establish that perjury was committed; i.e. that the

testimony was "actually, and intentionally, false." *Moore v. Greiner,* No. 02 Civ. 6122, 2005 WL 2665667, at * 13 (S.D.N.Y. Oct. 19, 2005). *See United States v. Dunnigan,* 507 U.S. 87, 94 (1993); *Dinsio v. Donnelly,* No. 03–CV– 0779, 2007 WL 4226396, at *6–7 (N.D.N.Y. Sept. 25, 2007) (Bianchini, J), *adopted,* No. 03–CV–0779, 2007 WL 4226390 (N.D.N.Y. Nov. 26, 2007) (Kahn, D.J.); *Anekwe v. Phillips,* 05–CV–2184, 2007 WL 1592973, at *6 (E.D.N.Y. May 31, 2007). He must also establish that "the prosecution knew, or should have known, of the perjury," and "there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *Dinsio,* 2007 WL 4226396, at *7 (quoting *United States v. Agurs,* 427 U.S. 97, 103 (1976)).

Gibson has not established that the victim committed perjury during her grand jury testimony, much less that the prosecutor knew or had reason to know she was allegedly untruthful. At most, Gibson has pointed out an inconsistency between her grand jury testimony that he verbally threatened her, and her statement to a treating nurse that he did not. Inconsistencies in prior statements go to the weight to be accorded a witness' testimony by the finder of fact. *See Bradley v. West,* No. 03–CV–3212, 2005 WL 3276386, *14 (E.D . N.Y. Dec. 2, 2005) (a "witness commits perjury if he gives false testimony concerning a material matter with the willful intent to provide false testimony, as distinguished from incorrect testimony resulting from confusion, mistake or faulty memory.") (internal quotation omitted). The Second Circuit has noted that "even a direct conflict in testimony does not in itself constitute perjury." *United States v. Gambino,* 59 F.3d 353, 365 (2d Cir.1995), *cert. denied,* 517 U.S. 1187 (1996). Counsel was aware of the inconsistency and used it to cross-examine both the victim and the nurse at trial. Trial Tr. at R586, 668–70. The jury was able to assess the victim's credibility based on all of the evidence. Although the jury acquitted Gibson of the charges requiring force, testimony regarding threats, or the lack thereof, was not the only evidence of force presented to the grand jury. *See* Dkt. No. 15, Ex. A (victim's grand jury attached as "Exhibit A"). This claim is dismissed.

### 5. Ground Six—Persistent felony offender statute and *Apprendi v. New Jersey,* 530 U.S. 466 (2000).

Petitioner alleges in Ground Six of his petition that his sentence as a persistent felony offender under New York's Penal Law § 70.10 is unconstitutional because it violated his right to a jury trial as explained in *Apprendi,* and

clarified by *Ring v. Arizona,* 536 U.S. 584 (2002). Am. Pet. at Attach p. 8–9. Respondent argues that this claim is without merit. Dkt. No. 14, at pp. 29–35.

**\*15** Gibson raised this claim in his *pro se* supplemental brief on appeal, claiming that his sentence violated the rule set forth in *Apprendi* because the enhanced sentence was based upon facts that were not charged in the indictment and that were not presented to a jury. *See* Dkt. No. 17, Ex. I. The Appellate Division rejected this claim, citing to *People v. Rosen,* 56 N.Y.2d 329, 334–35 (2001), *cert. denied* 534 U.S. 899 (2001). *Gibson,* 2 A.D.3d at 974. That decision is entitled to AEDPA deference.

### A. Clearly Established Supreme Court Precedent

Gibson was sentenced on July 17, 2001 and his conviction became final on March 11, 2004. At that time, the Supreme Court's decisions in *Apprendi* and *Ring* were the most recent cases to explain the Supreme Court's Sixth Amendment jurisprudence. Accordingly, the "universe of 'clearly established Supreme Court precedent' " relevant to Gibson's claim consists of *Apprendi* and *Ring. Brown v. Miller,* 451 F.3d 54, 57 n. 1 (2d Cir.2006) ("Brown II") (citing *Brown v. Greiner,* 409 F.3d 523, 533–34 & n. 3 (2d Cir.2005) ( "Brown I"), *cert. denied* 127 S.Ct. 938 (2007); *Woods v. Poole,* No. 03–CV–5708, 2007 WL 4166042, at \*1–2 (E.D.N.Y. Nov. 19, 2007). [14]

In *Apprendi,* the Supreme Court struck down a New Jersey hate crime statute that authorized an increased maximum sentence in circumstances where a judge determined that a defendant was motivated by racial discrimination. 530 U.S. at 482–85. The Supreme Court ruled that such a determination must be made by a jury and not by the sentencing court. *Id.* at 482–85, 492–97. The Court specifically held, however, that the jury trial right does not apply to sentence enhancements based *solely* on prior convictions. *Id.* at 490 ("Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.") (emphasis added).

The Supreme Court clarified its holding in *Ring,* where it considered the Sixth Amendment right to a jury trial in capital cases. Arizona's first degree murder statute set forth several aggravating facts and authorized the judge to sentence a defendant to death if he or she found that

there was at least one aggravating fact and no "mitigating circumstances sufficiently substantial to call for leniency." *Ring,* 536 U.S. at 592–93 (citation and internal quotation marks omitted). The Supreme Court struck down the statute, holding that all defendants "are entitled to a jury determination of any fact on which the legislature conditions an increase in their maximum punishment." *Id.* at 589. The court further noted that if a state statute authorizes an increased punishment that is contingent on the finding of a specified fact, that fact "must be found by a jury beyond a reasonable doubt." *Id.* at 602.

In sum, under *Apprendi,* and *Ring,* "a statute that merely mandates sentencing courts' consideration of defendants' histories, characteristics, and offenses falls into a different category than those that require the judicial finding of specific facts." *Witherspoon v. Woods,* 210 Fed. Appx. 115, 116 (2d Cir.2006) (summary order) (citing *Brown v. Miller,* 451 F.3d 54, 59 (2d Cir .2006) and *Brown v. Greiner,* 409 F.3d 523, 534–35 (2d Cir.2005)), *cert. denied sub nom Witherspoon v. Burge,* 127 S.Ct. 2438 (2007).

### B. Contrary to or an Unreasonable Application of Clearly Established Supreme Court precedent

**\*16** New York's "persistent felony offender" statute provides for enhanced punishment for defendants who "stand convicted of a felony after having previously been convicted of two or more felonies." N .Y. PENAL LAW § 70.10(a). A defendant may be sentenced as a persistent felony offender if the sentencing court finds, after a hearing, (1) that the defendant has at least two prior felony convictions and (2) "is of the opinion that the history and character of the defendant and the nature and circumstances of his criminal conduct indicate that extended incarceration and life-time supervision will best serve the public interest." N.Y. PENAL LAW § 70.10(2); CPL § 400.20(1). The prosecution bears the burden of proof at an enhancement hearing, and must prove "[m]atters pertaining to the defendant's history and character and the nature and circumstances of his criminal conduct" by a preponderance of the evidence. *Id.* § 400.20(5). When a court finds a defendant is a persistent felony offender, it is authorized to sentence the defendant as if he stood convicted of a class A–1 felony. *Id.* at §§ 70.10(2). Class A–1 felonies carry a minimum sentence of fifteen years and a maximum sentence of life in prison. N.Y. PENAL LAW § 70.00(2)(a) & (3)(a)(I). A sentencing court must set forth its reasons for imposing an enhanced sentence "in the record." *Id.* at § 70.10(2).

In rejecting Gibson's claim that his sentence violated the *Apprendi* rule, the Appellate Division cited to *People v. Rosen,* 96 N.Y.2d 329 (2001), *cert. denied* 534 U.S. 899 (2001). In that case, the New York Court of Appeals rejected the argument that the persistent felony offender statute violated *Apprendi* because "the sole determinate of whether a defendant is subject to enhanced sentencing as a persistent felony offender" was whether he or she had two predicate felony offenses. *Id.* at 335. Although the sentencing court must then consider other "enumerated factors" to form an opinion as to whether an enhanced sentence is warranted, the *Rosen* court found that by doing so, the sentencing court was simply "fulfilling its traditional role—giving due consideration to agreed-upon factors—in determining an appropriate sentence within the permissible statutory range." *Id.* citing *People v.. Farrar,* 52 N.Y.2d 302, 305–306 (1981). [15]

The Second Circuit evaluated the state court's analysis in *Rosen* and concluded that the New York Court of Appeals did not unreasonably apply *Apprendi* when it viewed the sentencing court's assessment as "something quite different from the fact-finding addressed in *Apprendi* and its predecessors." *Brown I,* 409 F.3d at 534–35. [16] It explained that the first determination required by the statute, that the defendant have two predicate felony convictions, "clearly falls within *Apprendi's* 'fact of a prior conviction exception'" and was not the type of judicial factfinding prohibited under *Apprendi. Id.* at 534 (citing *Apprendi,* 530 U.S. 488–90). The Court further held that the second prong of the statute, requiring the sentencing court to determine whether the defendant's "history and character" and "nature of the offense" warrant an enhanced sentence, differed from the type of fact-finding prohibited in *Apprendi* because it does not "enumerate any specific facts that must be found by the sentencing court before it can conclude that the extended sentence is in the public's 'best interest'." *Brown I,* 409 F.3d at 534–35; N.Y. PENAL LAW § 70.10(2). Instead, the statute simply requires a "vague, amorphous assessment of whether, in the court's opinion," an extended prison term and supervision is in the public interest. *Id.* at 534.

**\*17** More recently, a second panel of the Second Circuit followed the ruling in *Brown I,* concluding that the Supreme Court's decision in *Ring* did nothing to alter the result because the statutes at issue in *Apprendi* and *Ring* required the sentencing court to find some specific

fact, and New York's statute required a more general assessment of the defendant's history and character. *Brown II,* 451 F.3d at 55 ("[W]e hold ... following *Brown v. Greiner* ... that the state court did not unreasonably apply *Ring* in sentencing Brown as a 'persistent felony offender'...").

Because the law as it existed when Gibson's conviction became final (March 11, 2004) was that under *Apprendi* and *Ring,* this Court is bound by the decisions in *Brown I* and *Brown II. See Woods v. Poole,* 2007 WL 4166042, at \*1 (E.D.N.Y. Nov. 19, 2007) (since, at the time of Woods' sentencing, "*Apprendi* and *Ring* were the most recent cases to explain the Supreme Court's Sixth Amendment jurisprudence," the Second Circuit's ruling in *Brown v. Miller* controlled); *Bailey v. Rivera,* 2007 WL 3120904, at \*4 ("clearly established Federal law" means the holdings in effect at the time of the relevant state court decision); *Hernandez v. Conway,* 2005 WL 1606062, at \*2 (S.D.N.Y. Jul. 7, 2005) (petitioner's "sentence became final in 2001, more than one year before the U.S. Supreme Court decided *Ring* in June of 2002 ... [t]herefore, the 'universe of clearly established federal law' applicable to this petition does not include *Ring,* but rather, just as in *Brown,* is 'limited to *Apprendi* and the cases that preceded it.') (citing *Brown I,* 409 F.3d at 534, n. 3). [17] Accordingly, the Appellate Division's determination that Gibson's sentence, imposed pursuant to the persistent felony offender statute, did not violate *Apprendi* was not contrary to or an unreasonable application of clearly established Supreme Court precedent as it existed when Gibson was sentenced and his conviction became final. Thus, just as in *Brown II,* Gibson is not entitled to relief, and this claim is dismissed.

### 6. Ineffective Assistance of Trial Counsel

#### A. Ground Five

In Ground Five of his petition, Petitioner argues that counsel was ineffective for: (1) failing to raise any significant defenses at trial; (2) failing to notify Gibson of his right to testify at the grand jury, and failing to notify the prosecutor of his intent to testify; (3) failing to object to the "prosecutor's violation of CPL 190.50(5) (c)"; (4) failing to properly cross-examine the prosecutor's witnesses; (5) conceding to the jury that Petitioner had sexual intercourse with the victim; (6) failing to hire an investigator; and (7) failing to hire a defense expert to dispute the DNA evidence. Am. Pet. Attach at 5–7.

Respondent argues that these claims are without merit. Dkt. No. 14 at 24–29.

Petitioner raised these claims on direct appeal. The Appellate Division rejected them, finding that Gibson received "meaningful representation."[18] It noted that "defense counsel made appropriate pretrial and trial motions, vigorously cross-examined the People's witnesses, presented a defense witness, advanced cogent arguments in defendant's defense and employed a trial strategy which successfully secured acquittal of the charges of first degree rape and sodomy." *Gibson,* 2 A.D.3d at 973. The Appellate Division also ruled that, even assuming the record supported his claim that counsel failed to notify the People of his desire to testify before the grand jury, that "lapse does not, by itself, amount to ineffective assistance of counsel." *Id.* The Appellate Division's decision, which is entitled to AEDPA deference, was not contrary to or an unreasonable application of clearly established Supreme Court precedent.

### i. Clearly Established Supreme Court Precedent

**\*18** A claim of ineffective assistance of counsel is sustainable only if counsel's representation fell below an objective standard of reasonableness, and there is a reasonable probability that, absent counsel's errors, the result of the proceeding would have been different. *Strickland v. Washington,* 466 U.S. 668, 686 (1984); *Claudio v. Scully,* 982 F.2d 798, 803 (2d Cir.1992), *cert. denied,* 508 U.S. 912 (1993). In applying this test, a reviewing court must be "highly deferential" and presume that counsel's conduct falls within the range of reasonable performance. *Strickland,* 466 U.S. at 689; *see also Wiggins v. Smith,* 539 U.S. 510, 521 (2003) ("the legal principles that govern claims of ineffective assistance of counsel" were established in Strickland); *Aeid v. Bennett,* 296 F.3d 58, 62–63 (2d Cir.2002), *cert. denied* 537 U.S. 1093 (2002); *Brown v. Artuz,* 124 F.3d 73, 79–80 (2d Cir.1997), *cert. denied* 522 U.S. 1128 (1998); *White v. Herbert,* No. 02–CV–439, 2006 WL 3728878, at \*4 (N.D.N.Y. Dec. 15, 2006) (McCurn, S.J.).[19] Any counsel errors must be considered in the aggregate, rather than in isolation. *Lindstadt v.. Keane,* 239 F.3d 191, 199 (2d Cir.2001). The failure to make meritless arguments or objections cannot constitute ineffective assistance. *United States v. Arena,* 180 F.3d 380, 396 (2d Cir.1999), *cert. denied* 531 U.S. 811 (2000). There is a strong presumption that counsel rendered adequate assistance as courts give high

deference to counsel, and Petitioner "must overcome the presumption that the challenged action 'might be considered sound trial strategy.' " *Gatto v. Hoke,* 809 F.Supp. 1030, 1038 (E.D .N.Y.1992) (quoting *Strickland,* 466 U.S. at 689), *aff'd mem., 986 F.2d 500 (2d Cir.1992); see also Jackson v. Conway,* 448 F.Supp.2d 484, 492 (W.D.N.Y.2006). The Supreme Court has also recognized that a court need not necessarily address both components of the Strickland inquiry; as that Court noted, "there is no reason for a court deciding an ineffective assistance claim to ... address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland,* 466 U.S. at 697.

### ii. Contrary to, or an Unreasonable Application of, Supreme Court Precedent

As the Appellate Division noted, a review of the record indicates that Gibson's trial counsel properly represented him in all respects. Counsel made appropriate motions, including a motion for trial order of dismissal at the close of the People's case and a motion for judgment notwithstanding the verdict, and vigorously cross-examined witnesses. Trial Tr. at R.142–80, 486–98, 545–603, 611–22, 632–47, 668–75, 682–88, 696–99, 732–68, 773, 806–09, 821–22, 857–69, 899–906, 935–37, 945–52, 953–55. Counsel also presented a witness on Gibson's behalf. *Id.* at R992–1002. Counsel's representation resulted in acquittal of the two most serious charges of the indictment. *Id.* at R1139–40.

**\*19** Nonetheless, Petitioner first claims that counsel presented no significant defenses and instead improperly conceded that he engaged in consensual sexual intercourse with the victim. This claim relates to counsel's tactical or strategic choices, which are "virtually unchallengeable." *Strickland,* 466 U.S. at 690; *Campbell v. Greene,* 440 F.Supp.2d 125, 150 (N.D.N.Y.2006) (McCurn, S.J.) (quoting *Nieves v. Kelly,* 990 F.Supp. 255, 264 (S.D.N.Y.1997)). The Second Circuit has held that "it is a reasonable strategy for a trial attorney to concede his client's guilt as to certain crimes in the hopes of obtaining an acquittal on more serious charges in an indictment." *Parker v. Duncan,* No. 03–CV–0759, 2007 WL 2071745, at \*12 (N.D.N.Y. Jul. 17, 2007) (Kahn, D.J.) (citing *Farrington v. Senkowski,* 214 F.3d 237, 244 (2d Cir .2000) (sound trial strategy where defense counsel conceded defendant's guilt of certain crimes in an effort "to persuade the jury to acquit on the more serious charges"), *aff'd* No. 04–0562–pr., 2007 WL 4192013 (2d

Cir. Nov. 28, 2007); *Brown v. Rick,* No. 01 CIV.4310 DC, 2003 WL 22801397, at \*5 (S.D.N.Y. Nov. 25, 2003) (conceding petitioner's guilt of one crime while contesting guilt as to other charge constituted "a reasonable tactical decision"); *Nunez v. Miller,* No. 00 CIV 0966, 2001 WL 1773731, at \*7 (E.D.N.Y. July 12, 2001) ("ample strategic reason" existed for defense counsel's concession that his client committed lesser included offense).

Counsel's concession at trial that Gibson engaged in sexual intercourse with the victim was clearly part of counsel's trial strategy of defending him against the most serious charges brought against him in the indictment, including first degree rape and first degree sodomy, both class B violent felony offenses. *See* N.Y. PENAL LAW §§ 70.02(1)(a); 130.30; 130.50. In support of that strategy, counsel gained concessions on cross-examination from the victim that Gibson did not force her into the building where the incident took place, that she did not object to linking her arm with Gibson's as they walked up the stairs toward the elevator, and that she did not scream or try to get away. *Id.* at R552–57. Counsel also elicited testimony from Carol Braungart, the examining nurse, that the victim had no bruises or cuts, no evidence of redness or trauma to the vaginal area, and no tearing or redness in the anal area. *Id.* at R670–73. He also called a defense witness, Gary Booker, who testified that he spoke to the victim prior to the incident. According to Booker, he asked Gibson what he was doing with the victim, and Booker told him that he could not "get rid of her." Trial Tr. at R993. Booker asked the victim why she was not in school, and the victim told him that she was grown and could do what she wanted. *Id.* at R994. Counsel argued these points to the jury in summation, stating that the crux of the case was whether there had been sex by "forcible compulsion." *Id.* at R1008–13. Counsel suggested that the victim had consented to vaginal intercourse but objected to anal penetration, and that was the reason she ran from the bathroom. *Id.* at R1018–29.

 **\*20** Based on the record, counsel's strategic decision to concede certain charges and contest others was well within the wide range of reasonable professional assistance. In any event, in light of the overwhelming evidence that Petitioner engaged in sexual and anal intercourse with the victim, Petitioner cannot establish that but for counsel's strategy, the outcome of the case would have been different. The Appellate Division's rejection of this claim was not contrary to or an unreasonable application

of clearly established Supreme Court precedent, and it is therefore denied.

Gibson's claim that trial counsel was ineffective for not properly cross-examining the People's witnesses is also denied. The manner in which counsel conducted cross-examination is also a tactical decision and will not be second-guessed by a reviewing court unless there is no strategic justification for counsel's chosen course of action. *See United States v. Nersesian,* 824 F.2d 1294, 1321 (2d Cir.1987) ("Decisions whether to engage in cross-examination, and if so to what extent and in what manner, are similarly strategic in nature."); *Mathurin v. United States,* No. 01 Civ. 1374, 2007 WL 2589450, at \*12 (S.D.N.Y. Sept. 5, 2007) ("[i]t is well established that the decision to engage in cross-examination and, if so, to what extent and in what manner, are tactical decisions that should not be second-guessed by the courts") (citing *Dunham v. Travis,* 313 F.3d 724, 732 (2d Cir.2002)); *Stallings v. Woods,* No. 04–CV–4714, 2006 WL 842380, at \*18 (E.D.N.Y. Mar. 27, 2006) (decisions relating to the scope and manner of cross-examination "strategic in nature and generally will not support an ineffective assistance claim.") (quoting *Dunham,* 313 F.3d at 732). Here, the record shows, as the Appellate Division found, that counsel vigorously cross-examined witnesses. Trial Tr. at R545–86, R595–603, R611–18, R632–41, R668–75, 682–89, R696–99, R732–68, 773, R806–809, R821–22, 857–69, R899–906, 935–38, R945–51, R953–55.

Gibson's only specific complaint is that counsel did not cross-examine "nurse Braungart regarding her prior inconsistent states [sic] in her medical report regarding the pelvic exam of the complainant." Am. Pet. at Attach. p. 5. Gibson does not set forth what alleged inconsistencies counsel ignored, making it impossible to engage in meaningful review of this allegation. *See Brown v. New York,* No. 04–CV–1087, 2006 WL 3085704, at \*7 (E.D.N.Y. Oct. 30, 2006) (vague and conclusory allegations are insufficient to state a viable claim for *habeas* relief); *Skeete v. New York,* No. 98–CIV–5384, 2003 WL 22709079, at \*2 (E.D.N.Y. Nov. 17, 2003) ("vague, conclusory and unsupported claims do not advance a viable claim for habeas corpus relief."). In any event, as noted above, counsel elicited testimony favorable to Gibson during his cross-examination of Braungart, including testimony that the victim exhibited no obvious signs of trauma and that the outside and inside of the victim's anus was swabbed with the same rectal swab. Trial

Tr. at R669–73, R682–88. This testimony lent support to counsel's later argument in summation that Gibson attempted to penetrate the victim's anus but he was unsuccessful. *Id.* at R1018–19, 1024–25.

**\*21** Gibson further claims that counsel was ineffective because he failed to hire an expert to "refute the DNA match claimed by the prosecution." Am. Pet. Attach. p. 7. "The decision whether or not to call an expert witness generally falls within the wide sphere of strategic choices for which counsel will not be second-guessed on habeas review." *Savinon v. Mazucca,* 04 CIV 1589, 2005 WL 2548032, at \*33 (S.D.N.Y. Oct. 12, 2005) (quoting *Stapleton v. Greiner,* 2000 WL 1207259, at \*16 (E.D.N.Y. July 10, 2000) (citing *United States v. Kirsch,* 54 F.3d 1062, 1072 (2d Cir.), *cert. denied,* 516 U.S. 927 (1995)), *adopted,* 2006 WL 2669331 (S.D.N.Y. Sept. 18, 2006). Gibson's vague, conclusory claim does not provide this Court with any basis upon which to conclude that there was a witness who could have offered relevant and probative evidence to counter the DNA evidence offered by the prosecution. Under these circumstances, the decision of trial counsel not to call his own expert "cannot be considered objectively unreasonable" since Gibson "has only presented his vague hope that another expert might have reached a different result than the government expert." *Savinon,* 2005 WL 2548032, at \*33 (quoting *Leaks v. United States,* 841 F.Supp. 536, 545 (S.D.N.Y.1994) (footnote omitted), *aff'd,* 47 F.3d 1157, *cert. denied,* 516 U .S. 926 (1995)). Similarly, Gibson cannot establish prejudice because he has not shown that a defense expert would have contradicted the prosecution's evidence. *See James,* No, 00 Civ. 8818, 2002 WL 1023146, at \* 16 (S.D.N.Y. May 20, 2002) (rejecting petitioner's claim that trial counsel was ineffective in failing to obtain expert testimony where petitioner "provided no reason to believe that an ... expert hired by the defense would have offered any exculpatory testimony or indeed any testimony that differed from the Government expert"); *Murden v. Artuz,* 253 F.Supp.2d 376, 389 (E.D.N.Y. Sept. 7, 2001) (petitioner failed to show prejudice based on attorney's decision not to hire an expert where the petitioner did not "come forward with affidavits or other admissible evidence showing that there is an expert witness who would have testified" concerning issues that would have raised a reasonable doubt as to petitioner's guilt). This claim is also dismissed.

Gibson's claim that counsel was ineffective because he should have hired an investigator to locate possible witnesses is belied by the record. During the discussions regarding the victim's alleged unrelated false allegation of rape, the trial court gave counsel an opportunity to "make a call to your investigator" in order to locate proof that the allegation was indeed false. Trial Tr. at R 498.

Finally, Gibson's complaints that counsel did not (1) inform him of his right to testify before the grand jury; and (2) did not tell the prosecutor of his intent to testify at grand jury warrant no relief. In New York, a defendant's right to testify before the grand jury is not a federal constitutional right but, rather is a statutorily created right under *CPL § 190.50(5)(a); People v. Smith,* 87 N.Y.2d 715, 724 (1996). To the extent that Gibson claims that he was denied his right to testify before the grand jury, that claim is not cognizable on *habeas* review. 28 U.S.C. § 2254(a) (permitting federal *habeas* review only where a petitioner alleged that he is in state custody in violation of "the Constitution or a federal law or treaty"); *Lopez,* 865 F.2d at 32; *Welch v. Artuz,* 04–CV–205 S, 2007 WL 949652, at\* 18 (W.D.N.Y. Mar. 29, 2007); *Lucius v. Filion,* 431 F. Supp 2d. 343, 346 (W.D .N.Y. May 23, 2006); *Staley,* 2003 WL 470568, at \* 12. Gibson's argument that counsel failed to secure his grand jury testimony does not, therefore, amount to ineffective assistance. *Lucas v. Filion,* 431 F.Supp.2d 343, 348–49 & n. 2 (W.D.N.Y.2006); *Montalvo,* 2003 WL 22962504, at \*24.

**\*22** Gibson's related claim, that counsel was ineffective for not moving to dismiss the indictment based upon deficiencies in the indictment process, also fails. Gibson's subsequent conviction by a jury (Trial Tr. at R1139–42) cured any arguable defects in the indictment process "because the trial conviction establishes probable cause to indict and also proof of guilt beyond a reasonable doubt." *Montalvo,* 2003 WL 22962504, at \*17. *See Mechanik,* 475 U.S. at 69 ("[t]he petit jury's subsequent guilty verdict means not only that there was probable cause to believe that the defendants were guilty as charged, but also that they are in fact guilty as charged beyond a reasonable doubt."); *Davis,* 42 Fed. Appx. at 490–91 ("Claims of deficiencies in state grand jury proceedings are not cognizable in a habeas corpus proceeding in federal court."); *Staley,* 2003 WL 470568, at \*12 ("any alleged defects in the state grand jury process are not cognizable on habeas review."). Gibson's claims of ineffectiveness relating to the grand jury process are dismissed.

**B. Ground Seven**

In Ground Seven, Gibson raises additional claims of trial counsel ineffectiveness (labeled Parts A through F). Specifically, he argues that trial counsel: (A) failed to move to dismiss the indictment on speedy trial grounds; (B) failed to assist Gibson in exercising his right to testify before the grand jury; (C) failed to move to dismiss the indictment based upon false testimony of the victim regarding threats petitioner made to coerce her into having sexual intercourse; (D) failed to move to dismiss the indictment on grounds that it was defective; (E) failed to move to dismiss the charges against him because he was refused a preliminary hearing; and (F) failed to preserve a challenge to his sentence under the persistent felony offender statute. Respondent argues that these claims are untimely, procedurally barred and meritless. Dkt. No. 59 at 6–10, 17–24.

Petitioner raised these claims in a motion to vacate his conviction, filed on or about October 23, 2006. Dkt. No. 60, Ex. Z. The state court denied the motion. It first noted that the Appellate Division had rejected his ineffectiveness claim that trial counsel failed to secure his right to testify at grand jury and Gibson's claim that his sentence violated *Apprendi.* Dkt. No. 60, Ex. EE, at 1. On that basis, the court concluded that Gibson's claims that counsel was ineffective for not securing his right to testify at grand jury and for not objecting to his sentence under *Apprendi* were procedurally barred, citing to CPL 440.10(2)(a). *Id.* at 2. The court further concluded that Gibson's remaining claims were also procedurally barred because they were based upon the record and could have been raised on direct appeal, but were not, citing CPL 440.10(2)(c). *Id.* at 2.

**i. Timeliness**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") imposes a one-year statute of limitations on federal *habeas* petitions that begins to run from the latest of several events, including the date on which the challenged state court conviction becomes final, the date upon which an impediment to filing created by State action in violation of the constitution or laws of the United States is lifted, the date on which the asserted constitutional right was newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review, and the date on which the factual

predicate of the claim could have been discovered through the exercise of due diligence. 28 U.S.C. § 2244(d)(1)(A)-(D).

**\*23** The Second Circuit has held that for purposes of 28 U.S.C. § 2244, a state conviction becomes "final" when the time to seek certiorari to the United States Supreme Court has expired, which is ninety days after the date direct review of the case has been completed by the highest court in the state. *Williams v. Artuz,* 237 F.3d 147, 151 (2d Cir.2001), *cert. denied* 534 U.S. 924 (2001); *Williams v. Breslin,* No. 03 CIV. 1848, 2004 WL 242447, at *1 (S.D.N.Y. Feb. 11, 2004). The one-year limitation period under AEDPA is tolled while "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). "This tolling provision 'excludes time during which properly filed state relief applications are pending' but it does not restart the statute of limitations clock." *Williams v. Breslin,* 2004 WL 242447, at *2 (quoting *Smith v. McGinnis,* 208 F.3d 13, 17 (2d Cir.2000), *cert. denied* 531 U.S. 840 (2000)).

Petitioner's request for leave to appeal his conviction to the New York Court of Appeals was denied on February 25, 2004. His conviction became final for *habeas* purposes ninety days later on May 25, 2004. *See* 28 U.S.C. § 2244(d)(1)(A); N.Y. CRIM. PROC. LAW § 460.10(5). Petitioner had one year from that date, or until May 25, 2005, to file a federal *habeas* petition. Petitioner filed his original petition on June 28, 2004, which was timely. Dkt. No. 1.

On October 18, 2006, Gibson sought leave to amend his petition to include additional ineffectiveness claims and requested a stay of his *habeas* petition so that he could exhaust them in state court. Dkt. No. 28. Petitioner filed a CPL § 440 motion in Schenectady County Court on October 23, 2006. Dkt. No. 60, Ex. Z. The motion was denied on May 17, 2007, and leave to appeal was denied by the Appellate Division on September 6, 2007. Dkt. No. 60, Ex. GG–HH.

Gibson's amended *habeas* petition, in which he raised these newly exhausted ineffectiveness claims, was not filed until June 5, 2007, after the one year time period in which to seek *habeas* relief expired. 28 U.S.C. § 2244(d)(A). Had Gibson filed a post-conviction application prior to May 25, 2005, while the opportunity to seek *habeas* relief still existed, the pending application would have tolled the

statute of limitations. 28 U.S.C. § 2244(d)(2). But Gibson is not entitled to tolling under Section 2244(d)(2) because he did not file his post-conviction motion until October 23, 2006, nearly seventeen months after the deadline to file the *habeas* petition had expired. Therefore, the filing of his post-conviction application did not restart the statute of limitations clock. *Williams v. Breslin,* 2004 WL 242447, at *2; *Davis v. McCoy,* No. 00 CIV. 1681, 2000 WL 973752, at *2 (S.D.N.Y. July 14, 2000).

Since Gibson's amended petition was not filed until after the one-year statute of limitations had run, he is required to show that it relates back to the claims in the timely filed petition within the meaning of Rule 15 of the Federal Rules of Civil Procedure. *Mayle v. Felix,* 545 U.S. 644, 664 (2005); *Fama,* 235 F.3d at 816; *Valerio v. Phillips,* No. 02–CV–903, 2007 WL 4191817, at *4 (W.D.N.Y. Nov. 21, 2007). The Supreme Court has rejected the proposition that a petitioner's "trial, conviction, or sentence" constitute the "conduct, transaction, or occurrence" contemplated by Fed.R.Civ.P. 15 because that would mean that all proposed amendments would "relate back" for purposes of Fed.R.Civ.P. 15(c). *Mayle,* 545 U.S. at 656, 657 ("[V]irtually any new claim introduced in an amended petition will relate back, for federal habeas claims, by their very nature, challenge the constitutionality of a conviction or sentence, and commonly attack proceedings anterior thereto."). Instead, in order for relation back to be approved, the original and amended petitions must "state claims that are tied to a common core of operative facts" (*Mayle,* 545 U.S. at 664) and must arise from "the conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading." Fed.R.Civ.P. 15(c)(2). If the amended petition asserts a new ground for relief that is supported by facts that are different "in time and type" from those in the original pleading, the amended petition does not relate back. *Mayle,* 545 U.S. at 649–50, 657.

 **\*24** As respondent apparently concedes, Gibson's claim in Part B that counsel was ineffective for failing to assist him in exercising his right to testify before the grand jury essentially repeats the same claim he initially asserted and therefore relates back to the June 2004 petition. *See* Dkt. No. 1, Dkt. No. 40, Ground Seven B. This claim has been reviewed and rejected elsewhere in this Decision and Order. *See supra* at pp. 25–27, 42–43.

This Court also finds that Gibson's claims in Part C (that counsel was ineffective failing to move to dismiss the indictment based upon the prosecutor's known use of false testimony of the victim during grand jury), and Part F (that counsel was ineffective for failing to preserve a challenge to his sentence under *Apprendi* ) also relate back to the original petition. Although these two claims are based upon a new theory of relief, they arise from the same "common core of operative facts" (*Mayle,* 545 U.S. at 664) as those set forth in Grounds Four and Six of his original *habeas* petition. *See Ford v. Phillips,* No. 03–CV–2077, 2007 WL 957536, at *17 (E.D.N.Y. Mar. 29, 2007) ("Although petitioner's claim asserts a new ground for relief (*i.e.,* ineffective assistance of counsel), it is not based on facts that differ in "both time and type" from those asserted in his original petition.") (quoting *Mayle,* 545 U.S. at 648); *Torres v. Girdich,* No. 04 Civ. 1512, 2006 WL 1230328, at *11 (S.D.N.Y. May 9, 2006) (claim that counsel ineffective for failing to object to the testimony of two police officers about narcotics packaging and marketing, and for failing to request a limiting instruction on that testimony, related back to the original petition where the underlying claims were originally pleaded); *Serrano v. Burge,* 2005 WL 2063765 at *4 (S.D.N.Y. Aug. 22, 2005) (ineffective assistance of counsel claim based upon the "same common core of operative facts as his original habeas petition" because "[a]lthough the ineffective assistance of appellate counsel claim [was] based on a new theory of relief," it arose from the "same facts as the original habeas petition."), *adopted,* 2005 WL 2170362 (S.D.N.Y. Sept. 8, 2005).

The three other ineffectiveness claims in Ground Seven, however, are wholly different from the originally pleaded claims. *See Mayle,* 545 U.S. at 664. There is no reference at all in Gibson's June 2004 petition to the ineffectiveness claims contained in Parts A (failure to raise a speedy trial challenge) and E (failure to move to dismiss the indictment because the trial court refused to hold a preliminary hearing). Dkt. No. 1. The same is true of the claim in Part D, that counsel was ineffective for not moving to dismiss the indictment because it was defective. Gibson claimed in his original petition that counsel "failed to challenge the legality of the indictment" and referred this Court to the claims more fully set forth in his Appellate Brief. Dkt. No. 1, Ground Four, Supporting Facts. A review of the Appellate Brief reveals that on direct appeal, Petitioner argued that the grand jury procedure used by the prosecutor was improper because notice was served on

Gibson's attorney that the case would be presented to the grand jury on March 7, 2000, but the prosecutor did not present it until September 7, 2000, and trial counsel was ineffective for not moving to dismiss the indictment on that ground. Dkt. No. 16, Ex. G, at 66–67. Gibson did not argue, as he does now in Part D, that trial counsel should have moved to dismiss the indictment because it did not contain his name. Dkt. No. 40, Ground Seven, Part D.

**\*25** Since Gibson's claims in Parts A, D and E are sufficiently different from those in his original petition, they cannot be said to arise from the same "transaction, conduct or occurrence" as defined by the Supreme Court. *See Mayle,* 545 U.S. 644. These newly pled claims do not relate back, and are thus untimely. *See Veal v. United States,* No. 01 CIV. 8033, 2007 WL 3146925, at \*6 (S .D.N.Y. Oct. 9.2007) (holding that petitioner's proposed amended claim that trial counsel was ineffective in failing to notify him of a plea offer did not "relate back" under Fed.R.Civ.P. 15(c) to petitioner's two original claims that trial counsel erroneously failed to move to dismiss certain counts of the indictment and failed to object to a particular jury instruction; finding that "[t]hese separate and distinct phases of the case were sufficiently different" to make them not arise out of the same "conduct or occurrence" and that the government could not have had "fair notice" of the new claims); *Porter v. Greiner,* No. 00–CV–6047, 2005 WL 3344828, at \*10 (E.D.N.Y. Nov. 18, 2005) (newly pleaded claim that counsel was ineffective for failing to contest an allegedly erroneous jury charge did not relate back because none of the claims in the original petition were based on the jury charge in question).

A court may, in certain circumstances, excuse a petitioner's delay in filing a timely motion under the doctrine of equitable tolling. *Smith v. McGinnis,* 208 F.3d 13, 17 (2d Cir.1996), *cert. denied* 531 U.S. 840 (2000); *Bellamy v. Fisher,* No. 05 CIV. 2840, 2006 WL 2051038, at \*4 (S.D.N.Y. July 24, 2006). The doctrine should be used sparingly and only in rare circumstances. *Lawrence v. Florida,* 127 S.Ct. 1079, 1085 (2007). For equitable tolling to apply, petitioner must show " '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Lawrence,* 127 S.Ct. at 1085 (quoting *Pace v. DiGuglielmo,* 544 U.S. 408, 418 (2005)); *Belot v. Burge,* 490 F.3d 201, 205 (2d Cir.2007), *cert. denied* No. 07–7548, 2008 WL 423715 (Feb. 19, 2008).

A petitioner claiming extraordinary circumstances must support that claim with evidence and not simply with "personal conclusions or assessments." *Bellamy,* 2007 WL 2051038, at \*5 (citing *Mendez v. Artuz,* No. 99 CIV. 2472, 2000 WL 991336, at \*2 (S.D.N.Y. Jul. 18, 2000) (holding that conclusory allegations do not meet the high burden required to justify tolling). A petitioner must also show that he was unable to pursue his legal rights during the entire period that he seeks to toll. *Barbosa v. United States,* No. 01 CIV. 7522, 2002 WL 869553, at \*5 (S.D.N.Y. May 3, 2002).

Petitioner does not seek equitable tolling in this case, and has failed to demonstrate any extraordinary circumstances that prevented him from exhausting his ineffectiveness claims in Parts A, D and E prior to the expiration of the limitations period. These claims are untimely and are dismissed.

### ii. *The Timely Claims in Ground Seven are Procedurally Barred*

**\*26** Although the claims in Parts B, C and F (Dkt. No. 40 at Attach p. 10, 12–18) relate back to the original petition, they are also procedurally barred. Gibson raised each of these claims in his CPL § 440.10 motion. Dkt. No. 60, Ex. Z. The state court rejected Gibson's claim in Part B, that counsel was ineffective for not assisting him in exercising his right to testify before the grand jury, because the Appellate Division "specifically addressed and rejected" it. Dkt. No. 60, Ex. EE, at 2 (citing CPL § 440.10(2)(a)). The court also rejected Gibson's claim in Part F, that counsel was ineffective for not preserving a challenge to his sentence under *Apprendi,* because the Appellate Division found that Gibson's sentence did not violate *Apprendi. Id.* (citing CPL 440.10(2)(a)). Finally, the state court rejected Gibson's claim in Part C, that counsel failed to move to dismiss the indictment because it was based upon the known use of false testimony by the victim, because Gibson unjustifiably failed to raise this claim on direct appeal. *See* Dkt. No. 60, Ex. EE, at 2 (citing CPL 440.10(2)(c)).

The state court's rejection of Gibson's claim in Part C pursuant to CPL § 440.10(2)(c) rests upon an independent and adequate state ground and federal review of the claim is thus barred. *Washington v. James,* 996 F.2d 1442, 1447 (2d Cir.1993), *cert denied* 510 U.S. 1078 (1994); *Cruz v. Berbary,* 456 F.Supp.2d 410, 419 (W.D.N.Y.2006); *Heron v. Coughlin,* No. 94–CV–1860, 2003 WL 21921267

at *2 (S.D.N.Y.2003); *Morales v. Sabourin,* No. 00 Civ. 8773, 2002 WL 32375006 at *12 (S.D.N.Y.2002). As noted above, this Court may review Gibson's procedurally barred claim only if he demonstrates cause for the default and resulting prejudice, or that the failure of the federal court to review the claim will result in a "fundamental miscarriage of justice" *i.e.,* that he is innocent. *Calderon,* 523 U.S. at 559; *Coleman,* 501 U.S. at 748–750.

Gibson has failed to allege or establish cause for his failure to raise this claim on direct appeal, and has never argued, in either the state courts or this proceeding, that his appellate counsel rendered ineffective assistance by failing to argue in the state courts that trial counsel was ineffective on this ground. *See* Dkt. No. 60, Ex. JJ. Since Gibson has not established cause for his procedural default, the Court need not decide whether he suffered actual prejudice. *Stepney,* 760 F.2d at 45; *Staley,* 2003 WL 470568, at *7. Although Gibson claims there was insufficient evidence of his guilt, he has not presented any new evidence that he is "actually innocent" of the crimes for which he was convicted. *See Schulp,* 513 U.S. at 327. The procedural default bars federal review of Gibson's claim in Part C.

Even if the claim was not barred, it would be dismissed. As noted above, a prosecutor is not required to present exculpatory evidence to a grand jury. *Williams,* 504 U.S. at 55; *Jones,* 250 F.Supp.2d at 232–33. Counsel cannot now be deemed ineffective for failing to make a meritless motion. *Arena,* 180 F.3d at 396.

**\*27** It is not clear that the state court's rejection of Gibson's claims in Parts B (that counsel was ineffective for failing to assist him in exercising his right to testify before the grand jury) and F (that counsel was ineffective for not preserving a challenge to his sentence under *Apprendi* ), are similarly barred. Each of these claims was denied by the state court under CPL § 440.10(2)(a) because they were "specifically addressed and rejected" by the Appellate Division. Dkt. No. 60, Ex. EE, at 2 (citing *Gibson,* 2A.D.3d at 973).

District courts within the Second Circuit disagree as to whether a state court's reliance on CPL § 440.10(2)(a) in denying a constitutional claim results in the procedural default of that claim on federal *habeas* review. *See, e.g., Cruz,* 2006 WL 2946946, at *8 (concluding that CPL § 440.10(2)(a) constitutes adequate and independent state

ground resulting in procedural default of petitioner's federal *habeas* claims); *Hronopoulos v. Keane,* No. 98–CV–3221, 1999 WL 529559, at *4 (E.D.N.Y. Jul. 21, 1999) (finding that petitioner's claim was procedurally barred under CPL § 440.10(2)(a)); *Encarnacion v. Walker,* No. 96–CV–329, 1998 WL 34002608, at *4–5 (N.D.N.Y. Aug. 21, 1998) (Sharpe, J.) (identifying CPL §§ 440.10(2) (a) as adequate and independent state procedural rules), *adopted,* No. 96–329, Dkt. No. 17 (N.D.N.Y. Aug. 24, 1999) (Scullin, D.J.); cf. *Douglas v. Hollins,* No. 00 Civ. 7928, 2004 WL 187130, at *6 n. 5 (S.D.N.Y. Jan. 29, 2004) (finding that state court ruling under CPL § 440.10(2) (a) "does not constitute a finding of procedural default that precludes federal habeas review of the merits"); *Guzman v. Couture,* No. 99 Civ. 11316, 2003 WL 165746, at *11 (S.D.N.Y. Jan. 22, 2003) ("A dismissal under § 440.10(2)(a) is not based on any procedural default. To the contrary, it is premised on a prior decision.") (quotations omitted); *Taylor v. Kuhlmann,* 36 F.Supp.2d 534, 546 (E.D.N.Y.1999) (same).

This Court need not, however, "untangle the complicated procedural bar issues" presented here because the claims in Parts B and F are "easily resolvable." *Soto v. Portuondo,* No. 02–CV–28, 2004 WL 2501773, at *5 (E.D.N.Y. Nov. 5, 2004) (quoting *Dunham,* 313 F.3d at 729–30 (internal quotations omitted)). This Court has already reviewed and rejected Gibson's claim in Part B that counsel was ineffective for failing to assist him in exercising his right to testify before the grand jury, and this claim is dismissed.

Gibson's claim in Part F, that counsel was ineffective for not preserving a challenge to his sentence under *Apprendi,* is also dismissed. The Appellate Division addressed Gibson's claim on direct appeal that his sentence violated the holding in *Apprendi,* even though counsel did not object to the sentence on this ground, and found the claim "meritless." *See* Dkt. No. 60, Ex. EE at 2; *Gibson,* 2 A.D.3d at 974. Since the Appellate Division reached the merits of this claim, Gibson cannot demonstrate prejudice, i.e., that but for counsel's failure to challenge his sentence under *Apprendi,* the outcome would have been different. *Strickland,* 466 U.S. at 687, 694 (absent prejudice, an ineffectiveness claim fails); *Wegman v. West,* No. 04–CV–312 S, 2007 WL 2789733, at *7 (W.D.N.Y. Sept. 24, 2007) ("This Court finds, rather, that any mistake by counsel in failing to object was harmless error, and did not amount to ineffective assistance" where petitioner

failed to demonstrate that but for counsel's failure to object, the result would have been different).

### III. *Certificate of Appealability*

**\*28** Since the dismissal of some of Gibson's claims in Ground Seven is not based upon a consideration of the merits, a certificate of appealability is granted for the limited purpose of determining (1) whether the claims in Ground Seven, Parts A, D, and E "relate back" to his original petition; and, if they do not, (2) whether equitable tolling is appropriate under the facts presented in this particular case. *See Slack v. McDaniel,* 529 U.S. 473, 484–85 (2000) (when a petition is denied on procedural grounds without reaching the merits of the underlying constitutional claim, a certificate of appealability should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the district court was correct in its procedural ruling); *Muller v. Greiner,* No. 03–Civ–1844, 2004 WL 97687, at \*4 (S.D.N.Y. Jan. 20, 2004), *aff'd* 2005 WL 1712964 (2d Cir.2005) (stating that because dismissal is not based on a consideration of the petition's merit, a certificate of appealability is appropriately granted for the limited purpose of determining whether equitable tolling is warranted.). **No certificate of appealability shall issue** with regard to Gibson's remaining claims because he has failed to make a substantial showing of a denial of a constitutional right therein. *See* 28 U.S.C. § 2253(c)(2) (1996).

*WHEREFORE,* after reviewing Gibson's submissions and the relevant law, and for the reasons stated herein, the Court hereby

**ORDERS** that Gibson's petition for a writ of *habeas corpus* is **DISMISSED;** and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of his Order on Gibson by regular mail.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in F.Supp.2d, 2008 WL 9434482

---

Footnotes

1    Because the victim is a minor child, the Court will refer to her by her initials or as "the victim." N.Y. CIV. RIGHTS § 50(b).

2    The page numbers are those written on the bottom right hand corner of each page that begin with "R."

3    Unless otherwise indicated, all references to the New York Penal Law are to McKinney 1998.

4    *United States v. Wade,* 388 U.S. 218 (1967). The purpose of a *Wade* hearing is to determine whether identification testimony should be suppressed because the manner in which the identification of the suspect was obtained was unduly suggestive. *See Blas v. Herbert,* No. 02 Civ. 6257, 2003 WL 22480093, at \*3 n. 2 (S.D.N.Y. Oct. 21, 2003).

5    *People v. Huntley,* 15 N.Y.2d 72 (1965). A *Huntley* hearing is conducted to determine whether a defendant's statements to the police must be suppressed on the grounds that he was subjected to custodial interrogation without the warnings required under *Miranda v. Arizona,* 384 U.S. 436 (1966). *See Harris v. New York,* 202 F.Supp.2d. 3, 4 & n. 3 (S.D.N.Y.2001); *see also* New York's Criminal Procedure Law ("CPL") § 710.

6    The Appellate Division found that since Gibson failed to address the issues raised in his CPL § 440.10 motion in his appeal, the appeal of the denial of that motion was "deemed abandoned." *Gibson,* 2 A.D.3d at 970 n. 1.

7    Petitioner also informed the Court that "Schenectady County Court [had] granted [Petitioner] a hearing on the merits [of his CPL 440 motion] and assigned" counsel to represent him. *See* Dkt. No. 32.

8    Gibson's claims will be considered out of order for the sake of clarity.

9    It should be noted that "clearly established federal law" in this context "refers only to the holdings of the Supreme Court." *Rodriguez v. Miller,* 499 F.3d 136, 140 (2d Cir.2007), (citing *Williams v. Taylor,* 529 U.S. 362, 412 (2000)), *cert. denied* 2008 WL 102403 (U.S. Mar. 17, 2008).

10    Although Gibson filed a state *coram nobis* petition in which he challenged the effectiveness of appellate counsel, he did not claim therein that appellate counsel was ineffective for not challenging the sufficiency of the evidence on appeal. *See* Dkt. No. 60, Ex. JJ.

11    The *Jackson* standard is clearly established federal law as determined by the Supreme Court. *See Huber v. Schriver,* 140 F.Supp.2d 265, 276 n. 5 (E.D.N.Y.2001) (citing *Francis S.,* 221 F .3d at 114) (other citation omitted); *see also Santana v. Kuhlmann,* 232 F.Supp.2d 154, 166–67 (S.D.N.Y.2002).

12    Petitioner does not appear to challenge his convictions for endangering the welfare of a child (2 counts).

13    There was no other restriction placed upon the scope of cross-examination, and the record shows that defense counsel vigorously cross-examined the victim. Trial Tr. at R545–86, 595–603, 611–22.

14    The Supreme Court further clarified the *Apprendi* rule in *Blakely v. Washington,* 542 U.S. 296 (2004), and *United States v. Booker,* 543 U.S. 220, 226–27 (2005). In *Blakely,* the Supreme Court held that Washington state's sentencing scheme was unconstitutional because it authorized one sentencing range based on a jury's findings alone and a higher range if the sentencing judge found "substantial and compelling reasons justifying an exceptional sentence." *Blakely,* 542 U.S. at 299, 304–05. In *Booker,* the Court held that the Sixth Amendment applied to the Federal Sentencing Guidelines and concluded that the provisions that made the guidelines mandatory should be excised. *Booker,* 543 U.S. at 226–27.

The Second Circuit has held that neither *Blakely* nor *Booker* apply retroactively on collateral review. *See Guzman v.. United States,* 404 F.3d 139, 144 (2d Cir.2005) (*Booker* ), *cert. denied* 546 U.S. 1035 (2005); *Green v. United States,* 397 F.3d 101, 102–03 (2d Cir.2005) (Blakely). *See Espinal–Martinez v. United States,* 499 F.Supp.2d 213, 216 (N.D.N .Y. Jul. 2, 2007) (Kahn, D.J.) (*Booker* ); *Garcia v. United States,* No. 04–CV–0465, 2004 WL 1752568, at *5 (N.D.N.Y. Aug. 4, 2004) (McAvoy, S.J.) ("[B]ecause *Apprendi* does not apply retroactively to collateral attacks and *Blakely* is an extension of *Apprendi, Blakely* is similarly limited to prospective application."). Accordingly, the decisions in *Blakely* (decided on June 24, 2004, three months after Gibson's conviction became final) and *Booker* do not impact upon the Court's decision in this case.

15    More recently in *People v. Rivera,* 5 N.Y.3d 61 (2005), *cert. denied* 546 U.S. 984 (2005), the New York Court of Appeals considered the effect of the Supreme Court's decision in *Blakely* on its prior determination in *Rosen* that the persistent felony offender statute did not violate *Apprendi.* The court affirmed its holding in *Rosen* and reiterated that proof of two prior felony convictions beyond a reasonable doubt is the "sole determinant of whether a defendant is subject to recidivist sentencing as a persistent felony offender" and no "further findings are required." *Rivera,* 5 N.Y.3d at 56–57(citing *Rosen,* 96 N.Y.2d at 335). Thus, under *Rivera,* "whether the second prong of the inquiry involves factfinding in the *Apprendi* sense is irrelevant, because the statutory maximum for *Apprendi* purposes does not rely in any way on that second prong. Any subsequent assessment of the history and character of the defendant or the nature and circumstances of the offense is used solely to determine where, within the enhanced statutory minimum and maximum, the sentence will be imposed." *Morris v. Artus,* No. 06 Civ. 4095, 2007 WL 2200699, at *9 (S.D.N.Y. July 30, 2007).

16    Three separate appeals, of which *Rosen* was one, were consolidated by the Second Circuit in *Brown I.* 409 F.3d at 526 (*Rosen v. Walsh,* No. 02 CIV. 7782, 2003 WL 24208700 (S.D.N.Y. Jul. 21, 2003)). Rosen's writ of *habeas corpus* was granted by the Southern District of New York, and that decision was reversed in *Brown I.*

17    The Court made it clear, in a footnote, that its evaluation in *Brown II* did not address the Supreme Court's decisions in *Blakely* and *Booker. Id.* at 59 n. 1. As is the case here, these decisions were rendered after Brown's conviction became final.

There is a split among district courts in the Second Circuit regarding the constitutionality of the persistent felony offender statute following the Supreme Court's rulings in *Blakely* and *Booker.* Some courts have held that there is nothing in the *Blakely* decision that "altered the rule of the road on prohibited judicial fact-finding." *West v. Breslin,* No. 05 Civ. 4167, 2008 WL 110947, at *8 (S.D.N.Y. Jan. 2, 2008); *see Morris v.. Artus,* No. 06 Civ. 4095, 2007 WL 2200699, at *7 (S.D.N.Y. July 30, 2007); *Phillips v. Artus,* No. 05 Civ. 7974, 2006 WL 1867386, at *6 (S.D.N.Y. Jun. 30, 2006); *Witherspoon v. Woods,* No. 04–CV–5528, 2006 WL 721510, at *4 n. 2 (E.D.N.Y. Mar. 6, 2006), aff'd 210 Fed. Appx. 115 (2d Cir.2006) (summary order), *cert. denied sub nom Witherspoon v. Burge,* 127 S.Ct. 2438 (2007). In support of that position, one court cited to the Supreme Court's recent decision in *Cunningham v. California,* 127 S.Ct. 856, 860 (2007) that *Apprendi* set forth "a bright line rule." *West,* 2008 WL 110947, at *8 & n. 5.

Other courts have found the statute unconstitutional under *Blakely. See Portalatin v. Graham,* 478 F.Supp.2d 385, 387– 88, 391–92 (E.D.N.Y.2007) (petitioner's conviction became final in 2005 after *Blakely* was decided; the persistent felony offender statute violated the constitution because *"Apprendi* and *Blakely* make it clear that impermissible "factfindings" for Sixth Amendment purposes include generalized assessments of offenders as well as more specific factual determinations about offenses."*Id.* at 391–92;*Washington v. Poole,* 507 F.Supp.2d 342, 346–47, 350 (S.D.N.Y.2007) (while bound by *Brown I* and *Brown II,* which held that the persistent felony offender statute was not contrary to or an unreasonable application of clearly established federal law as it existed after *Apprendi* and Ring were decided but before *Blakely,* and *Blakely* and *Booker* had been decided by the time Washington's conviction became final in 2005, these decisions were relevant and the statute was unconstitutional under *Blakely* ).

The common thread linking *Portalatin* and *Washington,* however, is that *Blakely* and *Booker* had been decided when the respective petitioners challenged the constitutionality of their sentences. That is not the case here. Because *Blakely* and

2008 WL 9434482

*Booker* do not apply retroactively, (*Guzman,* 404 F.3d at 144; *Green,* 397 F.3d at 102–03), *Portalatin* and *Washington* are inapposite.

18    The interplay between the well-accepted standard for judging an attorney's performance under the Sixth Amendment and the prevailing test under New York law, particularly with respect to the prejudice prong of the controlling analysis, is an issue which has received increasing attention, with recent federal decisions reflecting some degree of tension between the two points of view. *See, e.g., Henry v. Poole,* 409 F.3d 48 (2d Cir.2005), *cert. denied,* 546 U.S. 1040 (2006). Prior to rendering its decision in *Henry,* the Second Circuit had previously held that the "meaningful representation" test applied by the New York courts is not "contrary to" the governing federal standards, for purposes of the AEDPA, even though the prejudice prong of its analysis is significantly less reaching than under its federal counterpart. *See, e.g., Henry,* 409 F.3d at 70 (citing *Lindstadt v. Keane,* 239 F.3d 191, 198 (2d Cir.2001), *Loliscio v. Goord,* 263 F.3d 178, 192–93 (2d Cir.2001) and *Eze v. Senkowski,* 321 F.3d 110, 122–24 (2d Cir.2003)). Whether that viewpoint will stand the test of time, particularly in light of the Supreme Court's decision in *Williams,* 529 U.S. 362 (2000), is subject to some doubt. *See Henry,* 409 F.3d at 68–72.

19    In *Williams v. Taylor,* the Supreme Court declared that "the rule set forth in *Strickland* qualifies as 'clearly established Federal law[.]' " 529 U.S. at 391; *see also Sellan,* 261 F.3d at 309.

---

**End of Document**                                    © 2018 Thomson Reuters. No claim to original U.S. Government Works.

Case 9:16-cv-00594-LEK-DEP    Document 12    Filed 02/16/18    Page 125 of 167
Hernandez v. Filion, Not Reported in F.Supp.2d (2005)
2005 WL 3164063

2005 WL 3164063
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Curly HERNANDEZ, Petitioner,
v.
Gary FILION, Superintendent of
Correctional Facility, Respondent.

No. 05 Civ. 4046(GWG).
|
Nov. 29, 2005.

**Opinion**

*OPINION AND ORDER*

GORENSTEIN, Magistrate J.

**\*1** Curly Hernandez, proceeding *pro se,* brings this petition for a writ of habeas corpus challenging his conviction in the Supreme Court of the State of New York, New York County, for Criminal Possession of a Controlled Substance in the First Degree (New York Penal Law ("N.Y.P.L.") § 220.21(1)). Hernandez was tried *in absentia* by a jury, found guilty, and sentenced to a term of imprisonment of fifteen years to life. On March 28, 2005, Hernandez was resentenced to a term of eight years' imprisonment under amendments to the so-called "Rockefeller Drug Laws." Hernandez was released on parole on May 13, 2005. The parties have consented to the disposition of this case by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons stated below, the petition is denied.

I. *BACKGROUND*

A. *The Suppression Hearing*
On September 21, 1992, the trial court held a suppression hearing *in absentia* to determine whether cocaine recovered by the officers who arrested Hernandez was legally seized. The evidence at that hearing was as follows:

On March 11, 1992, shortly after 3:00 p.m., Curly Hernandez was walking west on 140th Street in Manhattan, approaching Amsterdam Avenue, when he was spotted by two police officers patrolling the area in a

marked car. (*See* H. 6-8.) [1] The officers, Michael Kennedy and Matthew Barrett, were in a police car in a "very heavy narcotics area," and were stopped at the light at 140th and Amsterdam when they saw Hernandez walking "stiffly" and wearing a "heavy winter coat." (*See* H. 10, 12). While they did not see any bulges in the coat, they testified that it was very bulky, and that Hernandez's arms were not swinging normally but were "braced against his waist." (*See* H. 10, 17-18).

As Hernandez turned north on Amsterdam Avenue, he looked over his shoulder and made eye contact with Kennedy, who was driving the police car. He continued to look over his shoulder at the officers, and then entered the College Restaurant, an establishment where Kennedy had made many previous narcotics arrests. (*See* H. 8, 11-12). As Hernandez entered, Kennedy saw him reach into his jacket. (*See* H. 11). Kennedy then pulled up to the curb in front of the restaurant, at which point Hernandez "spun around and came back out[.]" (*See* H. 8). Kennedy also saw a man in the restaurant "making a [waving] motion," as though telling Hernandez to leave. (*See* H. 8).

Upon leaving the restaurant, Hernandez took a couple of steps north on Amsterdam Avenue, and then ran twenty or thirty feet before entering another restaurant. (*See* H. 8-9). At this point, the officers got out of their squad car and ran after Hernandez. They lost sight of him for "just seconds," but saw him reach into his jacket as he entered the second restaurant. (*See* H. 9, 14, 37). As the officers entered the second restaurant, they saw Hernandez standing in the back near a garbage can. He pulled out a large yellow package and dropped it in the can. (*See* H. 9). Kennedy retrieved the package, which was later determined to contain more than two pounds of cocaine. Kennedy and Barrett then arrested Hernandez. (*See* H. 9, 46; *see also* T. 143).

B. *The Denial of the Motion to Suppress*
**\*2** The court denied the motion to suppress orally on the record. (*See* T. 86). On October 29, 1992, after the completion of the trial, the court issued a written decision which has not been made part of the record but which has been quoted and cited in detail in other papers. *See* Respondent's Memorandum of Law in Opposition to Petition for a Writ of Habeas Corpus, dated July 25, 2005 (Docket # 5) ("Opp.Mem."), at 5; Brief for Respondent, dated October 2003 (reproduced as Ex. M to

Declaration in Opposition to Petition for a Writ of Habeas Corpus, dated July 25, 2005 (Docket # 6) ("Opp.Decl.")) ("Resp.Br."), at 6-8 (citing written ruling on suppression hearing ("Suppression Ruling")).

The court found that the cocaine had been legally seized because the officers had been justified in approaching Hernandez in the first place to investigate his "unusual" actions in a heavy narcotics area. Resp. Br. at 6. The court found that Kennedy, an experienced narcotics officer, had "a founded suspicion that criminal activity was afoot." *See id.* at 7 (citing *People v. DeBour*, 40 N.Y.2d 210 (1976)). The pursuit of Hernandez was also legal, since the officers had a right to inquire of him before he ran. *See id.* Finally, the court found the officers had probable cause to arrest Hernandez after finding what appeared-and was later confirmed-to be a large quantity of cocaine in a package he had just discarded. Moreover, Hernandez's decision to throw the package in the trash was an intentional "independent act involving a calculated risk" rather than a "spontaneous reaction to a sudden and unexpected confrontation with the police." *See id.* at 8 (quoting Suppression Ruling at 13 (citing *People v. Boodle*, 47 N.Y.2d 398, 404 (1979))).

### C. *Trial and Sentencing*

On September 24, 1992, Hernandez's trial *in absentia* began. On September 25, the jury found Hernandez guilty of Criminal Possession of a Controlled Substance in the First Degree (N.Y.P.L. § 220.21(1)). (*See* T. 319). On October 19, 1992, Hernandez was sentenced to an indeterminate prison term of fifteen years to life. *See* Opp. Mem. at 7. On November 12, 1992, Hernandez's counsel filed a notice of appeal of his conviction. *See* 440 Motion ¶ 11. Briefing on that appeal did not occur until July 2002. *See* Section I.E below.

### D. *Motion to Vacate Conviction*

Hernandez remained a fugitive until March 1996, when he was arrested on a misdemeanor drug charge and began serving his sentence. *See* Opp. Mem. at 7. On October 28, 1998, he filed a motion to vacate his conviction, pursuant to New York Criminal Procedure Law ("C.P.L.") § 440.10. *See* Motion and Affidavit in Support of Motion to Vacate Judgment and Set Aside Sentence, dated October 28, 1998 (reproduced as Ex. A to Opp. Decl.) ("440.10 Motion"). In that motion, Hernandez argued that his *Brady* rights were violated when the People

failed to disclose "exculpatory material" regarding the corruption investigation of Officers Kennedy and Barrett, who had both since left the force as a result of the investigation. *See* Memorandum of Law in Support of 440 Motion, dated October 3, 1998 (reproduced as Ex. B to Opp. Decl.), at 1-9; Decision and Order, dated October 5, 2000 (reproduced as Ex. G to Opp. Decl.) ("2000 Decision"), at 4.[2] The People argued that there was no knowledge of corruption in the 30th Precinct-where Kennedy and Barrett were stationed-until nearly a year after the conclusion of Hernandez's trial. *See* Memorandum of Law in Opposition to Defendant's Motion to Vacate Judgment Pursuant to CPL § 440.10, dated July 27, 1999 (reproduced as Ex. C to Opp. Decl.), at 1. The trial court ordered the filing of affidavits and a hearing to determine at what point the People had *"serious* information concerning the corrupt activities of Officers Kennedy and Barrett." *See* Decision and Order, dated December 22, 1999 (reproduced as Ex. D to Opp. Decl.), at 4-5 (emphasis in original). He also appointed Hernandez counsel. *See id.* at 6.

**\*3** In accordance with the trial court's order, the People submitted affidavits from two Assistant District Attorneys involved in the corruption investigation, stating that the investigation of the 30th Precinct began in September 1992, and that the first complaint concerning Kennedy and Barrett was received in February 1993. *See* Affidavit of William Burmeister, dated January 27, 2000 (reproduced as Ex. E to Opp. Decl.) ("Burmeister Aff."), ¶ 2; Affirmation of Emery E. Adoradio, dated February 14, 1995 (reproduced as Ex. F to Opp. Decl.) ("Adoradio Aff."), ¶ 2. After following up on this complaint, the Official Corruption Unit ("OCU") found there was "not enough credible evidence" to prosecute Kennedy and Barrett. *See* Adoradio Aff. ¶ 9. The affidavits also stated that by the fall of 1993, "additional and significant information" regarding corruption at the 30th Precinct came to light, leading to the arrest of 33 officers, including Kennedy, who was arrested in March 1994 for assaulting an undercover officer. *See* Burmeister Aff. ¶ 2; Adoradio Aff. ¶¶ 12-13. However, the OCU "possessed no derogatory information regarding Officers Matthew Barrett or Michael Kennedy" at the time of Hernandez's arrest, trial, and sentence. *See* Burmeister Aff. ¶ 4.

On October 5, 2000, the court ruled that a hearing was unnecessary, and that the material Hernandez requested was *"not Brady* material," since the state had not

received the allegations of misconduct until *"well after"* Hernandez's trial and sentencing. *See* 2000 Decision at 3 (emphasis in original). Further, the court rejected Hernandez's claim of "newly discovered evidence," ruling that " 'it must be shown that the new evidence creates a reasonable probability of a more favorable verdict,' ' and that " 'generally, evidence which would merely impeach testimony at trial would not be sufficient.' ' *See id.* at 5 (quoting *People v. Vasquez,* 214 A.D.2d 93, 102 (1st Dep't 1995), *appeal denied,* 88 N.Y.2d 943 (1996)).

On January 16, 2003, the Appellate Division denied Hernandez's application for leave to appeal the denial of his 440.10 motion, and denied his alternative application to consolidate that motion with his direct appeal. *See* Certificate Denying Leave, dated January 16, 2003 (reproduced as Ex. J to Opp. Decl.).

### E. *Direct Appeal*
In his direct appeal, Hernandez argued to the Appellate Division that the police had lacked reasonable suspicion of criminal activity when they approached him, and thus that the drugs they recovered should have been suppressed. *See* Defendant-Appellant's Brief, dated July 2002 (reproduced as Ex. K to Opp. Decl.), at 9-15. On June 7, 2003, Hernandez filed a supplemental *pro se* brief arguing that Kennedy had committed perjury during the suppression hearing by testifying that he had reasonable suspicion Hernandez was involved in criminal activity. *See* Supplemental Brief for Defendant-Appellant, dated June 7, 2003 (reproduced as Ex. L to Opp. Decl.), at 5-14. On January 6, 2004, the Appellate Division rejected these arguments and affirmed Hernandez's conviction. *People v. Hernandez,* 3 A.D.3d 325 (1st Dep't 2004). On March 19, 2004, the Court of Appeals denied Hernandez's application for leave to appeal. *People v. Hernandez,* 2 N.Y.3d 741 (2004).

### F. *Resentencing*
**\*4** On February 10, 2005, following the passage of amendments to the "Rockefeller Drug Laws," *see* N.Y.P.L. § 60.08, Hernandez filed a resentencing application *See* Opp. Mem. at 13. On March 28, 2005, he was resentenced to a term of eight years' imprisonment with five years' "supervised release." *See id.* He was released on parole on May 13, 2005. *See id.* at 13-14.

### G. *The Instant Petition*
Hernandez timely filed the instant *pro se* petition for habeas corpus relief on April 2, 2005. *See* Petition Under 28 U.S.C. 2254 for Writ of Habeas Corpus, filed April 2, 2005 (Docket # 1) ("Petition") (attaching typewritten pages). In his petition, Hernandez raises the same grounds for relief that he raised on his direct appeal and in his 440.10 motion. Specifically, he argues that (1) Kennedy and Barrett did not have reasonable suspicion of criminal activity; (2) Kennedy committed perjury by testifying at the suppression hearing and at trial that he did have reasonable suspicion; and (3) prosecutors failed to disclose exculpatory material regarding the investigation of Kennedy and Barrett. *See* Petition ¶ 13 and attachment.

## II. *APPLICABLE LEGAL PRINCIPLES*
A petition for a writ of habeas corpus may not be granted with respect to any claim that has been "adjudicated on the merits" in the state courts unless the state court's adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

For a claim to be adjudicated "on the merits" within the meaning of 28 U.S.C. § 2254(d), it must "finally resolv[e] the parties' claims, with res judicata effect," and it must be "based on the substance of the claim advanced, rather than on a procedural, or other, ground." *Sellan v. Kuhlman,* 261 F.3d 303, 311 (2d Cir.2001) (citation omitted). As long as "there is nothing in its decision to indicate that the claims were decided on anything but substantive grounds," a state court decision will be considered to be adjudicated "on the merits" even if it fails to mention the federal claim and no relevant federal case law is cited. *See Aparicio v. Artuz,* 269 F.3d 78, 94 (2d Cir.2001); *accord Rosa v. McCray,* 396 F.3d 210, 220 (2d Cir.2005) ("This standard of review applies whenever the state court has adjudicated the federal claim on the merits, regardless of whether the court has alluded to federal law in its decision."), *cert. denied, Rosa v. Murray,* 126 S.Ct. 215 (2005).

In *Williams v. Taylor,* the Supreme Court held that a state court decision is "contrary to" clearly established

federal law only "if the state court applies a rule that contradicts the governing law set forth" in Supreme Court precedent or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives" at a different result. 529 U.S. 362, 405-06 (2000). *Williams* also held that habeas relief is available under the "unreasonable application" clause only "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. A federal court may not grant relief "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, the state court's application must have been "objectively unreasonable." *Id.* at 409.

**\*5** Finally, under 28 U.S.C. § 2254(a), federal habeas review is available for a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." Errors of state law are not subject to federal habeas review. *See, e.g., Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991). To be entitled to habeas relief, a petitioner must demonstrate that the conviction resulted from a state court decision that violated federal law. *See, e.g., id.* at 68.

### III. *DISCUSSION*

#### A. *Suppression Resulting from Allegedly Illegal Arrest (Claims One and Two)*

In his first claim for habeas relief, Hernandez argues that "the police officer did not have a reasonable suspicion of criminal activity," and thus that the seizure of the package was illegal. *See* Petition ¶ 13 and attachment. In his second claim, Hernandez argues that Kennedy "committed perjury" by testifying at the suppression hearing and the trial that he had reasonable suspicion of criminal activity. *Id.* ¶ 13(b). The Appellate Division held that the record supported the credibility determinations of the trial court, and that "the totality of [the officers'] observations gave rise to a founded suspicion that criminal activity was afoot." *Hernandez,* 3 A.D.3d at 325.

Because the only federal issue raised by the first claim is that Hernandez was the subject of an unreasonable seizure under the Fourth Amendment, the claim is barred by *Stone v. Powell,* 428 U.S. 465 (1976). Under *Stone,*

a habeas petitioner is not entitled to relief if the state courts provided him with "an opportunity for full and fair litigation" of a claim under the Fourth Amendment. *Id.* at 482. Rather, a habeas petitioner's Fourth Amendment claims may be reviewed only "(a) if the state has provided no corrective procedures at all to redress the alleged fourth amendment violations; or (b) if the state has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an unconscionable breakdown in the underlying process." *Capellan v. Riley,* 975 F.2d 67, 70 (2d Cir.1992) (citing *Gates v. Henderson,* 568 F.2d 830, 840 (2d Cir.1977)).

New York provides such a corrective procedure in the form of a suppression hearing. *See* C.P.L. § 710.10 *et seq.; Capellan,* 975 F.2d at 70 n. 1 (" '[F]ederal courts have approved New York's procedure for litigating Fourth Amendment claims ... as being facially adequate." ') (quoting *Holmes v. Scully,* 706 F.Supp. 195, 201 (E.D.N.Y.1989)). Thus, only the second part of the *Gates* test is applicable. Hernandez, however, makes no claim that he was precluded from using New York's suppression hearing procedure-and, indeed, he was afforded that procedure here. The Second Circuit has squarely held that "once it is established that a petitioner has had an opportunity to litigate his or her Fourth Amendment claim (whether or not he or she took advantage of the state's procedure), the [state] court's denial of the claim is a conclusive determination that the claim will never present a valid basis for federal habeas relief." *Graham v. Costello,* 299 F.3d 129, 134 (2d Cir.2002). A "mere disagreement with the outcome of a state court ruling is not the equivalent of an unconscionable breakdown in the state's corrective process." *Capellan,* 975 F.2d at 72.

**\*6** Hernandez's second claim-that the officers committed perjury during the suppression hearing-does not avoid the bar of *Stone v. Powell.* Hernandez's perjury claim seeks to attack the outcome of the suppression hearing, and that attack does not fit within either of the exceptions to *Stone.* Thus, the allegation that perjury occurred during the hearing does not mean that New York State provided Hernandez with "no corrective procedures at all" to redress the alleged Fourth Amendment violations. *Capellan,* 975 F .2d at 70. Obviously, Hernandez was free to make any arguments he wished during the hearing to attack the credibility of the officers and, had he not absconded, was free to testify as to his own version of his events. Nor can it be said that the alleged perjury

caused Hernandez to be "precluded from using" the suppression hearing mechanism. *See id.* Thus, *Stone v. Powell* bars Hernandez's claim regarding perjury during the suppression hearing.

In any event, the evidence in the record would not allow an attack on the suppression ruling even if it could be considered by this Court. Here, both the trial court and the Appellate Division found that the officers were, in fact, credible. *See* 3 A.D.3d at 325; Resp. Br. at 2. Such determinations of fact are entitled to a presumption of correctness that can only be overturned by "clear and convincing evidence." 28 U.S.C. § 2254(e) (1); *Leka v. Portuondo,* 257 F.3d 89, 98 (2d Cir.2001). The evidence in the record most favorable to Hernandez-other than his own assertions that the officers were lying-is the People's concession that Kennedy was charged with assault and official misconduct. *See* Adoradio Aff. ¶¶ 12-13. Hernandez concedes, as he must, that "there is no valid proof that all members of the NYPD who testified are perjurers." *See* Petition ¶ 13(b). Obviously, these allegations do not provide the "clear and convincing evidence" necessary to rebut the state courts' factual determinations.

### B. *Brady* Claim

Hernandez's third claim is that the state failed to disclose potentially exculpatory evidence of the police corruption investigations. *See* Petition ¶ 13(c). Specifically, Hernandez asserts that the officers' alleged corruption "involved conducting illegal seizures, stolen property, and use of their power to arrest, to coerce bribes, steal drugs and resell them," and that if such information had been available to him during the suppression hearing or at trial, he could have used it to impeach the officers' testimony. *See* Petition ¶ 13(c).

Under *Brady v. Maryland,* 373 U.S. 83, 87 (1963), "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment." To establish a *Brady* violation, a defendant must show three things: the "evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene,* 527 U.S. 263, 281-82 (1999); *accord United States v. Rivas,* 377 F.3d 195, 199 (2d Cir.2004).

*\*7* While a prosecutor can be found to have suppressed evidence "even if the evidence is 'known only to police investigators and not to the prosecutor,' " *United States v. Coppa,* 267 F.3d 132, 140 (2d Cir.2001) (citing *Kyles v. Whitley,* 514 U.S. 419, 438 (1995)), here, the trial court made a factual finding that the "information regarding all of the allegations of misconduct against [Kennedy and Barrett] was obtained by the People ... *well after the defendant's arrest, trial, and conviction.*" *See* 2000 Decision at 3 (emphasis in original). That finding was supported by affirmations from two Assistant District Attorneys involved in the investigation of the 30th Precinct, to the effect that such investigation did not begin until September 1992, and that the earliest official complaint regarding Kennedy and Barrett dated from February 1993. *See* Adoradio Aff. ¶ 2; Burmeister Aff. ¶ 2.

This factual finding is "presumed to be correct" and can only be rebutted by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Leka v. Portuondo,* 257 F.3d at 98. Hernandez has presented no evidence to rebut the state court's finding that the investigation into Kennedy and Barrett's actions did not begin until "well after" Hernandez's trial was over. Because the allegedly exculpatory material was not available until after Hernandez's trial, the trial court could properly have concluded that the information was "perforce *not Brady* material." 2000 Decision at 3 (emphasis in original); *see Coppa,* at 140 ("the government's obligations under Brady may be thought of as a constitutional duty arising before or during the trial of a defendant"). Inasmuch as Hernandez has failed to establish one of the components of the *Brady* test-that the State in fact suppressed the allegedly exculpatory evidence either willfully or inadvertently, *Strickler,* 527 U.S. at 282-Hernandez's *Brady* claim must fail.

### Conclusion

Hernandez's petition is denied. Because Hernandez has not made a substantial showing of the denial of a constitutional right, the Court declines to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c). In addition, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from the judgment would not be taken in good faith.

2005 WL 3164063

**All Citations**

Not Reported in F.Supp.2d, 2005 WL 3164063

Footnotes

| | |
|---|---|
| 1 | "H." refers to the transcript of the pre-trial suppression hearing. "T." refers to the trial transcript. Both are contained within Docket # 4. |
| 2 | The Court has added page numbers to this and other unpaginated decisions of the trial court. |

End of Document          © 2018 Thomson Reuters. No claim to original U.S. Government Works.

McKelvey v. Bradt, Not Reported in F.Supp.3d (2016)

2016 WL 3681457

2016 WL 3681457
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Phillip McKelvey, Petitioner,
v.
Supt. Mark Bradt, Respondent.

13cv3527 (CM) (DF)
|
Signed May 23, 2016
|
Filed 07/06/2016

**Attorneys and Law Firms**

Phillip McKelvey, Attica, NY, pro se.

Michelle Elaine Maerov, Office of New York State Attorney General, New York, NY, for Respondent.

Opinion

**REPORT AND RECOMMENDATION**

DEBRA FREEMAN, United States Magistrate Judge

**TO THE HONORABLE COLLEEN MCMAHON, U.S.D.J.:**

**\*1** *Pro se* petitioner Phillip McKelvey ("Petitioner") seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254, following his state conviction, upon a jury verdict, of two counts of Rape in the First Degree, in violation of New York State Penal Law § 130.35(1); one count of Attempted Rape in the First Degree, in violation of New York State Penal Law §§ 110.05(1), 130.35(1); four counts of Criminal Sexual Act in the First Degree, in violation of New York State Penal Law § 130.50(1); and three counts of Sexual Abuse in the First Degree, in violation of New York State Penal Law § 130.65(1). For these crimes, Petitioner was sentenced to an indeterminate term of 75 years to life imprisonment. Petitioner is presently incarcerated at Attica Correctional Facility in Attica, New York.

In his petition for a writ of habeas corpus (Petition Under 28 U.S.C. § 2254 For Writ of Habeas Corpus by a Person in State Custody, dated May 14, 2013 ("Pet." or "Petition") (Dkt. 1)), Petitioner alleges that his custody

is unlawful due to prosecutorial misconduct and other improprieties in his grand jury proceeding, and that his constitutional rights were violated when he was arrested without probable cause, denied his right to confront an adverse witness, denied due process of law, and denied the effective assistance of counsel. Respondent Mark Bradt ("Respondent"), Superintendent of Attica Correctional Facility, argues that Petitioner's various claims should be dismissed as procedurally barred, non-cognizable, and/or without merit. For the reasons set forth below, I recommend that the Petition be dismissed in its entirety.

## BACKGROUND

### A. Factual Background

Based on the evidence presented by the prosecution at Petitioner's trial, as summarized below, Petitioner sexually assaulted three different women, who, for privacy purposes, are referred to herein by their initials. [1]

### 1. Attack On W.B.

At about 10:30 p.m. on July 19, 2005, after having spent the day smoking crack, W.B. left her friend's apartment on West 144th Street between Seventh and Eighth Avenues. (*See* Transcript of Trial, conducted Oct. 29, 2007, to Nov. 1, 2007 ("Trial Tr."), at 67-68, 102-03.) As W.B. walked north on Seventh Avenue, Petitioner approached her and asked if she "want[ed] to make some extra money." (*Id.,* at 70-71, 104.) W.B. said "no" and continued to walk past Petitioner. (*See id.,* at 70-71, 104-05.) Petitioner then responded, "You're going to anyway," and grabbed W.B. around the neck, saying "don't even think about it or I will kick your ass." (*See id.,* 70-72, 104-05.) Petitioner was six feet, two inches tall and weighed 210 pounds. (*Id.,* at 214.) W.B. was five feet, three inches tall and weighed 103 pounds. (*See id.,* at 72-73.)

**\*2** Petitioner then led W.B. across Seventh Avenue, passing two police officers along the way. (*See id.,* at 71-73, 105.) The police officers did not notice W.B., despite her efforts to make eye contact with them. (*See id.,* at 71, 106.) After passing the officers, Petitioner put W.B. in a headlock and warned her against trying to escape, threatening to "slap the shit out of [her]" if she did not comply with his demands. (*Id.,* at 73, 107.) Petitioner then

dragged W.B. to a church courtyard, verbally threatened W.B. again, and then slapped her. (*See id.*, at 73-74.)

Petitioner directed W.B. down a staircase to a sunken area within the courtyard, where another man was waiting, and told her to kneel down and remove her pants and shoes. (*See id.*, at 74-75, 108, 130.) Fearing for her safety, W.B. complied. (*See id.*) Petitioner then anally, vaginally, and orally raped her, taking turns with his unidentified accomplice. (*See id.*, at 76-80, 111-12.) W.B. tried to escape up the staircase, but one of the men pulled her back down by her legs, and Petitioner threatened to "fuck [her] up if [she] tried it again." (*Id.*, at 81, 130-32.) Petitioner and the other man resumed their attack and, after about 20 or 25 minutes, Petitioner ejaculated in W.B.'s mouth. (*See id.*, at 81-82, 113-14.) The two men then fled the courtyard, ordering W.B. to stay there for "a few minutes." (*Id.*, at 81-82.)

Still holding Petitioner's semen in her mouth, W.B. walked directly to the 32nd Police Precinct. (*See id.*, at 82-83, 85-86, 114.) She told an officer that she had been raped and that she still had one of her attacker's semen in her mouth and underwear. (*See id.*, at 85-86, 114-16.) W.B. spat some of the semen into a plastic bag, and was told by the police to continue to hold the remaining semen in her mouth while Police Officers Rashied Richardson and Richard Flaherty took her to Harlem Hospital. (*See id.*, at 86, 114, 253-55, 262-64, 344-45.) W.B. was eventually examined by Dr. Joseph Bobrow, the obstetrician and gynecologist on duty at the time. (*See id.*, at 329-32.) Bobrow performed an internal and external forensic examination, including with the use of a "rape kit." (*Id.*, at 86, 121, 330-35.) Bobrow observed that W.B. had "minor abrasions on her knees" that were consistent with protracted kneeling on a rough surface, but detected no injuries to her vagina or anus that were consistent with forcible intercourse. (*See id.*, at 333-35, 340.) Bobrow testified at trial, though, that it was "not uncommon for rape victims to not have any trauma to the genital area." (*Id.*, at 339.) When asked at trial if she recognized the man who raped her, W.B. responded, "I'm not 100 percent sure, but [Petitioner] looks like [the attacker]." (*Id.*, at 83.)

**2. Attack on M.L.**

Sometime between 11:00 p.m. and midnight on July 26, 2005, M.L. was sitting on a bus-stop bench in front of Harlem Hospital, when she and Petitioner began to converse. (*See id.*, at 174-75, 194-95, 197.) Eventually, they walked to a store where Petitioner bought M.L. a soda. (*See id.*, at 175, 196.) Petitioner then offered to buy M.L. something to eat at a nearby restaurant. (*See id.*, at 176, 197.) M.L. agreed, and they walked to the restaurant, only to discover it was closed. (*See id.*, at 177, 197.) Claiming that he had to stop at home, Petitioner then led M.L. to the same sunken area within the church courtyard where, one week earlier, he had raped W.B. (*See id.*, at 177, 367.) As they reached the bottom of the staircase, Petitioner grabbed M.L.'s hair, pressed a sharp object against her neck, and ordered her to remove her clothes. (*See id.*, at 177-78, 201-03.) M.L. told Petitioner that she would do whatever he wanted, and pleaded with him not to hurt her. (*See id.*, at 178.)

**\*3** Petitioner ordered M.L. to perform oral sex on him; in response, M.L. "whimper[ed]," and Petitioner struck her on the head. (*See id.*, at 178-79.) After orally raping her, Petitioner threw a condom at M.L. and ordered her to put it on him. (*See id.*, at 179, 198.) M.L. complied and Petitioner proceeded to rape her vaginally. (*See id.*, at 179-80.) When he finished raping M.L., Petitioner took off the condom and threw it on the ground. (*See id.*, at 184, 198.) He then pushed M.L. to the ground, emptied the contents of her pocketbook onto the ground, and told her to count to 50 or 100 before leaving the courtyard. (*See id.*, at 180.) Eventually, M.L. left and headed to Harlem Hospital. (*See id.*, at 180-81, 198.)

M.L. arrived at the hospital and reported that she had been raped. (*See id.*, at 181.) Shortly thereafter, Police Officers Richard Flaherty and Carlos Matos met M.L. at Harlem Hospital. (*See id.*, at 181, 258, 267-68.) M.L. was eventually interviewed by Dr. Jenny Castillo, who was on duty in the emergency room. (*See id.*, at 150-51.) M.L. told Castillo that she had been raped and complained of pain in her head and knees. (*See id.*, at 152.) Castillo performed an internal examination, including with the use of a rape kit, and found no signs of forcible intercourse. (*See id.*, at 155-59, 181, 199.) At trial, Castillo explained that many rape victims show no signs of physical trauma, particularly if a lubricated condom is used. (*See id.*, at 145-50, 156-58, 162.)

Not long after M.L. had been examined, Detective David Rivera recovered a used condom and an open condom wrapper from the church courtyard. (*See id.,* at 41-43.) On July 28, 2005, Irene Wong, a criminalist with the New York City Office of the Chief Medical Examiner, tested the condom and found DNA from sperm cells that matched the DNA in the semen that had been recovered from W.B.'s mouth. (*See id.,* at 422-23.) In the following days, M.L. worked with Detective Julia Collins to identify the man who raped her, but M.L. did not recognize her assailant in any of the photographs of suspects that she viewed. (*See id.,* at 182-83, 368.) At trial, though, M.L. identified Petitioner as the one who had raped her on July 26, 2005. (*See id.,* at 183.)

### 3. Attack on S.P.

At around midnight on or about May 26, 2006, S.P. left her friend's apartment on Seventh Avenue between 141st and 142nd Streets, where she and the friend had been smoking crack together. (*See id.,* at 287-89, 397-400.) Upon leaving the apartment, S.P. went to buy a soda at a nearby store. (*See id.,* at 289, 317.) On her way back to the apartment, S.P. was struck in the mouth by Petitioner, who was dressed in a black army fatigue jacket and a black hat. (*See id.,* at 289-91, 293, 317.) Petitioner put an orange box cutter to S.P.'s neck and said "shut the fuck up, bitch ... just walk." (*Id.*, at 290-91, 323-25.)

Petitioner forced S.P. to the back of a schoolyard, made her kneel in dog feces, put on a condom, and forced her to perform oral sex on him. (*See id.,* at 291, 297, 315, 323.) Petitioner then told S.P. to turn around and pull her pants down. (*Id.*, at 291.) Before S.P. did so, however, Petitioner heard "some guys" enter the area, told S.P. to "sit there [and] count to 50," and then fled. (*Id.*, at 292-94.) S.P. walked back to her friend's apartment and told him what had happened. (*See id.,* at 297, 311, 401, 403.) Accompanied by her friend, S.P. then went to look for a police officer. (*See id.,* at 297.)

S.P. found a police van, told the officers inside that she had just been sexually assaulted, and described the assailant. (*See id.,* at 297, 311-14, 401.) After driving off for a minute, the officers returned and said that they "didn't see" S.P.'s attacker; the officers did not write a formal incident report. (*See id.,* at 297, 313-14, 401.) At trial, S.P.

identified Petitioner as the man who had assaulted her and forced her to perform oral sex on him. (*See id.,* at 291.)

### B. Procedural History

### 1. Petitioner's Arrest

**\*4** On July 10, 2006, S.P. was shopping near 125th Street and Fifth Avenue when she walked past Petitioner. (*See id.,* at 299-300.) S.P. ran to a police car, where she found Officer Anthony McNeil and his partner, Officer Park. (*See id.,* at 211-12, 315.) Pointing at Petitioner, S.P. told the officers, "[that] is the guy that raped me." (*See id.,* at 212, 300.) At that time, S.P. told McNeil that the attack had occurred about two weeks earlier, although it had actually been six weeks since the assault. (*See id.,* at 233-35, 300.) McNeil then approached Petitioner and asked if he knew S.P., and Petitioner replied that "[h]e had never seen her in his entire life." (*See id.,* at 213.)

McNeil took Petitioner into custody and brought him to the precinct, where Detective Collins interviewed him and, with Petitioner's consent, obtained swabs of his DNA. (*See id.,* at 213, 369-70, 378-79.) Criminalist Wong then tested the DNA and found that it matched the DNA in the semen from W.B.'s mouth and the condom recovered after the attack on M.L. (*See id.,* at 423-24.) On July 11, 2006, Officer McNeil executed a search warrant at Petitioner's apartment, recovering an orange box cutter and a "black army field jacket," among other items. (*See id.,* at 219-22, 225-26.)

### 2. Pretrial Proceedings

Shortly after Petitioner's July 10, 2006 arrest, the prosecution filed a Felony Complaint charging Petitioner with several crimes arising from the sexual assaults of W.B., M.L., and S.P. (*See* Answer in Opposition to the Petition for a Writ of Habeas Corpus, dated Aug. 27, 2013 ("Answer") (Dkt. 9), Ex. G,[2] at 38.) In that Felony Complaint, the prosecution stated that Petitioner had attacked S.P. on June 23, 2006. (*Id.*)

On August 11, 2006, by New York County Indictment Number 4080/06, a grand jury charged Petitioner with two counts of Rape in the First Degree; one count of Attempted Rape in the First Degree; four counts of

Case 9:16-cv-00594-LEK-DEP    Document 12    Filed 02/16/18    Page 134 of 167
McKelvey v. Bradt, Not Reported in F.Supp.3d (2016)
2016 WL 3681457

Criminal Sexual Act in the First Degree; three counts of Sexual Abuse in the First Degree; and one count of Kidnapping in the Second Degree. (Answer, Ex. B, at 3.) The Indictment, based on the information presented to the grand jury, specified that Petitioner's criminal conduct toward S.P. had occurred on May 26, 2006, and not on June 23, 2006, as had been charged in the original Felony Complaint. (*See* Transcript of Pretrial Proceedings, conducted Apr. 24, 2007 ("4/24/07 Tr."), at 3-4.)

Petitioner moved to suppress the results of the DNA swab test, as well as certain statements he made to the police, and, on April 23 and 24, 2007, a pretrial *Mapp/ Dunaway/Huntley* hearing was held before the Honorable Arlene Goldberg, J.S.C., in the Supreme Court of New York, New York County.[3] (*See* Transcript of Pretrial Proceedings, conducted Apr. 23-24, 2007 ("4/23/07 Tr."), at 1-110; 4/24/07 Tr., at 1-40.) At the outset of that hearing, Petitioner's counsel raised the issue of the change in the date of Petitioner's alleged assault of S.P., as between the Felony Complaint and the Indictment, and asked that he be provided with the opportunity to review any paperwork that could "illuminate th[e] distinction" between the dates contained in each document. (4/23/07 Tr., at 9.) In response, the prosecutor stated to the Court:

> There is no other paper work, your Honor. I think it will be clear, from the nature of the testimony, when the [Petitioner] is ultimately placed under arrest, the victim has not even stated when the incident took place. He's under arrest before that. She doesn't remember when it took place. Originally she thought it was, I think you'll hear from the testimony, approximately a month prior to the date that she points out the defendant on the street. Through investigation of other witnesses – again, which are not relevant to this hearing, it's subsequent to the defendant being placed in custody – we were able to narrow that date down significantly to the date we believe it happened which was

the evening of May 26, 2006 into May 27, 2006; but all of that investigation happens subsequent to the defendant being placed in custody.

**\*5** (*Id.,* at 9-10.)

The court denied Petitioner's suppression motion in its entirety, finding that there existed probable cause for Petitioner's arrest, that Petitioner had voluntarily waived his *Miranda* rights, and that Petitioner had consented to the taking of the DNA swabs. (*See* 4/24/07 Tr., at 28-39.)

### 3. Trial

#### a. Testimony at Trial

On October 29 to November 1, 2007, Petitioner's trial was held in the Supreme Court, New York County, before the Honorable Edward McLaughlin, J.S.C. (*See generally* Trial Tr.) At trial, a number of witnesses testified, as detailed above (*see supra,* at Background Section A), regarding the sexual assaults against W.B., M.L., and S.P, including the three alleged victims themselves, several New York City Police Department officers (Detectives Mark Brown, Julia Collins, and David Rivera, and Police Officers Richard Flaherty, Anthony McNeil, and Rashied Richardson), the two physicians who examined W.B. and M.L. after the assaults (Drs. Joseph Bobrow and Jenny Castillo), a criminalist from the New York City Office of the Medical Examiner (Irene Wong), and the friend whose house S.P. had visited both before and after she was assaulted. (*See* Trial Tr.)

The defense called Police Officer Carlos Matos as its only direct witness. (*Id.,* at 440-52.) On cross-examination of W.B., M.L., and S.P., Petitioner's trial counsel tried to suggest, through his questioning, that each of these claimed victims had actually consented to have sex with Petitioner in exchange for money or drugs, and then falsely reported the incident as rape after Petitioner failed to pay. (*Id.*, at 98, 133-36, 207-08, 324-25.) On summation, Petitioner's counsel proffered such a defense – that defendant did not have sex with W.B., M.L., and S.P. forcibly or without their consent, but rather that he tricked them into performing consensual sexual acts in exchange for money to support their drug habits, despite the fact

that he never intended to pay them. (*Id.,* at 468, 470-73, 482-83.)

### b. Verdict and Sentencing

On November 1, 2007, the jury returned a verdict of guilty on four counts of Criminal Sexual Act in the First Degree, three counts of Sexual Abuse in the First Degree, two counts of Rape in the First Degree, and one count of Attempted Rape in the First Degree. (*Id.,* at 572-73.) [4] On December 13, 2007, Justice McLaughlin adjudicated Petitioner a persistent violent felony offender based on a 1996 conviction for Kidnapping in the Second Degree and a 1990 conviction for Assault in the Second Degree. (Transcript of Sentencing Proceeding, conducted Dec. 13, 2007, at 1-7.) The court then sentenced Petitioner to an aggregate term of imprisonment of 75 years to life. (*Id.,* at 8-33.)

### 4. Direct Appeal

**\*6** In June 2010, Petitioner, through counsel, filed a direct appeal in the Appellate Division, First Department. (*See* Answer, Ex. A (Petitioner's Appellate Brief).) In his appellate brief, Petitioner raised two claims: (1) that the verdict was against the weight of the evidence (*id.,* at 10-19), and (2) that his sentence was excessive (*id.,* at 20-23). Neither of the claims that Petitioner raised on direct appeal are presented in his current habeas Petition.

On December 9, 2010, the Appellate Division unanimously affirmed Petitioner's conviction, finding first that "[t]he verdict was not against the weight of the evidence." (Answer, Ex. C, at 68 (Decision and Order of the Appellate Division); *see also People v. McKelvey,* 911 N.Y.S.2d 627 (2010).) In that regard, the court noted that there was "no basis for disturbing the jury's credibility determinations as to each of the three incidents" (*id.*), and that "[e]ach of the three victims provided credible testimony that established the element of force beyond a reasonable doubt" (*id.*). As to Petitioner's sentence, the Appellate Division held that Petitioner's claim that the trial court abused its discretion in pronouncing his sentence was unpreserved, and it declined to review that claim in the interest of justice. (*Id.,* at 68-69.)

By letter dated December 13, 2010, Petitioner sought leave to appeal to the New York Court of Appeals. (*See id.,* Ex. D.) The State opposed the leave application, stating that there were no questions of law which merited further appellate review. (*See id.,* Ex. E, at 2.) On March 3, 2011, the Court of Appeals issued a certificate denying leave to appeal. *See People v. McKelvey,* 16 N.Y.3d 833 (2011).

### 5. Section 440.10 Motion to Vacate the Judgment

On September 2, 2011, Petitioner, acting *pro se,* moved to vacate the judgment of conviction, pursuant to Section 440.10 of the New York Criminal Procedure Law. (*See* Answer, Ex. G.) In that motion, Petitioner argued that: (1) the trial court lacked jurisdiction because the Indictment returned by the grand jury charged that the assault against S.P. occurred on a different date than that originally specified in the Felony Complaint; (2) the prosecutor had committed misconduct in the grand jury proceedings by introducing perjured and unsworn testimony and depriving Petitioner of his right to appear; (3) Petitioner's constitutional rights under the Fourth, Sixth, and 14th Amendments were violated when he was (a) arrested without probable cause, (b) denied the opportunity to cross-examine the witness whose testimony led to the revision of the date of the assault against S.P., and (c) denied due process due to prosecutorial misconduct in the grand jury proceedings; and (4) Petitioner was deprived of effective assistance of counsel, when his trial counsel failed (a) to object to the change of the date of the assault against S.P., (b) to inquire as to why colposcopic testing was not performed on the complainants, [5] (c) to secure the opportunity for Petitioner to appear before the grand jury, (d) to subpoena Petitioner's cell-phone records for May 26, 2006, and (e) introduce Petitioner's videotaped police statement into evidence.

**\*7** The State filed an opposition to Petitioner's Section 440.10 motion, arguing that Petitioner's claim regarding the amendment of the date of the S.P. assault had not been raised on appeal, and was therefore procedurally barred pursuant to N.Y.C.P.L. § 440.10(2)(c). [6] (Answer, Ex. H, at 2.) The State further contended that Petitioner's ineffective-assistance-of-counsel claims were meritless under both federal and state law. (*Id.,* at 4-5 (citing *Strickland v. Washington,* 466 U.S. 668 (1984); *People v. Baldi,* 54 N.Y.2d 137 (1981)).)

On March 13, 2012, the trial court denied Petitioner's Section 440.10 motion in its entirety. (Answer, Ex. I.) The court held that "[t]he difference in the [S.P. assault] dates did not deprive the Supreme Court of jurisdiction," which was obtained "upon the filing of the indictment," because "[t]he law does not prevent the prosecutor from presenting evidence to the grand jury that the crime occurred on a date different from the date alleged in the criminal court complaint." (Id., at 2 (citing N.Y.C.P.L. § 10.20(1); *People v. Black,* 705 N.Y.S.2d 696, 698 (3d Dep't 2000) (holding that grand jury is free to make an independent determination as to whether there is reasonable cause to believe that the defendant committed the crime charged, even if there are defects in the felony complaint, and that a valid indictment supersedes the felony complaint)).)

The trial court further held that Petitioner's claim regarding the prosecutor's subornation of perjured or unsworn testimony before the grand jury was procedurally barred. (Answer, Ex. I, at 3.) On this point, the court noted that the Appellate Division had found that Petitioner's conviction was not against the weight of the evidence (*id.*), and that, under state procedural law, Petitioner "could not have raised, on a direct appeal from a judgment of conviction supported by legally sufficient trial evidence, a claim that the indictment was based on false testimony" (*id.* (citing N.Y.C.P.L. § 210.30(6); case citation omitted)).[7] Accordingly, the trial court found that Petitioner could not raise "that same claim in a postjudgment motion." (*Id.*) "In any event," the court stated, "the different dates contained in the criminal court complaint and in the indictment do not provide a factual basis for concluding that the prosecutor suborned perjury at the grand jury." (*Id.,* at 3-4 (citing N.Y.C.P.L. 440.30 (4)(b)).)

In disposing of Petitioner's constitutional claims for violations of his rights under the Fourth Amendment, the Confrontation Clause of the Sixth Amendment, and the Due Process Clause of the 14th Amendment, the trial court found that: (1) Petitioner was barred from relitigating any claims regarding the legality of his arrest, as such claims could have been raised on appeal, and that, in any event, the police had probable cause to arrest him; (2) the right to confront witnesses did not apply in a pretrial proceeding; and (3) Petitioner was not denied due process because any conflict between the dates in the Felony Complaint and the Indictment merely created a factual question to be resolved by the jury. (*Id.,* at 4-5.)

**\*8** The court also rejected Petitioner's ineffective-assistance-of-counsel claims, finding that defense counsel would have had no legal basis upon which to challenge the validity of the Indictment (*id.*, at 5 (citing N.Y.C.P.L. § 440.30(4)(a))), that Petitioner's conclusory statement that his counsel failed to facilitate his appearance before the grand jury did not establish a Sixth Amendment violation, and that counsel was not ineffective in failing to inquire of witnesses at trial why colposcopic testing was not performed on the complaining witnesses, as Petitioner provided no support for his contention that such testing would have shown that he did not commit any crime (*id*). The court further held that counsel was not ineffective in failing to subpoena certain of Petitioner's cell-phone records, as the prosecution had actually subpoenaed those records, only to learn that the records were unavailable because Petitioner's service provider had not preserved them. (*Id.*, at 5-6.) Finally, the court noted that Petitioner's exculpatory statements, made on videotape to the police, were "inadmissible self-serving hearsay," and that counsel was therefore not ineffective for not offering the recording into evidence. (*Id.*, at 6.)

Petitioner sought leave to appeal to the Appellate Division from the trial court's denial of his Section 440.10 motion, attaching a memorandum of law in which he raised each of the issues that were before the trial court. (*See id.,* Ex. J.) The State opposed the application (*see id.,* Ex. K), and, by Order dated October 11, 2012, the Appellate Division summarily denied leave to appeal (*see id.,* Ex. L). Petitioner moved to reargue the denial of leave (*see id,* Ex. M), and, by Order dated February 25, 2013, the Appellate Division denied the motion for reargument (*see id.,* Ex. P).

### 6. Petition for Writ of Habeas Corpus

On May 14, 2013, Petitioner, acting *pro se,* filed a petition for a writ of habeas corpus. (*See* Pet.) In the Petition, Petitioner argues that his conviction should be reversed on the grounds that:

(1) The trial court lacked jurisdiction over his case, due to the prosecutor's presentation of evidence to the grand jury that resulted in a variance in the date of the third attack as between the Felony Complaint and the Indictment;

Case 9:16-cv-00594-LEK-DEP    Document 12    Filed 02/16/18    Page 137 of 167
McKelvey v. Bradt, Not Reported in F.Supp.3d (2016)
2016 WL 3681457

(2) In the grand jury, the prosecutor (a) suborned perjury, (b) introduced unsworn testimony, and (c) denied Petitioner his right to appear;

(3) Petitioner's Fourth, Sixth and 14th Amendment rights were violated because (a) his arrest was not supported by probable cause, (b) he was not afforded an opportunity to confront the witness who supplied the changed date of the S.P. assault, [8] and (c) the prosecutor circumvented statutory requirements by presenting evidence to the grand jury indicating that the assault of S.P. took place on a different date than that specified in the Felony Complaint;

(4) Trial counsel was ineffective in failing (a) to investigate why Petitioner was not permitted to testify in the grand jury and in failing to move to dismiss the indictment on that basis, (b) to question why the date for the third sexual assault differed between the Indictment and the Felony Complaint, (c) to obtain Petitioner's cellular phone records for May 26, 2006, and (d) to question why the hospital did not perform colposcopic examinations of the complaining rape victims.

(*See generally id.*)

## DISCUSSION

## I. APPLICABLE LEGAL STANDARDS

### A. Statute of Limitations

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a habeas petition must be filed within a one-year limitations period beginning on the latest of four dates, usually "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A); *see also Williams v. Artuz,* 237 F.3d 147, 150-51 (2d Cir. 2001) (judgment becomes "final" for purposes of Section 2244 upon "the completion of direct appellate review in the state court system and either the completion of certiorari proceedings in the United States Supreme Court, or – if the prisoner elects not to file a petition for certiorari – [the expiration of] the time to seek direct review via certiorari" (citations omitted)). Under AEDPA, moreover, "[t]he time during which a properly filed application for State post-conviction or

other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward" the one-year limitation period established by subsection 2244(d). 28 U.S.C. § 2244(d)(2).

### B. Exhaustion of State Judicial Remedies

**\*9** As a general matter, a federal court may not consider a petition for a writ of habeas corpus unless the petitioner has exhausted the remedies available in the state courts. 28 U.S.C. § 2254(b)(1)(A); *see also Baldwin v. Reese,* 541 U.S. 27, 29 (2004); *Picard v. Connor,* 404 U.S. 270, 275 (1971). To satisfy the exhaustion requirement, a habeas petitioner must have "fairly presented" his claims to the state courts, thereby affording those courts the " 'opportunity to pass upon and correct' alleged violations of ... prisoners' federal rights." *Picard,* 404 U.S. at 275 (quoting *Wilwording v. Swenson,* 404 U.S. 249, 250 (1971)). A petitioner may accomplish this in several ways, including by citing relevant provisions of the federal Constitution in his appellate brief, *see Davis v. Strack,* 270 F.3d 111, 122-23 (2d Cir. 2001), or by relying on "pertinent federal cases employing constitutional analysis," *Rustici v. Phillips,* 308 Fed.Appx. 467, 469 (2d Cir. 2009) (internal quotation marks and citation omitted).

Aside from setting out the federal nature of his claims, the petitioner must also, for purposes of the exhaustion requirement, present those claims to "the highest court of the pertinent state." *Larocco v. Senkowski,* 65 Fed.Appx. 740, 742 (2d Cir. 2003); *Bossett v. Walker,* 41 F.3d 825, 828 (2d Cir. 1994) (citation omitted). In New York, for a claim that can be raised on direct appeal, a petitioner must first appeal his conviction to the Appellate Division and then seek "further review of that conviction by applying to the Court of Appeals for a certificate granting leave to appeal." *Galdamez v. Keane,* 394 F.3d 68, 74 (2d Cir. 2005). A request for leave to appeal to the Court of Appeals may be made by a letter submission that encloses the briefs and other documents that were before the lower courts. *See id.* A court will deem the exhaustion requirement satisfied where the "fair import" of the total application suggests a request for review of the constitutional claims raised in those submissions. *Id.* at 75-77.

To exhaust a claim raised before the state trial court in a collateral post-conviction motion, as in a motion made pursuant to Section 440.10 of the New York Criminal Procedure Law, the petitioner must seek leave to appeal

the denial of the motion. *See Ture v. Racette,* No. 9:12-cv-1864-JKS, 2014 WL 2895439, at *4 (N.D.N.Y. June 26, 2014) (claim unexhausted where petitioner did not seek to appeal denial of Section 440.10 motion); *see also Klein v. Harris,* 667 F.2d 274, 283-84 (2d Cir. 1981); *Ramos v. Walker,* 88 F. Supp. 2d 233, 234 n.3 (S.D.N.Y. 2000) (noting that "[a]n order denying a Section 440.10 [motion] is appealable to the intermediate appellate court by leave of a judge thereof granted under Section 460.15[,] ... [although] [t]here is no provision in New York law for an appeal to the Court of Appeals from an order denying leave to appeal from an order denying a Section 440.10 motion" (internal citations omitted)).

Despite the exhaustion requirement set out in AEDPA, the statute also provides that the federal court may proceed to deny an unexhausted habeas claim, if it is apparent that the claim is without merit. 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

**C. Standard of Review Under AEDPA**

If a petitioner's federal constitutional claim has been adjudicated on the merits by the state court, then the federal court must accord substantial deference to the state court's decision under the standard of review dictated by AEDPA. *See* 28 U.S.C. § 2254(d); *Sellan v. Kuhlman,* 261 F.3d 303, 311 (2d Cir. 2001) (noting that "adjudicated on the merits" means "a decision finally resolving the parties' claims, with *res judicata* effect, that is based on the substance of the claim advanced, rather than on a procedural, or other, ground"). The relevant section of AEDPA provides that

> **\*10** [a] n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim – (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme

> Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). In addition, under AEDPA, where not manifestly unreasonable, a state court's factual findings are presumed correct, and can only be overcome by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Under AEDPA, a state court's decision is contrary to clearly established federal law where the state court either applies a rule that contradicts governing law set forth in Supreme Court precedent, or "confronts a set of facts that are materially indistinguishable from a [Supreme Court] decision" and arrives at a different result. *Williams v. Taylor,* 529 U.S. 362, 405-06 (2000). An unreasonable application of clearly established federal law occurs when the state court identifies the correct governing legal principle, but unreasonably applies that principle to a "set of facts different from those of the case in which the principle was announced." *Lockyer v. Andrade,* 538 U.S. 63, 73-76 (2003). The state court's decision "must have been more than incorrect or erroneous"; rather, "[t]he state court's application must have been 'objectively unreasonable.' " *Wiggins v. Smith,* 539 U.S. 510, 520-21 (2003) (quoting *Williams,* 529 U.S. at 409). In order to be entitled to habeas relief, the petitioner must show that "the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter,* 562 U.S. 86, 103 (2011).

When this Court proceeds to consider a substantive claim that has not been decided by the state courts on the merits, this Court must consider the claim under a *de novo* standard of review. *See Carvajal v. Artus,* 633 F.3d 95, 111 n.12 (2d Cir. 2011), *cert. denied* 132 S.Ct. 265; *see also Bell v. Miller,* 500 F.3d 149, 155 (2d Cir. 2007); *Smith v. Fischer,* 957 F. Supp. 2d 418, 434 (S.D.N.Y. 2013).

**II. THE PETITION SHOULD BE DISMISSED.**

As a threshold matter, this Court finds that the Petition was timely filed. On March 3, 2011, the New York Court of Appeals issued a certificate denying Petitioner leave to appeal from the Appellate Division's affirmance of his

conviction. *See McKelvey*, 16 N.Y.3d at 833. Accordingly, Petitioner's conviction became final, and the one-year statute of limitations period began to run, 90 days later, on June 1, 2011, *i.e.*, on the date on which Petitioner's time to seek a writ of certiorari to the United States Supreme Court expired. *See* 28 U.S.C. § 2244(d)(1)(A); *Saunders v. Senkowski*, 587 F.3d 543, 547 (2d Cir. 2009) ("[T]he limitations period for state prisoners therefore begins to run only after the denial of certiorari or the expiration of time for seeking certiorari." (internal quotation marks and citation omitted)).

The limitations period then ran for 93 days, until September 2, 2011, when Petitioner filed his collateral motion to vacate the conviction. (*See* Answer, Ex. G.) That motion was pending until February 25, 2013, when the Appellate Division denied his motion for reargument. *See* 28 U.S.C. § 2244(d)(2); *Smalls v. Smith*, No. 05cv5182 (CS), 2009 WL 2902516, at *8 (S.D.N.Y. Sept. 10, 2009) ("[T]he AEDPA Limitations Period is tolled while a petitioner seeks reargument before the Appellate Division of a denial of leave to appeal a State trial court's denial of a Section 440.10 motion, because such reargument may properly be sought under New York law."). Petitioner filed the Petition 78 days later, on May 14, 2013. (*See* Pet.) As only 171 days of the one-year limitations period had passed before the Petition was filed, its filing was timely. Nevertheless, for the reasons set forth below, I recommend the dismissal of each of Petitioner's habeas claims.

### A. Plaintiff's Claims Relating to Alleged Improprieties in the Grand Jury Proceedings

**\*11** Several of Petitioner's habeas claims rest, in whole or in part, on challenges to the conduct of the grand jury proceedings that led to his indictment. For his first claim, Petitioner alleges that, after he presented an alibi for the date shown in the Felony Complaint for the assault of S.P., the prosecutor improperly "changed the date of occur[r]ence ... at the grand jury presentation," thereby, according to Petitioner, depriving the trial court of jurisdiction to hear the case. (Pet. ¶ 12, GROUND ONE (a).) Petitioner's second claim rests squarely on charges of prosecutorial misconduct with respect to the grand jury proceedings; with respect to that claim, Petitioner alleges that the prosecutor permitted "unsworn and prejuried" [sic, perjured] testimony to be heard by the grand jury and then denied Petitioners right to appear, "thus improperly imped[ ]ing the grand jury's "investigatory function." (*Id.*, GROUND TWO (a).)

Although, as noted above, Petitioner's third claim is not entirely clear, it appears that Petitioner is alleging, in part, that he was deprived of his ability to confront a key witness in the grand jury proceedings (*see* n.8, *supra*), and that the prosecutor violated Petitioner's due process rights by "circumvent[ing] the statutory requirements needed to achieve the ability to change the date of occurrence" of the S.P. assault, presumably at the grand-jury level. (*Id.*, GROUND THREE (a).) Finally, as part of the ineffective-assistance-of-counsel claim that Petitioner asserts as his fourth ground for habeas relief, Petitioner alleges that his trial counsel "failed to investigate why [Petitioner] was not p[er]mitted to testify at the grand jury ... and then refused to file the proper paperwork to have the indictment dismissed after [Petitioner's] right was disregarded," and that his counsel was ineffective for failing "to question the change of date of occur[r]ence." (*Id.*, GROUND FOUR (a).)

Given their common underlying facts, this Court will address Petitioner's grand-jury-related claims first, and then address the portions of his third and fourth stated grounds for relief that constitute his remaining claims. For the reasons discussed below, none of the claims relating to the grand jury proceedings can withstand scrutiny, either because they rest directly on state law and are not cognizable as federal violations, or because they are without merit.

### 1. Petitioner's First Two Grounds for Habeas Relief Are Not Cognizable as Federal Claims.

Petitioner's first habeas claim is that the trial court was deprived of jurisdiction over his case due to a variance between the Felony Complaint and the Indictment. (Pet. ¶ 12, GROUND ONE.) Specifically, Petitioner appears to contend that the Indictment against him was rendered defective by the grand jury's adoption of May 26, 2006, as the date for the charged crimes involving S.P., rather than June 23, 2006, as stated in the Felony Complaint, and that the trial court's jurisdiction could not have been properly founded on a defective indictment. (*Id.*) Petitioner does not state any federal, constitutional basis for this claim, and, when he raised the same type of jurisdictional challenge in his Section 440.10 motion, he based his claim on state law.[9] (*See* Answer, Ex. G, at 9, 13-16.)

Similarly, when Petitioner raised his second habeas claim in his Section 440.10 motion – arguing that the prosecutor engaged in misconduct by (a) suborning perjury and introducing unsworn testimony before the grand jury, and (b) denying Petitioner the right to appear before the grand jury – his arguments again relied on state law, primarily citing those sections of the New York Criminal Procedure law governing grand jury proceedings and state court decisions construing those statutes. (*See id.,* at 16-19.) [10] Both in the state courts and here, Petitioner has not identified any federal law or constitutional right upon which this prosecutorial-conduct claim was based.

**\*12** Violations of state law, however, do not provide a basis for federal habeas relief. *See Estelle v. McGuire,* 502 U.S. 62, 68 (1991) ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." (citations omitted).)) Moreover, Petitioner's first two claims do not have viable federal analogs. Simply put, there is no federal constitutional right to indictment by a grand jury in a state criminal prosecution, *see Alexander v. Louisiana,* 405 U.S. 625, 633 (1972) ("Although the Due Process Clause guarantees petitioner a fair trial, it does not require the States to observe the Fifth Amendment's provision for presentment or indictment by a grand jury."); *Fields v. Soloff,* 920 F.2d 1114, 1118 (2d Cir. 1990) ("The Fifth Amendment right to indictment by a grand jury was not incorporated by the Due Process Clause of the Fourteenth Amendment, and, accordingly, does not pertain to the states."), and, as a result, any "[c]laims of deficiencies in state grand jury proceedings are not cognizable in a habeas corpus proceeding in federal court," *Davis v. Mantello,* 42 Fed.Appx. 488, 490 (2d Cir. 2002).

Accordingly, even if stated in federal terms, Petitioner's claim that the trial court was deprived of jurisdiction due to the discrepancy between the Felony Complaint and the evidence presented to the grand jury would provide him with no cognizable basis for habeas relief. *See Cameron v. Cunningham,* No. 13cv5872 (KPF) (GWG), 2014 WL 1259672, at \*9 (S.D.N.Y. Mar. 27, 2014), *report and recommendation adopted,* 2014 WL 4449794 (S.D.N.Y. Sept. 9, 2014) (dismissing petitioner's claim that trial court lacked jurisdiction due to grand jury defects on the basis that claim did not raise a federal constitutional issue); *Fabre v. Taylor,* No. 08cv5883 (DLC) (AJP), 2009 WL 162881, at \*18 (S.D.N.Y. Jan. 20, 2009), *report and*

*recommendation adopted,* 2009 WL 1457169 (May 26, 2009) ("[Petitioner's claim that the evidence presented to the grand jury was insufficient to indict him ... is not cognizable on habeas review.").

Similarly, the rule that deficiencies in grand jury proceedings do not violate any federal constitutional right applies to claims of perjury, *see May v. Warden,* No. 07cv2176 (BSJ) (GWG), 2010 WL 1904327, at \*3 (S.D.N.Y. May 10, 2010), and thus any federal claim that Petitioner may be trying to assert regarding the prosecutor's alleged subornation of perjury before the grand jury also cannot be considered in this proceeding. By logical extension, the same would be true for any claim that the prosecutor engaged in misconduct by presenting unsworn testimony to the grand jury. *See id.* Petitioner also cannot maintain a federal claim that he was denied the right to testify before the state grand jury, as "it is well established that defendants have no [federal] constitutional right to appear before a grand jury." *Webb v. LaClair,* No. 10cv7603 (PGG) (HBP), 2014 WL 4953559, at \*6 (S.D.N.Y. Sept. 30, 2014) (quoting *United States v. Ruiz,* 894 F.2d 501, 505 (2d Cir. 1990)); *see also King v. Grenier,* No. 02cv5810 (DLC) (AJP), 2008 WL 4410109, at \*47 (S.D.N.Y. Sept. 26, 2008), *report and recommendation adopted,* 2009 WL 2001439 (S.D.N.Y. July 8, 2009), *aff'd,* 453 Fed.Appx. 88 (2d Cir. 2011); *Brown v. Connell,* No. 04cv10152 (PAC) (GWG), 2006 WL 1132053, at \*6 (Apr. 28, 2006), *report and recommendation adopted,* 2006 WL 1880546 (July 5, 2006).

Thus, not only did Petitioner fail to raise and exhaust, in the state courts, any federal variants of his first two habeas claims, but any such claims would have been unfounded. At bottom, Petitioner's first two claims are solely state-law claims, not cognizable here.

In any event, Petitioner was convicted by the petit jury under the reasonable doubt standard, and, therefore, any claimed error in the grand jury proceedings or in the Indictment was harmless as a matter of law. *See Lopez v. Riley,* 865 F.2d 30, 32 (2d Cir. 1989) ("[T]he petit jury's subsequent guilty verdict means ... that the defendants ... are in fact guilty as charged beyond a reasonable doubt. Measured by the petit jury's verdict, then, any error in the grand jury proceeding ... was harmless beyond a reasonable doubt." (citing *United States v. Mechanik,* 475 U.S. 66, 70 (1986))); *Campbell v. Lee,* No. 11cv4438 (PKC) (AJP), 2013 WL 5878685, at \*17 (S.D.N.Y. Oct. 11, 2013)

("For federal constitutional purposes, a jury conviction transforms any defect connected with the grand jury's charging decision into harmless error because the trial conviction establishes probable cause to indict and also proof of guilt beyond a reasonable doubt."), *report and recommendation adopted,* No. 11cv4438 (JPO), 2014 WL 6390287 (Nov. 17, 2014).

**\*13** Accordingly, I recommend that Petitioner's first and second habeas claims be dismissed as non-cognizable.

### 2. Petitioner's Federal Claims Relating to the Grand Jury Proceedings Are Without Merit.

Liberally construed,[11] the Petition does raise three federal, constitutional claims relating to the grand jury proceedings: (a) a Sixth Amendment claim (raised as part of Petitioner's third stated ground for habeas relief) alleging that Petitioner was deprived of his right to confront, in the grand jury proceedings, any witness who supplied the revised date of the assault against S.P.; (b) a 14th Amendment claim (also raised as part of Petitioner's third ground for relief) that Petitioner's right to due process was violated when the prosecution allegedly "circumvent[ed] the statutory requirements" governing the procedure for changing that date from what had been reflected in the Felony Complaint; and (c) a Sixth Amendment claim (raised as part of Petitioner's fourth ground for relief) that Petitioner's trial counsel was constitutionally ineffective for failing to challenge defects in the grand jury proceedings. None of these claims, however, have merit.

### a. Claimed Confrontation Clause Violation (With Respect to Grand Jury Proceedings)

As noted above, Petitioner raised a Confrontation Clause claim in his Section 440.10 motion (*see supra,* at Background Section B(5)), but – as is now true with his habeas Petition – the precise parameters of that claim were unclear. In particular, Petitioner did not specify in his Section 440.10 motion whether he was claiming that this Confrontation Clause rights were violated in the grand jury proceedings, at the pretrial suppression hearing, or at trial. The trial court apparently construed the claim to relate to the suppression hearing, as, in dismissing Petitioner's claim, the court ruled only that Petitioner

had no right to cross-examination at such a hearing. (*See* Answer, Ex. I, at 4.) Thus, the state court did not address whether Petitioner's Confrontation Clause rights could have been violated with respect to the grand jury proceedings, as Petitioner may have been alleging and may be trying to allege here. Nonetheless, even on this Court's *de novo* review, any Confrontation Clause claim relating to the grand jury would be subject to dismissal for failure to rest on any recognized federal right.

Under the Confrontation Clause of the Sixth Amendment, a criminal defendant has "the right ... to be confronted with the witnesses against him." U.S. Const. Amend. VI. The Supreme Court has held that the Confrontation Clause is violated when an out-of-court declarant's testimonial statement is admitted against a criminal defendant, unless the witness is unavailable to testify and the defendant had a prior opportunity for cross-examination. *See Crawford v. Washington,* 541 U.S. 36, 68 (2004). A grand jury proceeding, however, is not an adversarial proceeding, and thus the Confrontation Clause is not applicable in this context. *See United States v. Rodriguez,* 777 F. Supp. 297, 298 (S.D.N.Y. 1991) ("A grand jury proceeding is an *ex parte* investigation, not an adversary hearing." (citing *United States v. Calandra,* 414 U.S. 338, 343-44 (1974)); *People v. Copney,* 969 N.Y.S.2d 898, 900 (Sup. Ct., Kings Cnty. 2013) ("Since grand jury proceedings are not adversary proceedings, the right to confrontation contained in the Sixth Amendment is not implicated as there is no right to cross-examination." (internal citations omitted)); *see also Maryland v. Craig,* 497 U.S. 836, 845 (1990) ("The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact.").

**\*14** Accordingly, any Confrontation Clause claim that Petitioner may be seeking to raise with respect to the grand jury proceedings is meritless and should be dismissed.

### b. Claimed Due Process Violation

Petitioner also alleges that his rights under the Due Process Clause of the 14th Amendment were violated when the prosecutor, in advising the grand jury of the date on which S.P. was attacked, flouted unspecified "statutory requirements." (Pet. ¶ 12, GROUND THREE

(a).) Petitioner made this same argument in his Section 440.10 motion (*see* Answer, Ex. G, at 9, 24), and, in denying that motion on the merits, the trial court held that Petitioner "was not denied procedural due process" (*id.,* Ex. I, at 5). The court further noted that "the indictment provided [Petitioner] with sufficient notice of the date of the charges for the third sexual assault," and that "[a]ny conflict in evidence about the date of that assault created a factual question for the jury to resolve ...." (*Id.*) Petitioner exhausted his due-process claim by seeking leave to appeal to the Appellate Division (*id.,* Ex. J), and, by its denial of leave (*id.,* Ex. L), the Appellate Division left in place the trial court's decision. This Court now reviews the trial court's decision under the deferential standard of review set out in AEDPA.

While a state criminal defendant's federal due process rights are violated in the "exceptional case" where the indictment fails to provide the defendant with notice of the crimes for which he is charged, *see Edwards v. Mazzuca,* No. 00cv2290, 2007 WL 2994449, at *5 (S.D.N.Y. Oct. 15, 2007), there is no indication here that Petitioner is actually seeking to challenge the sufficiency of the Indictment on that basis. More specifically, Petitioner has provided no basis for contesting the finding of the trial court that the Indictment provided adequate notice that he was being charged, in that instrument, with specified crimes that allegedly occurred on specified dates.

Petitioner's pleading is vague as to any other basis for his 14th Amendment claim, offering no support for any defined, procedural irregularity that was contrary to statute or could have offended due process. Further, as discussed above, defects in grand jury proceedings are generally rendered harmless by the petit jury's conviction. (*See supra,* at Discussion Section II(A)(1); *see also Lopez,* 865 F.2d at 32-33.) Overall, even liberally construing the Petition, there is no basis for this Court to conclude that the trial court's rejection of Petitioner's due-process claim was contrary to, or represented an unreasonable application of federal law, 28 U.S.C. § 2254(d), and the claim should therefore be dismissed.

c. **Claimed Ineffective Assistance of Counsel (With Respect to the Grand Jury Proceedings)**

Petitioner's fourth ground for habeas relief is that he received ineffective assistance of trial counsel in violation

of his Sixth Amendment rights. Petitioner contends, *inter alia,* that his counsel's performance was constitutionally inadequate because counsel failed to secure Petitioner's right to appear before the grand jury and failed to "question the change of [the] date of occurrence" of the attack on S.P., from the date stated in the Felony Complaint to the date stated in the Indictment. (Pet. ¶ 12, GROUND FOUR (a).) Petitioner raised this claim in his Section 440.10 motion, citing to federal law in support of his arguments. (Answer, Ex. G, at 25-30.) In denying that motion, the trial court rejected all of Petitioner's ineffective-assistance-of-counsel claims on the merits, finding, in relevant part, that counsel had no legal basis to challenge the validity of the indictment based on the change in the date that the crime was alleged to have occurred, and that Petitioner's conclusory assertion that counsel did not facilitate his appearance before the grand jury did not establish a constitutional violation. (*Id.,* Ex. I, at 5-6.) Petitioner exhausted his ineffective-assistance claims by raising them in his application for leave to appeal to the Appellate Division (*id.,* Ex. J), which, as set out above, summarily denied such leave (*id.,* Ex. L). The trial court's rejection of these claims is reviewed here under AEDPA.

**\*15** For AEDPA purposes, *Strickland v. Washington,* 466 U.S. 668 (1984), sets out the "clearly established federal law" regarding a defendant's constitutional right to the effective assistance of counsel, *see, e.g., Harrington,* 562 U.S. at 101 (habeas petitioner must establish that *Strickland* was applied unreasonably by state courts). To prevail on an ineffective assistance claim under *Strickland,* a habeas petitioner must generally show that: (1) his counsel's performance "fell below an objective standard of reasonableness," and (2) he suffered prejudice as a result. *Id.* at 688, 691, 694. As to the first prong of this test, there is a strong presumption that counsel's conduct fell within the range of reasonably professional assistance. *See id.* at 689 ("Judicial scrutiny of counsel's performance must be highly deferential," and "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."). With regard to prejudice, the petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

Where deference under AEDPA is required, a petitioner "must do more than show that he would have satisfied

*Strickland*'s test if his [ineffective-assistance] claim were being analyzed in the first instance, because under § 2254(d)(1), it is not enough to convince a federal habeas court that, in its independent judgment, the state court applied *Strickland* incorrectly." *Bell v. Cone,* 535 U.S. 685, 698-99 (2002). "Rather, [the petitioner] must show that the [state court] applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Id.* at 699. "[T]he question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington,* 562 U.S. at 105.

Here, Petitioner is apparently seeking to claim that he had state-law rights with respect to the adequacy of the Indictment against him and the conduct of the grand jury proceedings, and that his trial counsel was ineffective for failing to take action to protect those rights. While "the Sixth Amendment right to the effective assistance of counsel can be violated if counsel failed to raise a significant and obvious state law claim," *LanFranco v. Murray,* 313 F.3d 112, 118-19 (2d Cir. 2002), Petitioner has not shown, in this instance, that his counsel failed to raise meritorious state-law arguments.

As for Petitioner's claim that his trial counsel should have challenged the discrepancy between the Felony Complaint and the Indictment, New York law offers no ground for such a challenge. Rather, the law provides that, while a felony complaint serves as the basis for the commencement of a criminal action, *see* N.Y.C.P.L. § 100.10(5), that instrument is superseded, and thus rendered legally irrelevant for purposes of challenging a subsequent conviction, by the grand jury's decision to indict, *see Brown v. Perlman,* No. 03cv2670 (RJH), 2006 WL 2819654, at *6 (S.D.N.Y. Sept. 29, 2006) ("[T]he grand jury indictment superceded any prior accusatory actions, rendering any alleged pre-indictment deficiencies irrelevant."); *People v. Smith,* 757 N.Y.S.2d 491, 491 (2d Dep't 2003) ("[E]ven if the felony complaint was defective, it was superseded by a valid indictment, rendering any claim regarding a purported defect in the felony complaint academic."). In deciding whether to issue an indictment, the grand jury is free to make an "independent determination that there is legally sufficient evidence that crimes have been committed and reasonable cause to believe that the defendant committed the crimes charged," regardless of what information appears in the initial accusatory instrument. *Black,* 705 N.Y.S.2d at 698 (citing

*People v. Wicks,* 76 N.Y.2d 128, 133 (1990)). Indeed, New York law does not prohibit the grand jury from returning an indictment even on charges that were not included in a prior felony complaint. *See* N.Y.C.P.L. § 190.65(2).

**\*16** For these reasons, there is no basis under New York law upon which Petitioner's counsel could have successfully challenged the validity of the Indictment against him due to the presentation of evidence in the grand jury proceedings that differed from the accusations set out in the Felony Complaint. As any argument based on the erroneous premise that the information presented to a grand jury or included in an indictment must exactly match that contained in a felony complaint would have been meritless, Petitioner's trial counsel could not have been ineffective for failing to raise this issue. *See Forbes v. United States,* 574 F.3d 101, 106 (2d Cir. 2009) ("It is well established that '[t]he failure to include a meritless argument does not fall outside the wide range of professionally competent assistance to which [a defendant is] entitled.' " (quoting *Aparicio,* 269 F.3d at 99)).

Petitioner also cannot establish that he is entitled to habeas relief based on the trial court's rejection of his claim that his counsel was ineffective for failing to secure his state-law right to appear and testify before the grand jury. In New York, a criminal defendant have a statutorily created right to appear and testify before a grand jury. *See* N.Y.C.P.L. § 190.50(5); *see also King,* 2008 WL 4410109, at *47. Several courts in this Circuit have found, however, that defense counsel's failure to secure that right does not violate the Sixth Amendment. *See, e.g., Webb,* 2014 WL 4953559, at *7; *King,* 2008 WL 4410109, at *47; *Acosta v. Couture,* No. 99cv9727 (LMM) (RLE), 2003 WL 272052, at *8 (S.D.N.Y. June 21, 2002), *report and recommendation adopted,* (Jan. 23, 2003); *see also Davis v. Mantello,* 42 Fed.Appx. 488, 491 n.1 (2d Cir. 2002) (holding that petition did not assert an ineffective-assistance claim, and noting, in *dicta,* that the New York courts have consistently held that the failure to ensure that a defendant is able to testify before the grand jury does not amount to ineffective assistance of counsel). Typically, courts have based their holdings in this regard on one of two rationales: (1) that the United States Supreme Court's holding in *United States v. Mechanik,* 475 U.S. 66, 70 (1986), which states that a defendant's conviction beyond a reasonable doubt cures any defect in an earlier grand jury proceeding, forecloses any possibility of actual prejudice, *see, e.g., Montalvo v.*

*Annetts,* No. 02cv1056 (LAK) (AJP), 2003 WL 22962504, at \*24 (S.D.N.Y. Dec. 17, 2003); or (2) that the New York courts have themselves consistently determined that the failure to secure a defendant's right to testify before the grand jury does not constitute ineffective assistance, *see, e.g., King,* 2008 WL 4410109, at \*47 (citing *Davis,* 42 Fed.Appx. at 491 n.1).

As has been noted by at least one court in this District, however, there are "inadequac[ies]" with each of these lines of analysis. *See Washington v. Walsh,* No. 10cv7288 (RJS) (JCF), 2015 WL 4154103, at \*26 (S.D.N.Y. Mar. 30, 2011), *report and recommendation adopted,* 2015 WL 4154103 (July 9, 2015). First, "the New York Court of Appeals has explicitly declined to adopt *Mechanik,* finding that New York law 'provides for dismissal [of an indictment] upon the mere possibility of prejudice' and allows a defendant to raise claims of defects in his grand jury proceedings 'even after a plea of guilty.' " *Id.* at \*26 (quoting *People v. Wilkins,* 68 N.Y.2d 269, 277 n.7 (1986)). "Thus, while defects in a petitioner's grand jury proceedings are not themselves cognizable on habeas review pursuant to *Mechanik*," that case does not prevent courts from finding "that a trial counsel's failure to raise objections to such defects in state proceedings causes prejudice sufficient to constitute ineffective assistance of counsel under *Strickland,* even when the petitioner has been convicted after a jury trial." *Id.* Second, the federal standard set out in *Strickland* "operates independently of state constitutional protections," and the fact that the New York courts have consistently determined that the failure to secure a defendant's right to testify before the grand jury does not violate the right to counsel does not necessarily mean that the appropriate federal standard was reasonably applied in each case. *Id.* Yet, even accepting that it may be possible for a habeas petitioner to establish that he was denied the right to counsel based on his attorney's failure to secure his statutory right to appear before the grand jury, Petitioner alleges no facts demonstrating that the *Strickland* standard was unreasonably applied in this case.

**\*17** Under *Strickland,* Petitioner can establish a violation of the right to counsel by showing that his counsel failed to raise a significant and obvious state law claim, and that there is a reasonable probability that the outcome of the proceedings would have been different had counsel done so. *See Strickland,* 466 U.S. at 688, 691, 694; *LanFranco,* 313 F.3d at 118-19. Even assuming that counsel's failure

to ensure that Petitioner appeared before the grand jury amounted to constitutionally deficient performance, the Petition contains no argument as to how or why Petitioner's presence before the grand jury would have changed the result of those proceedings. Given "the low burden of proof for obtaining an indictment," *Dixon v. McGinnis,* 492 F. Supp. 2d 343, 348 (S.D.N.Y. 2007), this Court is not persuaded that Petitioner's testimony would have outweighed the substantial evidence available to the prosecution at the time of the grand jury, which included DNA evidence, the statements of the three victims, and physical evidence recovered during the search of Petitioner's apartment. (*See supra,* at Background Section A(1-3), B(1).) In this regard, while the petit jury's guilty verdict may not automatically foreclose a finding that Petitioner was prejudiced by his trial counsel's performance, *see Washington,* 2015 WL 4154103, at \*26, Petitioner's "subsequent conviction by a petit jury under the reasonable doubt standard makes it highly unlikely he could have convinced the grand jury of the absence of probable cause," *Santiago v. McGinnis,* No. 00cv5870 (LBS), 2002 WL 31946709, at \*5 (E.D.N.Y. Oct. 21, 2002).

In light of Petitioner's failure to demonstrate that his inability to testify before the grand jury caused him actual prejudice, this Court certainly cannot conclude that the trial court unreasonably applied the *Strickland* standard in denying Petitioner's claim. *See* 28 U.S.C. § 2254(d); *Harrington,* 562 U.S. at 105 (noting that review under AEDPA of state court's application of *Strickland* is "doubly" deferential). Accordingly, this ineffective-assistance claim should be dismissed.

### B. **Petitioner's Remaining Claims**

Petitioner's remaining habeas claims include (1) a Fourth Amendment claim, alleging that there was no probable cause for his arrest, and (2) a Confrontation Clause claim which could be liberally construed to relate to the suppression hearing held in Petitioner's case or to his trial (both of these claims being raised in Petitioner's third stated grounds for habeas relief), as well as (3) additional claims of ineffective assistance of counsel (as raised in his fourth stated ground for relief). Each of these claims should also be dismissed.

### 1. **Alleged Fourth Amendment Violation**

2016 WL 3681457

As part of his third stated ground for habeas relief, Petitioner alleges that his arrest violated the Fourth Amendment because the fact that S.P.'s statement regarding the date of the assault was later "proven to be fraudulent" vitiated the probable cause for his arrest, which was based on S.P.'s identification. (Pet. ¶ 12, GROUND THREE (a).) Yet, even if Petitioner is correct that he was arrested without probable cause (which he has not shown), [12] his Fourth Amendment claim is procedurally barred and, in any event, does not provide a cognizable basis for federal habeas relief.

Petitioner raised this claim in his Section 440.10 motion, and sought to appeal from the denial of that motion. (Answer, Ex. G, at 19-20; Ex. J.) The trial court, however, in the last-reasoned decision of the state courts, rejected it on state-law procedural grounds, holding that Petitioner was barred under N.Y.C.P.L. § 440.10(2)(c) from litigating his challenge to the legality of his arrest in a collateral motion because he could have raised such a claim on direct appeal. (Answer, Ex. I, at 4.) Federal habeas review is not available where a claim has been decided by a state court, and the state court's decision "rests on a state law ground that is independent of the federal question and adequate to support the judgment." Coleman v. Thompson, 501 U.S. 722, 729 (1991).

**\*18** To determine that the state-law ground on which the state court rested was "truly an *independent* basis for decision" rather than "merely a passing reference, ... such reliance on state law must be clear from the face of the opinion." Fama v. Comm'r of Corr. Servs., 235 F.3d 804, 809 (2d Cir. 2000) (emphasis added) (quoting Coleman, 501 U.S. at 732 (internal quotation marks omitted)); *see also Jones v. Vacco,* 126 F.3d 408, 415 (2d Cir. 1997) (to preclude federal review, "the last state court to render judgment must 'clearly and expressly state[ ] that its judgment rest[ed] on a state procedural bar' " (alterations in original) (citation omitted)). To be deemed *adequate,* the state procedural rule on which the state court's decision was based must be a rule that is "firmly established and regularly followed" by the state in question, *see Ford v. Georgia,* 498 U.S. 411, 423-24 (1991) (internal quotation marks and citation omitted), and must not have been "misapplied in [the petitioner's] case in particular," *Cotto v. Herbert,* 331 F.3d 217, 240 (2d Cir. 2003) (internal quotation marks and citation omitted).

Here, it is clear from the face of the trial court's opinion that the court relied on the procedural bar found in N.Y.C.P.L. § 440.10(2)(c) to dispose of Petitioner's Fourth Amendment claim. Moreover, the court's decision reflected a regularly followed New York rule that does not appear to have been misapplied in the circumstances presented, given that Petitioner was afforded a suppression hearing, the record of which was presumably available for direct appeal. *See Garcia v. Lee,* No. 10cv5287 (JPO) (JLC), 2012 WL 3822137, at \*19 (S.D.N.Y. Aug. 28, 2012) (finding that there is "no question" that § 440.10(2)(c) is firmly established and regularly followed (citing *People v. Cooks,* 67 N.Y.2d 100, 103-04 (1986))), *report and recommendation adopted,* No. 10cv5287 (JPO), 2014 WL 406209 (Feb. 3, 2014). Petitioner's Fourth Amendment claim is therefore procedurally barred from habeas review, and Petitioner has not demonstrated that he can overcome the procedural bar. [13]

In any event, Petitioner's claim would be subject to dismissal under *Stone v. Powell,* 428 U.S. 465 (1976), in which the Supreme Court held that, where a state "has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Id.* at 494; *see also Briggs v. Phillips,* No. 02cv9340 (SAS) (AJP), 2003 WL 21497514, at \*6 (S.D.N.Y. June 30, 2003) ("[Petitioner's] claim that the police lacked probable cause to arrest him is a Fourth Amendment claim that is not cognizable on habeas review."), *report and recommendation adopted,* (July 23, 2003). *Powell* dictates that a state petitioner may obtain federal habeas review of a Fourth Amendment claim only if: (1) the state has provided no corrective procedures to redress Fourth Amendment violations; or (2) the petitioner was precluded from utilizing such corrective procedures by an "unconscionable breakdown in that process." *Gates v. Henderson,* 568 F.2d 830, 840 (2d Cir. 1977).

**\*19** In this case, Petitioner does not and cannot contend that the state failed to provide adequate remedial procedures to address his Fourth Amendment claim, as New York provided a procedure for litigating Fourth Amendment claims (a procedure that has been considered and found adequate by the Second Circuit), and Petitioner in fact took advantage of that procedure. [14] (*See* Pretrial

McKelvey v. Bradt, Not Reported in F.Supp.3d (2018)

2016 WL 3681457

Tr., at 2-39; *Graham v. Costello*, 299 F.3d 129, 134 (2d Cir. 2002) ("[O]nce it is established that a petitioner has had an opportunity to litigate his or her Fourth Amendment claim (whether or not he or she took advantage of the state's procedure) ... the claim will never present a valid basis for federal habeas relief."); *Capellan v. Riley*, 975 F.2d 67, 70 n.1 (2d Cir. 1992) ("[T]he federal courts have approved New York's procedure for litigating Fourth Amendment claims ... as being facially adequate." (internal quotation marks and citation omitted)).) In addition, the Petition contains no facts suggesting that an unconscionable breakdown in the process by which he was afforded a pretrial suppression hearing denied him a full and fair opportunity to litigate any Fourth Amendment violation. Thus, even if Petitioner's arrest was unlawful, this fact would not give rise to a cognizable ground for federal habeas relief.

For all these reasons, Petitioner's Fourth Amendment claim should be dismissed.

### 2. Alleged Confrontation Clause Violation (at Pretrial Hearing or at Trial)

Also as part of his third habeas claim, as noted above, Petitioner has arguably claimed that, either at the suppression hearing or at trial, he was denied the right to confront the witness who supposedly provided the new date for the assault against S.P.

To the extent that Petitioner seeks to claim that his right to confront witnesses was violated during the pretrial suppression hearing, his claim is plainly meritless. The trial court held that "[t]he right to confrontation under *Crawford* ... does not apply at a pretrial suppression hearing, where guilt is not an issue and hearsay evidence is admissible." (Answer, Ex. I, at 4 (citations omitted).) As the U.S. Supreme Court has not held otherwise, the trial court's decision cannot be found to have been either contrary to, or an unreasonable application of federal law, as determined by the Supreme Court. *See Smith v. Hulihan*, No. 11cv2948 (HB) (AJP), 2011 WL 4058764, at *23 (S.D.N.Y. Sept. 13, 2011) ("The First Department's decision rejecting Smith's confrontation clause claim was not contrary to or an unreasonable application of Supreme Court precedent because the Supreme Court has never applied the Confrontation Clause to a pre-

trial suppression hearing."), *report and recommendation adopted*, 2012 WL 4928904 (Oct. 17, 2012).

To the extent that Petitioner is contending that his right to confrontation was violated at *trial*, the trial court did not directly address the claim, and thus the deferential AEDPA standard may not apply. Even on *de novo* review, however, any such claim necessarily fails, as Petitioner has not identified any testimonial statement from an out-of-court declarant that was introduced during the trial. *See Williams v. Illinois*, 132 S. Ct. 2221, 2256 (2012) (noting that Confrontation Clause only bars the use of testimonial statements that meet the definition of hearsay). At trial, S.P. and her friend each testified regarding their own recollection of the date that S.P. was assaulted (Trial Tr., at 287, 399-400), and Officer McNeil testified that the different date listed in the Felony Complaint was based on S.P.'s initial recounting of the incident (*id.* at 233-44). Petitioner's counsel had the opportunity to (and, in fact, did) cross-examine each of these witnesses regarding the conflict between S.P.'s initial report and the contrary testimony presented at trial. (Trial Tr., at 233-51, 320-22, 406.) None of these witnesses testified as to statements made by an out-of-court declarant, and neither S.P. nor her friend even implied that their stated recollections of the date of the attack had been affected by information obtained from any third party, not present at trial. Under these circumstances, where no statement of testimonial hearsay was introduced at trial and the defendant had the opportunity to cross-examine the witnesses who testified against him, the Confrontation Clause was not violated.

**\*20** Accordingly, whether based on the grand jury proceedings (as discussed at Section II(A)(2)(a) above), the suppression hearing, or trial, Petitioner's Confrontation Clause claim should be dismissed.

### 3. Additional Claims of Ineffective Assistance of Counsel

In addition to the ineffective-assistance-of-counsel claims discussed above, Petitioner also alleges, as part of his fourth habeas claim, that his trial counsel was ineffective for failing to obtain Petitioner's cell phone records from May 26, 2006, the date S.P. was assaulted, and for failing to question certain witnesses as to why colposcopic examinations were not performed on the complaining rape victims. (Pet. ¶ 12, GROUND FOUR (a).) Petitioner exhausted these ineffective-assistance claims by raising

them in his Section 440.10 motion, and in his application for leave to appeal from the trial court's denial of that application. (*See* Answer, Ex. G, J.) The claims were each rejected on the merits by the trial court, which held that counsel could not have obtained Petitioner's cell phone records, as his service provider did not preserve the records for the date in question, and that Petitioner's argument that a colposcopic test would have proved his innocence was unsupported, as medical testimony at trial established that victims of rape suffer no injuries to their genitals. (*Id.,* Ex. I, at 5-6.) Under the applicable AEDPA standard of review, these claims should be dismissed.

### a. Counsel's Failure To Subpoena Petitioner's Phone Records

Petitioner contends that his trial counsel was ineffective for failing to subpoena his cellphone records, as, according to Petitioner, these records would have shown that Petitioner was actually in Brooklyn on the night that (according to the Indictment), he was alleged to have assaulted S.P. (Pet. ¶ 12, GROUND FOUR (a); Answer, Ex. G, at 28.) In some cases, trial counsel's failure to investigate evidence corroborating an alibi can amount to deficient performance. *See Espinal v. Bennett,* 588 F. Supp. 2d 388, 399-401 (E.D.N.Y. 2008), *aff'd,* 342 Fed.Appx. 711 (2d Cir. 2009). Here, however, likely due to S.P.'s expected testimony, as well as the similarity of her allegations to the two other complaints of rape to which Petitioner was linked by DNA evidence, counsel chose not to dispute the fact that Petitioner actually had engaged in sexual acts with S.P., and instead attempted to suggest to the jury that any such conduct was consensual. Counsel's strategic choice not to assert an alibi defense based on Petitioner's phone records, and instead to argue that Petitioner had engaged in consensual sexual conduct with S.P., does not constitute deficient performance. *See Knowles v. Mirzayance,* 556 U.S. 111, 124 (2009) ("[S]trategic choices made by counsel after a thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." (quoting *Strickland,* 466 U.S. at 690)); *see also Henry v. Poole,* 409 F.3d 48, 61 (2d Cir. 2005) ("[I]t is generally acknowledged that an attempt to create a false alibi constitutes evidence of the defendant's consciousness of guilt." (internal quotation marks and citations omitted)).

Moreover, even if Petitioner were able to show that his trial counsel's failure to seek out cell-phone records to corroborate Petitioner's alibi defense was objectively unreasonable, this claim would still lack merit due to the apparent unavailability of the records that Petitioner claims his attorney should have subpoenaed. In this regard, the trial court rejected Petitioner's claim on the basis that the *prosecutor* had subpoenaed the relevant records, only to learn that Petitioner's service provider had not preserved them. (Answer, Ex. I, at 6.) Clearly, Petitioner cannot establish that he suffered actual prejudice due to his attorney's failure to subpoena particular records if no such records could have been obtained, and the trial court's finding that Petitioner's counsel was not ineffective for not seeking to procure these records was therefore a reasonable application of *Strickland.*

### b. Counsel's Failure To Cross-Examine Witnesses Regarding Lack of Colposcopic Examinations

**\*21** Petitioner also claims that his trial counsel's failure "to question ... why the one test that would have proven [his innocence] was not performed" amounted to constitutionally deficient performance. (Pet. ¶ 12, GROUND FOUR (a).) In his Section 440.10 motion, Petitioner argued that colposcopic testing would have shown that neither W.B. nor M.L. had suffered any vaginal injuries, and that his counsel unreasonably failed to inquire –presumably during cross-examination of Drs. Bobrow and Castillo – why such testing had not been performed. (Answer, Ex. G, at 27-28.) The trial court, in denying this aspect of Petitioner's motion, held that Petitioner had provided no support for his allegation that colposcopic testing would have shown that he did not sexually assault the victims, and noted that medical testimony had established that rape victims often do not suffer abrasions to their genitals. (*Id.,* Ex. I, at 5.) For the following reasons, this holding by the trial court was a reasonable application of the *Strickland* standard.

First, any failure by trial counsel to inquire explicitly as to why a colposcopic examination was not performed does not establish deficient performance. At trial, Drs. Bobrow and Castillo gave testimony that was seemingly *favorable* to Petitioner, when they stated that their examinations of W.B. and M.L., respectively, revealed no genital injuries. (Trial Tr., at 155-56, 159, 335-37.) Petitioner's counsel

confirmed on cross-examination that these physicians had detected no injuries (*id.* at 157-60; 337-41), and, when the witnesses then testified that the examinations were made without the aid of a colposcope (*id.*, at 156, 335; *see also id.,* at 159 (Dr. Castillo confirming that her examination of M.L. was not performed with "any other equipment besides just [her] own naked eye")), counsel did not pursue the matter further. Having obtained arguably exculpatory testimony regarding the results of the doctors' visual examinations, the objective reasonableness of counsel's decision in this regard is apparent. While Petitioner claims that cross-examination as to the lack of colposcopic testing would have demonstrated his innocence, he does not explain why this is so, and it seems at least equally likely that the jury would have drawn the opposite inference from such questioning. In particular, cross-examination on the subject of colposcopic examination may have suggested to the jury that, while examination by the naked eye did not reveal any vaginal tears or abrasions, the claimed victims may indeed have suffered microscopic injuries that would have been revealed by a colposcope.

Moreover, Petitioner cannot establish, as also required under *Strickland*, that he suffered any prejudice from his counsel's failure to question Drs. Bobrow and Castillo as to why colposcopic examinations were not performed. The jury heard the doctors testify that they did not find evidence that W.B. and M.L. had suffered physical injuries, and, in finding Petitioner guilty beyond a reasonable doubt of raping these complainants, the jury apparently chose to credit the medical testimony that rape victims often show no such injuries. Petitioner offers no plausible argument as to why further cross-examination on the absence of colposcopic testing would have likely altered the jury's verdict. Indeed, in the face of strong evidence of guilt, including the eye-witness testimony of three victims, it seems highly unlikely that the jury would have acquitted Petitioner, had the doctors merely gone on to suggest, during their cross-examination, that colposcopic examinations may have confirmed their visual findings. As Petitioner has not, and cannot, show that he suffered actual prejudice as a result of his trial counsel's failure to inquire as to why the witnesses did not perform colposcopic examinations, there is no basis for this Court to conclude that the trial court's rejection of Petitioner's ineffective-assistance claim was contrary to, or constituted an unreasonable application of, the *Strickland* standard.

**\*22**  Having reviewed all of the alleged deficiencies in the representation provided by Petitioner's trial counsel, both individually and in the aggregate, *see Lindstadt v. Keane,* 239 F.3d 191, 199 (2d Cir. 2001), I recommend that the Court dismiss Petitioner's habeas claims for ineffective assistance of counsel for lack of merit.

## CONCLUSION

For all of the foregoing reasons, I recommend that the Petitioner's Petition for a writ of habeas corpus be DISMISSED in its entirety. Further, I recommend that the Court decline to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(1)(A), because Petitioner has not "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6 (allowing three (3) additional days for service by mail). Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Colleen McMahon, United States Courthouse, 500 Pearl Street, Room 2550, New York, New York 10007, and to the chambers of the undersigned, United States Courthouse, 500 Pearl Street, Room 1660, New York, New York 10007. Any requests for an extension of time for filing objections must be directed to Judge McMahon. FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. *See Thomas v. Arn,* 474 U.S. 140, 155 (1985); *IUE AFL-CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir. 1992); *Wesolek v. Canadair Ltd.,* 838 F.2d 55, 58 (2d Cir. 1988); *McCarthy v. Manson,* 714 F.2d 234, 237-38 (2d Cir. 1983).

If Petitioner does not have access to cases cited herein that are reported only on Westlaw, he may request copies from Respondents' counsel. *See* Local Civ. R. 7.2 ("Upon request, counsel shall provide the *pro se* litigant with copies of [cases and other authorities cited therein that are unpublished or reported exclusively on computerized databases] as are cited in a decision of the Court and were not previously cited by any party.").

McKelvey v. Bradt, Not Reported in F.Supp.3d (2016)
Case 9:16-cv-00594-LEK-DEP    Document 12    Filed 02/16/18    Page 149 of 167

2016 WL 3681457

All Citations

Not Reported in F.Supp.3d, 2016 WL 3681457

Footnotes

1    Respondent's submissions to this Court were made under seal, given that they revealed the identity of rape victims. For the same reason, this Court has directed that Plaintiff's "Notice of Motion" and attachment thereto (construed by this Court as his reply submission) (Dkt. 20) be placed under seal.

2    While Respondent's answer to the Petition is available on the public docket, the Exhibits to that document were filed under seal.

3    This hearing was held pursuant to: (1) *Mapp v. Ohio,* 367 U.S. 643 (1961), to determine whether physical evidence sought to be used against Petitioner was obtained illegally; (2) *Dunaway v. New York,* 442 U.S. 200 (1979), to determine whether there was probable cause for Petitioner's arrest; and (3) *People v. Huntley,* 15 N.Y.2d 72 (1965), to determine whether any statements made by Petitioner should be suppressed.

4    Justice McLaughlin had previous ruled, pursuant to the agreement of the parties, that he would not submit the Kidnapping charge against Petitioner to the jury. (*Id.* at 428-29.)

5    A colposcope is "a gynecological tool that magnifies and photographs where injuries or trauma may be visible," *Gersten v. Senkowski,* 426 F.3d 588, 594 (2d Cir. 2005), and can reveal vaginal abrasions that would be invisible to the naked eye, *see Batchilly v. Nance,* No. 08cv7150 (GBD) (AJP), 2010 WL 1253921, at *39 (S.D.N.Y. Apr. 2, 2010), *report and recommendation adopted,* No. 08cv7150 (GBD) (AJP), 2011 WL 1226260 (S.D.N.Y. Mar. 30, 2011).

6    The State also argued that Petitioner's claim regarding the sufficiency of the evidence was procedurally barred due to his failure to raise it on appeal. (Answer, Ex. H, at 2.) In this regard, the State was apparently referring to Petitioner's prosecutorial misconduct claim, as Petitioner's Section 440.10 motion did not include a challenge to the sufficiency of the evidence leading to his conviction, but Petitioner did state that, due to the alleged introduction of perjured and unsworn testimony before the grand jury, he "[q]uestion[ed] the sufficien[cy] of [the] evidence" presented during that proceeding. (*Id,* Ex. G.)

7    Under New York law, where the Appellate Division makes a determination that a verdict was not "against the weight of the evidence" (as it did in this case), the court necessarily also determines that the evidence was not legally "insufficient" to support the verdict. *Parker v. Ercole,* 666 F.3d 830, 833 (2d Cir. 2012).

8    The basis of Petitioner's Confrontation Clause claim is not entirely clear, but, construing the Petition liberally, Petitioner seems to be contending that he was unable to confront the witness who provided to the grand jury the revised date of the charged crimes against S.P. because Petitioner was not, himself, given the opportunity to appear before the grand jury, and/or because the witness was never called to testify at either the pretrial suppression hearing or trial. (*See* Pet. ¶ 12, GROUND THREE (a).)

9    In the part of his Section 440.10 motion that related to his claim that the Indictment was jurisdictionally defective, Petitioner cited a single federal case, *Sunal v. Large,* 332 U.S. 174 (1947). (Answer, Ex. G, at 13.) That case dealt with the availability of habeas corpus to defendants who had not appealed their federal convictions, however, and not to the constitutionality of a conviction that relied on an allegedly defective indictment.

10   In the relevant section of his Section 440.10 motion, Petitioner again cited one federal case, *United States v. Hogan,* 712 F.2d 757 (2d Cir. 1983), which was again inapposite. That case did not involve allegations of prosecutorial misconduct in a state grand jury proceeding, but rather addressed a federal grand jury proceeding, *see id.,* where a defendant is accorded constitutional rights not available in parallel state proceedings, *see, e.g., Castaldi v. Poole,* No. 07-CV-1420 (RRM), 2013 WL 789986, at *6 (E.D.N.Y. Mar. 1, 2013).

11   As Petitioner is proceeding *pro se,* his Petition must be afforded a liberal construction. *See Green v. United States,* 260 F.3d 78, 83 (2d Cir. 2001) ("It is well settled that *pro se* litigants generally are entitled to a liberal construction of their pleadings, which should be read to raise the strongest arguments that they suggest." (internal quotation marks and citation omitted)).

12   Contrary to Plaintiff's argument, the fact that information upon which an officer relied in connection with an arrest later turned out to be false has no bearing on whether there was probable cause for that arrest. *See Stansbury v. Wertman,* 721 F.3d 84, 89 (2d Cir. 2013) (holding that, in evaluating probable cause, a court must consider only those facts known to the officer at the time of the arrest).

13    A habeas petitioner can overcome a procedural bar to review by showing (1) both "cause" for the procedural default and "prejudice" resulting from the alleged constitutional error, or (2) that the failure to address the claim on habeas would result in a "fundamental miscarriage of justice." *Coleman,* 501 U.S. at 750. "Cause" for a procedural default is established when "some objective factor external to the defense" impeded the petitioner's efforts to comply with the state's procedural rule, *Murray v. Carrier,* 477 U.S. 478, 488 (1986), and "prejudice" requires a petitioner to demonstrate that the alleged constitutional error worked to his "*actual* and substantial disadvantage," *United States v. Frady,* 456 U.S. 152, 170 (1982) (emphasis in original). To establish a "fundamental miscarriage of justice," the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Carrier,* 477 U.S. at 496. In this instance, Petitioner has certainly failed to show any probability that this Court's failure to review his claim would result in a fundamental miscarriage of justice, given that he has offered no new evidence of actual innocence. In addition, Petitioner has not asserted any "cause" for his failure to raise his Fourth Amendment claim on direct appeal. Nor, based on this Court's analysis of the merits of such a claim (as discussed below), could Petitioner show the requisite "prejudice." *See, e.g., McDowell v. Heath,* No. 09cv7887 (RO) (MHD), 2013 WL 2896992, at *25 (S.D.N.Y. June 13, 2013) ("Petitioner also cannot establish actual prejudice [as would be necessary to overcome a procedural default] because this ... claim has no merit.").

14    Although the Fourth Amendment claim that Petitioner raised at the *Mapp/Dunaway/Huntley* hearing was based on a slightly different theory than the one he presents in the Petition (*see* 4/24/07 Tr., at 20-28), that hearing offered Petitioner the opportunity to litigate any challenge to the legality of his arrest.

---

**End of Document**                                    © 2018 Thomson Reuters. No claim to original U.S. Government Works.

2011 WL 115490
Only the Westlaw citation is currently available.
NOT FOR PUBLICATION
United States District Court,
E.D. New York.

Todd ROBINSON, Petitioner,
v.
Supt. D.E. LaCLAIR, Franklin
Correctional Facility, Respondent.

No. 09–CV–3501 (KAM).
|
Jan. 13, 2011.

**Attorneys and Law Firms**

Todd Robinson, Malone, NY, pro se.

Michael John Shollar, Staten Island, NY, New York State Attorney Generals Office, Richmond County District Attorneys Office, for Respondent.

**Opinion**

### *MEMORANDUM AND ORDER*

MATSUMOTO, District Judge.

**\*1** On August 3, 2009, Todd Robinson ("petitioner") filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (ECF No. 1, Pet. for Writ of Habeas Corpus ("Pet.").) On October 15, 2009, D.E. LaClair ("respondent") filed an opposition and memorandum of law in opposition to petitioner's habeas petition. (ECF No. 5, Resp't Affidavit in Opp. to Writ of Habeas Corpus ("Resp't Opp."); ECF No. 5–1, Resp't Mem. of Law ("Resp't Mem.").) Following court orders requesting additional information, respondent filed a letter, attaching several supporting exhibits, on December 21, 2010. (ECF Orders dated 11/18/10 and 11/23/10; ECF No. 6, Ltr. by D.E. LaClair.) Having considered all of the submissions, the court denies the petition for habeas corpus.

### *BACKGROUND*

Petitioner's habeas petition seeks relief from his March 14, 2006 conviction in the Supreme Court of the State of New York, Richmond County, for one count of Burglary in the Second Degree, N.Y. Penal Law § 140.25(2), three counts of Criminal Possession of Stolen Property in the Fourth Degree, N.Y. Penal Law § 165.45(2), two counts of Criminal Possession of Stolen Property in the Fifth Degree, N.Y. Penal Law § 165.40, and one count of Petit Larceny, N.Y. Penal Law § 155.25.

The conviction was in connection with an incident that took place in Staten Island on January 30, 2005. Carlee Goodridge ("Goodridge") found petitioner, an uninvited stranger, asleep on her couch when she arrived home shortly after midnight. (Resp't Opp. at 2, 4; ECF No. 5–6, Direct Appeal at 1,[1] Br. for Defendant–Appellant ("Pet. Direct Appeal Br.") at 3.) Upon seeing petitioner in her home, Goodridge called 911. (*Id.*) After petitioner explained that he was homeless and that he had hoped Goodridge, a real estate agent, could help him find a place to live, Goodridge tried to cancel the 911 call but was unable to do so. (Resp't Opp. at 2, 4–5; Pet. Direct Appeal Br. at 3.) The police arrived shortly thereafter. (Resp't Opp. at 5.) The police determined that there were no signs of forced entry, but while escorting Goodridge through her house, Goodridge discovered that several items in her house, including clothing, mail, and a remote control, had been moved, and that a can of food had been opened and placed in a bowl. (*Id.;* Pet. Direct Appeal Br. at 3.) Petitioner was then searched, and the police found a pair of Goodridge's underwear in his pants pocket and a stack of credit cards, a driver's license, and a check belonging to Goodridge's neighbors, in his jacket pocket. (Resp't Opp. at 5–6; Pet. Direct Appeal Br. at 3.) Petitioner was arrested. (Resp't Opp. at 3, 6; Pet. Direct Appeal Br. at 3.) The police searched petitioner's belongings at the homeless shelter in Orange County, New York, where petitioner had been staying, finding additional credit cards and two savings bonds belonging to Goodridge's other neighbors. (Resp't Opp. at 3, 6–7; Pet. Direct Appeal Br. at 7–8.)

**\*2** Petitioner was first indicted on February 17, 2005 under Richmond County Indictment No. 28/2005 with one count of Burglary in the Second Degree, one count of Petit Larceny, two counts of Criminal Possession of Stolen Property in the Fourth Degree, and two counts of Criminal Possession of Stolen Property in the Fifth Degree. (*See* Pet., Ex. 2 at 33[2]; Resp't Opp. at 3.) Petitioner was arraigned on this indictment. Indictment

No. 28/2005, on February 23, 2005. (*See* Pet., Ex. B at 33; Resp't Mem. at 4; ECF No. 6–1, Bucksheet for Indictment No. 28/2005.) The superseding indictment, Richmond County Indictment No. 71/2005, was filed on March 24, 2005. (*See* Pet. Direct Appeal Br. at 1.) The superseding indictment charged petitioner with one count of Burglary in the Second Degree, one count of Petit Larceny, four counts of Criminal Possession of Stolen Property in the Fourth Degree, and six counts of Criminal Possession of Stolen Property in the Fifth Degree. (Resp't Opp. at 3.)³ Petitioner was arraigned on the superseding indictment, Indictment No. 71/2005, on April 6, 2005. (*See* Resp't Mem. at 4; ECF No. 6–2, Bucksheet for Indictment No. 71/2005.) The previous indictment, Indictment No. 28/2005, was dismissed on April 6, 2005. (*See* ECF No. 6–3, Transcript of Arraignment on Indictment No. 71/2005 at 3.)

The case thereafter proceeded to trial. At the close of the trial, and during jury deliberations, the jury sent a note to the court stating that it was unable to reach a decision as to the Burglary in the Second Degree charge. (Resp't Opp. at 7; Pet. Direct Appeal Br. at 10; ECF No. 5–4, Transcript of Trial pages 534 to end ("Trial Tr. II") at 695.) Both the prosecutor and counsel for petitioner asked the judge to read a "deadlocked jury" instruction. (Resp't Opp. at 7; Trial Tr. II at 695–96.) The court and counsel agreed on a standard instruction that was published by the Office of Court Administration. (Resp't Opp. at 7; Trial Tr. II at 696.)

The jury ultimately found petitioner guilty on seven counts: one count of Burglary in the Second Degree, three counts of Criminal Possession of Stolen Property in the Fourth Degree, two counts of Criminal Possession of Stolen Property in the Fifth Degree, and one count of Petit Larceny. (Resp't Opp. at 1–2, 7; Pet. Direct Appeal Br. at 10–11.) On March 14, 2006, petitioner was sentenced as a second felony offender to concurrent terms of incarceration of ten years on the Burglary count with five years of post-release supervision, two to four years on the Criminal Possession in the Fourth Degree counts, one year each on the Criminal Possession in the Fifth Degree counts, and one year on the Petit Larceny count. (Resp't Opp. at 2, 8.)

Petitioner appealed his conviction to the New York State Appellate Division, Second Department. Petitioner submitted two briefs to the Appellate Division: one submitted by counsel, *see* Pet. Direct Appeal Br., and one submitted *pro se* by petitioner, *see* ECF No. 5–6, Direct Appeal at 50, *Pro Se* Br. for Defendant–Appellant ("*Pro Se* Direct Appeal Br.")). The brief submitted by counsel argued that the prosecution presented insufficient evidence to establish that petitioner had an intent to commit a crime when he entered the Goodridge home, and therefore the conviction on Burglary in the Second Degree had to be reversed. (*See* Pet. Direct Appeal Br. at 11–20.) The *pro se* brief argued, *inter alia,* that the charges against petitioner were dismissed by the use of a superseding indictment, that the indictment was otherwise defective, that petitioner did not receive a timely arraignment, and that the Allen charge read to the jury violated his rights. (*See generally Pro Se* Direct Appeal Br.; Resp't Opp. at 8–9.)

**\*3** The Appellate Division affirmed petitioner's conviction on October 7, 2008, holding that petitioner's "contention that his conviction for burglary in the second degree must be reversed because the People failed to prove by legally sufficient evidence that he intended to commit a crime at the time he entered the premises is unpreserved for appellate review." *People v. Robinson,* 55 A.D.3d 636, 636, 867 N.Y.S.2d 97 (N.Y.App.Div.2008). The court also reasoned that "[i]n any event, viewing the evidence in the light most favorable to the prosecution, ... the evidence was legally sufficient to establish the defendant's guilt beyond a reasonable doubt ... [and] we are satisfied that the verdict of guilt was not against the weight of the evidence." *Id.* The Appellate Division also rejected the arguments raised in petitioner's supplemental *pro se* brief as "unpreserved for appellate review" and "in any event, ... without merit." *Id.* On February 9, 2009, the Appellate Division denied petitioner's request to reargue his direct appeal. *See People v. Robinson,* 2009 N.Y. Slip Op. 63185(U) (N.Y.App.Div.2009).

The New York State Court of Appeals subsequently denied petitioner leave to appeal on February 25, 2009. *See People v. Robinson,* 12 N.Y.3d 762 (N.Y.2009). On June 26, 2009, the Court of Appeals also denied petitioner's application for leave to appeal the Appellate Division's February 9, 2009 decision denying petitioner's motion for leave to reargue his appeal. *See People v. Robinson,* 12 N.Y.3d 920 (N.Y.2009).

Petitioner raises the following claims in his habeas petition: (1) that he was prosecuted by a defective

indictment, which had been dismissed; (2) that he was denied due process and a fair trial because of a delay in his arraignment, i.e. that he was denied a speedy trial; [4] (3) that the trial court erred by presenting the jury with a coercive Allen charge; and (4) that the Appellate Division denied him due process by affirming his conviction because the evidence was legally insufficient to satisfy the requirements for Burglary in the Second Degree. [5] (*See* Pet.; *see also* Resp't Opp. at 10.)

Respondent argues that petitioner is not entitled to habeas relief because his "proposed grounds for relief were each denied by an adequate and independent state ground," here, that the claims were unpreserved at trial for direct appellate review. (Resp't Mem. at 2–3.) Respondent additionally argues that petitioner's claims are without merit. (Resp't Mem. at 4–10.)

### *DISCUSSION*

### I. Standard of Review
The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104–132, 110 Stat. 1214 (1996), established a deferential standard that federal courts must apply in reviewing state court decisions on habeas review. Under AEDPA, a federal court may grant habeas relief with respect to a federal claim adjudicated on the merits in state court only if the adjudication of the claim resulted in a decision that was either: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). In addition, "a determination of a factual issue made by a State court shall be presumed to be correct," and the applicant for habeas relief has the "burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

**\*4** Furthermore, a habeas petition shall not be granted unless the petitioner "has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). Even if the exhaustion requirement is satisfied, federal habeas corpus review may be barred by the independent and adequate state law grounds doctrine, which provides that a federal court may "not review a question of federal law decided by a state court if the decision of that court

rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson,* 501 U.S. 722, 729, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).

In the instant action, petitioner presented the claims raised in his petition to the state courts on direct appeal of his conviction. (*See* Pet. Direct Appeal Br.; *Pro Se* Direct Appeal Br.) Therefore, the claims are exhausted. [6] However, the claims are dismissed under the independent and adequate state law ground doctrine, as explained below. Moreover, even if the claims raised in the petition were not procedurally barred by the independent and adequate state law doctrine, the claims lack merit.

### III. Independent and Adequate State Law Ground
Petitioner's claims are dismissed under the independent and adequate state grounds doctrine because on direct appeal the Appellate Division found these claims to be unpreserved for appellate review under the contemporaneous objection rule. *Robinson,* 55 A.D.3d at 636, 867 N.Y.S.2d 97. "Federal courts generally will not consider a federal issue in a case 'if the decision of the state court rests on a state law ground that is independent of the federal question and adequate to support the judgment.' " *Garvey v. Duncan,* 485 F.3d 709, 713 (2d Cir.2007) (quoting *Lee v. Kemna,* 534 U.S. 362, 375, 122 S.Ct. 877, 151 L.Ed.2d 820 (2002)). "This rule applies regardless of whether the independent state law ground is substantive or procedural and whether the case is in federal court on direct review or from state court via a habeas corpus petition." *Garvey,* 485 F.3d at 713 (citing *Lee,* 534 U.S. at 375).

A state law ground is "only adequate to support the judgment and foreclose review of a federal claim if it is 'firmly established and regularly followed' in the state." *Garvey,* 485 F.3d at 713 (quoting *Lee,* 534 U.S. at 376). The Supreme Court has noted that although a firmly established and regularly followed rule will ordinarily preclude review of a federal claim, "[t]here are ... exceptional cases in which exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question." *Lee,* 534 U.S. at 376. In *Lee,* the Supreme Court identified three factors (the "*Lee* factors") to guide a federal court's determination of whether application of a state law ground is "adequate" to preclude consideration of a federal question:

(1) whether the alleged procedural violation was actually relied on in the trial court, and whether perfect compliance with the state rule would have changed the trial court's decision; (2) whether state caselaw indicated that compliance with the rule was demanded in the specific circumstances presented; and (3) whether petitioner had "substantially complied" with the rule given "the realities of trial," and, therefore, whether demanding perfect compliance with the rule would serve a legitimate governmental interest.

**\*5** *Cotto v. Herbert,* 331 F.3d 217, 240 (2d Cir.2003) (citing *Lee,* 534 U.S. at 381–85). These *Lee* factors "are not a three-prong test: [rather] they are guideposts to aid inquiry" of adequacy. *Clark v. Perez,* 510 F.3d 382, 391 (2d Cir.2008); *see also Cotto,* 331 F.3d at 240 (noting that the *Lee* factors "were not presented as a 'test' for determining adequacy, we use them as guideposts in 'evaluat[ing] the state interest in a procedural rule against the circumstances of a particular case.' " (quoting *Lee,* 534 U.S. at 381–85)).

Alternatively, a federal court may also review a federal claim that is barred by an independent and adequate state law ground if "the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman,* 501 U.S. at 750; *see also Cotto,* 331 F.3d at 239 n. 10 (noting that "a habeas petitioner may also bypass the independent and adequate state ground bar by demonstrating a constitutional violation that resulted in a fundamental miscarriage of justice").

In the instant action, the New York State Appellate Division held that petitioner failed to preserve his defective indictment, delayed arraignment, Allen charge, and legal insufficiency [7] claims for appellate review under the "contemporaneous objection" rule. [8] *See Robinson,* 55 A.D.3d at 636, 867 N.Y.S.2d 97 (noting that claims raised in *pro se* appellate brief, including petitioner's

first three federal habeas claims, were "unpreserved for appellate review," citing the contemporaneous objection rule, N.Y.Crim. Proc. Law § 470. 05(2)). [9] Under New York law, "an issue is properly preserved for appeal as a matter of law only if the appellant objected on that ground in the trial below." *Glenn v. Bartlett,* 98 F.3d 721, 724 n. 2 (2d Cir.1996) (citing *N.Y.Crim. Proc. Law § 470.05*(2) and New York State case law).

It is well-settled that the contemporaneous objection rule has been recognized as a firmly established and regularly followed independent state procedural ground in New York barring federal review of a federal claim. *See, e.g., Garcia v. Lewis,* 188 F.3d 71, 76–78 (2d Cir.1999) (holding that "the Appellate Division's explicit invocation of the procedural bar constitutes" an independent and adequate state law ground). Thus, the critical issue in this case is whether application of the contemporaneous objection rule was "adequate" under the *Lee* factors to preclude federal review. *See Cotto,* 331 F.3d at 240 (noting that "[a]fter *Lee,* ... the relevant question ... is whether application of the procedural [contemporaneous objection] rule is 'firmly established and regularly followed' in the specific circumstances presented in the case, an inquiry that includes an evaluation of the" *Lee* factors).

The *Lee* factors indicate that the application of the firmly established and regularly followed contemporaneous objection rule in this case was adequate to preclude federal review of petitioner's claims. First, because the procedural bar is the contemporaneous objection rule, the first *Lee* guidepost "is less applicable ... because the lack of a contemporaneous objection would not, almost by definition, be mentioned by the trial court." *Cotto,* 331 F.3d at 242. Further, because the trial court had no opportunity to make a determination about petitioner's claims, it is impossible to know whether perfect compliance would have changed the trial court's decision under the first Lee factor. *See Donaldson v. Ercole,* No. 06–5781–pr, 2009 U.S.App. LEXIS 624, at \*5–\*6, 2009 WL 82716 (2d Cir. Jan. 14, 2009).

**\*6** Under the second *Lee* factor, well-established state case law demanded compliance with the contemporaneous objection rule in the specific circumstances presented, namely, objection to: (1) a defective indictment, *see, e.g., People v. Nash,* 77 A.D.3d 687, 908 N.Y.S.2d 708, 710 (N.Y.App.Div.2010) ("The defendant's argument on

appeal that the counts ... were vague and duplicitous is not preserved for appellate review ... as the defendant failed to make a pretrial motion to dismiss those counts of the indictment within 45 days of his arraignment."); *People v. Iannone,* 45 N.Y.2d 589, 412 N.Y.S.2d 110, 384 N.E.2d 656, 663–64 (N.Y.1978) (holding that "the defendants in these two appeals have failed to preserve a question of law which this court may review and have waived their objections to the sufficiency of the factual allegations in the indictments by which they were brought before the courts"); (2) speedy trial, *see, e.g., People v. Jordan,* 62 N.Y.2d 825, 477 N.Y.S.2d 605, 466 N.E.2d 145, 146 (N.Y.1984) (holding that because "[n]o application for the relief now sought having been made in Supreme Court in the criminal action and accordingly there having been no denial of a request for such relief, as a matter of appellate procedure, as the Appellate Division recognized, there was no ruling of the trial court in this action to be reviewed by the Appellate Division, or now in our court"); *People v. Mack,* 306 A.D.2d 115, 759 N.Y.S.2d 878, 878 (N.Y.App.Div.2003) (denying review of unpreserved speedy trial issue); (3) a coercive Allen charge, *see, e.g., People v. Cowen,* 249 A.D.2d 560, 672 N.Y.S.2d 138, 138 (N.Y.App.Div.1998) ( "The defendant's contention that the court's Allen charge was coercive is not preserved for appellate review since he did not raise a specific objection on that ground before the trial court." (citation omitted)); *Francesehi v. Walsh,* 2004 U.S. Dist. LEXIS 9404, at *25 & n. 4, 2004 WL 1166650 (E.D.N.Y. May 24, 2004) ("New York courts have consistently found Allen charge claims to be unpreserved where the defense counsel did not alert the trial court to the offensive language at issue."); and (4) legal insufficiency of the evidence, *see, e.g., People v. Gray,* 86 N.Y.2d 10, 629 N.Y.S.2d 173, 652 N.E.2d 919, 920–21 (N.Y.1995) ("We hold that where a defendant seeks to argue on appeal ... that the People have failed to establish [an element of the offense charged], preservation of that contention is required by an appropriate objection."). This second factor, therefore, weighs in favor of respondent.

Finally, because petitioner's counsel never raised any objection to the superseding indictment, the timeliness of his arraignment, the Allen charge, or the legal sufficiency of the evidence for the burglary charge, as reflected by the record, the third *Lee* factor—"whether petitioner had substantially complied with the rule given the realities of trial," *Cotto,* 331 F.3d at 240 (citation omitted)—weighs in favor of respondent as well. Inherently, no "substantial

compliance with a contemporaneous objection rule" is possible when the issues were not "even implied in the trial court." *Donaldson,* 2009 U.S.App. LEXIS 624, at *7, 2009 WL 82716. Thus, weighing all three *Lee* factors the court finds that not only is the contemporaneous objection rule firmly established and regularly followed, but it is also "adequate" under the specific circumstances of this case to prelude federal review of petitioner's defective indictment, speedy trial, improper Allen charge, and legal insufficiency claims.

**\*7** Additionally, there is nothing in the record to suggest that petitioner can establish cause and prejudice or a fundamental miscarriage of justice to excuse the procedural default in this case. *See Cotto,* 331 F.3d at 239 n. 10. Accordingly, the Appellate Division's denial of these claims for failure to preserve precludes federal review of the claims. *See, e.g., Garcia,* 188 F.3d at 78–79 ("[I]f a state appellate court refuses to review the merits of a criminal defendant's claim of constitutional error because of his failure to comply with ... a contemporaneous objection rule, a federal court generally may not consider the merits of the constitutional claim on habeas corpus review." (internal quotation marks and citation omitted)). Petitioner's request for habeas relief is denied.

### IV. Alternatively, Claims Are Dismissed On The Merits

Moreover, even if petitioner could overcome the procedural bar in this case and allow the court to reach the merits of his claims, his petition would still be dismissed. First, the defective indictment claim does not present a question of federal law proper for consideration by the court on federal habeas review. Second, the remaining claims are without merit.

Under AEDPA, a federal court can grant habeas relief only if the state court's determination of the claims on the merits was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d). "An 'adjudication on the merits' is one that '(1) disposes of the claim on the merits, and (2) reduces its disposition to judgment.' " *Bell v. Miller,* 500 F.3d 149, 155 (2d Cir.2007) (quoting *Sellan v. Kuhlman,* 261 F.3d 303, 312 (2d Cir.2001)). Here, the Appellate Division ruled that petitioner's legal insufficiency claim was "unpreserved for appellate review" and that "[i]n any

2011 WL 115490

event, viewing the evidence in the light most favorable to the prosecution, ... the evidence was legally sufficient to establish [petitioner's] guilt beyond a reasonable doubt." *Robinson,* 55 A.D.3d at 636, 867 N.Y.S.2d 97 (internal citation omitted). Further, the Appellate Division found petitioner's remaining claims to be "unpreserved for appellate review and, in any event, ... without merit." *Id.* (internal citation omitted). This disposition by the Appellate Division constitutes a determination on the merits. *See Zarvela v. Artuz,* 364 F.3d 415, 417 (2d Cir.2004) (concluding that state court had reviewed the claim on the merits where it found "petitioner's claim to be unpreserved, and, in any event, without merit," constituted an adjudication on the merits). Therefore, assuming the court could reach the merits of petitioner's claims, habeas relief could only be granted if the Appellate Division's determination was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d).

### A. Deficient State Indictment Not Proper For Federal Habeas Review

**\*8** Petitioner first claims that he was denied due process and a fair trial because he was prosecuted under a defective indictment. (*See* Pet. at 6.) Petitioner is not entitled to federal habeas review of this claim because the claim does not raise a question of federal law proper for consideration by this court. Claims concerning state grand jury proceedings do not entitle a petitioner to federal habeas relief. *See Lopez v. Riley,* 865 F.2d 30, 32 (2d Cir.1989) (finding that "claims concerning a state grand jury proceeding are ... foreclosed in a collateral attack brought in a federal court"). Indictment by a grand jury in a New York State is a right dependent on the New York State Constitution and other state laws, not on federal law, and federal habeas relief may not be granted for violations of state law. *See, e.g., Venable v. Walsh,* 2009 U.S. Dist. LEXIS 27887, at *31, 2009 WL 750230 (E.D.N.Y. Mar. 19, 2009) (finding that a defective state indictment claim "fails to state a violation of federal law"); *Fulton v. Greene,* 2009 U.S. Dist. LEXIS 102971, at *14, 2009 WL 3733046 (W.D.N.Y. Nov. 5, 2009) ("It is well-settled that any errors in state grand jury proceedings involving sufficiency of grand jury evidence, use of misleading and prejudicial evidence, and instructions given to the grand jury do not entitle a petitioner to habeas relief."); *Whaley v.*

*Graham,* 2008 U.S. Dist. LEXIS 82987, at *21–*22, 2008 WL 4693318 (E.D.N.Y. Oct. 15, 2008) ("As a threshold matter, the form of a grand jury indictment is statutorily created ... and such alleged defects in a state grand jury proceeding cannot provide grounds for habeas relief.").

Further, even if a defective state indictment constituted proper grounds for federal habeas review, any injury that petitioner claims from the defective indictment was cured by the jury's verdict of guilt beyond a reasonable doubt at his trial. *See Thigpen v. Brown,* 2008 U.S. Dist. LEXIS 101679, at *39 (E.D.N.Y. Sept. 26, 2008) (holding that "any problem with the indictment was cured upon petitioner's conviction" (citing *United States v. Mechanik,* 475 U.S. 66, 73, 106 S.Ct. 938, 89 L.Ed.2d 50 (1986))); *Chacko v. United States,* 2005 U.S. Dist. LEXIS 11380, at *16 (S.D.N.Y. June 8, 2005) (finding that "an error in a grand jury proceeding is generally considered harmless once a defendant has been convicted at trial after a jury has found that defendant guilty of crimes charged in the indictment beyond a reasonable doubt").

Consequently, even if petitioner could overcome the procedural bar for his defective indictment claim, the claim must be dismissed because petitioner does not raise a question of federal law appropriate for federal habeas review and, in any event, any defect in his indictment was cured by the finding of guilt beyond a reasonable doubt by the jury.

### B. No Speedy Trial Violation

Petitioner next alleges that he was denied due process and a fair trial because he received an "untimely [s]upreme court [a]rraignment." (*See* Pet. at 6.) Petitioner was arrested on January 30, 2005. (*See* Resp't Opp. at 2–3, 6.) Petitioner was first indicted on February 17, 2005 under Richmond County Indictment No. 28/2005. (*See* Pet., Ex. 2 at 33; Resp't Opp. at 3.) Petitioner was arraigned on this indictment, Indictment No. 28/2005, on February 23, 2005. (*See* Pet., Ex. B at 33; Resp't Mem. at 4; Bucksheet for Indictment No. 28/2005.) The superseding indictment, Richmond County Indictment No. 71/2005, was filed on March 24, 2005. (*See* Pet. Direct Appeal Br. at 1.) Petitioner was arraigned on the superseding indictment, Indictment No. 71/2005, on April 6, 2005. (*See* Resp't Mem. at 4; Bucksheet for Indictment No. 71/2005.) This delay, petitioner argues, denied him due process and a fair trial.

**\*9** The right to a speedy trial is guaranteed by the Sixth Amendment. *See* U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial ...."). This fundamental right is imposed on the states by the Due Process Clause of the Fourteenth Amendment. *Klopfer v. North Carolina,* 386 U.S. 213, 223, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967). The Supreme Court has adopted a balancing test to determine whether the right to speedy trial has been violated in a particular case. *See Barker v. Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). Courts faced with speedy trial violation claims must weight whether: (1) the delay before trial was uncommonly long; (2) the government or the defendant is more to blame for that delay; (3) the defendant asserted his right to a speedy trial in due course; and (4) the defendant suffered prejudice. *See Doggett v. United States,* 505 U.S. 647, 651, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992). The first inquiry—whether the delay was uncommonly long—is considered a threshold issue, and courts will not reach the rest of the balancing test if this threshold inquiry is not satisfied. *See id.* at 651–52 ("Simply to trigger a speedy trial analysis, an accused must allege that the interval between the accusation and trial has crossed the threshold dividing ordinary from presumptively prejudicial delay, since, by definition, he cannot complain that the government has denied him a 'speedy' trial if it has, in fact, prosecuted his case with customary promptness." (internal quotation marks and citations omitted)); *see also United States v. Solomon,* 1996 U.S. Dist. LEXIS 9948, at \*3–\*4 (S.D.N.Y. July 16, 1996) ("Before embarking upon this four-part inquiry, a court must determine if the delay is 'presumptively prejudicial' or only an 'ordinary' delay.... If the latter, then the claim must fail and the four-part inquiry is mooted." (internal citation omitted)).

Although there is no precise formula for determining what constitutes a presumptively prejudicial delay, *see, e.g., Barker,* 407 U.S. at 531 ("[T]he delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge."), courts in this district have found that "[a] delay of many months is sufficient to establish presumptive prejudice." *Varricchio v. County of Nassau,* 702 F.Supp.2d 40, 51 (E.D.N.Y.2010); *see also Unites States v. Vassell,* 970 F.2d 1162, 1164 (2d Cir.1992) (noting general consensus that "a delay of over eight months meets [the presumptive prejudice] standard, while a delay of less than five months does not").

In the instant action, petitioner complains only of the delay in his arraignment, not of the delay between his arraignment and trial. (*See* Pet.) The delay from the time petitioner was arrested, on January 30, 2005, to his arraignment on the first indictment, on February 23, 2005, was 25 days, and on the superseding indictment, on April 6, 2005, was 2 months and 8 days. This length of delay is insufficient to meet the threshold inquiry of a presumptive prejudice and does not trigger the rest of the analysis for a speedy trial violation. *See, e.g., United States v. Infanti,* 474 F.2d 522, 527 (2d Cir.1973) ("[T]he length of time from arrest to indictment was 21 months and from arrest to trial 28 months, neither extraordinary."); *Holmes v. Bartlett,* 810 F.Supp. 550, 562 (S.D.N.Y.1993) (finding that "the length of delay, eighteen months," between arrest and arraignment "was considerably shorter than the delays in other cases where courts found no Sixth Amendment violation"); *Vassell,* 970 F.2d at 1164 (noting consensus that "a delay ... of less than five months does not" meet the presumptive prejudice standard); *Varricchio,* 702 F.Supp.2d at 51 (delay of many months meets standard); *Velez v. New York,* 941 F.Supp. 300, 318 (E.D.N.Y.1996) ("As an initial matter, a court will not entertain a speedy trial claim unless the interval between accusation and trial has crossed the threshold dividing ordinary from presumptively prejudicial delay" and "[h]ere, the 377-day period between Petitioner's arrest and the commencement of his trial, while apparently sufficient to trigger a speedy trial inquiry, ... is certainly not extraordinary, and federal courts have found that much longer delays do not violate the Sixth Amendment." (internal quotation marks and citations omitted)). Furthermore, petitioner has made no showing of how the delay between his arrest and ultimate arraignment prejudiced his defense. Having failed to satisfy the threshold inquiry requiring a showing of some prejudice by the delay, petitioner's speedy trial claim fails and the rest of the balancing test inquiry is mooted. *See, e.g. Solomon,* 1996 U.S. Dist. LEXIS 9948, at \*4 (noting that if petitioner fails to show presumptive prejudice, "then the claim must fail and the four-part inquiry is mooted").

**\*10** Therefore, the Appellate Division's determination that petitioner's speedy trial claim was without merit was not contrary to federal law or based on an unreasonable determination of the facts. Consequently, even if petitioner could overcome the procedural default,

his claim for relief on the ground that he was untimely arraigned would be denied.

### C. Allen Charge Was Not Improper

Petitioner next alleges that the trial court delivered an improper Allen charge to the jury after the jurors declared that they were deadlocked. [10] (Pet. at 7; *Pro Se* Direct Appeal Br. at 37–38.) Specifically, petitioner claims that the Allen charge was coercive. (*Pro Se* Direct Appeal Br. at 37–38.) Respondent argues that the charge was not coercive, and notes that the language of the Allen charge came directly from a standard deadlocked jury instruction published by the New York Office of Court Administration. (Resp't Mem. at 5.) Further, respondent notes that the judge cautioned the jurors not to abandon their "conscientiously held beliefs." (*Id.*)

Upon review of the trial record, the court finds that petitioner's Allen charge claim lacks merit. A trial judge may give supplemental instructions to a deadlocked jury, asking the jury to continue deliberating to try to reach a unanimous verdict. *See Allen v. United States,* 164 U.S. 492, 501–02, 17 S.Ct. 154, 41 L.Ed. 528 (1896). However, the supplemental instructions must not "improperly coerce[ ]" the jury. *Lowenfield v. Phelps,* 484 U.S. 231, 237, 108 S.Ct. 546, 98 L.Ed.2d 568 (U.S.1988). In determining whether the supplemental charge is coercive, the charge must be considered " 'in its context and under all the circumstances.' " *Id.* (quoting *Jenkins v. United States,* 380 U.S. 445, 446, 85 S.Ct. 1059, 13 L.Ed.2d 957 (1965)). A reviewing court must determine whether the supplemental charge "pressured any juror to abandon any conscientiously held beliefs that were based on the evidence." *Ramirez v. Senkowski,* 1999 U.S.App. LEXIS 20143, at *8 (2d Cir.1999) (citing *United States v. Ruggiero,* 928 F.2d 1289, 1299 (2d Cir.1991)). If the instructions direct "jurors to consider the views of other jurors, specific cautionary language reminding jurors not to abandon their own conscientious beliefs is generally required." *Spears v. Greiner,* 459 F.3d 200, 205 (2d Cir.2006) (citing *United States v. Henry,* 325 F.3d 93, 107 (2d Cir.2003) and *Smalls v. Batista,* 191 F.3d 272, 280 (2d Cir.1999)). [11]

In the instant case, the trial judge specifically instructed the jurors not to abandon their conscientiously held beliefs. The judge emphasized, "I'm not asking any juror to violate his or her conscience or to abandon his or her

best judgement [sic]. Any verdict you reach must be the verdict of each juror, and not merely acquiescence in the conclusion of others." (Trial Tr. II at 698.) The judge further instructed the jurors to "make every possible effort to arrive at a just verdict here. Make certain that the decision you reach is based solely on the evidence and the law, and is not influenced or affected by sympathy for or against any individual, or for or against either side." (*Id.* at 699.) The judge urged that while it is not "uncommon for a jury to have difficulty initially in reaching a unanimous verdict ... [,] after further deliberations, most juries are able to reach a unanimous verdict." (*Id.* at 697.) The judge asked the jurors to "resume deliberations with an open mind," to "[h]ave the courage to be flexible" and "to change your position if a reevaluation of the evidence convinces you that a change is appropriate. Do not, out of pride or stubbornness, adhere to an opinion or conclusion that you no longer believe is correct." (*Id.* at 698.)

**\*11** This review of the trial record demonstrates that the Allen charge read by the judge in petitioner's case was not coercive. The judge reminded the jurors not to violate their consciences and informed the jury that if they cannot "reach a unanimous agreement on a particular count, you cannot return a verdict on that count and a new trial would have to be scheduled as to that count or those counts." (*Id.* at 697.) Consequently, even if petitioner could overcome the procedural bar, his Allen charge claim would be dismissed on the merits because the Appellate Division's finding that the claim lacked merit was not contrary to federal law or based on an unreasonable determination of the facts in his case.

### D. Evidence Was Legally Sufficient

Petitioner's final claim for relief is that the evidence at trial was legally insufficient to support his conviction for Burglary in the Second Degree. (Pet. at 14.) A legal insufficiency claim is cognizable on habeas review. *See Jackson v. Virginia,* 443 U.S. 307, 324, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). "In evaluating whether the evidence [was] sufficient [to sustain a conviction, the court] must view the evidence in the light most favorable to the prosecution." *Einaugler v. Supreme Court of the State of New York,* 109 F.3d 836, 840 (2d Cir.1997) (internal quotation marks and citation omitted). The court must uphold a petitioner's conviction if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson,* 443 U.S. at 319 (emphasis in original).

When examining this type of claim, "[a] federal court must look to state law to determine the elements of the crime." *Quartararo v. Hanslmaier,* 186 F.3d 91, 97 (2d Cir.1999) (citations omitted). Under New York law, a person commits Burglary in the Second Degree when he or she knowingly enters or remains unlawfully in a building with the intent to commit a crime therein, and the building is a dwelling. N.Y. Penal Law § 140.25(2).

The elements of Burglary in the Second Degree, as defined under New York law, were proved beyond a reasonable doubt at trial. The jury heard evidence that petitioner entered the Goodridge home without permission. (*See* ECF No. 5–3, Transcript of Trial pages 300 to 533 ("Trial Tr. I") at 327–30, 369.) Further, the jury heard testimony that, upon inspection of her apartment, Goodridge discovered that petitioner had moved her mail and remote control, threw her children's clothes on the floor of a bedroom, and opened a can of food in the kitchen. (*See id.* at 334, 354–55, 371, 373.) The jury also heard testimony that the police officers found a pair of Goodridge's underwear in the petitioner's possession. (*See id.* at 336, 377, 402–03.) Finally, the jury heard evidence that petitioner was found in possession of credit cards and mail belonging to Goodridge's neighbors. (*See id.* at 380–90, 392, 404, 426–27, 430, 452–54, 473–74, 476–77.)

Viewing all this evidence in the light most favorable to the prosecution, as required under Supreme Court precedent, proof of the elements of Burglary in the Second Degree was sufficient to sustain the conviction. Consequently, even if petitioner could overcome the procedural default, his legal insufficiency claim would be rejected because the Appellate Division's determination that the evidence was legally sufficient was not based on an unreasonable interpretation of the facts.

## *CONCLUSION*

**\*12** Based on the foregoing, the court denies petitioner's application for a writ of habeas corpus. Because petitioner has not made a substantial showing of the denial of any constitutional right, the court will not issue a certificate of appealability. 28 U.S.C. § 2253; *Lozada v. United States,* 107 F.3d 1011, 1017 (2d Cir.1997), *abrogated on other grounds, United States v. Perez,* 129 F.3d 255, 259–60 (2d Cir.1997) (discussing the standard for issuing a certificate of appealability). The court certifies, pursuant to 28 U.S.C. § 1915(a), that any appeal from this judgment denying the petition would not be taken in good faith. *Coppedge v. United States,* 369 U.S. 438, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962). The Clerk of the Court is respectfully requested to serve a copy of this Memorandum and Order upon petitioner and to close the case.

**SO ORDERED.**

**All Citations**

Not Reported in F.Supp.2d, 2011 WL 115490

## Footnotes

1    As all direct appeal materials were filed as one document, the court refers to the page number assigned by the Electronic Court Filing system ("ECF"), which marks the beginning of the particular direct appeal document referenced.

2    As the exhibits are not numbered, the court refers to the numbers assigned by the Electronic Case Filing System ("ECF").

3    Respondent's opposition contains inconsistent information regarding the counts charged in the superseding Indictment No. 71/2005. On page 3, paragraph 6 of the opposition, respondent states that Indictment No. 71/2005 charged petitioner with, *inter alia,* four counts of Criminal Possession of Stolen Property in the Fourth Degree and six counts of Criminal Possession of Stolen Property in the Fifth Degree. (Resp't Opp. at 3.) Paragraph 7, however, states that Indictment No. 71/2005 charged petitioner with only three counts of Criminal Possession of Stolen Property in the Fourth Degree and two counts of Criminal Possession of Stolen Property in the Fifth Degree. (*Id.*) This difference is not relevant to the determination of petitioner's claims for habeas relief.

4    Petitioner groups the defective indictment and untimely arraignment claims, listing both claims under "Ground One" in his habeas petition. (*See* Pet. at 6.) However, as they raise different issues, the court analyzes each separately.

5    It is difficult to understand, from the petition alone, exactly what petitioner claims as his fourth ground for relief. Respondent, in its opposition and memorandum of law, characterized this last claim a legal insufficiency claim with respect to the conviction for Burglary in the Second Degree, the same claim raised by appellate counsel on direct appeal. (*See* Resp't Mem. at 6–10.) Petitioner did not file a reply, despite the opportunity to do so, to correct that interpretation or

otherwise clarify his position. Further, the court cannot discern any other meaning that would raise a meritorious claim for relief. Therefore, the court accepts respondent's interpretation of petitioner's fourth claim for relief as a legal insufficiency claim with respect to his conviction for Burglary in the Second Degree.

6    Respondent argues that, to the extent that petitioner claims that the Appellate Division acted improperly in denying his appeal, that claim of misconduct is not exhausted, as petitioner raises this issue for the first time in his habeas petition. (*See* Resp't Mem. at 6 n.1.) However, as explained in the preceding note, the court interprets petitioner's last ground for relief as a legal insufficiency claim with respect to his conviction for Burglary in the Second Degree, and not a claim alleging misconduct on the part of the Appellate Division.

7    Even though defense counsel moved to dismiss the charges following the close of the government's case and at the conclusion of the trial (*see* Trial Tr. II at 540–41, 549), a general motion to dismiss is not enough to preserve the legal insufficiency claim raised by petitioner here. It is clear that under New York law, "the preservation requirement compels that the argument be 'specifically directed' at the alleged error" in order to preserve a legal insufficiency challenge for review on direct appeal. *See People v. Gray,* 86 N.Y.2d 10, 629 N.Y.S.2d 173, 652 N.E.2d 919, 921 (N.Y.1995); *see also People v. Bork,* 77 A.D.3d 1278, 907 N.Y.S.2d 907, 907 (N.Y.App.Div.2010) (holding that "defendant contends that the evidence is legally insufficient to support the conviction" but made "only a general motion for a trial order of dismissal at the close of the People's case and thus ... failed to preserve her contention for [appellate] review").

8    The contemporaneous objection rule, N.Y.Crim. Proc. Law § 470.05(2), provides in part that "[f]or purposes of appeal, a question of law with respect to a ruling or instruction of a criminal court during a trial or proceeding is presented when a protest thereto was registered, by the party claiming error, at the time of such ruling or instruction or at any subsequent time when the court had an opportunity of effectively changing the same."

9    The fact that the Appellate Division found petitioner's claims also to be without merit, in addition to finding them unpreserved, does not affect the outcome. "[F]ederal habeas review is foreclosed when a state court has expressly relied on a procedural default as an independent and adequate state ground, even where the state court has also ruled in the alternative on the merits of the federal claim.' " *Glenn v. Bartlett,* 98 F.3d 721, 724 (2d Cir.1996) (quoting *Velasquez v. Leonardo,* 898 F.2d 7, 9 (2d Cir.1990)).

10    In his supplemental *pro se* brief to the Appellate Division, petitioner called the Allen Charge, "the intimadation [sic] of the guilty verdict." (*Pro Se* Direct Appeal Br. at 38.) Petitioner argued that the "[t]rial court must not attempt to coerc[e] or compel the jury to agree on a particular verdict ... but pro[p]erly discharge its responsibilities, to avoid mistrial by encouraging jurors to adhe[re] to [their] oaths and make one final effort to review the evidenc[e] under the approp[r]iate circumstances[.]" (*Id.*)

11    In *Spears,* the charge delivered by the trial court lacked the language reminding jurors "not to abandon their own conscientious beliefs." *Spears,* 459 F.3d at 206. Still, the court determined that the charge was not coercive because it "asked the jurors to consider the facts 'with an *attempt* to reach a verdict if *that be possible,'* and to continue deliberations 'with a view toward arriving at a verdict *if that's possible.' " Id.* (emphasis in original). The court also considered that the defense counsel failed to object to the charge, so the potential for coercion was not apparent from the charging. *Id.*

---

**End of Document**                    © 2018 Thomson Reuters. No claim to original U.S. Government Works.

2009 WL 1024714
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

Joseph RUSSELL, Petitioner,

v.

David ROCK, Superintendent, Great
Meadow Correctional Facility, Respondent.

No. 08-CV-1894 (BMC)(RER).
|
April 15, 2009.

**Attorneys and Law Firms**

Joseph Russell, Wallkill, NY, pro se.

**Opinion**

### *MEMORANDUM DECISION AND ORDER*

COGAN, District Judge.

**\*1** This matter is before the Court on petitioner's § 2254 petition for a writ of habeas corpus. For the reasons set forth below, the Court find petitioner's claims to be without merit and dismisses the petition.

### BACKGROUND

Petitioner was arrested on August 20, 2002 for allegedly assaulting his girlfriend on August 11 and August 20 of that year. As a result of the injuries his girlfriend sustained on August 11, the globe of her right eye ruptured, necessitating the removal of the eye. Although petitioner's girlfriend originally stated that she injured her eye by falling in the shower, she later told police that petitioner hit her during an argument.

At petitioner's arraignment on August 21, 2002 in Kings County, his attorney waived his right to testify before a grand jury by declining to serve a grand jury notice. On August 23, 2002, petitioner was indicted by a Queens County grand jury [1] and charged with two counts of first degree assault, attempted first degree assault, and second degree assault. Petitioner sought to dismiss the indictment pursuant to N.Y. CRIM. P.L. § 190.50, claiming his

attorney waived his right to testify before the grand jury without his permission. The court denied this motion because petitioner was present when his attorney stated grand jury notice would not be served.

At trial, the State presented the testimony of petitioner's girlfriend, the arresting officers, the doctor who treated petitioner's girlfriend in the emergency room, and experts in domestic violence and prosthetic eyes. The State also introduced numerous pictures of petitioner's girlfriend's injuries. Petitioner's counsel presented two witnesses: an officer who interviewed petitioner's girlfriend in the hospital (whom she told she fell in the shower), and petitioner, who testified that his girlfriend used cocaine and sustained her injuries in the shower as a result of a cocaine overdose. He further testified that his girlfriend hit *him* on August 20, 2002, after he refused to let her have her drugs. [2]

On May 14, 2003, the jury convicted petitioner of reckless first degree assault and intentional second degree assault, but acquitted him of intentional first degree assault. Petitioner moved to set aside his conviction under N.Y. CRIM. P.L. § 330.30(1); the trial court denied the motion on March 24, 2004. Petitioner also moved at that time to vacate the judgment against him under N.Y. CRIM. P.L. § 440.10, but the trial court did not consider the motion since petitioner had yet to be sentenced. On April 6, 2004, petitioner filed an Article 78 action for a writ of prohibition with the Appellate Division; the Appellate Division denied his application. On May 3, 2004, petitioner was sentenced as a mandatory persistent violent felony offender to concurrent prison terms of twenty years to life, and is currently incarcerated at the Shawangunk Correctional Facility.

Petitioner appealed his conviction to the Appellate Division on November 30, 2005. On September 14, 2006, the Appellate Division vacated his conviction and sentence for first degree assault, and affirmed his conviction as modified. The Court of Appeals denied petitioner's application for leave to appeal on February 27, 2007. In the interim (on January 4, 2007), petitioner made another motion to vacate the judgment against him under NY. CRIM. P.L. § 440.10, which the New York Supreme Court denied on April 5, 2007, and the Appellate Division denied leave to appeal on August 14, 2007. Petitioner timely filed the instant § 2254 petition on April 30, 2008. The Court dismissed the petition on December 19, 2008,

2009 WL 1024714

but vacated its decision on January 6, 2009 after petitioner alerted the Court that a technical error in an interim Order had confused him as to whether he could file a supplemental reply brief. The Court granted petitioner the opportunity to submit a supplemental reply; petitioner filed his supplemental brief on February 26, 2009.

# DISCUSSION

**\*2** In his original § 2254 petition, petitioner asserted four grounds for relief: (1) he was not afforded a reasonable opportunity to testify before the grand jury, in violation of his due process rights; (2) he received ineffective assistance of trial counsel; (3) his conviction was the result of prosecutorial misconduct; and (4) his sentencing as a persistent violent felony offender violated his constitutional rights under *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). In his reply brief, petitioner also asserted a purported new claim of actual innocence. Additionally, in petitioner's supplemental reply brief, he has asserted two additional grounds for relief: (1) the trial court's failure to submit first degree reckless assault and second degree intentional assault to the jury in the alternative deprived him of a fair trial and resulted in an inconsistent verdict; and (2) the evidence was insufficient to prove his guilt of assault in the second degree. [3] The Court will discuss each of these claims in turn.

## 1. Petitioner's grand jury claim is barred from habeas review

First, petitioner claims that his due process rights were violated because his attorney forfeited his right to testify before the grand jury without his consent. As stated in the Court's October 8, 2008 Order, this claim is barred from federal habeas corpus review because there is no federal due process right to a grand jury in a state criminal proceeding. *See Fields v. Soloff,* 920 F.2d 1114, 1118 (2d Cir.1990) (noting that the Fifth Amendment right to indictment by a grand jury was not incorporated by the Due Process Clause of the Fourteenth Amendment and thus does not apply to the states); *Burwell v. Superintendent of Fishkill Corr. Facility,* No. 06 Civ. 787, 2008 WL 2704319, at \*8 (S.D.N.Y. July 10, 2008) ("[P]etitioner charges that he was denied due process because he was not given the opportunity to testify before the state grand jury. This claim fails because there is no

federal constitutional right to testify before the grand jury.").

## 2. Petitioner's ineffective assistance of trial counsel claim is meritless

Next, petitioner claims that he received ineffective assistance of trial counsel because counsel (1) waived his right to testify before the grand jury; (2) failed to request a bill of particulars; [4] (3) failed to follow up on discovery demands and ascertain all relevant materials needed to formulate a defense; and (4) failed to impeach and cross-examine witnesses during trial. In analyzing these assertions, the Court must determine whether the state court's determination on this claim was contrary to, or an unreasonable application of, the ineffective assistance standard set forth in *Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *See Williams v. Taylor,* 529 U.S. 362, 384-85, 391, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). Under *Strickland,* the appropriate inquiry is whether petitioner had "reasonably effective assistance" of counsel, such that counsel's actions neither (1) fell below an objective standard of reasonableness; nor (2) caused a reasonable probability that the result of the trial would have been different but for counsel's errors. 466 U.S. at 686-95.

**\*3** The Court finds that the state court's rejection of this claim was neither contrary to, nor an unreasonable application of, the *Strickland* standard. First, as stated in the Court's October 8, 2008 Order, counsel's failure to secure the right to testify before a state grand jury is not a cognizable ground for an ineffective assistance claim. *See, e.g., Davis v. Mantello,* 42 Fed. Appx. 488, 491 n.l, 819 So.2d 133, 2002 WL 1032698 at \*2 n.l (2d Cir. May 22, 2002) ("New York courts have consistently held that counsel's failure to ensure that the defendant testifies before the grand jury does not amount to ineffective assistance of counsel.").

Additionally, there is no evidence in the record to support petitioner's ineffective assistance claim regarding his counsel's alleged failure to follow up on discovery demands and obtain the relevant materials for his defense. Rather, the record makes clear that counsel obtained the allegedly unsought documents prior to trial and used them both for cross-examination purposes and to form his own witness list. Petitioner's conclusory allegations regarding his counsel's failure to prepare a defense are insufficient to

support an ineffective assistance claim. *See, e.g., Hartley v. Senkowski,* No. CV-90-0395, 1992 WL 58766, at *2 (E.D.N.Y. Mar.18, 1992) ("In light of th[e] demanding [*Strickland* ] standard, petitioner's vague and conclusory allegations that counsel did not prepare for trial ... carry very little weight.").

Likewise, there is no evidence in the record that counsel failed to impeach Jones' credibility regarding her accounts of the events of August 11, 2002, or that counsel failed to obtain a rebuttal medical witness. To the contrary, petitioner's counsel impeached Jones' credibility on this topic and even questioned state witnesses about Jones' allegedly inconsistent stories. Furthermore, the record demonstrates that counsel requested that the court appoint a medical records examiner to assist with trial preparations.

To the extent that petitioner has raised challenges to his counsel's failure to impeach Jones about her alleged drug use and cross-examine her regarding her alleged false reporting of domestic issues, these were reasonable strategic determinations and thus cannot form the basis for an ineffective assistance claim. *See, e .g., United States v. Eisen,* 974 F.2d 246, 265 (2d Cir.1992) (noting decisions on cross-examination and impeachment " 'fall squarely within the ambit of trial strategy, and, if reasonably made,' cannot support an ineffective assistance claim"); *Bloomfield v. Senkowski,* No. 02-CV-6738, 2008 WL 2097423, at *9 (E.D.N.Y. May 15, 2008) (recognizing the "significant deference we accord trial counsel's decision on how to conduct cross examination and our refusal to use perfect hindsight to criticize unsuccessful trial strategies") (*quoting Eze v. Senkowski,* 321 F.3d 110, 132 (2d Cir.2003)). Petitioner's ineffective assistance of counsel claim is therefore meritless.

### 3. Petitioner's prosecutorial misconduct claim is meritless

**\*4** Next, petitioner raises a claim of prosecutorial misconduct based on the State's alleged "presentment of [Jones] false testimony to the Grand Jury and the trial jury" and its allegedly untimely disclosure of material required by *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The state court found these claims to be meritless. Thus, this Court's review is limited to whether the state court's determination was contrary to, or an unreasonable application of, clearly established federal law. *See* 28 U.S.C. § 2254(d)(1); *Sellan v. Kuhlman,*

261 F.3d 303, 311-12 (2d Cir.2003) (noting that a state court's adjudication on the merits triggers the deferential standard of review set forth in § 2254(d)(1)).

The state court's adjudication of petitioner's prosecutorial misconduct claims was neither contrary to, nor an unreasonable application of, federal law. To establish a claim for prosecutorial misconduct based on the use of false testimony, petitioner must show "(1) there was false testimony, (2) the [prosecutor] knew or should have known that the testimony was false, and (3) there was 'any reasonable likelihood that the false testimony could have affected the judgment of the jury.' " *Thomas v. Kuhlman,* 255 F.Supp.2d 99, 108 (E.D.N.Y.2003).

Here, petitioner has provided no evidence that Jones' testimony was actually false, let alone that the prosecutor used any false testimony knowingly or deliberately. At best, petitioner has demonstrated that Jones' testimony was inconsistent (he compares Jones' original statements to officers that she had injured herself in the shower with her later statement that petitioner had smacked her and her Grand Jury testimony that petitioner had punched her). However, inconsistencies in testimony are insufficient to establish that the testimony was false. *See, e.g., United States v. Monteleone,* 257 F.3d 210, 219 (2d Cir.2001). Moreover, petitioner's defense counsel cross-examined Jones and impeached her credibility during trial with her initial claim that she had injured herself in a fall. Because the jury was confronted with the inconsistencies in Jones' testimony, petitioner has not shown a "reasonable likelihood" that the allegedly false testimony could have affected the jury's judgment. *See Moore v. Greiner,* No. 02 Civ. 6122, 2005 WL 2665667, at *14 (S.D.N.Y. Oct.19, 2005).

Additionally, the state court correctly found petitioner's *Brady* claim meritless. Petitioner's claim appears to be based on the prosecution's failure to provide "medical evidence that would exculpate Petitioner and prove that the victim was injured by a fall in the shower [and] that she overdosed on drugs," and the failure to provide certain police reports until after the start of the trial. However, there is no indication in the record that the claimed exculpatory medical evidence even exists, and thus this evidence cannot form the basis for a *Brady* claim. *E.g., Fink v. Bennett,* 514 F.Supp.2d 383, 390 (N.D.N.Y.2007) (denying *Brady* claim where "petitioner has provided nothing short of sheer surmise which suggests that the

prosecution ever possessed the [medical] records ... upon which [petitioner's] *Brady* claim is based").

**\*5** Furthermore, disclosure of evidence is not untimely under *Brady* unless the evidence is provided too late for a defendant to make effective use of the evidence at trial. *E.g., United States v. Underwood,* No. 04-CR-424, 2005 WL 927012, at *1 (S.D.N.Y. Apr. 21, 2005); *see also Miller v. Angliker,* 848 F.2d 1312, 1320 (2d Cir.1988) (stating that habeas relief is available only if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different"). Here, the evidence in the record suggests that the prosecutor was unaware of the police reports until during the trial, but he made immediate disclosure of these items to petitioner's trial counsel once he learned of them, and petitioner's counsel utilized the reports in cross-examining Jones and examining the investigating officer. Thus, petitioner's counsel made use of the material at trial, and there is not a reasonable probability that disclosure of the material any earlier would have changed the outcome of the proceeding. Petitioner's prosecutorial misconduct claim is thus meritless.

### 4. Petitioner's *Apprendi* claim is meritless

Next, petitioner claims that his sentencing as a persistent violent felony offender violated his constitutional rights under *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). Specifically, petitioner asserts that in determining whether he qualified for a sentence enhancement under New York's mandatory persistent violent felony offender statute, the trial court "engaged in impermissible judicial fact-finding as to [his] criminal history, the timing of his convictions, and tolling provisions of the ... statute." Because the state court also reached this claim on the merits (and found it meritless), this Court's review is limited to whether that determination was contrary to, or an unreasonable application of, *Apprendi* or other clearly-established federal law. *See Sellan,* 261 F.3d at 311-12.

The state court's determination was neither contrary to, nor an unreasonable application of, *Apprendi.* The record clearly indicates that petitioner was adjudicated a mandatory persistent violent felony offender under N.Y. PENAL L. § 70.08, which relies solely upon the court's finding of qualifying prior convictions to justify an enhanced sentence. *See* § 70.08 (defining "persistent violent felony offender" as someone who has "previously

been subjected to two or more predicate violent felony convictions"); *Quan v. Potter,* No. 06-CV-4841, 2007 WL 3223217, at *7 (E.D.N.Y. Oct. 29, 2007). This statute falls squarely within *Apprendi* 's exception for sentence enhancements based solely on prior convictions. *See* 530 U.S. at 490 ("Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury."); *Boutte v. Poole,* No. 07 Civ. 8412, 2008 WL 3166696, at *3 n. 5 (S.D.N.Y. Aug.4, 2008) (collecting cases rejecting *Apprendi* challenges to § 70.08).

**\*6** The sentencing judge did nothing more than consider petitioner's prior convictions to determine whether he qualified for the mandatory sentencing enhancement under § 70.08. This is neither "impermissible judicial fact-finding" nor an *Apprendi* violation, and this claim for relief is thus meritless.

### 5. Petitioner's purported actual innocence claim is not cognizable

In his first reply brief, petitioner "den[ied] that he argued with and severely beat the victim or caus[ed] the globe of her right eye to rupture," and he further requested that the Court take notice "that he is alleging actual and factual innocence." (Reply Br. ¶¶ 4, 54.) Although petitioner has purported to raise an actual innocence claim, "actual innocence" itself is not a free-standing cognizable ground for habeas relief. Rather, it is an equitable tolling means for allowing petitioners to raise otherwise-defaulted claims in the interest of correcting a "fundamentally unjust incarceration." *Hamilton v. Miller,* 292 F.Supp.2d 437, 452 (E.D.N.Y.2003) (*citing Herrera v. Collins,* 506 U.S. 390, 400, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993) ("[C]laims of actual innocence ... have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding.")).

Even if the Court could consider petitioner's actual innocence assertion as a free-standing claim, such a claim requires petitioner to support his actual innocence allegations "with new reliable evidence ... that was not presented at trial." *Schlup v. Delo,* 513 U.S. 298, 324, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). Petitioner has set forth no new evidence in support of his "actual and factual innocence"-he has instead merely restated portions of his ineffective assistance of trial counsel claim. The Court

therefore finds that this claim is improperly raised and, in any event, is meritless.

### 6. The claims raised in petitioner's supplemental reply brief are time-barred and otherwise meritless

In his supplemental reply brief, petitioner has asserted that he was denied his right to a fair trial by the trial court's failure to charge reckless first degree assault and intentional second degree assault in the alternative, as this resulted in an inconsistent verdict. He has also claimed that the evidence was legally insufficient to support his conviction for intentional second degree assault because his girlfriend testified at trial that "petitioner punched her twenty time[s] all over her body and she stated that oh my eye something is wrong, and petitioner stop[ped] and was remorseful and [drove] her to the hospital." According to petitioner, this testimony at best described reckless assault that caused serious physical injury.

Although the Court ordinarily does not consider claims raised for the first time in a reply brief, *see, e.g., Verdel v. Cunningham,* No. 07 Civ. 837, 2008 WL 2755833, at *7 n. 1 (S.D.N.Y. July 14, 2008), the Court will consider petitioner's additional claims because the Court gave respondent the opportunity to fully respond to petitioner's new arguments, and respondent has filed a sur-reply. However, after reviewing the parties' submissions, the Court agrees with respondent that these new claims are untimely.

**\*7** Under AEDPA's one-year statute of limitations, petitioner had one year from the date his conviction became final to file his habeas corpus petition. *See* 28 U.S.C. § 2244(d)(1). A conviction is final when either the Supreme Court denies certiorari on direct appeal or the time for seeking this review expires. *E.g., Williams v. Artuz,* 237 F.3d 147, 151 (2d Cir.2001). Although this one-year period is tolled during the pendency of post-conviction review in state court, the filing of a federal § 2254 petition does not toll the statute of limitations. *See Duncan v. Walker,* 533 U.S. 167, 181-82, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001). Thus, petitioner had until November 14, 2008-one year and ninety days after the Appellate Division denied leave to appeal-to timely submit all of his claims. Petitioner's original claims were timely filed within this period, on April 30, 2008. However, because the filing of his § 2254 petition did not toll the one-year clock, the claims petitioner has included in his

February 23, 2009 supplemental reply brief are untimely by over three months.[5]

The Court further finds that petitioner would not be able to move to amend his § 2254 petition under Fed.R.Civ.P. 15(c) in an attempt to render these claims timely. Under Rule 15(c)(2), which governs a motion to amend, a petitioner may only add untimely-asserted claims if they relate back to the original petition. *See Mayle v. Felix,* 545 U.S. 644, 654-55, 125 S.Ct. 2562, 162 L.Ed.2d 582 (2005); *Fama v. Comm'r of Correctional Servs.,* 235 F.3d 804, 815-16 (2d Cir.2000). Relation back requires that the new claims arise from "the same core facts as the timely filed claims" and not differ from those claims in time or type. *Mayle,* 545 U.S. at 657. Amendment is not allowed simply because the new claim arose from "the same trial, conviction, or sentence" as the timely-filed claim. *Id.* at 664. Here, petitioner's new claims do not arise from the same core set of facts as any of his original claims; rather, he has attempted to assert two new errors resulting in his conviction. Because neither the trial judge's alleged failure to properly charge the jury nor the claimed insufficiency of the evidence relate back to the original claims in his § 2254 petition, the Court would deny a motion to amend.

Even assuming that petitioner had timely asserted these additional grounds for relief, the Court would find them meritless. First, petitioner's claim that the trial judge failed to charge first degree assault and second degree assault in the alternative was mooted when the Appellate Division vacated his conviction and sentence for first degree assault. *See Delgado v. Duncan,* 02-CV-4929, 2003 WL 23185682, at *5 (E.D.N.Y. Nov.4, 2003). Moreover, a challenge to a state jury charge is not cognizable on federal habeas corpus review unless the instruction is erroneous and has "so infected the entire trial that the resulting conviction violates due process." *Rosario v. Burge,* 542 F.Supp.2d 328, 337 (S.D.N.Y.2008) (*quoting Blazic v. Henderson,* 900 F.2d 534, 541 (2d Cir.1990)). Because New York law is clear that a conviction for first degree assault is not inconsistent with a conviction for second degree assault, *see, e.g., Suarez v. Byrne,* 10 N.Y.3d 523, 540-41, 860 N.Y.S.2d 439, 890 N.E.2d 201 (2008) (stating a defendant can recklessly cause a risk of death while intentionally inflicting serious physical injury); *People v. Carter,* 21 A.D.3d 1295, 1296, 801 N.Y.S.2d 464 (4th Dep't 2005) (same), the jury instruction was not erroneous, and petitioner's resulting conviction was not a violation of his due process rights.

**\*8** Petitioner's challenge to the sufficiency of the evidence is also meritless. As noted above, petitioner originally raised this argument in his § 440.10 motion to vacate the judgment against him. The state court denied petitioner's motion under N.Y. CRIM. P.L. § 440.30(4)(b), finding that petitioner had failed to support his argument with "sworn allegations substantiating or tending to substantiate all the essential facts." Because it is unclear whether § 440.30(4)(b) is a substantive or procedural basis for rejecting a claim, [6] the Court has analyzed the merits of petitioner's argument and finds this claim meritless. *See Jones v. Spitzer,* No. 01 Civ. 9754, 2003 WL 1563780, at \*46 (S.D.N.Y. Mar. 26, 2003).

A habeas petitioner is only entitled to relief on a sufficiency of the evidence claim if the record demonstrates that "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Wilson v. Senkowski,* No. 02 Civ. 0231, 2003 WL 21031975, at \*9 (S.D.N.Y. May 7, 2003) (*quoting Jackson v. Virginia,* 443 U.S. 307, 324, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). The testimony at trial established that petitioner beat his girlfriend without stopping over her repeated protests until she eventually screamed that something was wrong. A rational trier of fact could have found that this testimony established that petitioner hit his girlfriend with the intent to cause her serious physical injury, as is required for a conviction for intentional second-degree

assault under N.Y. PENAL L. § 120.05(1). Furthermore, to the extent that petitioner has raised a credibility challenge to his girlfriend's testimony, this is a weight of the evidence challenge that is not cognizable on federal habeas corpus review. *E.g., Wilson,* 2003 WL 21031975, at \*8 (collecting cases stating that weight of the evidence is a state law issue); *see also Williams v. McCoy,* 7 F.Supp.2d 214, 221 (E.D.N.Y.1998) (stating habeas court must defer to trial jury's credibility determinations).

## CONCLUSION

For the reasons stated above, petitioner's habeas corpus petition is dismissed. Petitioner has failed to make a substantial showing of the denial of a constitutional right. Therefore, a certificate of appealability shall not issue. 28 U.S.C. § 2253. Further, I certify that any appeal from this Order would not be taken in good faith. *See* 28 U.S.C. § 1915(a); *Coppedge v. U.S.,* 369 U.S. 438, 444, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).

**The Clerk of the Court is directed to mail a copy of this Order to petitioner *pro se*.**

**SO ORDERED.**

**All Citations**

Not Reported in F.Supp.2d, 2009 WL 1024714

Footnotes

1   After the arraignment, the Kings County assistant district attorney realized that the August 11, 2002 incident occurred in Queens County, and the case was reassigned.

2   Other than petitioner's testimony, no evidence presented at his trial supports his contention that his girlfriend used or abused cocaine.

3   Petitioner's § 2254 papers and the record indicate that he included the inconsistent verdict claim in his direct appeal in November 2005, and he raised the evidentiary sufficiency claim in his second motion to vacate the judgment in January 2007. However, he did not raise these claims in his § 2254 petition to this Court.

4   In his § 330.30 motion to set aside the verdict and his Article 78 motion for a writ of prohibition, petitioner alleged that his attorney did not receive a bill of particulars. However, his claim that his attorney was deficient in failing to request a bill of particulars was not raised on direct appeal in the state court and is thus unexhausted. Because this claim could have been raised on direct appeal, New York law would treat it as procedurally barred if petitioner tried to raise it in state court now. *See* N.Y. CRIM . P.L. §§ 440.10(2)(c), (3)(c) (McKinney 1994). This Court would have to concur with that determination unless petitioner could show cause for the failure to appeal, and prejudice or deprivation of a fundamental right. *See Bossett v. Walker,* 41 F.3d 825, 828-29 (2d Cir.1994) (citing *Wainwright v. Sykes,* 433 U.S. 72, 87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977)). Petitioner has provided no indication that he could meet these requirements.

5   Furthermore, the Court notes that both of these claims were raised on direct review and thus known to petitioner at the time he filed his § 2254 petition. Indeed, petitioner even listed the inconsistent verdict claim in the papers supporting his

2009 WL 1024714

petition as a claim presented to the Appellate Division, yet he failed to assert it formally as a ground for habeas corpus relief before this Court.

6    *Compare Lou v. Mantello,* 98-CV-5542, 2001 WL 1152817, at *9 n. 9 (E.D.N.Y. Sept.25, 2001) (holding § 440.30(b) is merits-based and thus does not create a procedural bar to review), *with Roberts v. Scully,* 875 F.Supp. 182, 193 n. 7 (S.D.N.Y.), *aff'd,* 71 F.3d 406 (2d Cir.1995) (holding § 440.30 is procedural and does give rise to a procedural bar).

---

End of Document                                      © 2018 Thomson Reuters. No claim to original U.S. Government Works.